## IN THE CHANCERY COURT FOR RUTHERFORD COUNTY, TENNESSEE
## AT NASHVILLE

| | |
|---|---|
| **CHRISTOPHER HOLLOWAY**, *individually,* **BRIAN HOLLOWAY,** *individually*, and d/b/a **"Tree Solutions"** *a Tennessee Family Business,* | |
| **Plaintiffs,** | |
| **v.** | |
| **WEST BEND INSURANCE COMPANY,** | **No. _____** |
| **Defendant,** | **Jury Demand** |
| **and** | |
| **STATE FARM FIRE AND CASUALTY COMPANY,** | |
| **Defendant,** | |
| **and** | |
| **GEICO ADVANTAGE INSURANCE COMPANY,** | |
| **Defendant.** | |

### COMPLAINT FOR DECLARATORY JUDGMENT

COME NOW Plaintiffs, **CHRISTOPHER HOLLOWAY, individually, BRIAN HOLLOWAY, individually and d/b/a "TREE SOLUTIONS,"** by and through undersigned counsel, and for their Complaint for Declaratory Judgment against the Defendants **WEST BEND INSURANCE COMPANY** ("West Bend"), **STATE FARM FIRE AND CASUALTY COMPANY** ("State Farm"), and **GEICO ADVANTAGE INSURANCE COMPANY** ("GEICO") (or "Defendants" collectively) for their complaint against Defendant, states as follows:

### 1. PARTIES

1.1    Plaintiff Christopher Holloway, who is the father of Defendant Brian Holloway, is a resident of Wilson County, Tennessee and was acting in the course and scope of his work for Tree Solutions, a tree trimming business owned and operated by Brian Holloway and insured by West Bend on October 10, 2024, when the subject collision that underlies this Complaint occurred.

Further, on October 10, 2024, Christopher Holloway was insured under personal policies of automobile insurance issued by GEICO, and homeowners'' insurance issued by State Farm.

1.2     Plaintiff Brian Holloway is a resident of Wilson County, Tennessee and was at all times relevant to this Complaint acting in the course and scope of his management of Tree Solutions, a family tree trimming and maintenance service he operated with his father, Defendant Christopher Holloway, that was insured by West Bend.

1.3     Defendant West Bend is an insurance company authorized to do business in the State of Tennessee, with its principal place of business located at 1900 S. 18th Avenue, West Bend, Wisconsin 53095. Defendant West Bend can be served by agreement through its attorney, Elizabeth Bass of the Richardson Law Group located at 700 E. Main Street, Suite 201, Hendersonville, Tennessee 37075. At all times relevant to Plaintiffs' Complaint West Bend held a policy of general and fleet liability coverage for Tree Solutions (Claim #AR80301).

1.4     Defendant State Farm is an insurance company authorized to do business in the State of Tennessee, with its principal place of business located at 500 James Robertson Parkway, 5th Floor, Nashville, Tennessee 37243. Defendant State Farm can be served at the Tennessee Commissioner of Insurance's Office as its registered agent for service of process at Tennessee Department of Commerce and Insurance, 500 James Robertson Parkway, Nashville, Tennessee 37243-1204. At all times relevant to Plaintiffs' Complaint Defendant State Farm held a policy of homeowners' insurance coverage for Christopher Holloway (Policy #42-CU-C653-8).

1.5     Defendant GEICO is an insurance company authorized to do business in the State of Tennessee with its principal place of business located at 5260 Western Avenue, Chevy Chase, Maryland 20815-3701. Defendant GEICO can be served via its registered agent for service of process CT Corporation System located at 300 Montvue Road, Knoxville, Tennessee 37919-

5546. At all times relevant to Plaintiffs' Complaint Defendant GEICO held a policy of personal automobile insurance coverage for Christopher Holloway (Policy #4573-26-06-11).

## 2. JURISDICTION AND VENUE

2.1     This Court has jurisdiction over this matter pursuant to Tenn. Code Ann. 29-14-102, which grants the Chancery Court the authority to declare rights, status, and other legal relations.

2.2     Venue is proper in this Court pursuant to Tenn. Code Ann. 20-4-101, as the cause of action arose in Rutherford County, Tennessee, and all of the Defendants conduct business in this county. Colonial Pipeline Co. v. Morgan, 263 S.W.3d 827 (Tenn. 2008).

## 3. FACTUAL BACKGROUND

3.1     On or about October 10, 2024, Plaintiff Christopher Holloway was involved in a collision while operating a tree trimming vehicle known as a 2013 Freightliner M2 (hereinafter "Tree Truck") owned and operated by the Tree Solutions business operated by his son, Brian Holloway.

3.2     Tree Solutions had a fleet vehicle and general liability policy maintained by West Bend.

3.3     Among the vehicles insured under the West Bend fleet policy was the 2013 Freightliner M2 Tree Truck. Tree Solutions through Brian Holloway paid insurance premiums to West Bend prior to May 8, 2024, to insure the Tree Truck against liability. However, Tree Solutions elected to park the Tree Truck where it would remain stationary and unused by the business for a period of time. Accordingly, Tree Solutions **temporarily suspended** insurance coverage of the

Tree Truck on May 8, 2024, with West Bend while the Tree Truck remained stationary, and intended to restart coverage when the Tree Truck resumed service for Tree Solutions.

3.4    The Tree Truck remained stationary until Tree Solutions received instructions on Thursday, October 10, 2024, from Wilson County government the Tree Truck needed to be moved to a new location.

3.5    Tree Solutions always intended to reinstate and resume fleet insurance coverage on the Tree Truck prior to using it or moving it, but Defendant Brian Holloway forgot to first to contact West Bend to resume all previous coverages on the Tree Truck before moving it after receiving the instructions from the Wilson County government.

3.6    In compliance, on the evening of October 10, 2024, Defendant Christopher Holloway set out driving the Tree Truck, with Defendant Brian Holloway's brother (and Christopher Holloway's son), Matthew Holloway, following the Tree Truck, which was moving at a speed of approximately 4-5 miles per hour, in his vehicle. While driving the short distance to the new location, the Tree Truck was involved in a collision with another vehicle. Defendant Christopher Holloway denies any liability for causing that collision.

3.7    Plaintiff Brian Holloway and Tree Solutions promptly reported the collision to Defendant West Bend and filed a claim for coverage under that policy. They instructed West Bend immediately following the collision that Tree Solutions had previously paid premiums, temporarily suspended coverage, and had failed due to excusable neglect to reinstate the policy before moving the Tree Truck despite always intending to do so.

3.8    As a result of the collision a lawsuit for civil damages was filed against Plaintiffs Christopher Holloway, Brian Holloway, and Tree Solutions. Plaintiffs deny civil liability for the

collision. (*See* <u>Payne et al. v. Holloway et al.</u>, Rutherford County Circuit Court Case No. 82978, attached as Exhibit 1 to this Complaint.)

3.9     Accordingly, Plaintiff Christopher Holloway promptly reported the collision and resulting lawsuit to Defendant GEICO for coverage under his personal automobile coverage, and Defendant State Farm for coverage under his homeowners' insurance coverage.

3.10    Despite the collision falling within the policy coverages issued by West Bend for Tree Solutions, Defendant West Bend has failed and refused to offer coverage or defend it from the lawsuit arising from the collision.

3.11    Despite the collision falling within the automobile policy coverages issued by GEICO for Christopher Holloway, Defendant GEICO has failed and refused to offer coverage or defend Christopher Holloway from the lawsuit arising from the collision.

3.12    Despite the collision falling within the homeowners' policy coverages issued by State Farm for Christopher Holloway, Defendant State Farm has failed and refused to offer coverage or defend Christopher Holloway from the lawsuit arising from the collision.

3.13    Plaintiffs have complied with all conditions precedent to coverage under all policies discussed herein.

3.14    Despite previously accepting premiums on the vehicle, Defendant West Bend now hopes to avoid providing coverage for the subject collision based on Plaintiff Tree Solutions' oversight in failing to reinstate the coverage before moving it. Such a result would be plainly inequitable and a prejudicial interpretation of a policy which West Bend knew or should have known would be reinstated after being temporarily suspended. State Farm and GEICO, respectively, also hope to avoid providing coverage to Christopher Holloway despite his personal exposure to liability from driving the Tree Truck at the time of the collision.

EXHIBIT A

## 4. CLAIM FOR DECLARATORY JUDGMENT

4.1     An actual controversy exits between Plaintiffs and Defendants regarding the Defendants' obligations to provide coverage for the collision under both Tree Solutions' commercial coverage through West Bend, and the individual automobile and homeowners' policies maintained by Plaintiff Christopher Holloway underwritten by GEICO and State Farm, respectively. Specifically, there are multiple coverages implicated in the West Bend commercial policy maintained by Tree Solutions including automobile liability, mobile equipment liability, general liability for accidents occurring during the course and scope of business operations, and others.

4.2     Plaintiffs seek a declaratory judgment pursuant to Tenn. Code Ann. 29-14-103, declaring that Defendants are obligated to provide coverages for the collision, and the duty to defend Plaintiffs, under the terms of all policies.

4.3     The general purpose of a declaratory judgment action is to resolve disputes and afford relief from uncertainty with respect to rights, status, and other legal relations.

## 5. PRAYER FOR RELIEF

WHEREFORE, premises considered, Plaintiffs Christopher Holloway, Brian Holloway, individually and d/b/a Tree Solutions, demand judgment and pray for the following relief:

5.1     That proper process be issued and served upon Defendants West Bend, State Farm, and GEICO in accordance with T.C.A. § 26-6-105 *et seq.*, and that they be required to appear and answer this Complaint for Declaratory Judgment within the time required by law.

5.2     That the Court empanel a jury of twelve (12) persons to try this cause.

5.3     A declaratory judgment that Defendant West Bend is obligated to provide coverage and defend Tree Solutions, Brian Holloway, and Christopher Holloway from liability arising from the collision on October 10, 2024, under the terms of Tree Solutions commercial liability policy with West Bend.

5.4     A declaratory judgment that the State Farm and GEICO Defendants are obligated to provide coverage and defend Christopher Holloway from liability arising from the collision on October 10, 2024, under the terms of his individual automobile and homeowners' insurance policies.

5.5     That specifically the Court order the Defendants to pay Plaintiffs' reasonable attorneys' fees incurred in prosecuting enforcement of this action, as well as awarding Plaintiffs' their reasonable attorneys' fees incurred in their defense of the litigation identified in Exhibit 1 to this Complaint.

5.6     That the Court award further damages to the Plaintiffs against the Defendants including, but not limited to, discretionary costs, court costs, expenses, and common law and statutory (Tenn. Code Ann. 56-7-105) punitive damages for denying Plaintiffs' claims in bad faith.

5.7     Such other and further equitable relief as the Court may deem just and proper.

Respectfully submitted,

**/s/David M. Rich_____**
David M. Rich, TNBPR #23851
Honeycutt Rich, PLLC
20 Music Circle East
Nashville, Tennessee 37203
Ph: (615) 244-0749
Fax: (615) 523-1761

***Counsel for Plaintiffs Christopher Holloway, Brian Holloway, individually and d/b/a "Tree Solutions"***

## SURETY CLAUSE

Plaintiffs CHRISTOPHER HOLLOWAY, BRIAN HOLLOWAY d/b/a TREE SOLUTIONS, as principals, and we, Honeycutt Rich, PLLC., the sureties, bind ourselves for all court costs pursuant to T.C.A. § 20-12-120 *et seq.* as billed by the Clerk in this matter.

_____ **/s/David M. Rich** _____
**David M. Rich, TNBPR #23851**
**On behalf of Plaintiffs and Honeycutt Rich, PLLC.**

Case 3:25-cv-00593    Document 1-1    Filed 05/29/25    Page 8 of 261 PageID #: 13

EXHIBIT A

ELECTRONICALLY FILED
2025 Nov 24 10:03 AM - 23CV-82978
Adam Tom Rutherford County Circuit Court Clerk

## IN THE CIRCUIT COURT OF RUTHERFORD COUNTY, TENNESSEE

NEVAEH L. PAYNE and DEQWAUN K.      )
WHITE, Individually, and on behalf of  )
their minor child, JEREMIAH WHITE,    )
DECEASED.,                            )        Docket No. 82978
                                     )
     Plaintiffs,                     )
                                     )
v.                                   )
                                     )
CHRISTOPHER B. HOLLOWAY, and         )
BRIAN HOLLOWAY and TREE              )
SOLUTIONS,                           )
                                     )
     Defendants.                     )

## COMPLAINT

Plaintiff states:

1.     Plaintiff, NEVAEH L. PAYNE, is a citizen and resident of Davidson County, Tennessee. Plaintiff is the surviving mother of minor Plaintiff, JEREMIAH WHITE, DECEASED. She has a standing to bring a wrongful death action for her late child under Tenn. Code Ann. §§ 20-5-106 and 20-5-113.

2.     Plaintiff, DEQWAUN K. WHITE, is a citizen and resident of Davidson County, Tennessee. Plaintiff is the surviving father of minor Plaintiff, JEREMIAH WHITE, DECEASED. He has a standing to bring a wrongful death action for his late child under Tenn. Code Ann. §§ 20-5-106 and 20-5-113.

3.     Defendant, CHRISTOPHER B. HOLLOWAY, is a citizen and resident of Wilson County, Tennessee, and may be served with process at 5860 Weakley Lane, Mount Juliet, Tennessee 37122.

1

4.     Defendant, BRIAN HOLLOWAY, is citizen of Wilson County, Tennessee, and may be served with process at 106 Clark Drive, Mount Juliet, Tennessee 37122.

5.     Defendant, TREE SOLUTIONS is a Tennessee Sole Proprietorship company, whose principal place of business is 106 Clark Drive, Mount Juliet, Tennessee 37122, and who may be served with process through its owner, Defendant, BRIAN HOLLOWAY, at 106 Clark Drive, Mount Juliet, Tennessee 37122.

6.     On October 10, 2024, Defendant CHRISTOPHER B. HOLLOWAY was operating a tractor-trailer/logging truck, traveling West on Couchville Pike in Rutherford County, Tennessee.

7.     At the same time, Plaintiff, NEVAEH L. PAYNE, was operating a vehicle traveling East on Couchville Pike in Rutherford County, Tennessee. Plaintiff, DEQWAUN K. WHITE, and Minor Plaintiff, JEREMIAH WHITE, DECEASED., were passengers at the time of the collision.

8.     Defendant, CHRISTOPHER B. HOLLOWAY, had an improperly secured boom on his tractor-trailer/logging truck, the boom swung into oncoming traffic, colliding with the vehicle Plaintiff, NEVAEH L. PAYNE, was operating and Plaintiff, DEQWAUN K. WHITE, and Minor Plaintiff, JEREMIAH WHITE, DECEASED., were passengers in.

9.     Defendant, CHRISTOPHER B. HOLLOWAY, followed Plaintiff, NEVAEH L. PAYNE and DEQWAUN K. WHITE, individually, and on behalf of their minor child, JEREMIAH WHITE, DECEASED.,'s vehicle at an unsafe distance.

10.     Defendant, CHRISTOPHER B. HOLLOWAY, failed to maintain a proper lookout.

11.     Defendant, CHRISTOPHER B. HOLLOWAY, drove too fast for conditions.

12.     Defendant, CHRISTOPHER B. HOLLOWAY, failed to pay proper attention.

2

13. Defendant, CHRISTOPHER B. HOLLOWAY, failed to keep the tractor-trailer/logging truck he was operating under proper control.

14. Defendant, CHRISTOPHER B. HOLLOWAY, failed to use reasonable and safe speed considering the traffic upon and conditions of the roadway.

15. Defendant, CHRISTOPHER B. HOLLOWAY, failed to use reasonable and due care in the operation of the tractor-trailer/logging truck he was driving so as to avoid injury to other persons using the roadway, including Plaintiff NEVAEH L. PAYNE and DEQWAUN K. WHITE, individually, and on behalf of their minor child, JEREMIAH WHITE, DECEASED.

16. Based on Defendant's, CHRISTOPHER B. HOLLOWAY, conduct described herein, Defendant, CHRISTOPHER B. HOLLOWAY, was negligent and reckless.

17. Defendant, CHRISTOPHER B. HOLLOWAY, violated Tenn. Code Ann. § 55-8-136 by failing to exercise due care to avoid colliding with the vehicle Plaintiff, NEVAEH L. PAYNE, was operating, and Plaintiff, DEQWAUN K. WHITE, and Minor Plaintiff, JEREMIAH WHITE, DECEASED., were passengers in, by failing to maintain a safe lookout, by failing to keep the tractor-trailer/logging truck he was driving under proper control, and by failing to devote full time and attention to operating the tractor-trailer he was driving, under the existing circumstances to avoid endangering life, limb or property.

18. Defendant, CHRISTOPHER B. HOLLOWAY, violated Tenn. Code Ann. § 55-8-124 by following more closely than was reasonable and prudent the vehicle that Plaintiff, NEVAEH L. PAYNE, was operating, and Plaintiff, DEQWAUN K. WHITE, and Minor Plaintiff, JEREMIAH WHITE, DECEASED., were passengers in, given the speed of the vehicles and the traffic upon and conditions of the roadway.

3

19. Defendant, CHRISTOPHER B. HOLLOWAY, failed to obey Tennessee's statutory Rules of the Road applicable to the circumstances of the collision.

20. Defendant, CHRISTOPHER B. HOLLOWAY, failed to obey regulations concerning the safe operation and driving of commercial motor vehicles under the Federal Motor Carrier Safety Administration and/or the Tennessee Department of Transportation.

21. Based on Defendant's, CHRISTOPHER B. HOLLOWAY, conduct described herein, Defendant, CHRISTOPHER B. HOLLOWAY, was negligent *per se* and reckless *per se*.

22. At all times relevant to the matters alleged herein, Defendant, BRIAN HOLLOWAY, and Defendant, TREE SOLUTIONS, were the owners, in full, of the tractor-trailer/logging truck that Defendant, CHRISTOPHER B. HOLLOWAY, was operating at the time of the collision.

23. At all times relevant to the matters alleged herein, the tractor-trailer/logging truck that Defendant, CHRISTOPHER B. HOLLOWAY, was operating at the time of the collision was registered in the name of Defendant, BRIAN HOLLOWAY, and the Defendant, TREE SOLUTIONS.

24. Plaintiff, NEVAEH L. PAYNE and DEQWAUN K. WHITE, individually, and on behalf of their minor child, JEREMIAH WHITE, DECEASED., invokes the presumptions of Tenn. Code Ann. §§ 55-10-311 and 312.

25. At all times relevant to the matters alleged herein, Defendant, CHRISTOPHER B. HOLLOWAY, was driving the tractor-trailer/logging truck with the permission of Defendant, BRIAN HOLLOWAY, and the Defendant, TREE SOLUTIONS.

26. At the time of the subject collision, Defendant, CHRISTOPHER B. HOLLOWAY, was under dispatch for Defendant, BRIAN HOLLOWAY, and Defendant, TREE SOLUTIONS.

4

27. At all times relevant to the matters alleged herein, Defendant, CHRISTOPHER B. HOLLOWAY, was an agent, employee, or both of Defendant, BRIAN HOLLOWAY, and Defendant, TREE SOLUTIONS.

28. At all times relevant to the matters alleged herein, Defendant, CHRISTOPHER B. HOLLOWAY, was acting in the course and scope of his agency, employment, or both on behalf of Defendant, BRIAN HOLLOWAY, and Defendant, TREE SOLUTIONS.

29. At all times relevant to the matters alleged herein, Defendant, BRIAN HOLLOWAY, and Defendant, TREE SOLUTIONS, is vicariously responsible for the negligent and reckless acts, omissions, or both of Defendant, CHRISTOPHER B. HOLLOWAY, under the doctrine of *respondeat superior*.

30. At all times relevant to the matters alleged herein, Defendant, BRIAN HOLLOWAY, and Defendant, TREE SOLUTIONS, knew or reasonably should have known of Defendant's, CHRISTOPHER B. HOLLOWAY, propensity to operate tractor-trailers in a negligent and reckless manner so as to create an unreasonable risk of harm to others.

31. Defendants, BRIAN HOLLOWAY, and Defendant, TREE SOLUTIONS, negligent and reckless entrustment of its tractor-trailer to Defendant, CHRISTOPHER B. HOLLOWAY, is the direct and proximate cause of the collision and Plaintiff's, NEVAEH L. PAYNE and DEQWAUN K. WHITE, individually, and on behalf of their minor child, JEREMIAH WHITE, DECEASED., injuries and damages.

32. Defendant, BRIAN HOLLOWAY, and Defendant, TREE SOLUTIONS, was negligent and reckless in hiring, retaining, and/or supervising Defendant, CHRISTOPHER B. HOLLOWAY.

5

33.     Defendants, BRIAN HOLLOWAY, and Defendant, TREE SOLUTIONS, negligent and reckless hiring, retention, and/or supervision of Defendant, CHRISTOPHER B. HOLLOWAY, is a direct and proximate cause of the collision and Plaintiff's NEVAEH L. PAYNE and DEQWAUN K. WHITE, individually, and on behalf of their minor child, JEREMIAH WHITE, DECEASED., injuries and damages.

34.     Plaintiffs, NEVAEH L. PAYNE and DEQWAUN K. WHITE, individually, and on behalf of their minor child, JEREMIAH WHITE, DECEASED., have suffered injuries as a direct and proximate result of the collision.

35.     Plaintiffs, NEVAEH L. PAYNE and DEQWAUN K. WHITE, individually, and on behalf of their minor child, JEREMIAH WHITE, DECEASED., have incurred medical bills and other expenses as a direct and proximate result of the collision.

36.     Plaintiffs, NEVAEH L. PAYNE and DEQWAUN K. WHITE, individually, and on behalf of their minor child, JEREMIAH WHITE, DECEASED., have endured physical pain and mental suffering as a direct and proximate result of the collision.

37.     Plaintiffs, NEVAEH L. PAYNE and DEQWAUN K. WHITE, individually, and on behalf of their minor child, JEREMIAH WHITE, DECEASED., have suffered loss of enjoyment of life as a direct and proximate result of the collision.

38.     Plaintiffs, NEVAEH L. PAYNE and DEQWAUN K. WHITE, individually, and on behalf of their minor child, JEREMIAH WHITE, DECEASED., have suffered lost wages, loss of earning capacity, or other out of pocket expenses, or some combination thereof, as a direct and proximate result of the collision.

6

39. Plaintiffs, NEVAEH L. PAYNE and DEQWAUN K. WHITE, individually, and on behalf of their minor child, JEREMIAH WHITE, DECEASED., seek to recover for all of their damages allowed under Tennessee law.

40. As a result of the wrongful and negligent acts of the Defendants, CHRISTOPHER B. HOLLOWAY, BRIAN HOLLOWAY and TREE SOLUTIONS, and each of them, the Plaintiffs, NEVAEH L. PAYNE and DEQWAUN K. WHITE, assert a claim for loss on consortium because the crash has resulted in the death of their child, Plaintiff, JEREMIAH WHITE, DECEASED.

41. On behalf of Minor Plaintiff, JEREMIAH WHITE, DECEASED, Plaintiffs, NEVAEH L. PAYNE and DEQWAUN K. WHITE, seek damages from the Defendants, for medical bills, funeral bills, pain and suffering, loss of enjoyment of life, and all other damages allowed under Tennessee law. Plaintiffs also seek the pecuniary value of the life of Minor Plaintiff, JEREMIAH WHITE, including but not limited to the loss of love, society, affection, and companionship between Minor Plaintiff, JEREMIAH WHITE, and his family, including his mother, Plaintiff, NEVAEH L. PAYNE and his father, Plaintiff, DEQWAUN K. WHITE.

WHEREFORE, Plaintiffs, NEVAEH L. PAYNE and DEQWAUN K. WHITE, individually, and on behalf of their minor child, JEREMIAH WHITE, DECEASED., pray for the following relief:

1. A judgment for compensatory and punitive damages against Defendant, CHRISTOPHER B. HOLLOWAY, and Defendant, BRIAN HOLLOWAY, and Defendant, TREE SOLUTIONS, jointly and severally, in an amount to be determined by the trier of fact, but in excess of $10,000,000;

2. An award of all discretionary costs and court costs; and,

7

3.    Such other and further relief as shall be deemed reasonable, just, and necessary.

Respectfully submitted,

John Virgil Porter
TN BPR #40066
KY BPR #95630
**MORGAN & MORGAN – NASHVILLE, PLLC**
810 Broadway, Suite 105
Nashville, Tennessee 37203
(615) 514-4201
jporter@forthepeople.com
*Attorney for Plaintiffs*

| 16th JUDICIAL DISTRICT CHANCERY COURT | **SUMMONS** | **CASE FILE NUMBER** 25CV-128 |
|---|---|---|

| **PLAINTIFF** CHRISTOPHER HOLLOWAY, et al. | **DEFENDANT** **vs.** WEST BEND INSURANCE COMPANY, et al. |
|---|---|

**TO: (NAME & ADDRESS OF DEFENDANT)**

WEST BEND INSURANCE COMPANY

700 EAST MAIN STREET SUITE 201
HENDERSONVILLE TN 37075

**List each defendant on a separate summons.**

**YOU ARE HEREBY SUMMONED TO DEFEND A CIVIL ACTION FILED AGAINST YOU IN CHANCERY COURT, RUTHERFORD COUNTY, TENNESSEE. YOUR DEFENSE MUST BE MADE WITHIN THIRTY (30) DAYS FROM THE DATE THIS SUMMONS IS SERVED UPON YOU. YOU ARE DIRECTED TO FILE YOUR DEFENSE WITH THE CLERK OF THE COURT AND SEND A COPY TO THE PLAINTIFF'S ATTORNEY AT THE ADDRESS LISTED BELOW. IF YOU FAIL TO DEFEND THIS ACTION BY THE ABOVE DATE, JUDGMENT BY DEFAULT CAN BE RENDERED AGAINST YOU FOR THE RELIEF SOUGHT IN THE COMPLAINT.**

| **Attorney for plaintiff:** (Name, address & telephone number) David Rich 20 MUSIC CIR E NASHVILLE TN 37203 | **DATE ISSUED & ATTESTED** 01/24/2025          10:30:34 AM **ADAM T. DODD, Clerk & Master** BY: /s/ Sarah Wiggers **Deputy Clerk & Master** |
|---|---|

## NOTICE OF DISPOSITION DATE

To expedite cases, the Court may take reasonable measures to purge the docket of old cases where the cases have been dormant without cause shown for an extended time.

## CERTIFICATION

I, Adam T. Dodd, Clerk and Master of the Chancery Court of Rutherford County, Tennessee, do certify this to be a true and correct copy of the original summons issued in this cause. ADAM T. DODD, CLERK AND MASTER.

BY: _____/s/ Sarah Wiggers_____ — DEPUTY C & M

| **TO THE SHERIFF:** Please execute this summons and make your return within thirty days of issuance as provided by law. | **DATE RECEIVED** **Sheriff** |
|---|---|

Submit three copies: service copy, defendant's copy, file copy.

## RETURN ON PERSONAL SERVICE OF SUMMONS

I hereby certify and return that I served this summons together with the complaint as follows:

**Attorney Elizabeth Bass**
**(Attorney for West Bend Insurance Company)**
**By Agreement of the Parties via Electronic Mail** Date: _____ **FEBRUARY 13, 2025**

By: _____ **ATTORNEY DAVID M. RICH**
Please print: name, title

_____          _____
Agency or process server address                    Signature

## ACCEPTANCE OF SERVICE

I do hereby accept service of process and a copy of this complaint in this cause for all purposes. This the _____ day of _____, 20 ____.

_____

## RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify and return that on the _____ day of _____, 20 ____, I sent, postage prepaid by registered return receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in case # _____ to the defendant _____, on the _____ day of _____, 20 ____. I received the return receipt, which has been signed by _____ on the _____ day of _____, 20 ____. The return receipt is attached to this original summons to be filed by the Chancery Court Clerk & Master.

| | |
|---|---|
| Sworn to and subscribed before me on this _____ day of _____, 20_____. <br><br> Signature of ❏ Notary Public or ❏ Deputy Clerk <br><br> _____ <br><br> My Commission Expires: | Signature of plaintiff, plaintiff's attorney or other person authorized by statute to serve process. |

### NOTICE OF PERSONAL PROPERTY EXEMPTION

TO THE DEFENDANT(S):
    Tennessee law provides a ten thousand dollar ($10,000.00) personal property exemption as well as a homestead exemption from execution or seizure to satisfy a judgment. The amount of the homestead exemption depends upon your age and the other factors which are listed in TCH & 26-2-301. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer

Mail list to:    Clerk & Master
                Suite 5101, Judicial Center
                116 West Lytle Street
                Murfreesboro, TN 37130
Please state file number on list.

ATTACH
RETURN
RECEIPT
HERE
(IF APPLICABLE)

**EXHIBIT 3**

| STATE OF TENNESSEE<br>16th JUDICIAL DISTRICT<br>CHANCERY COURT | **SUMMONS** | CASE FILE NUMBER<br>25CV-128 |
|---|---|---|

| PLAINTIFF<br><br>CHRISTOPHER HOLLOWAY, et al. | DEFENDANT<br>**vs.** GEICO ADVANTAGE INSURANCE COMPANY, et al. |
|---|---|

**TO: (NAME & ADDRESS OF DEFENDANT)**

GEICO ADVANTAGE INSURANCE COMPANY
**NAIC CoCode:** 14138
300 MONTVUE ROAD
KNOXVILLE, TN 37919-5546

**List each defendant on a separate summons.**

**YOU ARE HEREBY SUMMONED TO DEFEND A CIVIL ACTION FILED AGAINST YOU IN CHANCERY COURT, RUTHERFORD COUNTY, TENNESSEE. YOUR DEFENSE MUST BE MADE WITHIN THIRTY (30) DAYS FROM THE DATE THIS SUMMONS IS SERVED UPON YOU. YOU ARE DIRECTED TO FILE YOUR DEFENSE WITH THE CLERK OF THE COURT AND SEND A COPY TO THE PLAINTIFF'S ATTORNEY AT THE ADDRESS LISTED BELOW. IF YOU FAIL TO DEFEND THIS ACTION BY THE ABOVE DATE, JUDGMENT BY DEFAULT CAN BE RENDERED AGAINST YOU FOR THE RELIEF SOUGHT IN THE COMPLAINT.**

| **Attorney for plaintiff:**<br><br>(Name, address & telephone number)<br><br>David Rich<br>20 MUSIC CIR E<br><br>Nashville TN 37203 | **DATE ISSUED & ATTESTED**<br>01/24/2025          10:30:34 AM<br><br>**ADAM T. DODD, Clerk & Master**<br>BY:<br><br>/s/ Sarah Wiggers<br><br>Deputy Clerk & Master |
|---|---|

## NOTICE OF DISPOSITION DATE

To expedite cases, the Court may take reasonable measures to purge the docket of old cases where the cases have been dormant without cause shown for an extended time.

## CERTIFICATION

I, Adam T. Dodd, Clerk and Master of the Chancery Court of Rutherford County, Tennessee, do certify this to be a true and correct copy of the original summons issued in this cause. ADAM T. DODD, CLERK AND MASTER.

BY: _____ /s/ Sarah Wiggers _____ — DEPUTY C & M

| **TO THE SHERIFF:**<br><br>Please execute this summons and make your return within thirty days of issuance as provided by law. | **DATE RECEIVED**<br><br><br>**Sheriff**<br>Commissioner Of Insurance |
|---|---|

Case 3:25-cv-00593   Document 1-1   Filed 05/29/25   Page 19 of 261 PageID #: 24

## RETURN ON PERSONAL SERVICE OF SUMMONS

I hereby certify and return that I served this summons together with the complaint as follows:

Date: _____

By: _____
Please print: name, title

_____

_____
Agency or process server address

_____
Signature

## ACCEPTANCE OF SERVICE

I do hereby accept service of process and a copy of this complaint in this cause for all purposes. This the _____ day of _____, 20 _____.

_____

## RETURN ON SERVICE OF SUMMONS BY MAIL

**I hereby certify and return that on the _____ day of _____, 20 _____, I sent, postage prepaid by registered return receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in case # _____ to the defendant _____, on the _____ day of _____, 20 _____. I received the return receipt, which has been signed by _____ on the _____ day of _____, 20 _____. The return receipt is attached to this original summons to be filed by the Chancery Court Clerk & Master.**

| | |
|---|---|
| Sworn to and subscribed before me on this _____ day of _____, 20 _____. Signature of ❏ Notary Public or ❏ Deputy Clerk | Signature of plaintiff, plaintiff's attorney or other person authorized by statute to serve process. |
| My Commission Expires: | |

### NOTICE OF PERSONAL PROPERTY EXEMPTION

TO THE DEFENDANT(S):
    Tennessee law provides a ten thousand dollar ($10,000.00) personal property exemption as well as a homestead exemption from execution or seizure to satisfy a judgment. The amount of the homestead exemption depends upon your age and the other factors which are listed in TCH & 26-2-301. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

Mail list to:    Clerk & Master
              Suite 5101, Judicial Center
              116 West Lytle Street
              Murfreesboro, TN 37130

Please state file number on list.

ATTACH
RETURN
RECEIPT
HERE
(IF APPLICABLE)

EXHIBIT A

| STATE OF TENNESSEE 16th JUDICIAL DISTRICT CHANCERY COURT | SUMMONS | CASE FILE NUMBER 25CV-128 |
|---|---|---|

| PLAINTIFF | DEFENDANT |
|---|---|
| CHRISTOPHER HOLLOWAY, et al. | **vs.** STATE FARM FIRE AND CASUALTY COMPANY, et al. |

**TO: (NAME & ADDRESS OF DEFENDANT)**

STATE FARM FIRE AND CASUALTY COMPANY
**NAIC CoCode:** 25143
500 JAMES ROBERTSON PARKWAY 5TH FLOOR
NASHVILLE, TN 37243

**List each defendant on a separate summons.**

**YOU ARE HEREBY SUMMONED TO DEFEND A CIVIL ACTION FILED AGAINST YOU IN CHANCERY COURT, RUTHERFORD COUNTY, TENNESSEE. YOUR DEFENSE MUST BE MADE WITHIN THIRTY (30) DAYS FROM THE DATE THIS SUMMONS IS SERVED UPON YOU. YOU ARE DIRECTED TO FILE YOUR DEFENSE WITH THE CLERK OF THE COURT AND SEND A COPY TO THE PLAINTIFF'S ATTORNEY AT THE ADDRESS LISTED BELOW. IF YOU FAIL TO DEFEND THIS ACTION BY THE ABOVE DATE, JUDGMENT BY DEFAULT CAN BE RENDERED AGAINST YOU FOR THE RELIEF SOUGHT IN THE COMPLAINT.**

| Attorney for plaintiff: (Name, address & telephone number) David Rich 20 MUSIC CIR E Nashville TN 37203 | DATE ISSUED & ATTESTED 01/24/2025          10:30:34 AM **ADAM T. DODD, Clerk & Master** BY: /s/ Sarah Wiggers Deputy Clerk & Master |
|---|---|

## NOTICE OF DISPOSITION DATE

To expedite cases, the Court may take reasonable measures to purge the docket of old cases where the cases have been dormant without cause shown for an extended time.

## CERTIFICATION

I, Adam T. Dodd, Clerk and Master of the Chancery Court of Rutherford County, Tennessee, do certify this to be a true and correct copy of the original summons issued in this cause. ADAM T. DODD, CLERK AND MASTER.

BY: _____ /s/ Sarah Wiggers _____ — DEPUTY C & M

| TO THE SHERIFF: Please execute this summons and make your return within thirty days of issuance as provided by law. | DATE RECEIVED |
|---|---|
| | **Sheriff** Commissioner Of Insurance |

## RETURN ON PERSONAL SERVICE OF SUMMONS

I hereby certify and return that I served this summons together with the complaint as follows:

Date: _____

By: _____
Please print: name, title

_____

_____                    _____
Agency or process server address                      Signature

## ACCEPTANCE OF SERVICE

I do hereby accept service of process and a copy of this complaint in this cause for all purposes. This the _____ day of _____, 20 _____.

_____

## RETURN ON SERVICE OF SUMMONS BY MAIL

**I hereby certify and return that on the _____ day of _____, 20 ____, I sent, postage prepaid by registered return receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in case # _____ to the defendant _____, on the _____ day of _____, 20 ____. I received the return receipt, which has been signed by _____ on the _____ day of _____, 20 ____. The return receipt is attached to this original summons to be filed by the Chancery Court Clerk & Master.**

| | |
|---|---|
| Sworn to and subscribed before me on this _____ day of _____, 20 ____. Signature of ❑ Notary Public or ❑ Deputy Clerk | Signature of plaintiff, plaintiff's attorney or other person authorized by statute to serve process. |
| My Commission Expires: | |

### NOTICE OF PERSONAL PROPERTY EXEMPTION

TO THE DEFENDANT(S):
      Tennessee law provides a ten thousand dollar ($10,000.00) personal property exemption as well as a homestead exemption from execution or seizure to satisfy a judgment. The amount of the homestead exemption depends upon your age and the other factors which are listed in TCH & 26-2-301. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

Mail list to:      Clerk & Master
                        Suite 5101, Judicial Center
                        116 West Lytle Street
                        Murfreesboro, TN 37130

Please state file number on list.

ATTACH
RETURN
RECEIPT
HERE
(IF APPLICABLE)

EXHIBIT A

## IN THE CHANCERY COURT FOR RUTHERFORD COUNTY, TENNESSEE

| | |
|---|---|
| CHRISTOPHER HOLLOWAY, individually, ) | |
| BRIAN HOLLOWAY, individually and d/b/a ) | |
| "Tree Solutions" a Tennessee Family Business, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Docket No. 25CV-128 |
| v. ) | |
| ) | |
| WEST BEND INSURANCE COMPANY, ) | |
| STATE FARM FIRE AND CASUALTY ) | |
| COMPANY, and ) | |
| GEICO ADVANTAGE INSURANCE COMPANY,) | |
| ) | |
| Defendants. ) | |

### <u>NOTICE OF APPEARANCE</u>

Comes now, Scott A. Rhodes, and files his notice of appearance as counsel of record for

Defendant GEICO Advantage Insurance Company.

Respectfully submitted,

_Scott A. Rhodes_

Scott A. Rhodes, BPR# 16870
*Attorney for Defendant GEICO Advantage*
*Insurance Company*
White and Rhodes, PC
Brentwood Commons Two, Suite 275
750 Old Hickory Boulevard
Brentwood, TN 37027
615-309-0400
srhodes@whiterhodes.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document has been forwarded, via electronic and/or first class mail, postage prepaid, to the following on this 20th day of February, 2025:

David M. Rich, Esq.                          dave@honeycuttrich.com
Honeycut Rich, PLLC
20 Music Circle East
Nashville, TN  37203

Elizabeth M. Bass, Esq.                      Elizabeth@RichardsonLawGrp.com
Richardson Law Group
700 E. Main Street, Suite 201
Hendersonville, TN  37075


_____
SCOTT A. RHODES

IN THE CHANCERY COURT FOR RUTHERFORD COUNTY, TENNESSEE
AT MURFREESBORO

| | | |
|---|---|---|
| CHRISTOPHER HOLLOWAY, individually, and | ) | |
| BRIAN HOLLOWAY, individually, and d/b/a | ) | |
| "Tree Solutions", a Tennessee Family Business, | ) | |
| | ) | **CASE NO. 25CV-128** |
| PLAINTIFFS | ) | |
| | ) | JURY DEMAND |
| VS. | ) | |
| | ) | |
| WEST BEND INSURANCE COMPANY; | ) | |
| STATE FARM FIRE AND CASUALTY | ) | |
| COMPANY; and GEICO ADVANTAGE | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| DEFENDANTS | ) | |

## NOTICE OF APPEARANCE

All parties and the Court herein shall please take notice that Elizabeth M. Bass of the firm Richardson Law Group, PLLC hereby enters an appearance as counsel of record for the Defendant West Bend Insurance Company. All correspondence, pleadings, and other communications should be forwarded to Elizabeth M Bass at the address and telephone number listed below.  No defenses are waived by entry of this appearance.

Respectfully submitted,

RICHARDSON LAW GROUP, PLLC

*/s/ Elizabeth M. Bass*
Elizabeth M. Bass (TN BPR 035570/ KBA 92461)
700 East Main Street, Suite 201
Hendersonville, Tennessee 37075
Telephone:     (615) 919-9090
Facsimile:     (859) 219-9292
Email:        Elizabeth@RichardsonLawGrp.com
COUNSEL FOR DEFENDANT,
WEST BEND INSURANCE COMPANY

## CERTIFICATE OF SERVICE

This is to certify that the foregoing has been served on this the 28th day of February, 2025

by mailing and/or emailing a true and accurate copy to the following:

David M. Rich
Honeycutt Rich, PLLC
20 Music Circle East
Nashville, TN 37203
dave@honeycuttrich.com
*Counsel for Plaintiffs*

State Farm Fire and Casualty Company
500 James Robertson Parkway, 5th Floor
Nashville, TN 37243
*Defendant*

Scott A. Rhodes
Brentwood Commons II, Suite 275
750 Old Hickory Blvd.
Brentwood, TN  37027
srhodes@whiterhodes.com
*Counsel for Defendant,*
*GEICO Advantage Insurance Co.*

*/s/ Elizabeth M. Bass*
COUNSEL FOR DEFENDANT,
WEST BEND INSURANCE COMPANY

7388.008592C:\NRPortbl\Golden_and_Walters\KIM\2689509_1.DOCX

2

IN THE CHANCERY COURT FOR RUTHERFORD COUNTY, TENNESSEE
AT MURFREESBORO

| | | |
|---|---|---|
| CHRISTOPHER HOLLOWAY, individually, and BRIAN HOLLOWAY, individually, and d/b/a "Tree Solutions", a Tennessee Family Business, | ) ) ) ) | |
| PLAINTIFFS | ) ) | **CASE NO. 25CV-128** |
| VS. | ) ) ) | JURY DEMAND |
| WEST BEND INSURANCE COMPANY; STATE FARM FIRE AND CASUALTY COMPANY; and GEICO ADVANTAGE INSURANCE COMPANY, | ) ) ) ) ) | |
| DEFENDANTS | ) ) | |

## MOTION TO DISMISS

The Defendant, West Bend Insurance Company ("West Bend"), by and through counsel, without waiving any additional defenses, hereby submits this Motion to Dismiss in lieu of an Answer. West Bend moves this Court for an order dismissing Plaintiffs' claims against West Bend, pursuant to Tenn. R. Civ. P. 12.02(6), on the grounds that Plaintiffs have failed to state a claim upon which relief can be granted for their claims for insurance coverage under the policy issued by West Bend. This Motion is based on the Memorandum of Law filed herewith.

## <u>NOTICE</u>

THIS MOTION WILL BE HEARD ON THE 25TH DAY OF APRIL, 2025 AT 9:00 A.M. IN COURTROOM 6C before the Honorable JUDGE TERRY FANN.

Respectfully submitted,

RICHARDSON LAW GROUP, PLLC


*/s/ Elizabeth M. Bass*
Elizabeth M. Bass (TN BPR 035570/ KBA 92461)
700 East Main Street, Suite 201
Hendersonville, Tennessee 37075
Telephone:      (615) 919-9090
Facsimile:      (859) 219-9292
Email:          Elizabeth@RichardsonLawGrp.com
COUNSEL FOR DEFENDANT,
WEST BEND INSURANCE COMPANY


## CERTIFICATE OF SERVICE

This is to certify that the foregoing has been served on this the 28th day of February, 2025

by mailing and/or emailing a true and accurate copy to the following:

David M. Rich
Honeycutt Rich, PLLC
20 Music Circle East
Nashville, TN 37203
dave@honeycuttrich.com
*Counsel for Plaintiffs*

Scott A. Rhodes
Brentwood Commons II, Suite 275
750 Old Hickory Blvd.
Brentwood, TN  37027
srhodes@whiterhodes.com
*Counsel for Defendant,*
*GEICO Advantage Insurance Co.*

State Farm Fire and Casualty Company
500 James Robertson Parkway, 5th Floor
Nashville, TN 37243
*Defendant*


*/s/ Elizabeth M. Bass*
COUNSEL FOR DEFENDANT,
WEST BEND INSURANCE COMPANY

IN THE CHANCERY COURT FOR RUTHERFORD COUNTY, TENNESSEE
AT MURFREESBORO

|  |  |  |
|---|---|---|
| CHRISTOPHER HOLLOWAY, individually, and | ) | |
| BRIAN HOLLOWAY, individually, and d/b/a | ) | |
| "Tree Solutions", a Tennessee Family Business, | ) | |
| | ) | **CASE NO. 25CV-128** |
| PLAINTIFFS | ) | |
| | ) | JURY DEMAND |
| VS. | ) | |
| | ) | |
| WEST BEND INSURANCE COMPANY; | ) | |
| STATE FARM FIRE AND CASUALTY | ) | |
| COMPANY; and GEICO ADVANTAGE | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| DEFENDANTS | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISMISS

The Defendant, West Bend Insurance Company, by counsel, and without waiving any defenses available pursuant to Tenn. R. Civ. P. 12, for its Memorandum of Law in Support of its Motion to Dismiss states as follows:

This declaratory judgment suit arises from a motor vehicle accident that occurred on October 10, 2024, in Rutherford County, Tennessee.[1] At the time of the accident, Christopher Holloway was operating a vehicle owned by Tree Solutions, a business owned by Christopher's son, Brian Holloway. Plaintiffs seek a declaration that "West Bend is obligated to provide coverage and defend Tree Solutions, Brian Holloway, and Christopher Holloway from liability arising from the collision on October 10, 2024, under the terms of Tree Solutions commercial liability policy with West Bend."

---

[1] Complaint, ¶ 3.1; Exhibit 1, *Payne et al. v. Holloway et al.*, Case No. 24CV-82978, ¶7-9.

The Complaint fails to state a claim as a matter of law and must be dismissed. It is facially deficient, and there is no set of facts under which the Plaintiffs could conceivably be entitled to the relief they seek. The claims against West Bend must be dismissed.

## I.    LEGAL STANDARD

Motions to dismiss for failure to state a claim under Tenn. R. Civ. P. 12.02(6) challenge "only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence." *Webb v. Nashville Area Habitat for Human., Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011). "The basis for the motion is that the allegations contained in the complaint, considered alone and taken as true, are insufficient to state a claim as a matter of law." *Winchester v. Little*, 996 S.W.2d 818, 821 (Tenn. Ct. App. 1998). "The motion admits the truth of all relevant and material averments contained in the complaint but asserts that such facts do not constitute a cause of action." *Id.* at 822. Thus, a Rule 12.02(6) motion to dismiss for failure to state a claim should be granted if, from the face of the complaint, after accepting all of the averments of the complaint as true, the Plaintiffs can still not recover against the Defendants.

However, in evaluating the sufficiency of the averments, "courts are not required to accept as true assertions that are merely legal arguments or 'legal conclusions' couched as facts." *Webb v. Nashville Area Habitat for Humanity, Inc.,* 346 S.W.3d 422, 427 (Tenn. 2011) (citing *Riggs v. Burson*, 941 S.W.2d 44, 47–48 (Tenn.1997)).

> While a complaint in a tort action need not contain in minute detail the facts that give rise to the claim, it either must contain "direct allegations on every material point necessary to sustain a recovery on any legal theory, even though it may not be the theory suggested . . . by the pleader, or contain allegations from which an inference may fairly be drawn that evidence on these material points will be introduced at trial."

2

*Donaldson v. Donaldson,* 557 S.W.2d 60, 61 (Tenn. 1977) (quoting C. Wright and A. Miller,

Federal Practice and Procedure, § 1216 at 121-123). The Complaint in the present matter consists

of conclusory allegations regarding Plaintiffs' purported right to a defense and indemnity under

Westfield's policy. The factual averments are not sufficient to support every material point

necessary to sustain recovery, and dismissal is proper on that basis alone.

In addition to the averments of the Complaint, the Court is permitted to and, indeed, must

consider the certified copy of the relevant policy, which is attached hereto as **Exhibit A.** Although

the Court's analysis of a motion to dismiss is typically confined to the four corners of the

Complaint itself, the Court is authorized to examine other materials that are the subject matter of

the Complaint.

> As an initial matter, we note that the trial court considered matters outside the
> complaint in ruling on the motion to dismiss. Specifically, the court relied upon the
> general warranty deed, the official minutes from the Clarksville City Council, and
> pertinent provisions of the Clarksville City Charter. Generally, "[i]f matters outside
> the pleadings are presented in conjunction ... with a [Rule 12 motion] ... and the
> trial court does not exclude those matters, the court must treat such motions as
> motions for summary judgment ...." *Patton v. Est. of Upchurch,* 242 S.W.3d 781,
> 786 (Tenn. Ct. App. 2007). However, under certain circumstances, materials other
> than the pleadings may be reviewed by the trial court without converting the motion
> to one for summary judgment. In I*ndiana State District Council of Laborers v.
> Brukardt*, this Court noted:
>
> > Numerous cases ... have allowed consideration of matters incorporated by
> > reference or integral to the claim, items subject to judicial notice, matters of
> > public record, orders, items appearing in the record of the case, and exhibits
> > attached to the complaint whose authenticity is unquestioned; these items
> > may be considered ... without converting the motion into one for summary
> > judgment.

*Robinson v. City of Clarksville,* 673 S.W.3d 556, 565–66 (Tenn. Ct. App. 2023), appeal denied

(May 10, 2023) (additional citations omitted). Exhibit 1 to the Complaint for Declaratory

Judgment is the Complaint filed in the Underlying Litigation, which may be considered in

addressing this Motion. Although the Complaint does not attach a copy of West Bend's policy of

insurance as an exhibit, the policy is integral to the Plaintiffs' claims, as the entire basis of the claim against West Bend seeks a declaration that they are entitled to coverage under the policy. It must be considered, as well.

## III. AVERMENTS PRESENTED IN THE COMPLAINT

In light of the foregoing legal standard, which requires the Court to assume the averments of the Complaint are true for purposes of this Motion, West Bend will present those averments as they appear in the Complaint.[2] West Bend issued a policy of insurance to Tree Solutions which included business auto coverage and general liability coverage.[3] Before May 8, 2024, the truck involved in the motor vehicle accident, a 2013 Freightliner M2, was listed on the policy, and premiums were paid for that vehicle.[4] However, "Tree Solutions elected to park the Tree Truck where it would remain stationary and unused by the business for a period of time[,]" and, accordingly, removed it from the policy.[5]

On October 10, 2024, a representative of the Wilson County government instructed Tree Solutions to move the truck to a new location.[6] Brian Holloway, owner of Tree Solutions, "forgot" to add the vehicle back to West Bend's policy "to resume all previous coverages on the Tree Truck" before complying with this instruction.[7] Christopher Holloway was moving the truck in accordance with the instructions of the Wilson County government when the accident occurred.[8]

As a result of the accident, on November 18, 2024, Navaeh Payne and Dequan White, individually, and on behalf of their minor child, Jeremiah White, deceased ("Underlying

---

[2] West Bend reserves the right to dispute the averments in the event the Motion to Dismiss is not granted.
[3] Complaint, ¶ 3.2. Although the Complaint refers to the auto liability coverage as "fleet vehicle" coverage, the auto liability coverage form is entitled "Business Auto Coverage Form."
[4] Complaint, ¶ 3.3.
[5] Id.
[6] Id., ¶ 3.4.
[7] Id., ¶ 3.5.
[8] Id., ¶ 3.6.

Plaintiffs"), filed suit against Christopher Holloway, Brian Holloway, and Tree Solutions in the Circuit Court of Rutherford County, Tennessee, Civil Action No. 24CV-82978, "*Payne et al v. Holloway et al*" (hereinafter "the Underlying Litigation").[9]  The Underlying Plaintiffs claims that the Underlying Plaintiffs were injured due to Christopher Holloway's negligent operation of the truck.  Underlying Plaintiffs seek damages including medical bills, funeral bills, pain and suffering, and loss of enjoyment of life due to their alleged injuries and the death of their child, Jeremiah White.[10]

On January 24, 2025, Plaintiffs in the present matter filed their Complaint for Declaratory Judgment against West Bend and two other insurers. The Complaint for Declaratory Judgment includes conclusory legal claims that "the collision fall[s] within the policy coverage issued by West Bend for Tree Solutions,"[11] and asserts that denying coverage for an accident involving a vehicle that was not listed on West Bend's policy and for which no premiums were paid during the relevant period "would be plainly inequitable and a prejudicial interpretation of a policy which West Bend knew or should have known would be reinstated after being temporarily suspended."[12] Plaintiffs demand a declaration that West Bend is obligated to provide coverage for and defend Tree Solutions, Brian Holloway, and Christopher Holloway from liability arising from the October 10, 2024, accident under the West Bend policy.

On the face of the Complaint, including the attached Exhibit and in light of the plain language of the policy, it is evident there is no coverage under West Bend's policy. Plaintiffs' claims against West Bend must be dismissed, as the Complaint fails to state a claim for which relief can be granted.

---

[9] Exhibit 1 to Plaintiffs' Complaint.
[10] *Id.*
[11] Complaint, ¶ 3.10.
[12] *Id.*, ¶ 3.14.

## III.   **WEST BEND'S POLICY**

The West Bend policy identifies Brian Holloway, DBA Tree Solutions, as the named insured.[13]  The relevant policy period is June 3, 2024, to June 3, 2025.[14]  The Schedule of Covered Autos You Own is found at Item Three of the Business Auto Coverage Schedule.[15]  It lists five vehicles, a 2021 GMC Sierra, a 2021 Ram 3500, a 2011 Ford F350, a 2002 Chevrolet Silverado, and a 1994 Ford F47 and the premium charged for each vehicle.[16]  The 2013 Freightliner M2 involved in the underlying accident is not listed on the Schedule, and no premium is shown for it.

In addition, the Business Auto Coverage Form contains the following insuring agreement:

### SECTION II – COVERED AUTO LIABILITY COVERAGE

**A.        Coverage**

We will pay all sums an 'insured' legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

…

We have the right and duty to defend any "insured" against a "suit" asking for such damage or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Covered Autos Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.[17]

The Business Auto Coverage form include the following language:

---

[13] Exhibit A, Commercial Lines Policy Declaration, DCP 01 01 18.
[14] *Id.*
[15] Exhibit A, Business Auto Coverage Schedule, DBA 02 11 22.
[16] *Id.*
[17] Exhibit A, CA 00 01 11 20, Page 2 of 13.

6

## SECTION I – COVERED AUTOS

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".[18]

The Business Auto Coverage Declarations list symbols 7, 8, 9, and 19.[19] The following description is given for each of the relevant symbols:

### Description Of Covered Auto Designation Symbols

| | | |
|---|---|---|
| 7 | Specifically Described "Autos" | Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three). |
| 8 | Hired "Autos" Only | Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent or borrow from any of your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households. |
| 9 | Non-owned "Autos" Only | Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households but only while used in your business or your personal affairs. |

| | | |
|---|---|---|
| 19 | Mobile Equipment Subject To Compulsory Or Financial Responsibility Or Other Motor Vehicle Insurance Law Only | Only those "autos" that are land vehicles and that would qualify under the definition of "mobile equipment" under this Policy if they were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where they are licensed or principally garaged. |

[20]

The coverage form further provides the following for "owned autos:"

### B.     Owned Autos

If symbols **1, 2, 3, 4, 5, 6,** or **19** are entered next to a coverage item in Item Two of the Declarations, then you have coverage for "autos" that you acquire after the policy period begins of the type described for the remainder of the policy period.[21]

---

[18] Exhibit A, CA 00 01 11 20, Page 1 of 13.
[19] Id.
[20] Id., Pages 1-2 of 13.
[21] Id., Page 2 of 13.

In addition to the Business Auto Coverage Form, the West Bend policy provides Commercial General Liability ("CGL") coverage subject to the terms, conditions, limitations, and exclusions in the policy. The insuring provision of the CGL form provides, in relevant part, as follows:

**1.    Insuring Agreement**

      **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.[22]

The CGL Coverage Form defines "auto" as follows:

**2.    "Auto" means**

      **a.**    A land motor vehicle, trailer, or semitrailer designated for travel on public roads, including any attached machinery or equipment; or

      **b.**    Any other land vehicle that is subject to a compulsory or financial responsibility law where it is licensed or principally garaged. However, "auto" does not include "mobile equipment".[23]

The policy includes the following relevant exclusion:

**g.    Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training, or monitoring of others by the "bodily injury" or "property damage" involved in the ownership,

---

[22] Exhibit A, CG 00 01 04 13, Page 1 of 6.
[23] *Id.*, Page 13 of 16.

maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

> **(1)** A watercraft while ashore on premises you own or rent;
>
> **(2)** A watercraft you do not own that is:
>
> **(a)** Less than 26 feet long; and
>
> **(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

> **(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or
>
> **(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".[24]

## IV.  ARGUMENT

### A.  Plaintiffs' claims fail as a matter of law because they lack sufficient factual averments support their request for relief

Although the Complaint makes numerous conclusory averments that West Bend's policy affords coverage for the claims asserted in the Underlying Litigation, the factual averments do not substantiate those conclusions.  Specifically, the Complaint for Declaratory Judgment admits:

- Tree Solutions suspended insurance coverage for the vehicle Christopher Holloway was operating on May 8, 2024.  Complaint, ¶ 3.3.

---

[24] Exhibit A, CG 00 01 04 13, Page 4 of 16.

9

- Brian Holloway forgot to contact West Bend to resume coverage for the vehicle prior to moving it. Complaint, ¶ 3.5.
- The accident occurred while Christopher Holloway was driving the truck on October 10, 2024. Complaint, ¶¶ 3.6.
- When Brian Holloway and Tree Solutions reported the accident to West Bend, they advised that they had failed to reinstate the policy before moving the truck. Complaint, ¶ 3.7.

The Complaint makes another conclusory allegation, namely that "there are multiple coverages implicated in the West Bend commercial policy maintained by Tree Solutions including automobile liability, mobile equipment liability, general liability for accidents occurring during the course and scope of business operations, and others."

It does not, however, identify any policy language which would even arguably afford coverage for a vehicle that was not listed on West Bend's policy and for which premiums were not paid. There is no explanation whatsoever of how coverage could potentially attach under the facts presented. This falls far short of the requirement that a complaint "either must contain direct allegations on every material point necessary to sustain a recovery on any legal theory, even though it may not be the theory suggested . . . by the pleader, or contain allegations from which an inference may fairly be drawn that evidence on these material points will be introduced at trial." *Donaldson v. Donaldson,* 557 S.W.2d 60, 61 (Tenn. 1977) (citation and quotation omitted). There are simply no facts or theories presented in the Complaint for Declaratory Judgment which would give rise to a coverage obligation under West Bend's policy.

It is a fundamental principle of insurance law that, "The premium is the consideration paid to an insurer for undertaking to indemnify the insured against a specified peril." 5 Couch on Ins. § 69:1, Premium defined. Moreover:

> The payment of the premium by the insured and the assumption of a specified risk by the insurer are the essential elements of the contract of insurance. The payment or undertaking of the insured to pay premiums is the consideration for which the insurer agrees to assume the risk specified in the policy. Consequently, the payment

10

or an agreement to pay a premium by the insured is a condition precedent to, or at least concurrent with, the assuming of any liability by an insurer.

*Id.* at § 69:2 (footnotes omitted). By admitting that the vehicle was removed from the policy and that no premium was paid for it when the accident occurred, Plaintiffs have admitted that they failed to meet a condition precedent of coverage under West Bend's policy and that West Bend did not assume the risk associated with operation of this particular vehicle. The Complaint must be dismissed for that reason alone. It wholly fails to state a claim upon which relief can be granted.

> **B.    Even if the Complaint contains sufficient factual averments, there is no coverage under West Bend's Business Auto Coverage Form because the Tree Solution vehicle was not a "covered auto."**

Even if the Court concludes there are sufficient factual averments to state a claim, it is evident that there actually is no coverage under West Bend's policy, and dismissal is appropriate. The Complaint first asserts that Plaintiffs are entitled to coverage under West Bend's Business Auto Coverage Form. However, the 2013 Freightliner M2 did not qualify as a "covered auto" at the time of the accident.

The rules of interpretation of a policy of insurance are essentially the same as those governing contract interpretation.

> Equally well-established is the principle that [i]nsurance policies are, at their core, contracts. As such, courts interpret insurance policies using the same tenets that guide the construction of any other contract. Thus, the terms of an insurance policy should be given their plain and ordinary meaning, for the primary rule of contract interpretation is to ascertain and give effect to the intent of the parties. The policy should be construed as a whole in a reasonable and logical manner, and the language in dispute should be examined in the context of the entire agreement[.]

*Garrison v. Bickford,* 377 S.W.3d 659, 663–64 (Tenn. 2012) (citations and quotations omitted). Review of West Bend's policy makes it clear that there is no coverage for the claims presented in the Underlying Litigation.

11

The Complaint asserts that West Bend has a duty to indemnify the Plaintiffs and defend them in the Underlying Litigation. Although the duty to defend is broader than the duty to indemnify, where it is apparent from the averments of the underlying complain that there is no coverage, the insurer has no duty to indemnify or defend.

> We previously have held that whether a duty to defend arises depends solely on the allegations contained in the underlying complaint. Accordingly, the insurer has a duty to defend when the underlying complaint alleges damages that are within the risk covered by the insurance contract and for which there is a potential basis for recovery. The duty to defend arises if even one of the allegations is covered by the policy. The duty to defend is broader than the duty to indemnify because the duty to defend is based on the facts alleged, while the duty to indemnify is based upon the facts found by the trier of fact.

*Travelers Indem. Co. of America v. Moore & Associates, Inc.,* 216 S.W.3d 302, 305 (Tenn. 2007). Here, because none of the claims presented in the Underlying Litigation is even potentially covered by West Bend's policy, and in light of the failure of the Complaint for Declaratory Judgment to identify any claims which are potentially covered, West Bend has no duty to defend or indemnify the Plaintiffs herein.

The Declarations page of the policy defines which vehicles are "covered auto(s)." According to the Declarations page of the Business Auto Coverage Form, Tree Solutions' policy includes symbols 7, 8, 9, and 19, which the policy defines as follows:

### Description Of Covered Auto Designation Symbols

**7** Specifically Described Autos

Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Covered Auto Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three).

**8** Hired "Autos" Only

Only those "autos" you lease, rent or borrow. This does not include any 'auto' you lease, hire, rent or borrow from any of your 'employees",

partners (if you are a partnership), members (if you are a limited liability company) or members of their households.

**9** Non-owned "Autos" Only

Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households but only while used in your business or your personal affairs.

**19** Mobile Equipment Subject To Compulsory Or Financial Responsibility Or Other Motor Vehicle Insurance Law Only

Only those "autos" that are land vehicles and that would qualify under the definition of "mobile equipment" under this Policy if they were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where they are licensed or principally garaged.

The Business Auto Coverage Form further places the following limitation on symbol 19:

**B.** **Owned Autos**

If symbols **1, 2, 3, 4, 5, 6,** or **19** are entered next to a coverage item in Item Two of the Declarations, then you have coverage for "autos" that you acquire ***after the policy period begins*** of the type described for the remainder of the policy period.

Symbol 7 includes those "autos" described in the Declarations showing a premium charge. The 2013 Freightliner M2 is not one of the vehicles identified under Item Three in the Declarations, and there is no premium associated with it. Further, Plaintiffs admit to "suspending" coverage on the vehicle and not having restored coverage at the time of the accident, thereby admitting that the vehicle in question was not a specifically described auto on West Bend's policy. Therefore, symbol 7 does not apply.

Symbol 8 covers those "autos" you lease, hire, rent or borrow. The 2013 Freightliner M2 was not a leased, rented, or borrowed vehicle; rather, Brian Holloway and/or Tree Solutions owned it, as the Plaintiffs aver in the Complaint, ¶ 3.1. Accordingly, symbol 8 does not apply.

13

Symbol 9 covers those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. However, again, Brian Holloway and/or Tree Solutions owned the 2013 Freightliner M2, as the Plaintiffs assert in the Complaint, ¶ 3.1. Consequently, symbol 9 does not apply.

Symbol 19 does not apply does not apply because the 2013 Freightliner M2 was being used as an "auto," not "mobile equipment" at the time of the accident. The Plaintiffs aver in the Complaint, ¶ 3.6, that Christopher Holloway was driving the vehicle at a speed of approximately 4-5 miles per hour when the accident that forms the basis of the Underlying Litigation occurred.

The Tennessee Court of Appeals has previously determined under what circumstances a "boom truck" qualifies as an "auto" or "mobile equipment" under an automobile liability policy. In *Erie Ins. Exch. v. Columbia Nat. Ins.*, Timothy Brewington was electrocuted when the metal crane on a boom truck that was hoisting sheet metal came into contact with overhead electrical wires. No. M2012-00331-COA-R3CV, 2013 WL 395982, at *2 (Tenn. Ct. App. Jan. 30, 2013). The Court of Appeals recognized the dual nature of the boom truck, noting:

> Therefore, "while being driven from place to place [the boom truck] is an automobile because under those circumstances it is like any other truck carrying any other load from one point to another ... [c]onversely[ ] ... when set up in place to perform its primary function [the boom truck] is no longer an automobile, but at that point and at that time it is being used for its other designed function ... [and] it then no longer is to be considered an automobile or mother vehicle under the definitional terms of the policy."

> Furthermore, the majority rule has been applied in circumstances where—as here— the declarations identified the vehicle in question. *Schmidt v. Luchterhand,* 62 Wis.2d 125, 214 N.W.2d 393 (Wis.1974). In that case, the court reasoned that the "ordinary meaning of the term 'motor vehicle' as it applied to the 1962 truck would not include the permanently attached hoist ... [and] that referring to the 1962 truck as a motor vehicle would not be commonly understood as indicating an intent to include the hoist as it was being used in the instant case."

14

EXHIBIT A

Considering the foregoing, we find the majority rule sound and wholly consistent with Tennessee jurisprudence on the issue of automobile insurance; thus, we shall apply the majority rule in this case.

*Id*. at \*6 citing to *State Farm Mut. Auto Ins. Co. v. Farmers Insurance Group*, 569 P. 2d 1260, 1262 (Wyo. 1977). The Court ultimately concluded that under the specific facts of the case before it, the vehicle was being used as "mobile equipment" and not as an "auto" at the time of the incident, reasoning that the boom truck was immobilized, the wheels were lifted off the ground, and it was only being used as a power crane to lift heavy materials.

Applying the same rules to the present case, it is evident that the 2013 Freightliner did not qualify as "mobile equipment" at the time of the accident. Christopher Holloway was driving the vehicle and not operating the boom, which is specifically averred in the Complaint for Declaratory Judgment and the Underlying Litigation.

However, even if the vehicle did qualify as "mobile equipment" at the time of the accident (it did not), there would still be no coverage under the policy because the policy clearly states that if symbol 19 applies, then there is coverage for "autos" that you acquire *after* the policy period begins. Brian Holloway and/or Tree Solutions acquired the vehicle prior to May 8, 2024, when it was removed it from the policy, which was also before the relevant policy period. Therefore, there would still be no coverage if the boom truck were being utilized as "mobile equipment" at the time of the accident.

There is no set of facts under which the Business Auto Coverage policy applies to this claim. West Bend has no duty to defend the Plaintiffs, and the suit must be dismissed.

15

**C.     There is no coverage under West Bend's Commercial General Liability Coverage Form because the Underlying Litigation arises from the ownership, maintenance, use, or entrustment of an "auto."**

In addition to seeking coverage under the Business Auto Coverage Form, Plaintiffs claim they are entitled to coverage under the CGL Form. However, the CGL Coverage Form excludes coverage, in relevant part, for the following:

> "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

The Underlying Litigation arises from an auto accident between the Underlying Plaintiffs and Christopher Holloway.  Clearly, the Complaint avers that Christopher Holloway was using the truck when the accident occurred, as he was driving it at a speed of approximately 4-5 miles per hour.  The Complaint filed in the Underlying Litigation specifically avers that the accident occurred when Christopher Holloway "was operating" the truck and that he "failed to maintain a proper lookout," "drove too fast for conditions," "failed to pay proper attention," and otherwise "failed to keep the tractor-trailer/logging truck he was operating under proper control."[25]

The policy defines "auto" to include, "A land motor vehicle, trailer, or semitrailer designated for travel on public roads, including any attached machinery or equipment[.]"  The truck necessarily qualifies as an "auto" pursuant to this definition.  The boom which was attached likewise meets the definition of an "auto," which includes "any attached machinery or equipment." Christopher Holloway was clearly using the vehicle at the time of the accident.

Based on the plain language of the policy and the Underlying Complaint, there is no coverage for the Underlying Litigation. To the extent that the Plaintiff claim there is coverage under the CGL form for failing to secure the boom, the definition of "auto" includes "any attached

---

[25] Underlying Complaint, Exhibit 1 to Plaintiffs' Complaint for Declaratory Judgment.

machinery or equipment." Simply put, the Underlying Plaintiffs' claims clearly arise from the ownership, maintenance, or use of an "auto," and the Underlying Complaint does not allege an insured risk.

## V.    CONCLUSION

The Complaint for Declaratory Judgment fails to state a claim that West Bend has any duty to defend or indemnify Brian Holloway, Tree Solutions, and Christopher Holloway in the Underlying Litigation.  The averments confirm that the truck that was operated by Christopher Holloway was removed from coverage and no premium was paid for it.  There is no basis upon which coverage could attach, despite conclusory allegations to the contrary.

Moreover, pursuant to the plain language of the policy, the truck is not a covered auto which West Bend insured at the time of the accident under the Business Auto Coverage form. Furthermore, there is no coverage under the CGL form because the Underlying Litigation arises from the ownership, maintenance, use or entrustment of an "auto."

All claims against West Bend must be dismissed pursuant to Tenn. R. Civ. P. 12.02(6). The Complaint for Declaratory Judgment fails to state a claim upon which relief may be granted.

Respectfully submitted,

RICHARDSON LAW GROUP, PLLC


*/s/ Elizabeth M. Bass*
Elizabeth M. Bass (TN BPR 035570/ KBA 92461)
700 East Main Street, Suite 201
Hendersonville, Tennessee 37075
Telephone:    (615) 919-9090
Facsimile:    (859) 219-9292
Email:    Elizabeth@RichardsonLawGrp.com
COUNSEL FOR DEFENDANT,
WEST BEND INSURANCE COMPANY

17

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that the foregoing has been served on this the 28th day of February, 2025

by mailing and/or emailing a true and accurate copy to the following:

David M. Rich
Honeycutt Rich, PLLC
20 Music Circle East
Nashville, TN 37203
dave@honeycuttrich.com
*Counsel for Plaintiffs*

State Farm Fire and Casualty Company
500 James Robertson Parkway, 5th Floor
Nashville, TN 37243
*Defendant*

Scott A. Rhodes
Brentwood Commons II, Suite 275
750 Old Hickory Blvd.
Brentwood, TN  37027
srhodes@whiterhodes.com
*Counsel for Defendant,*
*GEICO Advantage Insurance Co.*

*/s/ Elizabeth M. Bass*
COUNSEL FOR DEFENDANT,
WEST BEND INSURANCE COMPANY

7388.008592C:\NRPortbl\Golden_and_Walters\BEVERLY\2684713_1.DOCX

18

# AFFIDAVIT

_____ Paige Ruka _____, being first duly sworn on oath, deposes and says: That she is a duly

authorized custodian of the records of West Bend Insurance Company, and she has the authority to

certify those records.

Based upon my review of policy records, the policy attached to this Affidavit is a true copy of the

_____ Commercial _____

policy, bearing policy number ____ B319992-01 ____ as that policy was in effect on ____ 10/11/2024 ____.

_____ Paige Ruka _____
Paige Ruka

Subscribed and sworn to before me on ____ 10/15/2024 ____.

_____ Lisa Neu _____
Notary Public, Washington County, WI
My Commission Expires ____ 6/25/2028 ____





**WEST BEND**
A MUTUAL INSURANCE COMPANY®

West Bend Mutual Insurance Company
1900 S. 18th Ave. | West Bend, WI 53095

Endorsement

## Policy Change Summary Declarations

---

**Customer Number:** 1000448661
**Policy Number:** B319992 01

**Policy Period:** 06/03/2024 to 06/03/2025
at 12:01 AM Standard Time at Your Mailing Address Shown Below

---

**Named Insured and Address:**
Brian Holloway
DBA Tree Solutions
106 Clark Dr
Mount Juliet, TN 37122

**Agency Name and Address:**                    41670
POWELL & MEADOWS INSURANCE
PO BOX 1
CARTHAGE, TN 37030
615-735-1111

---

Changes have been made to the above policy at your request or at the request of your agent.

Below is a summary of the changes to the Coverage(s) that are impacted. All other terms, conditions, exclusions and provisions of the policy remain the same.

To view a complete copy of your policy, visit us at http://insured.thesilverlining.com or on the West Bend mobile app.

To request a complete copy of your policy, please email CustomerService@wbmi.com.

### Effective Date of Change: 06/03/2024
### Coverage Part and Description of Change

**Coverage Part**

---

**Commercial Inland Marine Coverage**

Modified:

Address for Loss Payee: Buckeye Rental & Equipment, LLC

**Summary**

The above changes result in the following Total Net Premium Change    Net Additional Premium:    $0.00
*(Including Taxes, Fees, and Surcharges)*

### This is not a bill.

Any premium changes will be reflected on your next scheduled invoice.



West Bend Mutual Insurance Company
1900 S. 18th Ave. | West Bend, WI 53095

Endorsement

## Commercial Lines Policy Declaration

**Customer Number:** 1000448661
**Policy Number:** B319992 01

**Policy Period:** 06/03/2024 to 06/03/2025
at 12:01 AM Standard Time at Your Mailing Address Shown Below

**Named Insured and Address:**
Brian Holloway
DBA Tree Solutions
106 Clark Dr
Mount Juliet, TN 37122

**Agency Name and Address:** 41670
POWELL & MEADOWS INSURANCE
PO BOX 1
CARTHAGE, TN 37030
615-735-1111

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

This policy consists of the following coverage parts for which a premium is indicated. This premium may be subject to adjustment.

| Coverage Part | Premium |
|---|---|
| Commercial General Liability Coverage | $7,782.00 |
| Commercial Auto Coverage | $25,780.00 |
| Commercial Inland Marine Coverage | $6,265.00 |
| Total Premium: | $39,827.00 |
| Total Including Taxes, Fees and Surcharges: | $39,827.00 |

**This is not a bill.** A billing invoice will be sent separately.

See attached schedule for forms applicable to all coverage parts.

DCP 01 01 18

06/12/2024 07:28:03



West Bend Mutual Insurance Company
1900 S. 18th Ave. | West Bend, WI 53095

Endorsement

**Commercial Lines Policy Declaration**

**Customer Number:** 1000448661
**Policy Number:** B319992 01

**Policy Period:** 06/03/2024 to 06/03/2025
at 12:01 AM Standard Time at Your Mailing Address Shown Below

**Named Insured and Address:**
Brian Holloway
DBA Tree Solutions
106 Clark Dr
Mount Juliet, TN 37122

**Agency Name and Address:**                    41670
POWELL & MEADOWS INSURANCE
PO BOX 1
CARTHAGE, TN 37030
615-735-1111

**Named Insured Schedule**

Brian Holloway DBA Tree Solutions

Music City Firewood, LLC

DCP 02 04 14
06/12/2024 07:28:03



West Bend Mutual Insurance Company
1900 S. 18th Ave. | West Bend, WI 53095

**Commercial Lines Policy Declarations**

---

**Customer Number:** 1000448661
**Policy Number:** B319992 01

**Policy Period:** 06/03/2024 to 06/03/2025
at 12:01 AM Standard Time at Your Mailing Address Shown Below

---

**Named Insured and Address:**
Brian Holloway
DBA Tree Solutions
106 Clark Dr
Mount Juliet, TN 37122

**Agency Name and Address:**                    41670
POWELL & MEADOWS INSURANCE
PO BOX 1
CARTHAGE, TN 37030
615-735-1111

---

**Location Schedule**

| Loc | Address | City | County | State | Zip |
|-----|---------|------|--------|-------|-----|
| 1 | 106 Clark Dr | Mount Juliet | Wilson | TN | 37122 |

DCP 03 04 14                                                                     06/12/2024 07:28:03



West Bend Mutual Insurance Company
1900 S. 18th Ave. | West Bend, WI 53095

## Commercial Lines Policy Declarations

**Customer Number:** 1000448661
**Policy Number:** B319992 01

**Policy Period:** 06/03/2024 to 06/03/2025
at 12:01 AM Standard Time at Your Mailing Address Shown Below

**Named Insured and Address:**
Brian Holloway
DBA Tree Solutions
106 Clark Dr
Mount Juliet, TN 37122

**Agency Name and Address:**                                41670
POWELL & MEADOWS INSURANCE
PO BOX 1
CARTHAGE, TN 37030
615-735-1111

### Forms Schedule

| Number | Edition | Description |
|--------|---------|-------------|
| IL0017Z | 1198 | COMMON POLICY CONDITIONS |
| IL0021 | 0908 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT (BROAD FORM) |
| IL0985 | 1220 | DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT |
| WB660 | 0420 | TWO OR MORE COVERAGE FORMS OR POLICIES ISSUED BY US |
| WB214 | 0524 | MEMBERSHIP AND VOTING NOTICE |
| WB241 | 0524 | WEST BEND INSURANCE COMPANY NAME CHANGE ENDORSEMENT |
| IL0250Z | 0908 | TENNESSEE CHANGES - CANCELLATION AND NONRENEWAL |

DCP 04 04 14                                                                06/12/2024 07:28:03

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy (except Businessowners and Inland Marine) are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

West Bend Mutual Insurance Company
West Bend, Wisconsin 53095
Contains material copyrighted by ISO, with its permission.
Copyright, Insurance Services Office, Inc., 1998

Case 3:25-cv-00593    Document 1-1    Filed 05/09/25    Page 53 of 261    PageID #:58

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

    COMMERCIAL AUTOMOBILE COVERAGE PART
    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    FARM COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    RAILROAD PROTECTIVE LIABILITY COVERAGE PART
    UNDERGROUND STORAGE TANK POLICY

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "special nuclear material" or "by-product material".

© ISO Properties, Inc., 2007

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

© ISO Properties, Inc., 2007

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

**SCHEDULE**

| SCHEDULE – PART I |
|---|
| **Terrorism Premium (Certified Acts)    $** |
| **This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(ies):** |
| If you have previously rejected coverage under this policy for Certified Acts of Terrorism under the Terrorism Risk Insurance Act, Coverage will remain excluded unless you request coverage within 30 days of the policy effective date. |
| **Additional information, if any, concerning the terrorism premium:** |

| SCHEDULE – PART II |
|---|
| **Federal share of terrorism losses        80    %** |
| (Refer to Paragraph **B.** in this endorsement.) |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

© Insurance Services Office, Inc., 2020

Case 3:25-cv-00593    Document 1-1    Filed 05/29/25    Page 56 of 261    PageID #: 61

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals a percentage (as shown in Part **II** of the Schedule of this endorsement or in the policy Declarations) of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C. Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TWO OR MORE COVERAGE FORMS OR POLICIES ISSUED BY US

This endorsement modifies insurance provided under the following:

      BUSINESSOWNERS COVERAGE FORM
      COMMERCIAL GENERAL LIABILITY COVERAGE PART
      EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM
      NOT-FOR-PROFIT ORGANIZATION DIRECTORS, OFFICERS AND TRUSTEES LIABILITY INSURANCE
      COVERAGE FORM
      OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
      PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
      PRODUCT WITHDRAWAL COVERAGE FORM

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "occurrence" or "claim", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy.  This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

WB 660 04 20          West Bend Mutual Insurance Company          **Page 1 of 1**
West Bend, Wisconsin 53095

EXHIBIT A

# MEMBERSHIP AND VOTING NOTICE

**MEMBERSHIP AND VOTING NOTICE**

The named insured is notified that by virtue of this policy, the named insured is a member of West Bend Mutual Holding Company of West Bend, Wisconsin. Members are entitled to one vote either in person or by proxy at all meetings of the members of said Company. No member may cast more than one vote, regardless of the number of policies or the amount of insurance any member may carry.

**ANNUAL MEETING**

The Annual Meeting of the members is held on the second Tuesday of March, at 10:00 a.m. at the Home Office located at 1900 S. 18th Avenue, West Bend, Wisconsin. Phone: 800-236-5010.

**PARTICIPATION WITHOUT CONTINGENT LIABILITY**

The named insured is a member of the Company and shall participate, to the extent and upon the conditions fixed and determined by the Board of Directors in accordance with the provisions of law, in the distribution of dividends so fixed and determined. No Contingent Liability: This policy is nonassessable.


Christopher C. Zwygart

Christopher C. Zwygart
Secretary

Robert J. Jacques

Robert J. Jacques
President

POLICY NUMBER:  B319992

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# WEST BEND INSURANCE COMPANY
# NAME CHANGE ENDORSEMENT

This endorsement is made part of and should be kept with your policy.

West Bend Mutual Insurance Company changed its name to West Bend Insurance Company, therefore, any reference to West Bend Mutual Insurance Company shall be considered a reference to West Bend Insurance Company.

This endorsement does not affect or void any cancellation, non-renewal or reinstatement notice sent for any other reason or effective date.

All other terms of the policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TENNESSEE CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **5.** of the **Cancellation** Common Policy Condition is replaced by the following:

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due.

The refund will be pro rata if:

**a.** We cancel; or

**b.** The policy is cancelled at the request of a premium finance company that has financed this policy under a premium finance agreement.

The refund may be less than pro rata if the first Named Insured cancels the policy.

The cancellation will be effective even if we have not made or offered a refund.

**B.** The following is added to the **Cancellation** Common Policy Condition:

**CANCELLATION OF POLICIES IN EFFECT FOR 60 DAYS OR MORE**

If this policy has been in effect for 60 days or more, or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

**1.** Nonpayment of premium, including any additional premium, calculated in accordance with our current rating manual, justified by a physical change in the insured property or a change in its occupancy or use;

**2.** Your conviction of a crime increasing any hazard insured against;

**3.** Discovery of fraud or material misrepresentation on the part of either of the following:

**a.** You or your representative in obtaining this insurance; or

**b.** You in pursuing a claim under this policy;

**4.** Failure to comply with written loss control recommendations;

**5.** Material change in the risk which increases the risk of loss after we issued or renewed insurance coverage;

**6.** Determination by the insurance commissioner that the continuation of the policy would jeopardize our solvency or would place us in violation of the insurance laws of Tennessee or any other state;

**7.** Your violation or breach of any policy terms or conditions; or

**8.** Other reasons that are approved by the insurance commissioner.

Notice of cancellation will state the reason for cancellation.

West Bend Mutual Insurance Company
West Bend, Wisconsin 53095
Contains material copyrighted by ISO, with its permission.
© Insurance Services Office, Inc., 2007

Case 3:25-cv-00593    Document 1-4    Filed 05/29/25    Page 61 of 261 PageID #: 66

**C.** The following is added and supersedes any provisions to the contrary:

**NONRENEWAL**

**1.** If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured and agent, at least 60 days before the expiration date unless:

    **a.** We have offered to issue a renewal policy; or

    **b.** You have obtained replacement coverage or have agreed in writing to obtain replacement coverage.

**2.** Any notice of nonrenewal will be mailed or delivered to the first Named Insured's and agent's addresses shown in the policy. If notice is mailed, proof of mailing will be sufficient proof of notice.

**D.** The following is added to the **Premiums** Common Policy Condition:

Whenever an insurance policy which is financed with a premium finance company is cancelled, the insurer shall return, within 30 days after the effective date of the cancellation, whatever gross unearned premiums are due under the insurance policy directly to the premium finance company for the account of the first Named Insured.

West Bend Mutual Insurance Company
West Bend, Wisconsin 53095
Contains material copyrighted by ISO, with its permission.
© Insurance Services Office, Inc., 2007

Case 3:25-cv-00593    Document 1-1    Filed 05/29/25    Page 62 of 261    PageID #: 67



West Bend Mutual Insurance Company
1900 S. 18th Ave. | West Bend, WI 53095

Endorsement

## Commercial General Liability Coverage Declarations

**Customer Number:** 1000448661
**Policy Number:** B319992 01

**Policy Period:** 06/03/2024 to 06/03/2025
at 12:01 AM Standard Time at Your Mailing Address Shown Below

**Named Insured and Address:**
Brian Holloway
DBA Tree Solutions
106 Clark Dr
Mount Juliet, TN 37122-4101

**Agency Name and Address:**                    41670
POWELL & MEADOWS INSURANCE
PO BOX 1
CARTHAGE, TN 37030
615-735-1111

Insured is a(n) Individual and LLC

**Limits of Insurance**

| | |
|---|---|
| General Aggregate Limit (other than Products/Completed Operations) | $2,000,000 |
| Products/Completed Operations Aggregate Limit | $2,000,000 |
| Each Occurrence Limit | $1,000,000 |
| Personal and Advertising Injury Liability Limit | $1,000,000 |
| Damage to Premises Rented to You Limit | $100,000 |
| Medical Expense Limit, Any One Person | $5,000 |

See attached Forms Schedule for forms and endorsements applicable to this coverage.

DCGL 01 04 14

EXHIBIT 3
06/12/2024 07:28:03



West Bend Mutual Insurance Company
1900 S. 18th Ave. | West Bend, WI 53095

Endorsement

## Commercial General Liability Classification Schedule

**Customer Number:** 1000448661      **Policy Period:** 06/03/2024 to 06/03/2025
**Policy Number:** B319992 01      at 12:01 AM Standard Time at Your Mailing Address Shown Below

---

**Named Insured and Address:**      **Agency Name and Address:**      41670
Brian Holloway      POWELL & MEADOWS INSURANCE
DBA Tree Solutions      PO BOX 1
106 Clark Dr      CARTHAGE, TN 37030
Mount Juliet, TN 37122-4101      615-735-1111

---

### Commercial General Liability Classifications

| Loc | Class Code | Description | Exposure | Premium Basis | Rate | Premium | Coverage |
|-----|-----------|-------------|----------|---------------|------|---------|----------|
| 1 | 70329 | Tree Trimming Services | 291,200 | Payroll | 26.275 Included | $7,651 Included | Prem/Ops Prod/Co |

DCGL 02 04 14      06/12/2024 07:28:03

**WEST BEND**
A MUTUAL INSURANCE COMPANY®

West Bend Mutual Insurance Company
1900 S. 18th Ave. | West Bend, WI 53095

## Commercial General Liability Endorsements and Miscellaneous Premiums

**Customer Number:** 1000448661
**Policy Number:** B319992 01

**Policy Period:** 06/03/2024 to 06/03/2025
at 12:01 AM Standard Time at Your Mailing Address Shown Below

**Named Insured and Address:**
Brian Holloway
DBA Tree Solutions
106 Clark Dr
Mount Juliet, TN 37122-4101

**Agency Name and Address:**                    41670
POWELL & MEADOWS INSURANCE
PO BOX 1
CARTHAGE, TN 37030
615-735-1111

### Additional Insureds

| Description | Form Number | Premium |
|---|---|---|
| Owners/Lessees/Contractors | CG2010Y | $100 |

### Endorsements

| Description | Form Number | Premium |
|---|---|---|

### Miscellaneous Premiums

| Description | Form Number | Premium |
|---|---|---|
| Terrorism Risk Insurance Act | | $31 |

| | | |
|---|---|---|
| Total General Liability Premium: | | $7,782 |

DCGL 03 04 14                                                                06/12/2024 07:28:03



West Bend Mutual Insurance Company
1900 S. 18th Ave. | West Bend, WI 53095

Endorsement

## Commercial General Liability Forms Schedule

**Customer Number:** 1000448661
**Policy Number:** B319992 01

**Policy Period:** 06/03/2024 to 06/03/2025
at 12:01 AM Standard Time at Your Mailing Address Shown Below

**Named Insured and Address:**
Brian Holloway
DBA Tree Solutions
106 Clark Dr
Mount Juliet, TN 37122-4101

**Agency Name and Address:**                    41670
POWELL & MEADOWS INSURANCE
PO BOX 1
CARTHAGE, TN 37030
615-735-1111

### Forms Schedule

| Number | Edition | Description |
|--------|---------|-------------|
| CG0001 | 0413 | COMMERCIAL GENERAL LIABILITY COVERAGE FORM |
| CG0300Z | 0196 | DEDUCTIBLE LIABILITY INSURANCE |
| CG2010Y | 0704 | ADDITIONAL INSURED - OWNERS/LESSEES/CONTRACTORS |
| CG2106 | 0514 | EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION |
| CG2109 | 0615 | EXCLUSION UNMANNED AIRCRAFT |
| CG2144 | 0798 | LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT |
| CG2147 | 1207 | EMPLOYMENT-RELATED PRACTICES EXCLUSION |
| CG2170 | 0115 | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM |
| CG4032 | 0523 | EXCLUSION - PERFLUOROALKYL AND POLYFLUOROALKYL SUBSTANCES (PFAS) |
| WB3109GL | 0223 | EXCLUSION - DISCRIMINATION |
| NS0044GL | 0414 | EXCLUSION - DESIGNATED OPERATIONS |
| WB3119GL | 0224 | TOTAL LIQUOR LIABILITY EXCLUSION |
| NS0273 | 0708 | LIMITED FUNGI COVERAGE |
| NS0314 | 0909 | TREE CARE PROFESSIONAL LIABILITY COVERAGE |
| WB1468GL | 0224 | EXCLUSION - ASBESTOS OR ASBESTOS PRODUCTS |



West Bend Mutual Insurance Company
1900 S. 18th Ave. | West Bend, WI 53095

Endorsement

**Commercial General Liability Forms Schedule**

**Customer Number:** 1000448661      **Policy Period:** 06/03/2024 to 06/03/2025
**Policy Number:** B319992 01      at 12:01 AM Standard Time at Your Mailing Address Shown Below

**Named Insured and Address:**
Brian Holloway
DBA Tree Solutions
106 Clark Dr
Mount Juliet, TN 37122-4101

**Agency Name and Address:**      41670
POWELL & MEADOWS INSURANCE
PO BOX 1
CARTHAGE, TN 37030
615-735-1111

**Forms Schedule**

| Number | Edition | Description |
|--------|---------|-------------|
| WB1958GL | 0414 | EXCLUSION - LEAD LIABILITY |
| WB1392GL | 0223 | EXCLUSION - BIOMETRIC IDENTIFIERS OR BIOMETRIC DATA |

DCGL 04 04 14

06/12/2024 07:28:03

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERAGES

## COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

© Insurance Services Office, Inc., 2012

## 2. Exclusions

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1)**, **(2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© Insurance Services Office, Inc., 2012

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

 © Insurance Services Office, Inc., 2012

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

© Insurance Services Office, Inc., 2012

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1), (3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3), (4), (5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

 © Insurance Services Office, Inc., 2012

Case 3:25-cv-00593 Document 1-1 Filed 05/29/25 Page 72 of 261 PageID #: 77

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

Case 6:25-cv-00593 Document 1-1 Filed 05/29/25 Page 73 of 261 PageID #: 78

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Case 3:25-cv-00593   Document 1-1   Filed 05/29/25   Page 74 of 261 PageID #: 79

## COVERAGE C – MEDICAL PAYMENTS

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers' Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A.**

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

**SECTION II – WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

Case 3:25-cv-00593    Document 1-1    Filed 05/29/25    Page 76 of 261 PageID #: 81

2.  Each of the following is also an insured:

a.  Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

(1)  "Bodily injury" or "personal and advertising injury":

(a)  To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

(b)  To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

(c)  For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a)** or **(b)** above; or

(d)  Arising out of his or her providing or failing to provide professional health care services.

(2)  "Property damage" to property:

(a)  Owned, occupied or used by;

(b)  Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b.  Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

c.  Any person or organization having proper temporary custody of your property if you die, but only:

(1)  With respect to liability arising out of the maintenance or use of that property; and

(2)  Until your legal representative has been appointed.

d.  Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3.  Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a.  Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b.  Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c.  Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

1.  The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a.  Insureds;

b.  Claims made or "suits" brought; or

c.  Persons or organizations making claims or bringing "suits".

2.  The General Aggregate Limit is the most we will pay for the sum of:

a.  Medical expenses under Coverage **C;**

b.  Damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

c.  Damages under Coverage **B.**

 © Insurance Services Office, Inc., 2012

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

    **a.** Damages under Coverage **A;** and

    **b.** Medical expenses under Coverage **C**

    because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

**1. Bankruptcy**

    Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

    **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      **(1)** How, when and where the "occurrence" or offense took place;

      **(2)** The names and addresses of any injured persons and witnesses; and

      **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

    **b.** If a claim is made or "suit" is brought against any insured, you must:

      **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

      **(2)** Notify us as soon as practicable.

    You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

    **c.** You and any other involved insured must:

      **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      **(2)** Authorize us to obtain records and other information;

      **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

      **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

    **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

    No person or organization has a right under this Coverage Part:

    **a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

    **b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

    A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

© Insurance Services Office, Inc., 2012
Case 3:25-cv-00593    Document 1-1    Filed 05/29/25    Page 78 of 261 PageID #: 83

## 4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

### a. Primary Insurance

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

### b. Excess Insurance

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

### c. Method Of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

## 5. Premium Audit

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

## 6. Representations

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

© Insurance Services Office, Inc., 2012

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

 © Insurance Services Office, Inc., 2012

9. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

© Insurance Services Office, Inc., 2012

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

  **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

  **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

  **a.** Means:

    **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

      **(a)** You;

      **(b)** Others trading under your name; or

      **(c)** A person or organization whose business or assets you have acquired; and

    **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

  **b.** Includes:

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    **(2)** The providing of or failure to provide warnings or instructions.

  **c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

  **a.** Means:

    **(1)** Work or operations performed by you or on your behalf; and

    **(2)** Materials, parts or equipment furnished in connection with such work or operations.

  **b.** Includes:

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

    **(2)** The providing of or failure to provide warnings or instructions.

© Insurance Services Office, Inc., 2012

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DEDUCTIBLE LIABILITY INSURANCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

| Coverage | PER CLAIM DEDUCTIBLE | MAXIMUM DEDUCTIBLE PER OCCURRENCE |
|---|---|---|
| Bodily Injury Liability | $ | $ |
| OR | | |
| Property Damage Liability | $1,000 | $5,000 |
| OR | | |
| Bodily Injury Liability and/or Property Damage Liability Combined | $ | $ |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**APPLICATION OF ENDORSEMENT** (Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to damages for all "bodily injury" and "property damage", however caused):

**A.** Our obligation under the Bodily Injury Liability and Property Damage Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

**B.** Your selected deductible applies to the coverage option indicated by the placement of the deductible amount in the Schedule above. The deductible amount stated in the Schedule above applies as follows:

**1. PER CLAIM DEDUCTIBLE.** The deductible amount indicated in the Schedule above applies as follows:

**a.** Under Bodily Injury Liability Coverage, to all damages sustained by any one person because of "bodily injury";

**b.** Under Property Damage Liability Coverage, to all damages sustained by any one person because of "property damage"; or

**c.** Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages sustained by any one person because of:

**(1)** "Bodily injury";

**(2)** "Property damage"; or

**(3)** "Bodily injury" and "property damage" combined

as the result of any one "occurrence".

If damages are claimed for care, loss of services or death resulting at any time from "bodily injury", a separate deductible amount will be applied to each person making a claim for such damages.

West Bend Mutual Insurance Company
West Bend, Wisconsin 53095
Contains material copyrighted by ISO, with its permission.
Copyright, Insurance Services Office, Inc., 1994

With respect to "property damage", person includes an organization.

2. **MAXIMUM DEDUCTIBLE PER OCCURRENCE.** The deductible amount indicated in the Schedule above applies as follows:

   a. Under Bodily Injury Liability Coverage, to all damages because of "bodily injury";

   b. Under Property Damage Liability Coverage, to all damages because of "property damage"; or

   c. Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages because of:

      (1) "Bodily injury";

      (2) "Property damage"; or

      (3) "Bodily injury" and "property damage" combined

   as the result of any one "occurrence", regardless of the number of persons or organizations who sustain damages because of that "occurrence".

C. The terms of this insurance, including those with respect to:

   1. Our right and duty to defend the insured against any "suits" seeking those damages; and

   2. Your duties in the event of an "occurrence", claim, or "suit"

   apply irrespective of the application of the deductible amount.

D. We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

West Bend Mutual Insurance Company
West Bend, Wisconsin 53095
Contains material copyrighted by ISO, with its permission.
Copyright, Insurance Services Office, Inc.,

Case 3:25-cv-00593    Document 1-1    Filed 05/09/25    Page 85 of 261 PageID #:96

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Name of Additional Insured Person(s) Or Organization(s):**
Allegiant Partners, Inc ISAOA
123 SW Columbia St
Bend, OR  97702-3608

**Location(s) of Covered Operations:**
Various Locations

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

If the name of the person or organization stated above includes any architect, engineer or surveyor, the following applies:

The insurance with respect to such architects, engineers, or surveyors does not apply to "bodily injury," "property damage," or "personal and advertising injury" arising out of the rendering of or the failure to render any professional services by or for you, including:

**a.** The preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; and

**b.** Supervisory, inspection, or engineering services.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusion applies:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

**1.** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

Contains material copyrighted by ISO, with its permission.

West Bend Mutual Insurance Company
West Bend, Wisconsin 53095

**2.** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III - Limits of Insurance**:

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations; whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

**D.** If a written contract between you and the additional insured specifically requires that this insurance be primary, then the insurance afforded by this endorsement is primary insurance and we will not seek contribution from any other insurance available to the additional insured named in this schedule unless the other insurance is provided by a contractor other than the named insured. Then we will share with that other insurance by the method described below.

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

If no contract between you and the additional insured requires that this insurance be primary, then the coverage granted to the additional insured under this endorsement shall be excess over any other valid and collectible insurance.

Copyright, Insurance Services Office, Inc., 1996
West Bend Mutual Insurance Company
West Bend, Wisconsin 53095

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.p.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

© Insurance Services Office, Inc., 2013

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – UNMANNED AIRCRAFT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.g. Aircraft, Auto Or Watercraft** under **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**g. Aircraft, Auto Or Watercraft**

**(1) Unmanned Aircraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft". Use includes operation and "loading or unloading".

This Paragraph **g.(1)** applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft".

**(2) Aircraft (Other Than Unmanned Aircraft), Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft (other than "unmanned aircraft"), "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This Paragraph **g.(2)** applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft (other than "unmanned aircraft"), "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This Paragraph **g.(2)** does not apply to:

**(a)** A watercraft while ashore on premises you own or rent;

**(b)** A watercraft you do not own that is:

**(i)** Less than 26 feet long; and

**(ii)** Not being used to carry persons or property for a charge;

**(c)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(d)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

© Insurance Services Office, Inc., 2015
Case 1:25-cv-00593    Document 1-1    Filed 05/29/25    Page 89 of 261    PageID #: 94

**(e)** "Bodily injury" or "property damage" arising out of:

**(i)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

**(ii)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Unmanned Aircraft**

"Personal and advertising injury" arising out of the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft". Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the offense which caused the "personal and advertising injury" involved the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft".

This exclusion does not apply to:

**a.** The use of another's advertising idea in your "advertisement"; or

**b.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**C.** The following definition is added to the **Definitions** section:

"Unmanned aircraft" means an aircraft that is not:

**1.** Designed;

**2.** Manufactured; or

**3.** Modified after manufacture;

to be controlled directly by a person from within or on the aircraft.

**COMMERCIAL GENERAL LIABILITY**
**CG 21 44 07 98**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **Premises:** |
| |
| **Project:**<br>Tree Care Operations |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance applies only to "bodily injury", "property damage", "personal  and advertising injury" and medical expenses arising out of:

1. The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or

2. The project shown in the Schedule.

Copyright, Insurance Services Office, Inc., 1997

Case 3:25-cv-00593   Document 1-1   Filed 05/29/25   Page 91 of 261 PageID #: 96

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

© ISO Properties, Inc., 2006

Case 3:25-cv-00593　　　Document 1-1　　Filed 06/29/25　　Page 92 of 261 PageID #: 97

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

© Insurance Services Office, Inc., 2015

Case 3:25-cv-00593    Document 1-1    Filed 05/29/25    Page 93 of 261 PageID #: 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – PERFLUOROALKYL AND POLYFLUOROALKYL SUBSTANCES (PFAS)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Perfluoroalkyl And Polyfluoroalkyl Substances**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged, threatened or suspected inhalation, ingestion, absorption, consumption, discharge, dispersal, seepage, migration, release or escape of, contact with, exposure to, existence of, or presence of, any "perfluoroalkyl or polyfluoroalkyl substances".

**b.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "perfluoroalkyl or polyfluoroalkyl substances", by any insured or by any other person or entity.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Perfluoroalkyl And Polyfluoroalkyl Substances**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged, threatened or suspected inhalation, ingestion, absorption, consumption, discharge, dispersal, seepage, migration, release or escape of, contact with, exposure to, existence of, or presence of, any "perfluoroalkyl or polyfluoroalkyl substances".

**b.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "perfluoroalkyl or polyfluoroalkyl substances", by any insured or by any other person or entity.

© Insurance Services Office, Inc., 2022

**C.** The following definition is added to the **Definitions** Section:

"Perfluoroalkyl or polyfluoroalkyl substances" means any:

**1.** Chemical or substance that contains one or more alkyl carbons on which hydrogen atoms have been partially or completely replaced by fluorine atoms, including but not limited to:

    **a.** Polymer, oligomer, monomer or nonpolymer chemicals and their homologues, isomers, telomers, salts, derivatives, precursor chemicals, degradation products or by-products;

    **b.** Perfluoroalkyl acids (PFAA), such as perfluorooctanoic acid (PFOA) and its salts, or perfluorooctane sulfonic acid (PFOS) and its salts;

    **c.** Perfluoropolyethers (PFPE);

    **d.** Fluorotelomer-based substances; or

    **e.** Side-chain fluorinated polymers; or

**2.** Good or product, including containers, materials, parts or equipment furnished in connection with such goods or products, that consists of or contains any chemical or substance described in Paragraph **C.1.**

© Insurance Services Office, Inc., 2022

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – DISCRIMINATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability**:

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of discrimination of any person based on color, creed, gender, race, natural origin, age, disability, religion, sex, sexual orientation, or gender identity. This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of any basis of discrimination prohibited by law.

Case 3:25-cv-00593     Document 1     Filed 05/29/25     Page 96 of 261     EXHIBIT 4

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – DESIGNATED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART

**SCHEDULE**

| **Description of Designated Operation(s):** |
|---|
| Ownership, use, maintenance, operation, transport, or storage of any crane or lifting machine with a lifting capacity in excess of 40,000 lbs |
| **Specified Location (If Applicable):** |
| |

This insurance does not apply to "bodily injury", "property damage" or medical expenses arising out of the operations described in the Schedule of this endorsement, regardless of whether such operations are conducted by you or on your behalf or whether the operations are conducted for yourself or for others.

Unless a "location" is specified in the Schedule, this exclusion applies regardless of where such operations are conducted by you or on your behalf. If a specific "location" is designated in the Schedule of this endorsement, this exclusion applies only to the described operations conducted at that "location".

For the purpose of this endorsement, "location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

West Bend Mutual Insurance Company
West Bend, Wisconsin 53095

Case 3:25-cv-00593    Document 1    Filed 05/29/25    Page 97 of 261    EXHIBIT 02

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TOTAL LIQUOR LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following replaces Exclusion **c.** under Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability**:

**2. Exclusions**

This insurance does not apply to:

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing including, but not limited to:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "bodily injury" or "property damage", involved that which is described in Paragraph **(1)**, **(2)** or **(3)** above.

West Bend Mutual Insurance Company
West Bend, Wisconsin 53095

Contains material copyrighted by ISO, with its permission

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LIMITED FUNGI COVERAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Fungi Liability | |
|---|---|
| **Each Occurrence Limit** | $50,000 |
| **Aggregate Limit** | $100,000 |

**Coverage under this endorsement is subject to the Fungi Each Occurrence and Aggregate Limits shown in the schedule.  Our obligation to pay any claim or judgment, or to defend any suit, ends after these limits have been exhausted by payment of judgments or settlements, or after we have offered for settlement our limit of liability.**

**A.** The following exclusion is added to Paragraph **2.**, Exclusions of **Section I – Coverage B – Personal And Advertising Injury Liability:**

   **2. Exclusions**

   This insurance does not apply to:

   **a.** "Personal and advertising injury" arising out of a "fungi incident".

   **b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" by any insured or by any other person or entity.

**B.** Coverage provided by this insurance for "bodily injury" or "property damage", arising out of a "fungi incident", is subject to the Fungi Liability Each Occurrence and Aggregate Limit as described in Paragraph **C.** of this endorsement. This provision **B.** does not apply to any "fungi" that are, are on, or are contained in, a good or product intended for bodily consumption.

**C.** The following are added to **Section III – Limits of Insurance:**

   **1.** Subject to Paragraphs **2.** and **3.** of Section **III** – Limits of Insurance, as applicable, the Fungi Liability Aggregate Limit shown in the Schedule of this endorsement is the most we will pay under Coverage **A** for all "bodily injury" or "property damage" and Coverage **C.** for Medical Payments arising out of one or more "fungi incidents". This provision **C.1.** does not apply to any "fungi" that are, are on, or are contained in, a good or product intended for bodily consumption.

   **2.** Paragraph **5.,** the Each Occurrence Limit, Paragraph **6.,** the Damage To Premises Rented To You Limit, and Paragraph **7.,** the Medical Expense Limit, Of Section **III** - Limits Of Insurance continue to apply to "bodily injury" or "property damage" arising out of a "fungi incident" but only if, and to the extent that, limits are available under the Fungi Liability Aggregate Limit.

Case 3:25-cv-00593     Document 1-1     Filed 05/29/25     Page 99 of 261     EXHIBIT 04

**D.** The following definitions are added to the **Definitions** Section:

**1.** "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

**2.** "Fungi incident" means an incident which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

Case 3:25-cv-00593    Document 1-1    Filed 05/29/25    Page 100 of 261    EXHIBIT A

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TREE CARE PROFESSIONAL LIABILITY COVERAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added:

**SECTION I – COVERAGES**

**COVERAGE D. TREE CARE PROFESSIONAL LIABILITY**

**1. Insuring Agreement**

  **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" arising out of any act, error, or omission of the insured arising out of the insured's professional tree care operations.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for damages related to professional acts, errors or omissions to which this insurance does not apply.  We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result.  But:

    **(1)** The amount we will pay for damages is limited as described in **Section III – Limits Of Insurance; and**

    **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgements or settlements under **Coverages A** or **B** or **D** or medical expenses under **Coverage C.**

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **Supplementary Payments – Coverages A and B.**

  **b.** This insurance applies only if the act, error, or omission, arising out of the insured's professional tree care operations takes place during the policy period.

**2. Exclusions**

This insurance does not apply to:

  **a.** Any damages for which coverage is provided under **Coverages A, B** or **C;**

  **b.** Any expected or intended, injury or damages;

  **c.** Any injury or damages arising out of willfull violation of a penal statute or ordinance, comitted by or with the knowledge or consent of any insured;

  **d.** Any claim seeking relief or redress in any form other than monetary damages;

  **e.** Any claim arising out of any insured's activities, or as a fiduciary, under the Employee Retirement Income Security Act of 1974, any amendments or regulation or order issued thereto;

  **f.** Any claim arising from warranties or guarantees made by any insured;

  **g.** Liability assumed by the insured under any contract of agreement;

  **h.** Any claim arising from injury to, injury or damage to property owned by or rented or loaned to, or damages suffered by any "employee" of the insured, any prospective "employee" or previous "employee" of any insured whether arising out of and in the course of employment by any insured or otherwise;

  **i.** Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or similar law;

  **j.** Injury caused by any person while under the influence of intoxicants or narcotics;

  **k.** Liability arising from any fraudulent, dishonest or criminal act of any insured;

  **l.** Liability arising out of the ownership, maintanence, use or entrustment to others of any aircraft, watercraft, "auto", motorcycle, or mobile equipment owned or operated by or rented or loaned to any insured.  Use includes operation and "loading" and "unloading";

  **m.** Liability arising out of "property damage" to property of others entrusted to you for safe-Keeping.

  **n.** Liability arising from a claim made by a parent or subsidiary organization of the insured or another subsidiary organization of such parent or other subsidiary nor any officer, director or employee of any of the above;

  **o.** Liability as a result of actual or alleged; harassment, misconduct or acts of discrimination because of race, creed, color, national origin, religion, age, sex, sexual preference, or handicap including but not limited to, a violation of any statute, law, ordinance, or regulation prohibiting such acts; or

Case 3:25-cv-00593    Document 1-1    Filed 05/23/25    Page 101 of 261

**p.** Demands of injunctive relief or for punitive or
exemplary damage.

Case 3:25-cv-00593    Document 1-1    Filed 05/29/25    Page 102 of 261    PageID #107

EXHIBIT A

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – ASBESTOS OR ASBESTOS PRODUCTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability** in the Commercial General Liability Coverage Form:

**2. Exclusions**

This insurance does not apply to:

**Asbestos**

**a.** "Bodily injury", "property damage", or "personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened, or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of asbestos in any form including, but not limited to, asbestos dust, asbestos fibers, or products containing asbestos.

**b.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of asbestos in any form including, but not limited to, asbestos dust, asbestos fibers, or products containing asbestos, by any insured or by any other person or entity.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** in the Railroad Protective Liability Coverage Form, and Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** in the Owners and Contractors Protective Liability Coverage Form – Coverage for Operations of Designated Contractors and in the Products/Completed Operations Liability Coverage Form:

**2. Exclusions**

This insurance does not apply to:

**Asbestos**

**a.** "Bodily injury" or "property damage" arising, in whole or in part, out of the actual, alleged, threatened, or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of asbestos in any form including, but not limited to, asbestos dust, asbestos fibers, or products containing asbestos.

**b.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of asbestos in any form including, but not limited to, asbestos dust, asbestos fibers, or products containing asbestos, by any insured or by any other person or entity.

Case 3:25-cv-00593    Document 1-4    Filed 05/30/25    Page 103 of 261    EXHIBIT 1.08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – LEAD LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to:

**1.** actual or alleged "bodily injury" arising out of the ingestion, inhalation, or absorption of lead in any form;

**2.** actual or alleged "property damage" (or "personal and advertising injury", if provided by this coverage part) arising out of any form of lead;

**3.** any loss, cost, or expense arising out of any request, demand, or order that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to or assess the effects of lead; or

**4.** any loss, cost, or expense arising out of any claim or suit by or on behalf of any governmental authority for damages resulting from testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing, or in any way responding to or assessing the effects of lead.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – BIOMETRIC IDENTIFIERS
# OR BIOMETRIC DATA

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury and Property Damage Liability** and Paragraph **2. Exclusions** of **Section I – Coverage B – Personal and Advertising Injury Liability**:

This insurance does not apply to "bodily injury," "property damage", "personal and advertising injury" damages, injury, or any other loss of any kind, cost, or expense arising out of one or more of actual or alleged access to, retention or possession of, disclosure of, and/or failure to obtain consent to, failure to destroy, and/or failure to create or develop any policy (written or otherwise) related to the: capture, scanning, retrieval, collection, protection, obtainment, storage, conversion, transfer, sale, sharing, or dissemination of any kind of an individual's "biometric identifiers" or "biometric data", regardless of how such "biometric identifiers" or "biometric data" are captured, scanned, retrieved, collected, protected, obtained, stored, converted, transferred, sold, shared, or disseminated by any insured or any third party acting by, on behalf of or at the direction of the insured.

**B.** The following definitions are added to **Section V – Definitions**:

"Biometric identifiers" means DNA, written signature, computer navigation (mouse or touchpad) pattern, keystroke pattern, behavioral pattern, retinal scan, eyeball scan, iris scan, fingerprint, footprint, voiceprint, vascular scan, hand geometry scan, face geometry scan, or any other personally identifiable measurable biological characteristic of a natural person. "Biometric identifiers" includes any similarly-defined term(s) included in any state or federal statute that includes any of the "biometric identifiers," or similar term(s), set out above.

"Biometric data" means any information, regardless of how it is captured, scanned, retrieved, collected, protected, obtained, stored, converted, transferred, sold, shared, or disseminated, based on an individual's "biometric identifier" used to identify an individual. "Biometric data" includes personal data relating to the physical, physiological, or behavioral characteristics of a natural person which allow or confirm the unique identification of that natural person.

Case 3:25-cv-00593     Document 1-1     Filed 05/29/25     Page 105 of 261     EXHIBIT A0



West Bend Mutual Insurance Company
1900 S. 18th Ave. | West Bend, WI 53095

Endorsement

## Business Auto Coverage Declarations

**Customer Number:** 1000448661
**Policy Number:** B319992 01

**Policy Period:** 06/03/2024 to 06/03/2025
at 12:01 AM Standard Time at Your Mailing Address Shown Below

**Named Insured and Address:**
Brian Holloway
DBA Tree Solutions
106 Clark Dr
Mount Juliet, TN 37122

**Agency Name and Address:** 41670
POWELL & MEADOWS INSURANCE
PO BOX 1
CARTHAGE, TN 37030
615-735-1111

**Form of Business:**
Individual and LLC

In return for the payment of the premium, and subject to all the terms of this Policy, we agree with you to provide the insurance as stated in this Policy.

### ITEM TWO: Schedule Of Coverages And Covered Autos

This Policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those "autos" shown as covered "autos". "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the Covered Autos Section of the Business Auto Coverage Form next to the name of the coverage.

| Coverages | Covered Autos | Limit Or Deductible | Premium |
|---|---|---|---|
| Covered Autos Liability | 7, 8, 9, 19 | $1,000,000 Each Accident | $18,688 |
| Auto Medical Payments | 7 | $5,000 Each Insured | $146 |
| Uninsured Motorist | 7 | Separately Stated In Each State Specific Endorsement | $567 |
| Physical Damage Comprehensive Coverage | 7 | See ITEM THREE For Deductible For Each Covered Auto. See ITEM FOUR For Hired OR Borrowed Autos. | $1,868 |
| Physical Damage Collision Coverage | 7 | See ITEM THREE For Deductible For Each Covered Auto. See ITEM FOUR For Hired OR Borrowed Autos. | $4,511 |

Endorsements and Miscellaneous Premiums (See Endorsement and Miscellaneous Schedule): $0

Total Commercial Auto Premium: $25,780

See attached Forms Schedule for forms and endorsements applicable to this coverage.

DBA 01 11 22

06/12/2024 07:28:03



West Bend Mutual Insurance Company
1900 S. 18th Ave. | West Bend, WI 53095

Endorsement

## Business Auto Coverage Schedule

**Customer Number:** 1000448661
**Policy Number:** B319992 01

**Policy Period:** 06/03/2024  to  06/03/2025
at 12:01 AM Standard Time at Your Mailing Address Shown Below

**Named Insured and Address:**
Brian Holloway
DBA Tree Solutions
106 Clark Dr
Mount Juliet, TN 37122

**Agency Name and Address:**                     41670
POWELL & MEADOWS INSURANCE
PO BOX 1
CARTHAGE,  TN  37030
615-735-1111

### ITEM THREE:  Schedule Of Covered Autos You Own

| Veh No. | Description<br>Year, Make, Model,<br>Vehicle Identification Number (VIN) | Original<br>Cost New | Stated<br>Amount | Total Vehicle<br>Premium |
|---|---|---|---|---|
| 2 | 2021 GMC SIERRA 2500HD<br>1GT49MEY2MF235306 | $58,685 | | $3,974 |
| 3 | 2021 RAM 3500<br>3C7WRTCL5MG568806 | $72,895 | | $4,094 |
| 5 | 2011 FORD F350<br>1FT8W3BT2BEA56893 | $43,145 | | $2,508 |
| 7 | 2002 CHEVROLET SILVERADO 2500HD<br>1GBHC24U02Z227534 | $22,757 | | $1,739 |
| 8 | 1994 FORD F47<br>1FDLF47K6REA14961 | $27,858 | | $1,518 |

| Veh No. | Classification | | | | Territory | | Class Code |
|---|---|---|---|---|---|---|---|
| | Radius Of Operation | Use | Size | Seating Capacity | Garaging Location | | |
| 2 | Local | Service | Medium | | Mount Juliet, TN 37122-4101 | | 21489 |
| 3 | Local | Service | Medium | | Mount Juliet, TN 37122-4101 | | 21489 |
| 5 | Local | Service | Medium | | Mount Juliet, TN 37122-4101 | | 21489 |
| 7 | Local | Service | Light | | Mount Juliet, TN 37122-4101 | | 01489 |
| 8 | Local | Service | Medium | | Mount Juliet, TN 37122-4101 | | 21489 |

| Veh No. | Covered Autos Liability | | Personal Injury Protection<br>(See state specific PIP endorsement for limits) | | | |
|---|---|---|---|---|---|---|
| | | | | | Michigan Only | |
| | CSL | Premium | Deductible | Premium | Property Protection | Property Protection Deductible |
| 2 | $1,000,000 | $2,548 | | | | |
| 3 | $1,000,000 | $2,595 | | | | |
| 5 | $1,000,000 | $1,936 | | | | |
| 7 | $1,000,000 | $1,486 | | | | |
| 8 | $1,000,000 | $1,439 | | | | |

DBA 02 11 22                                                                    06/12/2024 07:28:03


West Bend Mutual Insurance Company
1900 S. 18th Ave. | West Bend, WI 53095

Endorsement

## Business Auto Coverage Schedule

**Customer Number:** 1000448661
**Policy Number:** B319992 01

**Policy Period:** 06/03/2024 to 06/03/2025
at 12:01 AM Standard Time at Your Mailing Address Shown Below

**Named Insured and Address:**
Brian Holloway
DBA Tree Solutions
106 Clark Dr
Mount Juliet, TN 37122

**Agency Name and Address:**                     41670
POWELL & MEADOWS INSURANCE
PO BOX 1
CARTHAGE, TN 37030
615-735-1111

| Veh No. | Auto Medical Payments | | Medical Expense And/Or Income Loss Benefits (Virginia Only) Limit stated in the Medical Expense And Income Loss Endorsement | |
|---|---|---|---|---|
| | Limit | Premium | Medical Expense Premium | Income Loss Premium |
| 2 | $5,000 | $16 | | |
| 3 | $5,000 | $16 | | |
| 5 | $5,000 | $16 | | |
| 7 | $5,000 | $16 | | |
| 8 | $5,000 | $16 | | |

| Veh No. | Uninsured Motorist | | | Underinsured Motorist | | Defensive Driver Credit | Dual Control | AntiTheft Discount |
|---|---|---|---|---|---|---|---|---|
| | CSL | PD Limit | Premium | CSL | Premium | | | |
| 2 | $1,000,000 | Included | $63 | Included | Included | | | |
| 3 | $1,000,000 | Included | $63 | Included | Included | | | |
| 5 | $1,000,000 | Included | $63 | Included | Included | | | |
| 7 | $1,000,000 | Included | $63 | Included | Included | | | |
| 8 | $1,000,000 | Included | $63 | Included | Included | | | |

| Veh No. | Comprehensive | | | Specified Causes of Loss | | |
|---|---|---|---|---|---|---|
| | Deductible For Loss Caused By Theft Or Mischief Or Vandalism* | Deductible For All Perils* | Premium | Type | Deductible For All Perils* | Premium |
| 2 | | $1,000 | $387 | | | |
| 3 | | $1,000 | $413 | | | |
| 5 | | $1,000 | $185 | | | |
| 7 | | $1,000 | $73 | | | |
| 8 | | | | | | |

* A maximum deductible may also apply. Refer to Coverage Form for details.

| Veh No. | Collision | | | Towing And Labor | | Audio/Visual/Data Electronic Equipment | | Tapes |
|---|---|---|---|---|---|---|---|---|
| | Type (MI Only) | Deductible | Premium | Limit | Premium | Limit | Premium | Premium |
| 2 | | $1,000 | $960 | | | | | |
| 3 | | $1,000 | $1,007 | | | | | |
| 5 | | $1,000 | $308 | | | | | |
| 7 | | $1,000 | $101 | | | | | |
| 8 | | | | | | | | |

DBA 02 11 22

06/12/2024 07:28:03



West Bend Mutual Insurance Company
1900 S. 18th Ave. | West Bend, WI 53095

Endorsement

## Business Auto Coverage Schedule

**Customer Number:** 1000448661
**Policy Number:** B319992 01

**Policy Period:** 06/03/2024 to 06/03/2025
at 12:01 AM Standard Time at Your Mailing Address Shown Below

**Named Insured and Address:**
Brian Holloway
DBA Tree Solutions
106 Clark Dr
Mount Juliet, TN 37122

**Agency Name and Address:**     41670
POWELL & MEADOWS INSURANCE
PO BOX 1
CARTHAGE, TN 37030
615-735-1111

| Veh No. | Description<br>Year, Make, Model,<br>Vehicle Identification Number (VIN) | Original Cost New | Stated Amount | Total Vehicle Premium |
|---|---|---|---|---|
| 9 | 2006 FORD F350<br>1GTWF33P06EC28417 | $25,850 | | $1,710 |
| 10 | 2023 TLC 16 ft Trailer<br>1T9BU1627PL799810 | $8,000 | | $317 |
| 11 | 2008 INT'L 4300M7<br>3HTMMAAN18N691860 | $57,289 | | $2,662 |
| 12 | 2002 FORD F750SD<br>3FDXX75R12MA14950 | $55,056 | | $2,310 |
| 13 | 2022 FORD F750<br>1FDNF7DC1NDF09009 | $85,732 | | $4,673 |

| Veh No. | Classification | | | | Territory | Class Code |
|---|---|---|---|---|---|---|
| | Radius Of Operation | Use | Size | Seating Capacity | Garaging Location | |
| 9 | Local | Service | Light | | Mount Juliet, TN 37122-4101 | 01489 |
| 10 | Local | | | | Mount Juliet, TN 37122-4101 | 68489 |
| 11 | Local | Service | Heavy | | Mount Juliet, TN 37122-4101 | 31489 |
| 12 | Local | Service | Heavy | | Mount Juliet, TN 37122-4101 | 31489 |
| 13 | Local | Service | Heavy | | Mount Juliet, TN 37122-4101 | 31489 |

| Veh No. | Covered Autos Liability | | Personal Injury Protection<br>(See state specific PIP endorsement for limits) | | Michigan Only | |
|---|---|---|---|---|---|---|
| | CSL | Premium | Deductible | Premium | Property Protection | Property Protection Deductible |
| 9 | $1,000,000 | $1,631 | | | | |
| 10 | $1,000,000 | $186 | | | | |
| 11 | $1,000,000 | $2,005 | | | | |
| 12 | $1,000,000 | $1,817 | | | | |
| 13 | $1,000,000 | $2,770 | | | | |

DBA 02 11 22
06/12/2024 07:28:03



West Bend Mutual Insurance Company
1900 S. 18th Ave. | West Bend, WI 53095

## Business Auto Coverage Schedule

**Customer Number:** 1000448661
**Policy Number:** B319992 01

**Policy Period:** 06/03/2024 to 06/03/2025
at 12:01 AM Standard Time at Your Mailing Address Shown Below

**Named Insured and Address:**
Brian Holloway
DBA Tree Solutions
106 Clark Dr
Mount Juliet, TN 37122

**Agency Name and Address:** 41670
POWELL & MEADOWS INSURANCE
PO BOX 1
CARTHAGE, TN 37030
615-735-1111

| Veh No. | Auto Medical Payments | | Medical Expense And/Or Income Loss Benefits (Virginia Only) Limit stated in the Medical Expense And Income Loss Endorsement | |
|---|---|---|---|---|
| | Limit | Premium | Medical Expense Premium | Income Loss Premium |
| 9 | $5,000 | $16 | | |
| 10 | $5,000 | $2 | | |
| 11 | $5,000 | $16 | | |
| 12 | $5,000 | $16 | | |
| 13 | $5,000 | $16 | | |

| Veh No. | Uninsured Motorist | | | Underinsured Motorist | | Defensive Driver Credit | Dual Control | AntiTheft Discount |
|---|---|---|---|---|---|---|---|---|
| | CSL | PD Limit | Premium | CSL | Premium | | | |
| 9 | $1,000,000 | Included | $63 | Included | Included | | | |
| 10 | | | | | | | | |
| 11 | $1,000,000 | Included | $63 | Included | Included | | | |
| 12 | $1,000,000 | Included | $63 | Included | Included | | | |
| 13 | $1,000,000 | Included | $63 | Included | Included | | | |

| Veh No. | Comprehensive | | | Specified Causes of Loss | | |
|---|---|---|---|---|---|---|
| | Deductible For Loss Caused By Theft Or Mischief Or Vandalism* | Deductible For All Perils* | Premium | Type | Deductible For All Perils* | Premium |
| 9 | | | | | | |
| 10 | | $1,000 | $89 | | | |
| 11 | | $1,000 | $166 | | | |
| 12 | | $1,000 | $124 | | | |
| 13 | | $1,000 | $431 | | | |

* A maximum deductible may also apply. Refer to Coverage Form for details.

| Veh No. | Collision | | | Towing And Labor | | Audio/Visual/Data Electronic Equipment | | Tapes |
|---|---|---|---|---|---|---|---|---|
| | Type (MI Only) | Deductible | Premium | Limit | Premium | Limit | Premium | Premium |
| 9 | | | | | | | | |
| 10 | | $1,000 | $40 | | | | | |
| 11 | | $1,000 | $412 | | | | | |
| 12 | | $1,000 | $290 | | | | | |
| 13 | | $1,000 | $1,393 | | | | | |

DBA 02 11 22                                                                                         06/12/2024 07:28:03



West Bend Mutual Insurance Company
1900 S. 18th Ave. | West Bend, WI 53095

Endorsement

## Business Auto Hired or Borrowed Schedule

**Customer Number:** 1000448661
**Policy Number:** B319992 01

**Policy Period:** 06/03/2024 to 06/03/2025
at 12:01 AM Standard Time at Your Mailing Address Shown Below

**Named Insured and Address:**
Brian Holloway
DBA Tree Solutions
106 Clark Dr
Mount Juliet, TN 37122

**Agency Name and Address:**                                    41670
POWELL & MEADOWS INSURANCE
PO BOX 1
CARTHAGE, TN 37030
615-735-1111

### ITEM FOUR: Schedule Of Hired Or Borrowed Covered Auto Coverage And Premiums

"Autos" NOT Used In Your Motor Carrier Operations (Other Than Mobile Or Farm Equipment)

| State | Covered Autos Liability Coverage – Cost Of Hire Rating Basis | | Auto Medical Payments Premium* | Uninsured Motorists Premium | Underinsured Motorists Premium |
| | Estimated Annual Cost Of Hire For Each State | Premium | | | |
|---|---|---|---|---|---|
| TN | If Any | $76 | | | |

Total Hired Auto Premium:        $76

\* If the state is VA, Auto Medical Payments Premium is replaced with Medical Expense Benefits (Virginia only) Premium.

For "autos" NOT used in your motor carrier operations, cost of hire means the total amount you incur for the hire of "autos" you don't own (not including "autos" you borrow or rent from your partners or "employees" or their family members). Cost of hire does not include charges for services performed by motor carriers of property or passengers.

DBA 03 11 22                                                                06/12/2024 07:28:03



West Bend Mutual Insurance Company
1900 S. 18th Ave. | West Bend, WI 53095

Endorsement

## Business Auto Non-Owned Auto Schedule

**Customer Number:** 1000448661
**Policy Number:** B319992 01

**Policy Period:** 06/03/2024 to 06/03/2025
at 12:01 AM Standard Time at Your Mailing Address Shown Below

**Named Insured and Address:**
Brian Holloway
DBA Tree Solutions
106 Clark Dr
Mount Juliet, TN 37122

**Agency Name and Address:**                    41670
POWELL & MEADOWS INSURANCE
PO BOX 1
CARTHAGE, TN 37030
615-735-1111

### ITEM FIVE: Schedule For Non-ownership Covered Autos Liability

| Named Insured's Business | Covered Autos Liability Coverage Rating Basis | Estimated Number | Premium |
|---|---|---|---|
| Other Than Auto Service Operations, Partnerships Or LLCs | Number Of Employees | 6 | $199 |
| | Number Of Volunteers | | |

Total Non-ownership Covered Autos Premium: $199

DBA 04 11 22

EXHIBIT 17
06/12/2024 07:28:03



West Bend Mutual Insurance Company
1900 S. 18th Ave. | West Bend, WI 53095

Endorsement

## Business Auto Endorsements and Miscellaneous Premiums

---

**Customer Number:** 1000448661
**Policy Number:** B319992 01

**Policy Period:** 06/03/2024 to 06/03/2025
at 12:01 AM Standard Time at Your Mailing Address Shown Below

---

**Named Insured and Address:**
Brian Holloway
DBA Tree Solutions
106 Clark Dr
Mount Juliet, TN 37122

**Agency Name and Address:** 41670
POWELL & MEADOWS INSURANCE
PO BOX 1
CARTHAGE, TN 37030
615-735-1111

---

### Endorsements

| Description | Form Number | Premium |
|---|---|---|
| | Total Endorsement and Miscellaneous Premium: | $0 |

DBA 05 04 14

06/12/2024 07:28:03



West Bend Mutual Insurance Company
1900 S. 18th Ave. | West Bend, WI 53095

Endorsement

## Business Auto Additional Interest Schedule

**Customer Number:** 1000448661
**Policy Number:** B319992 01

**Policy Period:** 06/03/2024 to 06/03/2025
at 12:01 AM Standard Time at Your Mailing Address Shown Below

**Named Insured and Address:**
Brian Holloway
DBA Tree Solutions
106 Clark Dr
Mount Juliet, TN 37122

**Agency Name and Address:**                          41670
POWELL & MEADOWS INSURANCE
PO BOX 1
CARTHAGE,  TN  37030
615-735-1111

### Additional Interest Schedule

Except for towing and labor, all Physical Damage loss is payable to you and the loss payee named below as interests may appear at the time of loss.

| Vehicle | Name and Address | Form Number | Interest |
|---------|------------------|-------------|----------|
| 5 | Southeast Financial Credit Union<br>PO Box 331788<br>Nashville, TN 37203 | CA9987 | Loss Payee/Loss Payable |
| 13 | Oakmont Capital Holdings, LLC<br>600 Willowbrook Ln<br>Ste 601<br>West Chester, PA 19382-5565 | CA9987 | Loss Payee/Loss Payable |

DBA 06 11 22                                                                                           06/12/2024 07:28:03



West Bend Mutual Insurance Company
1900 S. 18th Ave. | West Bend, WI 53095

Endorsement

## Business Auto Forms Schedule

**Customer Number:** 1000448661
**Policy Number:** B319992 01

**Policy Period:** 06/03/2024 to 06/03/2025
at 12:01 AM Standard Time at Your Mailing Address Shown Below

---

**Named Insured and Address:**
Brian Holloway
DBA Tree Solutions
106 Clark Dr
Mount Juliet, TN 37122

**Agency Name and Address:**                        41670
POWELL & MEADOWS INSURANCE
PO BOX 1
CARTHAGE, TN 37030
615-735-1111

---

### Forms Schedule

| Number | Edition | Description |
|--------|---------|-------------|
| CA2054 | 1120 | EMPLOYEE HIRED AUTOS |
| CA2345 | 1120 | PUBLIC OR LIVERY PASSENGER CONVEYANCE AND ON-DEMAND DELIVERY SERVICES EXCLUSION |
| CA0301Z | 1013 | DEDUCTIBLE LIABILITY COVERAGE |
| CA2301 | 1013 | EXPLOSIVES |
| CA9903 | 1013 | AUTO MEDICAL PAYMENTS COVERAGE |
| CA9917 | 1013 | INDIVIDUAL NAMED INSURED |
| CA0001 | 1120 | BUSINESS AUTO COVERAGE FORM |
| WB1409 | 1122 | EXCLUSION - NAMED DRIVER |
| CA0146 | 1013 | TENNESSEE CHANGES |
| CA2120 | 0222 | TENNESSEE UNINSURED MOTORISTS COVERAGE |
| CA9987 | 1013 | TENNESSEE LOSS PAYABLE CLAUSE |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYEE HIRED AUTOS

This endorsement modifies insurance provided under the following:

    AUTO DEALERS COVERAGE FORM
    BUSINESS AUTO COVERAGE FORM
    MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes In Covered Autos Liability Coverage**

The following is added to the **Who Is An Insured** provision:

An "employee" of yours is an "insured" while operating an "auto" hired or rented under a contract or agreement in an "employee's" name, with your permission, while performing duties related to the conduct of your business.

**B. Changes In General Conditions**

Paragraph **5.b.** of the **Other Insurance** Condition in the Business Auto and Auto Dealers Coverage Forms and Paragraph **5.f.** of the **Other Insurance – Primary And Excess Insurance Provisions** Condition in the Motor Carrier Coverage Form are amended by the addition of the following:

For Hired Auto Physical Damage Coverage, any covered "auto" hired or rented by your "employee" under a contract in an "employee's" name, with your permission, while performing duties related to the conduct of your business is deemed to be a covered "auto" you own.

CA 2:25-cv-00593     Document 1-1     Filed 05/29/25     Page 116 of 261 Page ID #:121

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PUBLIC OR LIVERY PASSENGER CONVEYANCE AND ON-DEMAND DELIVERY SERVICES EXCLUSION

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes In Covered Autos Liability Coverage**

The following exclusion is added:

**Public Or Livery Passenger Conveyance And On-demand Delivery Services**

This insurance does not apply to any covered "auto" while being used:

**1.** As a public or livery conveyance for passengers. This includes, but is not limited to, any period of time a covered "auto" is being used by an "insured" who is logged into a "transportation network platform" as a driver, whether or not a passenger is "occupying" the covered "auto"; or

**2.** By an "insured" who is logged into a "transportation network platform" or "delivery network platform" as a driver to provide "delivery services", whether or not the goods, items or products to be delivered are in the covered "auto".

However, this exclusion does not apply to business activities performed by an "insured" that are directly related to the Named Insured(s) listed in the Declarations.

**B. Changes In Physical Damage Coverage**

The following exclusion is added:

We will not pay for "loss" to any covered "autos" while being used:

**1.** As a public or livery conveyance for passengers. This includes, but is not limited to, any period of time a covered "auto" is being used by an "insured" who is logged into a "transportation network platform" as a driver, whether or not a passenger is "occupying" the covered "auto"; or

**2.** By an "insured" who is logged into a "transportation network platform" or "delivery network platform" as a driver to provide "delivery services", whether or not the goods, items or products to be delivered are in the covered "auto".

However, this exclusion does not apply to business activities performed by an "insured" that are directly related to the Named Insured(s) listed in the Declarations.

**C. Changes In Auto Medical Payments**

If Auto Medical Payments Coverage is attached, then the following exclusion is added:

**Public Or Livery Passenger Conveyance And On-demand Delivery Services**

This insurance does not apply to:

"Bodily injury" sustained by an "insured" "occupying" a covered "auto" while it is being used:

**1.** As a public or livery conveyance for passengers. This includes, but is not limited to, any period of time a covered "auto" is being used by an "insured" who is logged into a "transportation network platform" as a driver, whether or not a passenger is "occupying" the covered "auto"; or

**2.** By an "insured" who is logged into a "transportation network platform" or "delivery network platform" as a driver to provide "delivery services", whether or not the goods, items or products to be delivered are in the covered "auto".

However, this exclusion does not apply to business activities performed by an "insured" that are directly related to the Named Insured(s) listed in the Declarations.

© Insurance Services Office, Inc., 2019

**D. Changes In Uninsured And/Or Underinsured Motorists Coverage**

1. If Uninsured and/or Underinsured Motorists Coverage is attached, and:

   a. Contains, in whole or in part, a public or livery exclusion, then the following exclusion in Paragraph **2.** does not apply.

   b. Does not contain a public or livery exclusion, then the following exclusion in Paragraph **2.** is added.

2. **Public Or Livery Passenger Conveyance And On-demand Delivery Services**

   This insurance does not apply to any covered "auto" while being used:

   a. As a public or livery conveyance for passengers. This includes, but is not limited to, any period of time a covered "auto" is being used by an "insured" who is logged into a "transportation network platform" as a driver, whether or not a passenger is "occupying" the covered "auto"; or

   b. By an "insured" who is logged into a "transportation network platform" or "delivery network platform" as a driver to provide "delivery services", whether or not the goods, items or products to be delivered are in the covered "auto".

   However, this exclusion does not apply to business activities performed by an "insured" that are directly related to the Named Insured(s) listed in the Declarations.

**E. Changes In Personal Injury Protection Coverage**

1. If Personal Injury Protection, no-fault or other similar coverage is attached, and:

   a. Contains, in whole or in part, a public or livery exclusion, then the following exclusion in Paragraph **2.** does not apply.

   b. Does not contain a public or livery exclusion, then the following exclusion in Paragraph **2.** is added.

2. **Public Or Livery Passenger Conveyance And On-demand Delivery Services**

   This insurance does not apply to any covered "auto" while being used:

   a. As a public or livery conveyance for passengers. This includes, but is not limited to, any period of time a covered "auto" is being used by an "insured" who is logged into a "transportation network platform" as a driver, whether or not a passenger is "occupying" the covered "auto"; or

   b. By an "insured" who is logged into a "transportation network platform" or "delivery network platform" as a driver to provide "delivery services", whether or not the goods, items or products to be delivered are in the covered "auto".

   However, this exclusion does not apply to business activities performed by an "insured" that are directly related to the Named Insured(s) listed in the Declarations.

**F. Additional Definitions**

As used in this endorsement:

1. "Delivery network platform" means an online-enabled application or digital network, used to connect customers:

   a. With drivers; or

   b. With local vendors using drivers;

   for the purpose of providing prearranged "delivery services" for compensation. A "delivery network platform" does not include a "transportation network platform".

2. "Delivery services" includes courier services.

3. "Occupying" means in, upon, getting in, on, out or off.

4. "Transportation network platform" means an online-enabled application or digital network used to connect passengers with drivers using vehicles for the purpose of providing prearranged transportation services for compensation.

Case 3:25-cv-00593     Document 1-1     Filed 05/22/25     Page 118 of 261 PageID #: 118

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DEDUCTIBLE LIABILITY COVERAGE

This endorsement modifies insurance provided under the following:

    AUTO DEALERS COVERAGE FORM
    BUSINESS AUTO COVERAGE FORM
    MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| |
|---|
| **Named Insured:**  Brian Holloway |
| **Endorsement Effective Date:**  06-03-2024 |

### SCHEDULE

Covered Autos Liability Coverage and Paragraph **A.** Bodily Injury And Property Damage Liability of Section **II** – General Liability Coverages in the Auto Dealers Coverage Form are subject to one of the following two deductibles shown below:

| | | |
|---|---|---|
| **Liability Deductible:** | **$** | **Per "Accident"** |
| | **OR** | |
| **"Property Damage" Only Liability Deductible:** | $ 1,000 | **Per "Accident"** |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | |

**APPLICATION OF ENDORSEMENT** (Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to damages for all "bodily injury" and "property damage", however caused):

Applies to All Operations

West Bend Mutual Insurance Company
West Bend, Wisconsin 53095
Contains material copyrighted by ISO, with its permission.
© Insurance Services Office, Inc., 2014

**A. Liability Deductible**

If a Liability Deductible, and not a "Property Damage" Only Liability Deductible, is shown in the Schedule, the damages resulting from any one "accident" that are otherwise payable will be reduced by the Liability Deductible shown in the Schedule prior to the application of the Limit of Insurance provision.

**B. Property Damage Only Liability Coverage Deductible**

If a "Property Damage" Only Liability Deductible, and not a Liability Deductible, is shown in the Schedule, the damages resulting from any one "accident" that are otherwise payable for "property damage" will be reduced by the "Property Damage" Only Liability Deductible shown in the Schedule prior to the application of the Limit of Insurance provision.

**C. Our Right To Reimbursement**

To settle any claim or "suit", we may pay all or any part of any deductible shown in the Schedule. If this happens, you must reimburse us for the deductible or the part of the deductible we paid.

West Bend Mutual Insurance Company
West Bend, Wisconsin 53095
Contains material copyrighted by ISO, with its permission.
© Insurance Services Office, Inc., 2012

Case 3:25-cv-00593     Document 1-1     Filed 05/29/25     Page 120 of 261 PageID #: 125

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXPLOSIVES

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**Covered Autos Liability Coverage** is changed by adding the following exclusion:

This insurance does not apply to:

"Bodily injury" or "property damage" caused by the explosion of explosives you make, sell or transport.

© Insurance Services Office, Inc., 2012

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AUTO MEDICAL PAYMENTS COVERAGE

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

## A. Coverage

We will pay reasonable expenses incurred for necessary medical and funeral services to or for an "insured" who sustains "bodily injury" caused by "accident". We will pay only those expenses incurred, for services rendered within three years from the date of the "accident".

## B. Who Is An Insured

1. You while "occupying" or, while a pedestrian, when struck by any "auto".

2. If you are an individual, any "family member" while "occupying" or, while a pedestrian, when struck by any "auto".

3. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.

## C. Exclusions

This insurance does not apply to any of the following:

1. "Bodily injury" sustained by an "insured" while "occupying" a vehicle located for use as a premises.

2. "Bodily injury" sustained by you or any "family member" while "occupying" or struck by any vehicle (other than a covered "auto") owned by you or furnished or available for your regular use.

3. "Bodily injury" sustained by any "family member" while "occupying" or struck by any vehicle (other than a covered "auto") owned by or furnished or available for the regular use of any "family member".

4. "Bodily injury" to your "employee" arising out of and in the course of employment by you. However, we will cover "bodily injury" to your domestic "employees" if not entitled to workers' compensation benefits. For the purposes of this endorsement, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

5. "Bodily injury" to an "insured" while working in a business of selling, servicing, repairing or parking "autos" unless that business is yours.

6. "Bodily injury" arising directly or indirectly out of:

   a. War, including undeclared or civil war;

   b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

© Insurance Services Office, Inc., 2013
CASE 3:25-cv-00593    Document 1-1    Filed 05/29/25    Page 122 of 261    PageID #: 127

7. "Bodily injury" to anyone using a vehicle without a reasonable belief that the person is entitled to do so.

8. "Bodily Injury" sustained by an "insured" while "occupying" any covered "auto" while used in any professional racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply to any "bodily injury" sustained by an "insured" while the "auto" is being prepared for such a contest or activity.

## D. Limit Of Insurance

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for "bodily injury" for each "insured" injured in any one "accident" is the Limit Of Insurance for Auto Medical Payments Coverage shown in the Declarations.

No one will be entitled to receive duplicate payments for the same elements of "loss" under this coverage and any Liability Coverage Form, Uninsured Motorists Coverage Endorsement or Underinsured Motorists Coverage Endorsement attached to this Coverage Part.

## E. Changes In Conditions

The **Conditions** are changed for **Auto Medical Payments Coverage** as follows:

1. The **Transfer Of Rights Of Recovery Against Others To Us** Condition does not apply.

2. The reference in **Other Insurance** in the Auto Dealers and Business Auto Coverage Forms and **Other Insurance – Primary And Excess Insurance Provisions** in the Motor Carrier Coverage Form to "other collectible insurance" applies only to other collectible auto medical payments insurance.

## F. Additional Definitions

As used in this endorsement:

1. "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household, including a ward or foster child.

2. "Occupying" means in, upon, getting in, on, out or off.

© Insurance Services Office, Inc., 2013

Case 3:25-cv-00593     Document 1-1     Filed 05/29/25     Page 123 of 261 PageID #: 126

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# INDIVIDUAL NAMED INSURED

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

If you are an individual, the policy is changed as follows:

**A. Changes In Covered Autos Liability Coverage**

1. The Fellow Employee Exclusion does not apply to "bodily injury" to your or any "family member's" fellow "employees".

2. **Personal Auto Coverage**

   If any "auto" you own of the "private passenger type" is a covered "auto" under **Covered Autos Liability Coverage:**

   a. The following is added to the **Who Is An Insured** provision**:**

      "Family members" are "insureds" for any covered "auto" you own of the "private passenger type" and any other "auto" described in Paragraph **2.b.** of this endorsement.

   b. Any "auto" you don't own is a covered "auto" while being used by you or by any "family member" except:

      (1) Any "auto" owned by any "family members".

      (2) Any "auto" furnished or available for your or any "family member's" regular use.

      (3) Any "auto" used by you or by any of your "family members" while working in a business of selling, servicing, repairing or parking "autos".

      (4) Any "auto", other than an "auto" of the "private passenger type", used by you or any of your "family members" while working in any other business or occupation.

   c. The Pollution Exclusion and, if forming a part of the policy, the Nuclear Energy Liability Exclusion (Broad Form), do not apply to any covered "auto" of the "private passenger type".

   d. The following exclusion is added and applies only to "private passenger type" covered "autos":

      This insurance does not apply to:

      "Bodily injury" or "property damage" for which an "insured" under the policy is also an "insured" under a nuclear energy liability policy or would be an "insured" but for its termination upon its exhaustion of its limit of liability. A nuclear energy liability policy is a policy issued by the Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or any of their successors. This exclusion does not apply to "autos" registered or principally garaged in New York.

**B. Changes In Physical Damage Coverage**

**Personal Auto Coverage**

If any "auto" you own of the "private passenger type" is a covered "auto" under Physical Damage Coverage, a "non-owned auto" will also be considered a covered "auto". However, the most we will pay for "loss" to a "non-owned auto" which is a "trailer" is $500.

**C. Additional Definitions**

As used in this endorsement:

1. "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household, including a ward or foster child.

© Insurance Services Office, Inc., 2013

**2.** The words "you" and "your" include your spouse if a resident of the same household except for notice of cancellation.

**3.** When the phrase "private passenger type" appears in quotation marks it includes any covered "auto" you own of the pickup or van type not used for business purposes, other than farming or ranching.

**4.** "Non-owned auto" means any "private passenger type" "auto", pickup, van or "trailer" not owned by or furnished or available for the regular use of you or any "family member", while it is in the custody of or being operated by you or any "family member".

© Insurance Services Office, Inc., 2013

# BUSINESS AUTO COVERAGE FORM

Various provisions in this Policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this Policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V –** Definitions.

## SECTION I – COVERED AUTOS

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

**A. Description Of Covered Auto Designation Symbols**

| Symbol | Description Of Covered Auto Designation Symbols | |
|---|---|---|
| **1** | Any "Auto" | |
| **2** | Owned "Autos" Only | Only those "autos" you own (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the Policy begins. |
| **3** | Owned Private Passenger "Autos" Only | Only the private passenger "autos" you own. This includes those private passenger "autos" you acquire ownership of after the Policy begins. |
| **4** | Owned "Autos" Other Than Private Passenger "Autos" Only | Only those "autos" you own that are not of the private passenger type (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" not of the private passenger type you acquire ownership of after the Policy begins. |
| **5** | Owned "Autos" Subject To No-fault | Only those "autos" you own that are required to have no-fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the Policy begins provided they are required to have no-fault benefits in the state where they are licensed or principally garaged. |
| **6** | Owned "Autos" Subject To A Compulsory Uninsured Motorists Law | Only those "autos" you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the Policy begins provided they are subject to the same state uninsured motorists requirement. |
| **7** | Specifically Described "Autos" | Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three). |
| **8** | Hired "Autos" Only | Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent or borrow from any of your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households. |
| **9** | Non-owned "Autos" Only | Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households but only while used in your business or your personal affairs. |

 © Insurance Services Office, Inc., 2019

Case 3:25-cv-00593    Document 1-1    Filed 05/22/25    Page 126 of 261 PageID #: 131

| 19 | Mobile Equipment Subject To Compulsory Or Financial Responsibility Or Other Motor Vehicle Insurance Law Only | Only those "autos" that are land vehicles and that would qualify under the definition of "mobile equipment" under this Policy if they were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where they are licensed or principally garaged. |
|----|---|---|

## B. Owned Autos

1. If Symbols **1**, **2**, **3**, **4**, **5**, **6** or **19** are entered next to a coverage in Item Two of the Declarations, then you have coverage for "autos" that you acquire after the policy period begins of the type described for the remainder of the policy period.

2. But, if Symbol **7** is entered next to a coverage in Item Two of the Declarations, an "auto" you acquire after the policy period begins will be a covered "auto" for that coverage only if:

   **a.** We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and

   **b.** You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

3. An "auto" that is leased or rented to you without a driver, under a written agreement for a continuous period of at least six months that requires you to provide primary insurance covering such "auto", will be considered a covered "auto" you own.

## C. Certain Trailers, Mobile Equipment And Temporary Substitute Autos

If Covered Autos Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Covered Autos Liability Coverage:

1. "Trailers" with a registered Gross Vehicle Weight Rating of 3,000 pounds or less designed primarily for travel on public roads.

2. "Mobile equipment" while being carried or towed by a covered "auto".

3. Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

   **a.** Breakdown;

   **b.** Repair;

   **c.** Servicing;

   **d.** "Loss"; or

   **e.** Destruction.

## SECTION II – COVERED AUTOS LIABILITY COVERAGE

### A. Coverage

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Covered Autos Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

1. **Who Is An Insured**

   The following are "insureds":

   **a.** You for any covered "auto".

   **b.** Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

      **(1)** The owner or anyone else from whom you hire or borrow a covered "auto".

Case 3:25-cv-00593    Document 1-1    Filed 05/22/25    Page 127 of 261 PageID #: 132

This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

**(2)** Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

**(3)** Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

**(4)** Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company) or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

**(5)** A partner (if you are a partnership) or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

**c.** Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

**2. Coverage Extensions**

**a. Supplementary Payments**

We will pay for the "insured":

**(1)** All expenses we incur.

**(2)** Up to $2,000 for cost of bail bonds (including bonds for related traffic law violations) required because of an "accident" we cover. We do not have to furnish these bonds.

**(3)** The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.

**(4)** All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $250 a day because of time off from work.

**(5)** All court costs taxed against the "insured" in any "suit" against the "insured" we defend. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the "insured".

**(6)** All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend, but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance.

**b. Out-of-state Coverage Extensions**

While a covered "auto" is away from the state where it is licensed, we will:

**(1)** Increase the Limit of Insurance for Covered Autos Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

**(2)** Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of loss because of these extensions.

**B. Exclusions**

This insurance does not apply to any of the following:

**1. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

**2. Contractual**

Liability assumed under any contract or agreement.

But this exclusion does not apply to liability for damages:

**a.** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

Case 3:25-cv-00593    Document 1-1    Filed 05/22/25    Page 128 of 261    PageID 133

**b.** That the "insured" would have in the absence of the contract or agreement.

**3. Workers' Compensation**

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

**4. Employee Indemnification And Employer's Liability**

"Bodily injury" to:

**a.** An "employee" of the "insured" arising out of and in the course of:

    **(1)** Employment by the "insured"; or

    **(2)** Performing the duties related to the conduct of the "insured's" business; or

**b.** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **a.** above.

This exclusion applies:

    **(1)** Whether the "insured" may be liable as an employer or in any other capacity; and

    **(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract". For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

**5. Fellow Employee**

"Bodily injury" to:

**a.** Any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business; or

**b.** The spouse, child, parent, brother or sister of that fellow "employee" as a consequence of Paragraph **a.** above.

**6. Care, Custody Or Control**

"Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

**7. Handling Of Property**

"Bodily injury" or "property damage" resulting from the handling of property:

**a.** Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or

**b.** After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

**8. Movement Of Property By Mechanical Device**

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

**9. Operations**

"Bodily injury" or "property damage" arising out of the operation of:

**a.** Any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment"; or

**b.** Machinery or equipment that is on, attached to or part of a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

**10. Completed Operations**

"Bodily injury" or "property damage" arising out of your work after that work has been completed or abandoned.

In this exclusion, your work means:

**a.** Work or operations performed by you or on your behalf; and

**b.** Materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in Paragraph **a.** or **b.** above.

Your work will be deemed completed at the earliest of the following times:

    **(1)** When all of the work called for in your contract has been completed;

    **(2)** When all of the work to be done at the site has been completed if your contract calls for work at more than one site; or

Case 3:25-cv-00593     Document 1-1     Filed 05/23/25     Page 129 of 261 PageID #: 134

**(3)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**11. Pollution**

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**a.** That are, or that are contained in any property that is:

**(1)** Being transported or towed by, handled or handled for movement into, onto or from the covered "auto";

**(2)** Otherwise in the course of transit by or on behalf of the "insured"; or

**(3)** Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts if:

**(1)** The "pollutants" escape, seep, migrate or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

**(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

**(a)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

**(b)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**12. War**

"Bodily injury" or "property damage" arising directly or indirectly out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**13. Racing**

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

**14. Unmanned Aircraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance or use of "unmanned aircraft".

**C. Limit Of Insurance**

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined resulting from any one "accident" is the Limit Of Insurance for Covered Autos Liability Coverage shown in the Declarations.

© Insurance Services Office, Inc., 2018

Case 3:25-cv-00593    Document 1-1    Filed 05/22/25    Page 130 of 261 PageID #: 135

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage endorsement, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

## SECTION III – PHYSICAL DAMAGE COVERAGE

### A. Coverage

**1.** We will pay for "loss" to a covered "auto" or its equipment under:

**a. Comprehensive Coverage**

From any cause except:

**(1)** The covered "auto's" collision with another object; or

**(2)** The covered "auto's" overturn.

**b. Specified Causes Of Loss Coverage**

Caused by:

**(1)** Fire, lightning or explosion;

**(2)** Theft;

**(3)** Windstorm, hail or earthquake;

**(4)** Flood;

**(5)** Mischief or vandalism; or

**(6)** The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

**c. Collision Coverage**

Caused by:

**(1)** The covered "auto's" collision with another object; or

**(2)** The covered "auto's" overturn.

**2. Towing And Labor**

We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" that is a private passenger type, light truck or medium truck is disabled. However, the labor must be performed at the place of disablement.

**3. Glass Breakage – Hitting A Bird Or Animal – Falling Objects Or Missiles**

If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:

**a.** Glass breakage;

**b.** "Loss" caused by hitting a bird or animal; and

**c.** "Loss" caused by falling objects or missiles.

However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

**4. Coverage Extensions**

**a. Transportation Expenses**

We will pay up to $30 per day, to a maximum of $900, for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the private passenger type. We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes Of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the Policy's expiration, when the covered "auto" is returned to use or we pay for its "loss".

**b. Loss Of Use Expenses**

For Hired Auto Physical Damage, we will pay expenses for which an "insured" becomes legally responsible to pay for loss of use of a vehicle rented or hired without a driver under a written rental contract or agreement. We will pay for loss of use expenses if caused by:

**(1)** Other than collision only if the Declarations indicates that Comprehensive Coverage is provided for any covered "auto";

**(2)** Specified Causes of Loss only if the Declarations indicates that Specified Causes Of Loss Coverage is provided for any covered "auto"; or

Case 3:25-cv-00593     Document 1-1     Filed 05/29/25     Page 131 of 261 PageID #: 136

**(3)** Collision only if the Declarations indicates that Collision Coverage is provided for any covered "auto".

However, the most we will pay for any expenses for loss of use is $30 per day, to a maximum of $900.

## B. Exclusions

1. We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

   **a. Nuclear Hazard**

   **(1)** The explosion of any weapon employing atomic fission or fusion; or

   **(2)** Nuclear reaction or radiation, or radioactive contamination, however caused.

   **b. War Or Military Action**

   **(1)** War, including undeclared or civil war;

   **(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   **(3)** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

2. We will not pay for "loss" to any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for such a contest or activity.

3. We will not pay for "loss" due and confined to:

   **a.** Wear and tear, freezing, mechanical or electrical breakdown.

   **b.** Blowouts, punctures or other road damage to tires.

   This exclusion does not apply to such "loss" resulting from the total theft of a covered "auto".

4. We will not pay for "loss" to any of the following:

   **a.** Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

   **b.** Any device designed or used to detect speed-measuring equipment, such as radar or laser detectors, and any jamming apparatus intended to elude or disrupt speed-measuring equipment.

   **c.** Any electronic equipment, without regard to whether this equipment is permanently installed, that reproduces, receives or transmits audio, visual or data signals.

   **d.** Any accessories used with the electronic equipment described in Paragraph **c.** above.

5. Exclusions **4.c.** and **4.d.** do not apply to equipment designed to be operated solely by use of the power from the "auto's" electrical system that, at the time of "loss", is:

   **a.** Permanently installed in or upon the covered "auto";

   **b.** Removable from a housing unit which is permanently installed in or upon the covered "auto";

   **c.** An integral part of the same unit housing any electronic equipment described in Paragraphs **a.** and **b.** above; or

   **d.** Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system.

6. We will not pay for "loss" to a covered "auto" due to "diminution in value".

## C. Limits Of Insurance

1. The most we will pay for is:

   **a.** "Loss" to any one covered "auto" is the lesser of:

   **(1)** The actual cash value of the damaged or stolen property as of the time of the "loss"; or

   **(2)** The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

Case 3:25-cv-00593 Document 1-1 Filed 05/22/25 Page 132 of 261 PageID #: 137

**b.** All electronic equipment that reproduces, receives or transmits audio, visual or data signals in any one "loss" is $1,000, if, at the time of "loss", such electronic equipment is:

**(1)** Permanently installed in or upon the covered "auto" in a housing, opening or other location that is not normally used by the "auto" manufacturer for the installation of such equipment;

**(2)** Removable from a permanently installed housing unit as described in Paragraph **b.(1)** above; or

**(3)** An integral part of such equipment as described in Paragraphs **b.(1)** and **b.(2)** above.

**2.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

**3.** If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

**D. Deductible**

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations prior to the application of the Limit Of Insurance, provided that:

**1.** The Comprehensive or Specified Causes Of Loss Coverage deductible applies only to "loss" caused by:

   **a.** Theft or mischief or vandalism; or

   **b.** All perils.

**2.** Regardless of the number of covered "autos" damaged or stolen, the maximum deductible applicable for all "loss" in any one event caused by:

   **a.** Theft or mischief or vandalism; or

   **b.** All perils,

will be equal to five times the highest deductible applicable to any one covered "auto" on the Policy for Comprehensive or Specified Causes Of Loss Coverage. The application of the highest deductible used to calculate the maximum deductible will be made regardless of which covered "autos" were damaged or stolen in the "loss".

**SECTION IV – BUSINESS AUTO CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions:

**A. Loss Conditions**

**1. Appraisal For Physical Damage Loss**

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

   **a.** Pay its chosen appraiser; and

   **b.** Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

**2. Duties In The Event Of Accident, Claim, Suit Or Loss**

We have no duty to provide coverage under this Policy unless there has been full compliance with the following duties:

   **a.** In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

   **(1)** How, when and where the "accident" or "loss" occurred;

   **(2)** The "insured's" name and address; and

   **(3)** To the extent possible, the names and addresses of any injured persons and witnesses.

   **b.** Additionally, you and any other involved "insured" must:

   **(1)** Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

   **(2)** Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

**(4)** Authorize us to obtain medical records or other pertinent information.

**(5)** Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

**c.** If there is "loss" to a covered "auto" or its equipment, you must also do the following:

**(1)** Promptly notify the police if the covered "auto" or any of its equipment is stolen.

**(2)** Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

**(3)** Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

**(4)** Agree to examinations under oath at our request and give us a signed statement of your answers.

**3. Legal Action Against Us**

No one may bring a legal action against us under this Coverage Form until:

**a.** There has been full compliance with all the terms of this Coverage Form; and

**b.** Under Covered Autos Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this Policy to bring us into an action to determine the "insured's" liability.

**4. Loss Payment – Physical Damage Coverages**

At our option, we may:

**a.** Pay for, repair or replace damaged or stolen property;

**b.** Return the stolen property, at our expense. We will pay for any damage that results to the "auto" from the theft; or

**c.** Take all or any part of the damaged or stolen property at an agreed or appraised value.

If we pay for the "loss", our payment will include the applicable sales tax for the damaged or stolen property.

**5. Transfer Of Rights Of Recovery Against Others To Us**

If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

**B. General Conditions**

**1. Bankruptcy**

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligations under this Coverage Form.

**2. Concealment, Misrepresentation Or Fraud**

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceals or misrepresents a material fact concerning:

**a.** This Coverage Form;

**b.** The covered "auto";

**c.** Your interest in the covered "auto"; or

**d.** A claim under this Coverage Form.

**3. Liberalization**

If we revise this Coverage Form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

**4. No Benefit To Bailee – Physical Damage Coverages**

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Form.

**5. Other Insurance**

**a.** For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Covered Autos Liability Coverage this Coverage Form provides for the "trailer" is:

**(1)** Excess while it is connected to a motor vehicle you do not own; or

© Insurance Services Office, Inc., 2019
Case 3:25-cv-00593    Document 1-1    Filed 05/22/25    Page 134 of 261 PageID #: 139

**(2)** Primary while it is connected to a covered "auto" you own.

**b.** For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

**c.** Regardless of the provisions of Paragraph **a.** above, this Coverage Form's Covered Autos Liability Coverage is primary for any liability assumed under an "insured contract".

**d.** When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

**6. Premium Audit**

**a.** The estimated premium for this Coverage Form is based on the exposures you told us you would have when this Policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

**b.** If this Policy is issued for more than one year, the premium for this Coverage Form will be computed annually based on our rates or premiums in effect at the beginning of each year of the Policy.

**7. Policy Period, Coverage Territory**

Under this Coverage Form, we cover "accidents" and "losses" occurring:

**a.** During the policy period shown in the Declarations; and

**b.** Within the coverage territory.

The coverage territory is:

**(1)** The United States of America;

**(2)** The territories and possessions of the United States of America;

**(3)** Puerto Rico;

**(4)** Canada; and

**(5)** Anywhere else in the world if a covered "auto" of the private passenger type is leased, hired, rented or borrowed without a driver for a period of 30 days or less,

provided that the "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the United States of America, the territories and possessions of the United States of America, Puerto Rico or Canada, or in a settlement we agree to.

We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

**8. Two Or More Coverage Forms Or Policies Issued By Us**

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us applies to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

**SECTION V – DEFINITIONS**

**A.** "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

**B.** "Auto" means:

**1.** A land motor vehicle, "trailer" or semitrailer designed for travel on public roads; or

**2.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**C.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these.

**D.** "Covered pollution cost or expense" means any cost or expense arising out of:

**1.** Any request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**2.** Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**a.** That are, or that are contained in any property that is:

**(1)** Being transported or towed by, handled or handled for movement into, onto or from the covered "auto";

**(2)** Otherwise in the course of transit by or on behalf of the "insured"; or

**(3)** Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

**(1)** The "pollutants" escape, seep, migrate or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

**(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraph **6.b.** or **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

**(a)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

**(b)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**E.** "Diminution in value" means the actual or perceived loss in market value or resale value which results from a direct and accidental "loss".

**F.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**G.** "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

**H.** "Insured contract" means:

**1.** A lease of premises;

**2.** A sidetrack agreement;

**3.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**4.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**5.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement; or

© Insurance Services Office, Inc., 2018

**6.** That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

An "insured contract" does not include that part of any contract or agreement:

    **a.** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

    **b.** That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

    **c.** That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

**I.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**J.** "Loss" means direct and accidental loss or damage.

**K.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    **1.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    **2.** Vehicles maintained for use solely on or next to premises you own or rent;

    **3.** Vehicles that travel on crawler treads;

    **4.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

        **a.** Power cranes, shovels, loaders, diggers or drills; or

        **b.** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**5.** Vehicles not described in Paragraph **1., 2., 3.** or **4.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    **a.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment; or

    **b.** Cherry pickers and similar devices used to raise or lower workers; or

**6.** Vehicles not described in Paragraph **1., 2., 3.** or **4.** above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

    **a.** Equipment designed primarily for:

        **(1)** Snow removal;

        **(2)** Road maintenance, but not construction or resurfacing; or

        **(3)** Street cleaning;

    **b.** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    **c.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well-servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**L.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**M.** "Property damage" means damage to or loss of use of tangible property.

**N.** "Suit" means a civil proceeding in which:

    **1.** Damages because of "bodily injury" or "property damage"; or

    **2.** A "covered pollution cost or expense";

    to which this insurance applies, are alleged.

"Suit" includes:

**a.** An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the insured submits with our consent.

**O.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**P.** "Trailer" includes semitrailer.

**Q.** "Unmanned aircraft" means an aircraft that is not:

**1.** Designed;

**2.** Manufactured; or

**3.** Modified after manufacture;

to be controlled directly by a person from within or on the aircraft.

Case 3:25-cv-00593 Document 1-1 Filed 05/22/25 Page 138 of 261 PageID #: 143

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – NAMED DRIVER

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| |
|---|
| **Named Insured:** Brian Holloway |
| **Endorsement Effective Date:** 06/03/2024 |

This insurance does not apply to any "loss", damage and/or liability caused by the ownership, maintenance or use of a covered "auto" while being driven or operated by the following named driver:

Vladimir Martinez

**Applicable in MI only:**

WARNING - when a named excluded person operates a vehicle all liability coverage is void - no one is insured. Owners of the vehicle and others legally responsible for the acts of the named excluded person remain fully personally liable.

NOTICE - A named excluded driver is not entitled to be paid personal protection benefits for accidental bodily injury if at the time of the accident the named excluded driver was operating a motor vehicle or motorcycle as to which he or she was named as the excluded driver.

**Applicable in KY, MO and NC only:**

Coverage shall apply up to the accident state Financial Responsibility limits for claims against the owner of a covered "auto" for Bodily Injury and Property Damage resulting from any person legally using or operating the covered "auto" with the permission of the owner.

I have read and understand this endorsement and agree with its terms.

_____
Signature of First Named Insured (Required)

_____
Signature of Named Driver (Required in KY and MI)

_____
Dated

_____
Dated

Case 3:25-cv-00593    Document 1-1    Filed 05/29/25    Page 139 of 261    EXHIBIT 1-A

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TENNESSEE CHANGES

For a covered "auto" licensed in, or "auto dealer operations" conducted in, Tennessee, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

**A. Changes In Covered Autos Liability Coverage**

Paragraph **2.b.(4)** of the **Who Is An Insured** provision of the Auto Dealers Coverage Form does not apply.

**B. Changes In Conditions**

**1.** The following replaces the lead-in paragraph to the **Duties In The Event Of Accident, Claim, Suit Or Loss** Condition in the Business Auto and Motor Carrier Coverage Forms and the **Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions** Condition in the Auto Dealers Coverage Form:

We have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us:

**2.** The **Other Insurance** Condition in the Auto Dealers and Business Auto Coverage Forms and the **Other Insurance – Primary and Excess Insurance Provisions** Condition in the Motor Carrier Coverage Form are changed by adding the following:

**a.** When two policies providing liability insurance apply to an "auto" and:

**(1)** One provides coverage to a named "insured" engaged in the business of selling, repairing, servicing, delivering, testing, road testing, parking or storing "autos";

**(2)** The other provides coverage to a person not engaged in that business; and

**(3)** At the time of an "accident" a person described in Paragraph **a.(2)** is operating an "auto" owned by the business described in Paragraph **a.(1)**, then that person's liability insurance is primary and the policy issued to a business described in Paragraph **a.(1)** is excess over any insurance available to that person.

**b.** When two policies providing liability insurance apply to an "auto" and:

**(1)** One provides coverage to a named "insured" engaged in the business of repairing, servicing, parking or storing "autos";

**(2)** The other provides coverage to a person not engaged in that business; and

**(3)** At the time of an "accident" an "insured" under the policy described in Paragraph **b.(1)** is operating an "auto" owned by a person described in Paragraph **b.(2)**, then the liability insurance policy issued to the business described in Paragraph **b.(1)** is primary and the policy issued to a person described in Paragraph **b.(2)** is excess over any insurance available to the business.

 © Insurance Services Office, Inc., 2013

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TENNESSEE UNINSURED MOTORISTS COVERAGE

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Tennessee, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the Policy on the inception date unless another date is indicated below.

| |
|---|
| **Named Insured:** Brian Holloway |
| **Endorsement Effective Date:** 06-03-2024 |

### SCHEDULE

| | | |
|---|---|---|
| **"Bodily Injury" And "Property Damage"** | $1,000,000 | Each "Accident" |
| | **Or** | |
| **"Bodily Injury"** | $ | Each "Accident" |
| This endorsement provides "bodily injury" and "property damage" Uninsured Motorists Coverage unless an "X" is entered below. | | |
| ☐ If an "X" is entered in this box, this endorsement provides "bodily injury" Uninsured Motorists Coverage only. | | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | |

## A. Coverage

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured", or "property damage" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".

2. With respect to damages resulting from an "accident" with a vehicle described in Paragraph **(2)** of the definition of "uninsured motor vehicle", we will pay under this coverage only if **a.** or **b.** below applies:

   **a.** The limit of any applicable liability bonds or policies has been exhausted by payments of judgments or settlements; or

   **b.** A tentative settlement has been made between an "insured" and the insurer of an owner or operator of a vehicle described in Paragraph **(2)** of the definition of "uninsured motor vehicle" and we have been given written notice of such tentative settlement as described in Paragraph **E.4.b.**

3. Any judgment for damages arising out of a suit brought without our written consent is not binding on us.

## B. Who Is An Insured

If the Named Insured is designated in the Declarations as:

1. An individual, then the following are "insureds":

   **a.** The Named Insured and any "family members".

Case 3:25-cv-00593 Document 1-1 Filed 05/29/25 Page 141 of 261 PageID #: 146

**b.** Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

**c.** Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

**2.** A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

**a.** Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

**b.** Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

**c.** The Named Insured for "property damage" only.

## C. Exclusions

This insurance does not apply to:

**1.** Any claim settled without our consent. However, this exclusion does not apply to a settlement made with the insurer of an owner or operator of a vehicle described in Paragraph **(2)** of the definition of "uninsured motor vehicle" in accordance with the procedure described in Paragraph **A.2.b.**

**2.** The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

**3.** The direct or indirect benefit of any insurer of property.

**4.** "Bodily injury" sustained by:

**a.** The individual Named Insured while "occupying" or when struck by a vehicle owned by that Named Insured that is not a covered "auto" for Uninsured Motorists Coverage under this Coverage Form.

**b.** Any "family member" while "occupying" or when struck by any vehicle owned by that "family member" that is not a covered "auto" for Uninsured Motorists Coverage under this Coverage Form.

**c.** Any "family member" while "occupying" or when struck by any vehicle owned by the Named Insured that is insured for Uninsured Motorists Coverage on a primary basis under any other Coverage Form or policy.

**5.** Property contained in or struck by any vehicle owned by the Named Insured or, if the Named Insured is an individual, any "family member" which is not a covered "auto".

**6.** The first $200 of the amount of "property damage" to the property of each "insured" as the result of any one "accident". This exclusion does not apply if:

**a.** We insure the Named Insured's covered "auto" for both collision and uninsured motorists "property damage" coverage; and

**b.** The operator of the "uninsured motor vehicle" is positively identified and is solely at fault.

**7.** Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

**8.** "Property damage" for which the "insured" has been or is entitled to be compensated by other property or physical damage insurance.

**9.** Punitive or exemplary damages.

**10.** "Bodily injury" or "property damage" arising directly or indirectly out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## D. Limit Of Insurance

**1.** Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the limit of Uninsured Motorists Coverage shown in the Schedule.

**2.** The most we will pay for all damages resulting from "bodily injury" to an "insured" when the "insured" is "occupying" an "auto" not owned by the "insured", or is not "occupying" any "auto", is the highest limit of Uninsured Motorists Coverage on an "auto" owned by the "insured".

**3.** For a vehicle described in Paragraph **(2)** of the definition of "uninsured motor vehicle", our Limit of Insurance shall be reduced by all sums paid because of "bodily injury" by or for anyone who is legally responsible, including all sums paid or payable under this policy's Covered Autos Liability Coverage.

**4.** No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form, any Liability Coverage form, and any Medical Payments Coverage endorsement attached to this Coverage Part.

We will not make a duplicate payment under this coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible.

We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any workers' compensation law, disability benefits or similar law.

**5.** We will not pay for a loss which is paid or payable under Physical Damage Coverage.

**E. Changes In Conditions**

The Conditions are changed for Uninsured Motorists Coverage as follows:

**1. Other Insurance** in the Auto Dealers and Business Auto Coverage Forms and **Other Insurance – Primary And Excess Insurance Provisions** in the Motor Carrier Coverage Form are replaced by the following:

**a.** If there is other applicable insurance available under one or more Coverage Forms, policies or provisions of coverage, the maximum recovery for damages under all Coverage Forms or policies combined may equal but not exceed the highest applicable limit for any one vehicle under any one Coverage Form or policy providing coverage.

**b.** Subject to Paragraph **a.,** with respect to "bodily injury" to an "insured":

**(1)** While not "occupying" a vehicle, only the Uninsured Motorists Coverage applicable to a vehicle, under which the injured person is an "insured", that provides the highest limit of Uninsured Motorists Coverage, will apply. No other Coverage Form, policy or provision of coverage with lesser limits of Uninsured Motorists Coverage will apply. If two or more Coverage Forms, policies or provisions of coverage provide the highest limit of Uninsured Motorists Coverage, they will share the loss equally.

**(2)** While "occupying" a vehicle owned by that "insured", only the Uninsured Motorists Coverage applicable to that vehicle will apply, and no other Coverage Form, policy or provision of coverage will apply.

**(3)** While "occupying" a vehicle not owned by that "insured", the following will be the priorities of recovery:

| First Priority | The Uninsured Motorists Coverage applicable to the vehicle the "insured" was "occupying" at the time of the "accident". |
|---|---|
| Second Priority | If the first priority is exhausted, only the Coverage Form, policy or provision of coverage applicable to a vehicle under which the "insured" is a named "insured", that provides the highest limit of Uninsured Motorists Coverage. |
| Third Priority | If the first and second priorities are exhausted, only the Coverage Form, policy or provision of coverage applicable to a vehicle under which the "insured" is other than a named "insured", that provides the highest limit of Uninsured Motorists Coverage. |

If two or more Coverage Forms, policies or provisions of coverage in the second or third priority provide the highest limit of Uninsured Motorists Coverage, they will equally share the loss applicable to that priority. No Coverage Forms, policies or provisions of coverage with lesser limits of Uninsured Motorists Coverage will apply to the second or third priority.

**2. Duties In The Event Of Accident, Claim, Suit Or Loss** in the Business Auto and Motor Carrier Coverage Forms and **Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions** in the Auto Dealers Coverage Form are changed by adding the following:

**a.** Promptly notify the police if a hit-and-run driver is involved.

**b.** Promptly send us copies of the legal papers if a suit is brought.

Case 3:25-cv-00593 Document 1-1 Filed 05/29/25 Page 143 of 261 PageID #: 148

**c.** A person seeking coverage from an insurer, owner or operator of a vehicle described in Paragraph **F.2.c.(2)** of the definition of "uninsured motor vehicle" must notify us in writing of a tentative settlement between the "insured" and the insurer as described in Paragraph **E.4.b.** and allow us, within 30 days of receipt of both notices, to advance payment to that "insured" in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such vehicle.

**3. Transfer Of Rights Of Recovery Against Others To Us** is changed by adding the following:

If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

Our rights under this provision do not apply with respect to a tentative settlement between an "insured" and the insurer of an owner or operator of a vehicle described in Paragraph **(2)** of the definition of "uninsured motor vehicle", for which we have been notified in accordance with Paragraph **A.2.b.,** to which we:

**a.** Consent to the tentative settlement; or

**b.** Fail to advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

If we advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification:

**a.** That payment will be separate from any amount the "insured" is entitled to recover under the provisions of Uninsured Motorists Coverage; and

**b.** We also have a right to recover the advance payment, unless judgment is rendered in favor of the owner or operator of an "uninsured motor vehicle".

**4.** The following is added:

**Arbitration**

**a.** If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or operator of an "uninsured motor vehicle", or do not agree as to the amount of damages that are recoverable by that "insured", then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated and shall be decided by a court of competent jurisdiction.

**b.** If a tentative settlement is made between an "insured" and the insurer, owner or operator of the "uninsured motor vehicle" for the full limits of all liability policies or bonds available to the party on whose behalf the tentative settlement is made, and:

**(1)** We receive written notice from the "insured", sent certified mail return receipt requested or by some other method with written verification, of the "insured's":

**(a)** Intent to accept the offer thereby releasing the party on whose behalf the offer is made; and

**(b)** Agreement to submit the uninsured motorists claim to binding arbitration;

**(2)** We receive written notice from the insurer of the "uninsured motor vehicle", sent certified mail return receipt requested or by some other method with written verification of the offer, and such insurer:

**(a)** Provides verification of coverage upon request; and

**(b)** Confirms to us that the owner or operator of the "uninsured motor vehicle" agrees to cooperate in connection with the arbitration of the uninsured motorists claim;

**(3)** We consent to the tentative settlement in writing, sent certified mail return receipt requested or by some other method with written verification, within 30 days from receipt of both notices described in Paragraphs **(1)** and **(2)** above, thereby waiving our right to recover payment from the owner or operator of an "uninsured motor vehicle" in exchange for their written agreement to cooperate in connection with the arbitration;

then all issues of tort liability and damages arising out of the ownership, maintenance or use of the "uninsured motor vehicle" shall be arbitrated. However, if the settlement does not release all parties alleged to be liable to the "insured", arbitration of the uninsured motorists claim shall not be conducted until all such parties have been fully and finally disposed by settlement, final judgment or otherwise.

© Insurance Services Office, Inc., 2023

Case 3:25-cv-00593     Document 1-1     Filed 05/29/25     Page 144 of 261 PageID #: 149

**c.** We and an "insured" must agree to arbitration and to be bound by the results of that arbitration. In this event, both parties will agree on an arbitrator. If they cannot agree, either party may request that a judge of a court of record for the county where arbitration is pending designate three (3) potential arbitrators; the parties shall then agree upon one of the three.

**d.** Unless we and an "insured" agree otherwise, arbitration will be in the county in which the "insured" lives. Rules of evidence applicable to the state courts where the arbitration is conducted will apply.

**e.** The arbitrator's expense will be paid by:

**(1)** The "insured", if the arbitrator's award is less than or equal to the total amount collected by the "insured" from settlements or judgments, if any, and the offer made by us at least 15 days prior to arbitration; or

**(2)** Us, if the arbitrator's award exceeds the total amount collected by the "insured" from settlements or judgments, if any, and the offer made by us at least 15 days prior to arbitration.

**F. Additional Definitions**

As used in this endorsement:

**1.** "Property damage" means injury or destruction of:

**a.** A covered "auto";

**b.** Property contained in the covered "auto" and owned by the Named Insured or, if the Named Insured is an individual, any "family member"; or

**c.** Property contained in the covered "auto" and owned by anyone else "occupying" the covered "auto".

**2.** The following are added to the **Definitions** section:

**a.** "Family member" means a person related to an individual Named Insured by blood, marriage or adoption, who is a resident of such Named Insured's household, including a ward or foster child.

**b.** "Occupying" means in, upon, getting in, on, out or off.

**c.** "Uninsured motor vehicle" means a land motor vehicle or "trailer":

**(1)** For which no liability bond or policy at the time of an "accident" provides at least the amounts required by the applicable law where a covered "auto" is principally garaged;

**(2)** That is an underinsured motor vehicle. An underinsured motor vehicle is a land motor vehicle or "trailer" for which the sum of the limits of liability available for payment to an "insured" under all policies, bonds and securities applicable at the time of the accident:

**(a)** Is less than the Limit of Insurance for this coverage; or

**(b)** Has been reduced by payments to persons other than the "insured" to an amount which is less than the limit of liability for this coverage;

**(3)** For which an insuring or bonding company denies coverage or is or becomes insolvent; or

**(4)** For which neither the driver nor owner can be identified. The vehicle or "trailer" must either:

**(a)** Hit an "insured", a covered "auto" or a vehicle an "insured" is "occupying"; or

**(b)** Cause "bodily injury" or "property damage" without hitting an "insured", a covered "auto" or a vehicle an "insured" is "occupying".

If there is no physical contact with such vehicle or "trailer", the facts of the "accident" must be proven by clear and convincing evidence. We will only accept corroborating evidence of the claim other than the evidence provided by occupants in the covered "auto" or in the vehicle an "insured" is "occupying".

However, "uninsured motor vehicle" does not include any vehicle:

**(1)** Owned by, or furnished or available for the Named Insured's regular use or, if the Named Insured is an individual, that of any "family member";

Case 3:25-cv-00593     Document 1-1     Filed 05/29/25     Page 145 of 261 PageID #: 150

**(2)** Owned or operated by a self-insurer within the meaning of the Tennessee Financial Responsibility Law, compiled in title 55, chapter 12, or any similar state or federal law, except as a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law;

**(3)** Designed for use mainly off public roads or any off-highway vehicle, as defined in Tenn. Code Ann. Section 55-8-101, except while the vehicle is operated on public roads pursuant to Tenn. Code Ann. Section 55-8-185 or other law; or

**(4)** While located for use as a premises.

© Insurance Services Office, Inc., 2021

TN 21 12 22

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TENNESSEE LOSS PAYABLE CLAUSE

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** We will pay, as interest may appear, you and the loss payee named in the policy for "loss" to a covered "auto".

**B.** The insurance covering the interest of the loss payee will not be invalidated because of your intentional acts or omissions.

**C.** We may cancel the policy as allowed by the **Cancellation** Common Policy Condition.

Cancellation ends this agreement as to the loss payee's interest. If we cancel the policy we will mail you and the loss payee the same advance notice.

**D.** If we make any payments to the loss payee, we will obtain his or her rights against any other party.

© Insurance Services Office, Inc., 2012
Case 3:25-cv-00593     Document 1-1     Filed 05/29/25     Page 147 of 261 PageID #: 152



West Bend Mutual Insurance Company
1900 S. 18th Ave. | West Bend, WI 53095

## Commercial Inland Marine Coverage Declarations

**Customer Number:** 1000448661
**Policy Number:** B319992 01

**Policy Period:** 06/03/2024 to 06/03/2025
at 12:01 AM Standard Time at Your Mailing Address Shown Below

**Named Insured and Address:**
Brian Holloway
DBA Tree Solutions
106 Clark Dr
Mount Juliet, TN 37122

**Agency Name and Address:**                                    41670
POWELL & MEADOWS INSURANCE
PO BOX 1
CARTHAGE, TN 37030
615-735-1111

### Commercial Inland Marine Coverage Schedule

| ID | Coverage | Limit of Insurance | Coinsurance | Rate | Premium |
|----|----------|-------------------:|-------------|------|--------:|
| 9 | Contractors' Equipment Coverage | | | | |
| | Catastrophe Limit | $913,600 | | | |
| | Contractors' Equipment – Miscellaneous Tools and Equipment | $20,000 | 80% | 2.709 | $542 |
| | Actual Cash Value | | | | |
| | Deductible – $2,500 | | | | |
| | Maximum Limit Per Item | $1,000 | | | |
| | Contractors' Equipment – Scheduled | $533,600 | 80% | .630 | $3,362 |
| | Actual Cash Value | | | | |
| | Deductible – $2,500 | | | | |
| | Contractors' Equipment – Scheduled | $360,000 | 80% | .630 | $2,268 |
| | Actual Cash Value | | | | |
| | Deductible – $5,000 | | | | |

See attached Forms Schedule for forms and endorsements applicable to this coverage.

DCM 02 0417

06/12/2024 07:28:03



West Bend Mutual Insurance Company
1900 S. 18th Ave. | West Bend, WI 53095

Endorsement

## Commercial Inland Marine Description Detail Schedule

**Customer Number:** 1000448661
**Policy Number:** B319992 01

**Policy Period:** 06/03/2024 to 06/03/2025
at 12:01 AM Standard Time at Your Mailing Address Shown Below

**Named Insured and Address:**
Brian Holloway
DBA Tree Solutions
106 Clark Dr
Mount Juliet, TN 37122

**Agency Name and Address:** 41670
POWELL & MEADOWS INSURANCE
PO BOX 1
CARTHAGE, TN 37030
615-735-1111

### Description Detail Schedule

| ID | Loc | Item | Description | Limit of Insurance |
|----|-----|------|-------------|-------------------|
| 9 | | | Contractor's Equipment – Scheduled | |
| 9 | 1 | | 2021 Bandit Stump Grinder Model SG-40 SN 515590<br>Actual Cash Value; Deductible – $2,500; Coinsurance 80% | $21,622 |
| 9 | 2 | | 2021 CMC Cherry Picker Model S22 SN 21A3002<br>Actual Cash Value; Deductible – $5,000; Coinsurance 80% | $130,000 |
| 9 | 3 | | 2018 Mahindra Tractor Model 2538 SN 38HCK00856<br>Actual Cash Value; Deductible – $2,500; Coinsurance 80% | $35,000 |
| 9 | 4 | | Vermeer Chipper Model AX19<br>Actual Cash Value; Deductible – $5,000; Coinsurance 80% | $130,000 |
| 9 | 5 | | Giant Loader Model 254SW<br>Actual Cash Value; Deductible – $2,500; Coinsurance 80% | $45,000 |
| 9 | 6 | | Bandit Stump Grinder Model SG75 SN 520888<br>Actual Cash Value; Deductible – $2,500; Coinsurance 80% | $81,000 |
| 9 | 7 | | 2023 Bandit Chipper Model 18XP SN 4FMUS181XPR526518<br>Actual Cash Value; Deductible – $2,500; Coinsurance 80% | $92,108 |
| 9 | 8 | | 2023 Bobcat Model T66 SN B4SB36620<br>Actual Cash Value; Deductible – $2,500; Coinsurance 80% | $66,500 |
| 9 | 9 | | Ditch Witch Mini Skid Steer Model SK1550 SN DWPSK155PM0001688<br>Actual Cash Value; Deductible – $2,500; Coinsurance 80% | $55,370 |
| 9 | 10 | | 2021 Nifty Lift SN 21-17665<br>Actual Cash Value; Deductible – $5,000; Coinsurance 80% | $100,000 |
| 9 | 11 | | 2017 Bobcat E85 Excavator with Grapple Claw SN B34T14096<br>Actual Cash Value; Deductible – $2,500; Coinsurance 80% | $85,000 |

DCM 04 0414

EXHIBIT 54
06/12/2024 07:28:03



West Bend Mutual Insurance Company
1900 S. 18th Ave. | West Bend, WI 53095

Endorsement

**Commercial Inland Marine Description Detail Schedule**

**Customer Number:** 1000448661
**Policy Number:** B319992 01

**Policy Period:** 06/03/2024 to 06/03/2025
at 12:01 AM Standard Time at Your Mailing Address Shown Below

**Named Insured and Address:**
Brian Holloway
DBA Tree Solutions
106 Clark Dr
Mount Juliet, TN 37122

**Agency Name and Address:**
POWELL & MEADOWS INSURANCE
PO BOX 1
CARTHAGE, TN 37030
615-735-1111

41670

| | | | |
|---|---|---|---|
| 9 | 12 | 2018 Ditch Witch Mini Skid Steer Model SK800 SN KJ0000428<br>Actual Cash Value; Deductible – $2,500; Coinsurance 80% | $12,000 |
| 9 | 13 | 2021 Ditch Witch Mini Skid Steer Model SK1550 SN PM0001688<br>Actual Cash Value; Deductible – $2,500; Coinsurance 80% | $40,000 |



West Bend Mutual Insurance Company
1900 S. 18th Ave. | West Bend, WI 53095

Endorsement

### Commercial Inland Marine Endorsements and Miscellaneous Premiums

**Customer Number:** 1000448661
**Policy Number:** B319992 01

**Policy Period:** 06/03/2024 to 06/03/2025
at 12:01 AM Standard Time at Your Mailing Address Shown Below

**Named Insured and Address:**
Brian Holloway
DBA Tree Solutions
106 Clark Dr
Mount Juliet, TN 37122

**Agency Name and Address:** 41670
POWELL & MEADOWS INSURANCE
PO BOX 1
CARTHAGE, TN 37030
615-735-1111

### Miscellaneous Premiums

| Description | Form Number | Premium |
|---|---|---|
| Terrorism Risk Insurance Act | | $93 |
| Terrorism Risk Insurance Act (Fire Only) | | Included |
| Total Commercial Inland Marine Premium: | | $6,265 |

See attached Forms Schedule for forms and endorsements applicable to this coverage.



**Commercial Inland Marine Additional Interest Schedule**

West Bend Mutual Insurance Company
1900 S. 18th Ave. | West Bend, WI 53095

**Customer Number:** 1000448661
**Policy Number:** B319992

**Policy Period:** 06/03/2024 to 06/03/2025
at 12:01 AM Standard Time at Your Mailing Address Shown Below

| **Named Insured and Address:** | **Agency Name and Address:** | 41670 |
|---|---|---|
| Brian Holloway | POWELL & MEADOWS INSURANCE | |
| DBA Tree Solutions | PO BOX 1 | |
| 106 Clark Dr | CARTHAGE, TN 37030 | |
| Mount Juliet, TN 37122 | 615-735-1111 | |

## Additional Interests

| Interest Number | Name and Address | Reference/ Loan Number | Interest | Coverage Form |
|---|---|---|---|---|
| 1 | ALLEGIANT PARTNERS, INC ISAOA 123 SW COLUMBIA ST BEND, OR 97702-3608 | | Loss Payable | Contractors' Equipment Coverage |
| 1 | ALLEGIANT PARTNERS, INC ISAOA 123 SW COLUMBIA ST BEND, OR 97702-3608 | | Loss Payable | Contractors' Equipment Coverage |
| 1 | ALLEGIANT PARTNERS, INC ISAOA 123 SW COLUMBIA ST BEND, OR 97702-3608 | | Loss Payable | Contractors' Equipment Coverage |
| 5 | WELLS FARGO VENDOR FINANCIAL SERVICES, LLC PO BOX 35702 BILLINGS, MT 59107 | | Loss Payable | Contractors' Equipment Coverage |
| 6 | WESTERN EQUIPMENT FINANCE PO BOX 01375 SPRINGFIELD, OH 45501 | | Loss Payable | Contractors' Equipment Coverage |
| 8 | BUCKEYE RENTAL & EQUIPMENT, LLC 4105 STATE ROUTE 229 MARENGO, OH 43334-9401 | | Loss Payable | Contractors' Equipment Coverage |

**Additional Interest Detail**

DCM 06 0414
06/12/2024 07:28:03



West Bend Mutual Insurance Company
1900 S. 18th Ave. | West Bend, WI 53095

Endorsement

## Commercial Inland Marine Additional Interest Schedule

**Customer Number:** 1000448661
**Policy Number:** B319992

**Policy Period:** 06/03/2024 to 06/03/2025
at 12:01 AM Standard Time at Your Mailing Address Shown Below

**Named Insured and Address:**
Brian Holloway
DBA Tree Solutions
106 Clark Dr
Mount Juliet, TN 37122

**Agency Name and Address:**                    41670
POWELL & MEADOWS INSURANCE
PO BOX 1
CARTHAGE, TN 37030
615-735-1111

| Interest Number | Applicable To |
| --- | --- |
| 1 | 2021 Bandit Stump Grinder SG-40 515590 |
| 1 | 2023 Bandit Chipper 18XP 4FMUS181XPR526518 |
| 1 | Bandit Stump Grinder SG75 520888 |
| 5 | 2023 Bobcat T66 B4SB36620 |
| 6 | Ditch Witch Mini Skid Steer SK1550 DWPSK155PM0001688 |
| 8 | 2021 Nifty Lift 21-17665 |



West Bend Mutual Insurance Company
1900 S. 18th Ave. | West Bend, WI 53095

Endorsement

## Commercial Inland Marine Forms Schedule

**Customer Number:** 1000448661
**Policy Number:** B319992 01

**Policy Period:** 06/03/2024 to 06/03/2025
at 12:01 AM Standard Time at Your Mailing Address Shown Below

**Named Insured and Address:**
Brian Holloway
DBA Tree Solutions
106 Clark Dr
Mount Juliet, TN 37122

**Agency Name and Address:**                                    41670
POWELL & MEADOWS INSURANCE
PO BOX 1
CARTHAGE, TN 37030
615-735-1111

### Forms Schedule

| Number | Edition | Description |
|--------|---------|-------------|
| IM7000Z | 0404 | CONTRACTORS' EQUIPMENT COVERAGE |
| CL0100 | 0399 | COMMON POLICY CONDITIONS |
| CL0600 | 0115 | CERTIFIED TERRORISM LOSS |
| CL0700 | 1006 | VIRUS OR BACTERIA EXCLUSION |
| IM7854 | 0404 | LOSS PAYABLE OPTIONS |
| WB2198 | 0498 | EXCLUSION OF CERTAIN COMPUTER - RELATED LOSSES |
| WB77IM | 0414 | ADDITIONAL INSURED ENDORSEMENT |
| CL0118 | 0101 | AMENDATORY ENDORSEMENT TENNESSEE |

# CONTRACTORS' EQUIPMENT COVERAGE

## AGREEMENT

In return for "your" payment of the required premium, "we" provide the coverage described herein subject to all the "terms" of the Contractors' Equipment Coverage. This coverage is also subject to the "schedule of coverages" and additional policy conditions relating to assignment or transfer of rights or duties, cancellation, changes or modifications, inspections, and examination of books and records.

Endorsements and schedules may also apply. They are identified on the "schedule of coverages".

Refer to Definitions for words and phrases that have special meaning. These words and phrases are shown in quotation marks or bold type.

## DEFINITIONS

1. The words "you" and "your" mean the persons or organizations named as the insured on the declarations.

2. The words "we", "us", and "our" mean the company providing this coverage.

3. "Construction trailer" means "your" transportable trailer or transportable trailer of others in "your" care, custody, or control used at "jobsites" as an office or for storage.

4. "Contractors' equipment" means machinery, equipment, and tools of a mobile nature that "you" use in "your" contracting, installation, erection, repair, or moving operations or projects.

   "Contractors' equipment" also means:

   a. self-propelled vehicles designed and used primarily to carry mounted equipment; or

   b. vehicles designed for highway use that are unlicensed and not operated on public roads.

5. "Equipment schedule" means a schedule of "contractors' equipment" that is attached to this policy and that describes each piece of covered equipment.

6. "Jobsite" means any location, project, or work site where "you" are in the process of construction, installation, erection, repair, or moving.

7. "Limit" means the amount of coverage that applies.

8. "Pollutant" means:

   a. any solid, liquid, gaseous, thermal, or radioactive irritant or contaminant, including acids, alkalis, chemicals, fumes, smoke, soot, vapor, and waste. Waste includes materials to be recycled, reclaimed, or reconditioned, as well as disposed of; and

   b. electrical or magnetic emissions, whether visible or invisible, and sound emissions.

9. "Schedule of coverages" means:

   a. all pages labeled schedule of coverages or schedules which pertain to this coverage; and

   b. declarations or supplemental declarations which pertain to this coverage.

10. "Sinkhole collapse" means the sudden settlement or collapse of earth supporting the covered property into subterranean voids created by the action of water on a limestone or similar rock formation. It does not include the value of the land or the cost of filling sinkholes.

West Bend Mutual Insurance Company
West Bend, Wisconsin 53095
Contains material copyrighted by AAIS, with its permission.
Copyright, American Association of Insurance Services, Inc., 2004

11. "Specified perils" means aircraft; civil commotion; explosion; falling objects; fire; hail; leakage from fire extinguishing equipment; lightning; riot; "sinkhole collapse"; smoke; sonic boom; vandalism; vehicles; "volcanic action"; water damage; weight of ice, snow, or sleet; and windstorm.

Falling objects does not include loss to:

a. personal property in the open; or

b. the interior of buildings or structures or to personal property inside buildings or structures unless the exterior of the roofs or walls are first damaged by a falling object.

Water damage means the sudden or accidental discharge or leakage of water or steam as a direct result of breaking or cracking of a part of the system or appliance containing the water or steam.

12. "Terms" means all provisions, limitations, exclusions, conditions, and definitions that apply.

13. "Volcanic action" means airborne volcanic blast or airborne volcanic shock waves; ash, dust, or particulate matter; or lava flow.

Volcanic action does not include the cost to remove ash, dust, or particulate matter that does not cause direct physical loss to the covered property.

## PROPERTY COVERED

"We" cover the following property unless the property is excluded or subject to limitations.

1. **Scheduled Equipment** --

a. **Coverage** -- "We" cover direct physical loss caused by a covered peril to:

1) "your" "contractors' equipment"; and

2) "contractors' equipment" of others in "your" care, custody, or control.

b. **Coverage Limitation** -- "We" only cover "your" "contractors' equipment" and "contractors' equipment" of others that are described on the "equipment schedule".

Miscellaneous Tools and Equipment that exceed the value limitation shown on the "schedule of coverages" must be specifically scheduled.

2. **Schedule On File** --

a. **Coverage** -- "We" cover direct physical loss caused by a covered peril to:

1) "your" "contractors' equipment"; and

2) "contractors' equipment" of others in "your" care, custody, or control.

b. **Coverage Limitation** -- "We" only cover "your" "contractors' equipment" and "contractors' equipment" of others:

1) that are listed in a schedule which "you" must submit to "us" and "we" keep on file, the schedule must contain a description of each item to be covered and a "limit" for each item; and

2) when Schedule on File is indicated on the "schedule of coverages".

## PROPERTY NOT COVERED

1. **Aircraft Or Watercraft** -- "We" do not cover aircraft or watercraft.

2. **Contraband** -- "We" do not cover contraband or property in the course of illegal transportation or trade.

3. **Leased Or Rented Property** -- "We" do not cover property that "you" lease or rent to others.

West Bend Mutual Insurance Company
West Bend, Wisconsin 53095
Contains material copyrighted by AAIS, with its permission.
Copyright, American Association of Insurance Services, Inc., 2004

Case 3:25-cv-00593 Document 1-1 Filed 05/29/25 Page 156 of 261 PageID #: 161

4. **Loaned Property** -- "We" do not cover property that "you" loan to others.

5. **Underground Mining Operations** -- "We" do not cover property while stored or operated underground in connection with any mining operations.

6. **Underground Property** - "We" do not cover property that is underground, in caissons, or underwater.

7. **Vehicles** -- "We" do not cover automobiles, motor trucks, tractors, trailers, and similar conveyances designed for highway use and used for over the road transportation of people or cargo. However, this does not include:

   a. self-propelled vehicles designed and used primarily to carry mounted equipment; or

   b. vehicles designed for highway use that are unlicensed and not operated on public roads.

8. **Waterborne Property** -- "We" do not cover property while waterborne except while in transit in the custody of a carrier for hire.

# COVERAGE EXTENSIONS

**Provisions That Apply To Coverage Extensions** -- The following Coverage Extensions indicate an applicable "limit".

Unless otherwise indicated, the coverages provided below are part of and not in addition to the applicable "limit" for coverage described under Property Covered.

The "limit" provided under a Coverage Extension cannot be combined or added to the "limit" for any other Coverage Extension or Supplemental Coverage including a Coverage Extension or Supplemental Coverage that is added to this policy by endorsement.

If coinsurance provisions are part of this policy, the following coverage extensions are not subject to and not considered in applying coinsurance conditions.

1. **Debris Removal** --

   a. **Coverage** -- "We" pay the cost to remove the debris of covered property that is caused by a covered peril.

   b. **We Do Not Cover** -- This coverage does not include costs to:

      1) extract "pollutants" from land or water; or
      2) remove, restore, or replace polluted land or water.

   c. **Limit** -- "We" do not pay any more under this coverage than 25% of the amount "we" pay for the direct physical loss. "We" will not pay more for loss to property and debris removal combined than the "limit" for the damaged property.

   d. **Additional Limit** -- "We" pay up to an additional $5,000 for debris removal expense when the debris removal expense exceeds 25% of the amount "we" pay for direct physical loss or when the loss to property and debris removal combined exceeds the "limit" for the damaged property.

   e. **You Must Report Your Expenses** -- "We" do not pay any expenses unless they are reported to "us" in writing within 180 days from the date of direct physical loss to covered property.

2. **Fraud and Deceit** --

   a. **Coverage** -- "We" cover theft of covered property when "you", "your" agents, customers, or consignees are fraudulently induced to part with the covered property:

      1) to persons who falsely represent them selves as the proper persons to receive the property;
      2) by the acceptance of fraudulent bills or lading or shipping receipts; or
      3) as a result of or directly related to the use of any electronic data processing hardware or software.

   b. **Limit** -- The most "we" pay in any one occurrence for theft resulting from fraud and deceit is $5,000.

West Bend Mutual Insurance Company
West Bend, Wisconsin 53095
Contains material copyrighted by AAIS, with its permission.
Copyright, American Association of Insurance Services, Inc., 2004

Case 2:24-cv-00593-DJC-JDP    Document 52-1    Filed 05/29/25    Page 157 of 261    Page ID #:162

# SUPPLEMENTAL COVERAGES

**Provisions That Apply To Supplemental Coverages** -- The following Supplemental Coverages indicate an applicable "limit". This "limit" may also be shown on the "schedule of coverages".

If a different "limit" is indicated on the "schedule of coverages", that "limit" will apply instead of the "limit" shown below.

However, if no "limit" is indicated for a Supplemental Coverage, coverage is provided up to the full "limit" for the applicable covered property unless a different "limit" is indicated on the "schedule of coverages".

Unless otherwise indicated, a "limit" for a Supplemental Coverage provided below is separate from, and not part of, the applicable "limit" for coverage described under Property Covered.

The "limit" available for coverage described under a Supplemental Coverage:

a. is the only "limit" available for the described coverage; and

b. is not the sum of the "limit" indicated for a Supplemental Coverage and the "limit" for coverage described under Property Covered.

The "limit" provided under a Supplemental Coverage cannot be combined or added to the "limit" for any other Supplemental Coverage or Coverage Extension including a Supplemental Coverage or Coverage Extension that is added to this policy by endorsement.

If coinsurance provisions are part of this policy, the following supplemental coverages are not subject to and not considered in applying coinsurance conditions.

1. **Construction Trailers --**

   a. **Coverage** -- "We" cover direct physical loss caused by a covered period to "construction trailers" and the contents within the trailers.

   b. **Coverage Limitation** -- "We" only cover "construction trailers" and the contents within the trailers while the trailers are:

      1) at a "jobsite";
      2) in storage; or
      3) in transit between a "jobsite" and storage.

   c. **Limit** -- The most "we" pay in any one occurrence for any one "construction trailer" and the contents in the trailer is $10,000.

      The most "we" pay for loss in any one occurrence for all "construction trailers" and the contents in the trailers is $50,000.

2. **Employee Tools --**

   a. **Coverage** -- "We" cover direct physical loss caused by a covered peril to tools owned by "your" employees.

   b. **Coverage Limitation** -- "We" only cover tools owned by "your" employees while in "your" care, custody, or control.

   c. **Limit** -- The most "we" pay in any one occurrence for loss to employee tools is $5,000, not to exceed $1,000 per item.

3. **Equipment Borrowed, Leased, Or Rented From Others --**

   a. **Coverage** -- "We" cover direct physical loss caused by a covered peril to "contractors' equipment" that "you" have borrowed, leased or rented from others.

   b. **Limit** -- The most "we" pay in any one occurrence for equipment borrowed, leased, or rented from others is $25,000.

4. **Fire Department Service Charges --**

   a. **Coverage** -- "We" cover "your" liability, assumed by contract or agreement prior to the loss, for fire department service charges. No deductible applies to this Supplemental Coverage.

West Bend Mutual Insurance Company
West Bend, Wisconsin 53095
Contains material copyrighted by AAIS, with its permission.
Copyright, American Association of Insurance Services, Inc. 2004

Case 3:25-cv-00593 Document 1-1 Filed 05/29/25 Page 158 of 261 PageID #: 163

b. **Coverage Limitations** -- "We" only pay for:

   1) fire department service charges that relate to covered property at "jobsites"; and
   2) charges incurred when the fire department is called to save or protect covered property from a covered peril.

c. **Limit** -- The most "we" pay in any one occurrence for "your" liability for fire department service charges is $1,000.

5. **Newly Purchased Property** --

a. **Coverage** -- "We" cover direct physical loss caused by a covered peril to additional "contractors' equipment" that "you" purchase during the policy period.

b. **Limit** -- The most that "we" pay for any loss under this supplemental coverage is the least of the:

   1) actual cash value of the covered property; or
   2) "limit" for newly purchased property indicated on the "schedule of coverages". If no "limit" is indicated, then 30% of the Catastrophe Limit indicated on the "schedule of coverages" applies to this coverage.

c. **Time Limitation** -- "We" extend coverage to the additional "contractors' equipment" that "you" purchase for up to 60 days.

   This supplemental coverage will end when any of the following first occur:

   1) this policy expires;
   2) 60 days after "you" obtain the additional "contractors' equipment"; or
   3) "you" report the additional "contractors' equipment" to "us".

d. **Additional Premium** -- "You" must pay any additional premium due from the date "you" purchase the additional "contractors' equipment".

6. **Pollutant Cleanup And Removal** --

a. **Coverage** -- "We" pay "your" expense to extract "pollutants" from land or water if the discharge, dispersal, seepage, migration, release, or escape of the "pollutants" is caused by a covered peril that occurs during the policy period.

b. **Time Limitation** -- The expenses to extract "pollutants" are paid only if they are reported to "us" in writing within 180 days from the date the covered peril occurs.

c. **We Do Not Cover** -- "We" do not pay the cost of testing, evaluating, observing, or recording the existence, level, or effects of "pollutants".

   However, "we" pay the cost of testing which is necessary for the extraction of "pollutants" from land or water.

d. **Limit** -- The most "we" pay for each location is $25,000 for the sum of all such expenses arising out of a covered peril occurring during each separate 12-month period of this policy.

7. **Recharge Of Fire Extinguishing Equipment** --

a. **Coverage** -- "We" cover "your" incurred expenses to recharge automatic fire extinguishing equipment or handheld fire extinguishing equipment.

b. **Coverage Limitation** -- "We" only cover "your" recharge expenses:

   1) for extinguishing equipment that is mounted or installed on covered property; and
   2) when the extinguishing equipment is discharged to fight a fire or as a result of a covered peril.

c. **Limit** -- The most "we" pay in any one occurrence for "your" recharge expenses is $1,000.

West Bend Mutual Insurance Company
West Bend, Wisconsin 53095
Contains material copyrighted by AAIS, with its permission.
Copyright, American Association of Insurance Services, Inc., 2004

Case 2:23-cv-00593-DJA   Document 1   Filed 06/28/25   Page 159 of 261   Page ID #: 159   Exhibit 1, Page 154

8. **Rental Reimbursement** --

   a. **Coverage** -- In the event of a direct physical loss by a covered peril to "your" "contractors' equipment", "we" reimburse "you" for "your" expense to rent similar equipment while "your" equipment is inoperable.

   The deductible amount indicated on the "schedule of coverages" does not apply to a loss covered under this supplemental coverage.

   b. **Waiting Period** -- "We" will not reimburse "you" for the rental of equipment until after the first 72-hours following the direct physical loss to "your" "contractors' equipment" caused by a covered peril.

   c. **Incurred Rental Expenses** -- After the waiting period has passed, "we" will only reimburse "you" for the rental expenses that "you" actually incur.

   d. **Coverage After Expiration Date** -- "We" will continue to reimburse "you" for the rental of equipment after the expiration date of this coverage, provided the loss occurred before the expiration date.

   e. **Coverage Limitations** -- "We" will not reimburse "you":

     1) if "you" can continue or resume "your" operations with similar equipment that is available to "you" at no additional expense to "you"; or
     2) for the rental expense of any equipment unless "you" make every reasonable effort to repair, replace, or rebuild the inoperable equipment after the loss by a covered peril occurs.

   f. **Limit** -- The most "we" reimburse "you" in any one occurrence for rental expenses is $5,000.

9. **Reward For Recovery Of Stolen Equipment** --

   a. **Coverage** -- "We" pay a reward for information that leads to the recovery of covered property that was stolen. The recovery must involve a covered theft loss.

   b. **Coverage Limitation** -- The amount "we" pay is not increased by the number of persons involved in providing the information.

   c. **Limit** -- The most "we" pay in any one occurrence for a reward for information that leads to the recovery of property is $1,000.

10. **Spare Parts And Fuel** --

   a. **Coverage** -- "We" cover direct physical loss caused by a covered peril to:

     1) spare parts and accessories for "contractors' equipment"; and
     2) fluids for vehicles and "contractors' equipment"; fluids include gasoline, oil, and hydraulic fluid.

   b. **Limit** -- The most "we" pay in any one occurrence for loss to spare parts and accessories is $5,000.

## PERILS COVERED

"We" cover risks of direct physical loss unless the loss is limited or caused by a peril that is excluded.

## PERILS EXCLUDED

1. "We" do not pay for loss or damage caused directly or indirectly by one or more of the following excluded causes or events. Such loss or damage is excluded regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded causes or events.

West Bend Mutual Insurance Company
West Bend, Wisconsin 53095
Contains material copyrighted by AAIS, with its permission.
Copyright, American Association of Insurance Services, Inc., 2004

a. **Civil Authority** -- "We" do not pay for loss caused by order of any civil authority, including seizure, confiscation, destruction, or quarantine of property.

"We" do cover loss resulting from acts of destruction by the civil authority to prevent the spread of fire, unless the fire is caused by a peril excluded under this coverage.

b. **Nuclear Hazard** -- "We" do not pay for loss caused by or resulting from a nuclear reaction, nuclear radiation, or radioactive contamination (whether controlled or uncontrolled; whether caused by natural, accidental, or artificial means). Loss caused by nuclear hazard is not considered loss caused by fire, explosion, or smoke. Direct loss by fire resulting from the nuclear hazard is covered.

c. **War And Military Action** -- "We" do not pay for loss caused by:

1) war, including undeclared war or civil war; or
2) a warlike action by a military force, including action taken to prevent or defend against an actual or expected attack, by any government, sovereign, or other authority using military personnel or other agents; or
3) insurrection, rebellion, revolution, or unlawful seizure of power including action taken by governmental authority to prevent or defend against any of these.

With regard to any action that comes within the "terms" of this exclusion and involves nuclear reaction, nuclear radiation, or radioactive contamination, this War and Military Action Exclusion will apply in place of the Nuclear Hazard Exclusion.

2. "We" do not pay for loss or damage that is caused by or results from one or more of the following:

a. **Contamination or Deterioration** -- "We" do not pay for loss caused by contamination or deterioration including corrosion, decay, fungus, mildew, mold, rot, rust, or any quality, fault, or weakness in the covered property that causes it to damage or destroy itself.

But if contamination or deterioration results in a covered peril, "we" do cover the loss or damage caused by that covered peril.

b. **Criminal, Fraudulent, Dishonest Or Illegal Acts** -- "We" do not pay for loss caused by or resulting from criminal, fraudulent, dishonest, or illegal acts committed alone or in collusion with another by:

1) "you";
2) others who have an interest in the property;
3) others to whom "you" entrust the property;
4) "your" partners, officers, directors, trustees, joint venturers, or "your" members or managers if "you" are a limited liability company; or
5) the employees or agents of 1), 2), 3), or 4) above, whether or not they are at work.

This exclusion does not apply to acts of destruction by "your" employees, but "we" do not pay for theft by employees.

This exclusion does not apply to covered property in the custody of a carrier for hire.

c. **Loss Of Use** -- "We" do not pay for loss caused by or resulting from loss of use, delay, or loss of market.

d. **Mechanical Breakdown** -- "We" do not pay for loss caused by any mechanical, structural, or electrical breakdown or malfunction including a breakdown or malfunction resulting from a structural, mechanical, or reconditioning process.

But if a mechanical, structural, or electrical breakdown or malfunction results in a covered peril, "we" do cover the loss or damage caused by that covered peril.

West Bend Mutual Insurance Company
West Bend, Wisconsin 53095
Contains material copyrighted by AAIS, with its permission.
Copyright, American Association of Insurance Services, Inc., 2004

Case 2:24-cv-00593-DJA Document 62-11 Filed 05/29/25 Page 161 of 261 Page ID #:766

e. **Missing Property** -- "We" do not pay for missing property where the only proof of loss is unexplained or mysterious disappearance of covered property, or shortage of property discovered on taking inventory, or any other instance where there is no physical evidence to show what happened to the covered property.

This exclusion does not apply to covered property in the custody of a carrier for hire.

f. **Pollutants** -- "We" do not pay for loss caused by or resulting from release, discharge, seepage, migration, dispersal, or escape of "pollutants":

1) unless the release, discharge, seepage, migration, dispersal, or escape is caused by a "specified peril"; or

2) except as specifically provided under the Supplemental Coverages - Pollutant Cleanup and Removal.

"We" do cover any resulting loss caused by a "specified peril".

g. **Temperature/Humidity** -- "We" do not pay for loss caused by dryness, dampness, humidity, or changes in or extremes of temperature.

But if dryness, dampness, humidity, or changes in or extremes of temperature results in a covered peril, "we" do cover the loss or damage caused by that covered peril.

h. **Voluntary Parting** -- "We" do not pay for loss caused by or resulting from voluntary parting with title to or possession of any property because of any fraudulent scheme, trick, or false pretense.

i. **Wear And Tear** -- "We" do not pay for loss caused by wear and tear, marring, or scratching.

But if wear and tear, marring, or scratching results in a covered peril, "we" do cover the loss or damage caused by that covered peril.

j. **Weight of Load** -- "We" do not pay for loss caused by the weight of a load which, under the operating conditions at the time of a loss, exceeds the registered lifting capacity of the equipment.

---

# WHAT MUST BE DONE IN CASE OF LOSS

---

1. **Notice** -- In case of a loss, "you" must:

a. give "us" or "our" agent prompt notice including a description of the property involved ("we" may request written notice); and

b. give notice to the police when the act that causes the loss is a crime.

2. **You Must Protect Property** -- "You" must take all reasonable steps to protect covered property at and after an insured loss to avoid further loss.

a. **Payment of Reasonable Costs** -- "We" do pay the reasonable costs incurred by "you" for necessary repairs or emergency measures performed solely to protect covered property from further damage by a peril insured against if a peril insured against has already caused a loss to covered property. "You" must keep an accurate record of such costs. "Our" payment of reasonable costs does not increase the "limit".

b. **We Do Not Pay** -- "We" do not pay for such repairs or emergency measures performed on property which has not been damaged by a peril insured against.

3. **Proof Of Loss** -- "You" must send "us", within 60 days after "our" request, a signed, sworn proof of loss. This must include the following information:

West Bend Mutual Insurance Company
West Bend, Wisconsin 53095
Contains material copyrighted by AAIS, with its permission.
Copyright, American Association of Insurance Services, Inc. 2004

Case 3:25-cv-00593 Document 1 Filed 05/29/25 Page 162 of 261 PageID #: 167

a. the time, place, and circumstances of the loss;

b. other policies of insurance that may cover the loss;

c. "your" interest and the interests of all others in the property involved, including all mortgages and liens;

d. changes in title of the covered property during the policy period; and

e. estimates, specifications, inventories, and other reasonable information that "we" may require to settle the loss.

4. **Examination** -- "You" must submit to examination under oath in matters connected with the loss as often as "we" reasonably request and give "us" sworn statements of the answers. If more than one person is examined, "we" have the right to examine and receive statements separately and not in the presence of others.

5. **Records** -- "You" must produce records, including tax returns and bank microfilms of all canceled checks relating to value, loss, and expense and permit copies and extracts to be made of them as often as "we" reasonably request.

6. **Damaged Property** -- "You" must exhibit the damaged and undamaged property as often as "we" reasonably request and allow "us" to inspect or take samples of the property.

7. **Volunteer Payments** -- "You" must not, except at "your" own expense, voluntarily make any payments, assume any obligations, pay or offer any rewards, or incur any other expenses except as respects protecting property from further damage.

8. **Abandonment** -- "You" may not abandon the property to "us" without "our" written consent.

9. **Cooperation** -- "You" must cooperate with "us" in performing all acts required by this policy.

---

## VALUATION

1. **Actual Cash Value** -- The value of covered property will be based on the actual cash value at the time of the loss (with a deduction for depreciation) unless replacement cost is indicated on the "schedule of coverages".

   Miscellaneous Tools and Equipment that exceed the value limitation shown on the "schedule of coverages" will be adjusted on an actual cash value basis, subject to the maximum limit shown on the "schedule of coverages.

2. **Replacement Cost** -- The value of covered property will be based on the replacement cost without any deduction for depreciation unless Actual Cash Value is indicated on the "schedule of coverages".

   a. **Replacement Cost Limitation** -- The replacement cost is limited to the cost of repair or replacement with similar equipment and used for the same purpose. The payment will not exceed the amount "you" spend to repair or replace the damaged or destroyed property.

   b. **Replacement Cost Does Not Apply To Property of Others** -- Replacement cost valuation does not apply to property of others.

   c. **Replacement Cost Does Not Apply Without Model Year** -- Replacement cost valuation does not apply to scheduled equipment where no model year is specified, unless a valid serial number has been provided.

   d. **Replacement Cost Does Not Apply Until Repair Or Replacement** -- Replacement cost valuation does not apply until the damaged or destroyed property is repaired or replaced.

   e. **Time Limitation** -- "You" may make a claim for actual cash value before repair or replacement takes place, and later for the replacement cost if "you" notify "us" of "your" intent within 180 days after the loss.

West Bend Mutual Insurance Company
West Bend, Wisconsin 53095
Contains material copyrighted by AAIS, with its permission.
Copyright, American Association of Insurance Services, Inc., 2004

Case 2:23-cv-00593   Document 1-3   Filed 05/28/25   Page 163 of 261   Page ID #:168

3. **Pair Or Set** -- The value of a lost or damaged article which is part of a pair or set is based on a reasonable proportion of the value of the entire pair or set. The loss is not considered a total loss of the pair or set.

4. **Loss To Parts** -- The value of a lost or damaged part of an item that consists of several parts when it is complete is based on the value of only the lost or damaged part or the cost to repair or replace it.

# HOW MUCH WE PAY

1. **Insurable Interest** -- "We" do not cover more than "your" insurable interest in any property.

2. **Deductible** -- "We" pay only that part of "your" loss over the deductible amount indicated on the "schedule of coverages" in any one occurrence.

3. **Loss Settlement Terms** -- Subject to paragraphs 1., 2., 4., 5., and 6. under How Much We Pay, "we" pay the lesser of:

   a. the amount determined under Valuation;

   b. the cost to repair, replace, or rebuild the property with material of like kind and quality to the extent practicable; or

   c. the "limit" that applies to the covered property. However, the most "we" pay for loss in any one occurrence is the Catastrophe Limit indicated on the "schedule of coverages".

4. **Coinsurance** --

   a. **When Coinsurance Applies** -- "We" only pay a part of the loss if the "limit" is less than the percentage of the value of the covered property that is indicated on the "schedule of coverages".

   b. **How We Determine Our Part Of The Loss** -- "Our" part of the loss is determined using the following steps:

      1) multiply the percent indicated on the "schedule of coverages" by the value of the covered property at the time of loss;
      2) divide the "limit" for covered property by the result determined in b.1) above;
      3) multiply the total amount of loss, after the application of any deductible, by the result determined in b.2) above.

   The most "we" pay is the amount determined in b.3) above or the "limit", whichever is less. "We" do not pay any remaining part of the loss.

   c. **If There Is More Than One Limit** -- If there is more than one "limit" indicated on the "schedule of coverages" for this coverage part, this procedure applies separately to each "limit".

   d. **If There Is Only One Limit** -- If there is only one "limit" indicated on the "schedule of coverages" for this coverage, this procedure applies to the total of all covered property to which the "limit" applies.

5. **Insurance Under More Than One Coverage** -- If more than one coverage of this policy insures the same loss, "we" pay no more than the actual claim, loss, or damage sustained.

6. **Insurance Under More Than One Policy** --

   a. **Proportional Share** -- "You" may have another policy subject to the same "terms" as this policy. If "you" do, "we" will pay "our" share of the covered loss. "Our" share is the proportion that the applicable "limit" under this policy bears to the "limit" of all policies covering on the same basis.

   b. **Excess Amount** -- If there is another policy covering the same loss, other than that described above, "we" pay only for the amount of covered loss in excess of the amount due from that other policy, whether "you" can collect on it or not. But "we" do not pay more than the applicable "limit".

West Bend Mutual Insurance Company
West Bend, Wisconsin 53095
Contains material copyrighted by AAIS, with its permission.
Copyright, American Association of Insurance Services, Inc., 2004

Case 3:25-cv-00593   Document 1-1   Filed 05/29/25   Page 164 of 261   PageID #: 169

## LOSS PAYMENT

1. **Loss Payment Options --**

   a. **Our Options** -- In the event of loss covered by this coverage form, "we" have the following options:

   1) pay the value of the lost or damaged property;
   2) pay the cost of repairing or replacing the lost or damaged property;
   3) rebuild, repair, or replace the property with other property of equivalent kind and quality, to the extent practicable, within a reasonable time; or
   4) take all or any part of the property at the agreed or appraised value.

   b. **Notice Of Our Intent To Rebuild, Repair, Or Replace** -- "We" must give "you" notice of "our" intent to rebuild, repair, or replace within 30 days after receipt of a duly executed proof of loss.

2. **Your Losses --**

   a. **Adjustment And Payment Of Loss** -- "We" adjust all losses with "you". Payment will be made to "you" unless another loss payee is named in the policy.

   b. **Conditions For Payment Of Loss** -- An insured loss will be payable 30 days after:

   1) a satisfactory proof of loss is received, and
   2) the amount of the loss has been established either by written agreement with "you" or the filing of an appraisal award with "us".

3. **Property Of Others --**

   a. **Adjustment And Payment of Loss To Property of Others** -- Losses to property of others may be adjusted with and paid to:

   1) "you" on behalf of the owner; or
   2) the owner.

   b. **We Do Not Have To Pay You If We Pay The Owner** -- If "we" pay the owner, "we" do not have to pay "you". "We" may also choose to defend any suits brought by the owners at "our" expense.

## OTHER CONDITIONS

1. **Appraisal** -- If "you" and "we" do not agree on the amount of the loss or the value of covered property, either party may demand that these amounts be determined by appraisal.

   If either makes a written demand for appraisal, each will select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers will then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, "you" or "we" can ask a judge of a court of record in the state where the property is located to select an umpire.

   The appraisers will then determine and state separately the amount of each loss.

   The appraisers will also determine the value of covered property items at the time of the loss, if requested.

   If the appraisers submit a written report of any agreement to "us", the amount agreed upon will be the amount of the loss. If the appraisers fail to agree within a reasonable time, they will submit only their differences to the umpire. Written agreement so itemized and signed by any two of these three, sets the amount of the loss.

   Each appraiser will be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire will be paid equally by "you" and "us".

2. **Benefit to Others** -- Insurance under this coverage will not directly or indirectly benefit anyone having custody of "your" property.

3. **Conformity With Statute** -- When a condition of this coverage is in conflict with an applicable law, that condition is amended to conform to that law.

West Bend Mutual Insurance Company
West Bend, Wisconsin 53095
Contains material copyrighted by AAIS, with its permission.
Copyright, American Association of Insurance Services, Inc., 2004

Case 2:24-cv-00593-JPS   Filed 06/20/25   Page 165 of 261   Document 170

4. **Estates** -- This provision applies only if the insured is an individual.

   a. **Your Death** -- On "your" death, "we" cover the following as an insured:

      1) the person who has custody of "your" property until a legal representative is qualified and appointed; or
      2) "your" legal representative.

      This person or organization is an insured only with respect to property covered by this coverage.

   b. **Policy Period Is Not Extended** -- This coverage does not extend past the policy period indicated on the declarations.

5. **Liberalization** --If a revision of a form or endorsement which would broaden this coverage without an additional premium is adopted during the policy period or within six months before this coverage is effective, the broadened coverage will apply.

6. **Misrepresentation, Concealment, Or Fraud** -- This coverage is void as to "you" and any other insured if, before or after a loss:

   a. "you" or any other insured have willfully concealed or misrepresented:

      1) a material fact or circumstance that relates to this insurance or the subject thereof; or
      2) "your" interest herein.

   b. there has been fraud or false swearing by "you" or any other insured with regard to a matter that relates to this insurance or the subject thereof.

7. **Policy Period** -- "We" pay for a covered loss that occurs during the policy period.

8. **Recoveries** -- If "we" pay "you" for the loss and lost or damaged property is recovered, or payment is made by those responsible for the loss, the following provisions apply:

   a. "you" must notify "us" promptly if "you" recover property or receive payment;

   b. "we" must notify "you" promptly if "we" recover property or receive payment;

   c. any recovery expenses incurred by either are reimbursed first;

   d. "you" may keep the recovered property but "you" must refund to "us" the amount of the claim paid or any lesser amount to which "we" agree; and

   e. if the claim paid is less than the agreed loss due to a deductible or other limiting "terms" of this policy, any recovery will be pro rated between "you" and "us" based on "our" respective interest in the loss.

9. **Restoration Of Limits** -- A loss "we" pay under this coverage does not reduce the applicable "limit" unless it is a total loss to a scheduled item. In the event of a total loss to a scheduled item, "we" refund the unearned premium on that item.

10. **Subrogation** -- If "we" pay for a loss, "we" may require "you" to assign to "us" "your" right of recovery against others. "You" must do all that is necessary to secure "our" rights. "We" do not pay for a loss if "you" impair this right to recover.

   "You" may waive "your" right to recover from others in writing before a loss occurs.

11. **Suit Against Us** -- No one may bring a legal action against "us" under this coverage unless:

   a. all of the "terms" of this coverage have been complied with; and

   b. the suit has been brought within two years after "you" first have knowledge of the loss.

      If any applicable law makes this limitation invalid, then suit must begin within the shortest period permitted by law.

12. **Territorial Limits** -- "We" cover property while it is in the United States of America, its territories and possessions, Canada, and Puerto Rico.

West Bend Mutual Insurance Company
West Bend, Wisconsin 53095
Contains material copyrighted by AAIS, with its permission.
Copyright, American Association of Insurance Services, Inc., 2004

# COMMON POLICY CONDITIONS

1. **Assignment –** This policy may not be assigned without "our" written consent.

2. **Cancellation –** "You" may cancel this policy by returning the policy to "us" or by giving "us" written notice and stating at what future date coverage is to stop.

   "We" may cancel this policy, or one or more of its parts, by written notice sent to "you" at "your" last mailing address known to "us". If notice of cancellation is mailed, proof of mailing will be sufficient proof of notice.

   If "we" cancel this policy for nonpayment of premium, "we" will give "you" notice at least ten days before the cancellation is effective. If "we" cancel this policy for any other reason, "we" will give "you" notice at least 30 days in advance of cancellation. The notice will state the time that the cancellation is to take effect.

   "Your" return premium, if any, will be calculated according to "our" rules. It will be refunded to "you" with the cancellation notice or within a reasonable time. Payment or tender of the unearned premium is not a condition of cancellation.

3. **Change, Modification, or Waiver of Policy Terms –** A waiver or change of the "terms" of this policy must be issued by "us" in writing to be valid.

4. **Inspections –** "We" have the right, but are not obligated, to inspect "your" property and operations at any time. This inspection may be made by "us" or may be made on "our" behalf. An inspection or its resulting advice or report does not warrant that "your" property or operations are safe, healthful, or in compliance with laws, rules, or regulations. Inspections or reports are for "our" benefit only.

5. **Examination of Books and Records –** "We" may examine and audit "your" books and records that relate to this policy during the policy period and within three years after the policy has expired.

Copyright, American Association of Insurance Services, 1995

Case 3:25-cv-00593    Document 1-1    Filed 05/29/25    Page 167 of 261 PageID #: 172

**This endorsement changes the policy.**
**PLEASE READ THIS CAREFULLY.**

# CERTIFIED TERRORISM LOSS

1. The following definitions are added.

   a. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security, and the Attorney General of the United States:

      1) to be an act of terrorism;

      2) to be a violent act or an act that is dangerous to human life, property, or infrastructure;

      3) to have resulted in damage:

         a) within the United States; or

         b) to an air carrier (as defined in section 40102 of title 49, United States Code); to a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs; or at the premises of any United States mission;

      4) to have been committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion; and

      5) to have resulted in insured losses in excess of five million dollars in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act, as amended.

   b. "Certified terrorism loss" means loss that results from a "certified act of terrorism".

2. The "terms" of any terrorism exclusion that is part of or that is attached to this Coverage Part are amended by the following provision:

This exclusion does not apply to "certified terrorism loss".

3. The following provision is added:

If the Secretary of the Treasury determines that the aggregate amount of "certified terrorism loss" has exceeded one hundred billion dollars in a calendar year (January 1 through December 31), and "we" have met "our" insurer deductible under the Terrorism Risk Insurance Act, as amended, "we" will not pay for any portion of "certified terrorism loss" that exceeds one hundred billion dollars. If the "certified terrorism loss" exceeds one hundred billion dollars in a calendar year (January 1 through December 31), losses up to one hundred billion dollars are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury under the Terrorism Risk Insurance Act, as amended.

4. The following provisions are added.

   a. Neither the "terms" of this endorsement nor the "terms" of any other terrorism endorsement attached to this Coverage Part provide coverage for any loss that would otherwise be excluded by this Coverage Part under:

      1) exclusions that address war, military action, or nuclear hazard; or

      2) any other exclusion; and

   b. the absence of any other terrorism endorsement does not imply coverage for any loss that would otherwise be excluded by this Coverage Part under:

      1) exclusions that address war, military action, or nuclear hazard; or

      2) any other exclusion.

Copyright, American Association of Insurance Services, Inc., 2015

**This endorsement changes the policy.**
**PLEASE READ THIS CAREFULLY.**

# VIRUS OR BACTERIA EXCLUSION

## DEFINITIONS

**Definitions Amended** --

When "fungus" is a defined "term", the definition of "fungus" is amended to delete reference to a bacterium.

When "fungus or related perils" is a defined "term", the definition of "fungus or related perils" is amended to delete reference to a bacterium.

## PERILS EXCLUDED

The additional exclusion set forth below applies to all coverages, coverage extensions, supplemental coverages, optional coverages, and endorsements that are provided by the policy to which this endorsement is attached, including, but not limited to, those that provide coverage for property, earnings, extra expense, or interruption by civil authority.

**1.** The following exclusion is added under Perils Excluded, item 1.:

**Virus or Bacteria –**

"We" do not pay for loss, cost, or expense caused by, resulting from, or relating to any virus, bacterium, or other microorganism that causes disease, illness, or physical distress or that is capable of causing disease, illness, or physical distress.

This exclusion applies to, but is not limited to, any loss, cost, or expense as a result of:

**a.** any contamination by any virus, bacterium, or other microorganism; or

**b.** any denial of access to property because of any virus, bacterium, or other microorganism.

**2. Superseded Exclusions --** The Virus or Bacteria exclusion set forth by this endorsement supersedes the "terms" of any other exclusions referring to "pollutants" or to contamination with respect to any loss, cost, or expense caused by, resulting from, or relating to any virus, bacterium, or other microorganism that causes disease, illness, or physical distress or that is capable of causing disease, illness, or physical distress.

## OTHER CONDITIONS

**Other Terms Remain in Effect** --

The "terms" of this endorsement, whether or not applicable to any loss, cost, or expense, cannot be construed to provide coverage for a loss, cost, or expense that would otherwise be excluded under the policy to which this endorsement is attached.

Copyright, American Association of Insurance Services, Inc., 2006

Case 3:25-cv-00583   Document 1-1   Filed 05/29/25   Page 169 of 261 PageID #: 174

This endorsement changes
the Inland Marine Coverage
**-- PLEASE READ THIS CAREFULLY --**

# LOSS PAYABLE OPTIONS

If indicated on the Loss Payable Schedule, the following conditions apply to the property described on the schedule. The following conditions apply in addition to the policy "terms" which are contained in the Inland Marine Coverage(s).

## LOSS PAYABLE

Any loss will be adjusted with "you" and will be payable to "you" and the loss payee described on the schedule as "your" and their interests appear.

## LENDER'S LOSS PAYABLE

Any loss will be payable to "you" and the loss payee described on the schedule as interests appear. If more than one loss payee is named, they will be paid in order of precedence.

The insurance for the loss payee continues in effect even when "your" insurance may be void because of "your" acts, neglect, or failure to comply with the coverage "terms". The insurance for the loss payee does not continue in effect if the loss payee is aware of changes in ownership or substantial increase in risk and does not notify "us".

If "we" cancel this policy, "we" notify the loss payee at least ten days before the effective date of cancellation if "we" cancel for "your" nonpayment of premium, or 30 days before the effective date of cancellation if "we" cancel for any other reason.

"We" may request payment of the premium from the loss payee, if "you" fail to pay the premium.

If "we" pay the loss payee for a loss where "your" insurance may be void, the loss payee's right to collect that portion of the debt from "you" then belongs to "us". This does not affect the loss payee's right to collect the remainder of the debt from "you". As an alternative, "we" may pay the loss payee the remaining principal and accrued interest in return for a full assignment of the loss payee's interest and any instruments given as security for the debt.

If "we" choose not to renew this policy, "we" give written notice to the loss payee at least ten days before the expiration date of this policy.

## CONTRACT OF SALE

Any loss will be adjusted with "you" and will be payable to "you" and the loss payee described on the schedule as "your" and their interests appear.

The loss payee shown on the schedule is a person or organization "you" have entered into a contract with for the sale of covered property.

When covered property is the subject of a contract of sale, the word "you" also means the loss payee.

IM 7854 04 04          Copyright, American Association of Insurance Services, Inc., 2004          Page A of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTAIN COMPUTER-RELATED LOSSES

This endorsement modifies insurance provided under the following:

COMMERCIAL INLAND MARINE COVERAGE PART

**A.** We will not pay for loss or damage caused directly or indirectly by the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage.

  **1.** The failure, malfunction or inadequacy of:

    **a.** Any of the following, whether belonging to any insured or to others:

      **(1)** Computer hardware, including microprocessors;

      **(2)** Computer application software;

      **(3)** Computer operating systems and related software;

      **(4)** Computer networks;

      **(5)** Microprocessors (computer chips) not part of any computer system; or

      **(6)** Any other computerized or electronic equipment or components; or

    **b.** Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph **A.1.a.** of this endorsement;

    due to the inability to correctly recognize, process, distinguish, interpret or accept one or more dates or times. An example is the inability of computer software to recognize the year 2000.

  **2.** Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph **A.1.** of this endorsement.

**B.** If an excluded cause of loss as described in Paragraph **A.** of this endorsement results in a covered cause of loss under the Commercial Inland Marine Coverage Part, we will pay only for the loss or damage caused by such covered cause of loss.

**C.** We will not pay for repair, replacement or modification of any items in Paragraphs **A.1.a.** and **A.1.b.** of this endorsement to correct any deficiencies or change any features.

Contains material copyrighted by ISO, with its permission.

Case 3:25-cv-00593    Document 1-1    Filed 05/30/25    Page 171 of 261    EXHIBIT 1-A 176

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL INLAND MARINE COVERAGE PART

### SCHEDULE

| **Name of Person or Organization** |
| Allegiant Partners, Inc ISAOA |

| **Address** |
| 123 SW Columbia St, Bend, OR  97702-3608 |

| **Interest** |
| 2021 Bandit Stump Grinder, SN 515590 |

| **Location of Designated Premises** |
| Location 1 |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The following is added to the LOSS PAYMENT Loss Condition:

For Covered Property in which both you and an Additional Insured shown in the Schedule or in the Declarations have an insurable interest, we will:

**1.**  Adjust losses with you; and

**2.**  Pay any claim for loss or damage jointly to you and the Additional Insured, as interests may appear.

Case 3:25-cv-00593     Document 1     West Bend, Wisconsin 53095  Page 172 of 261     Exhibit 17

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL INLAND MARINE COVERAGE PART

**SCHEDULE**

| **Name of Person or Organization** |
| --- |
| Buckeye Rental & Equipment, LLC |

| **Address** |
| --- |
| 4105 State Route 229, Marengo, OH  43334-9401 |

| **Interest** |
| --- |
|  |

| **Location of Designated Premises** |
| --- |
| Location 1 |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The following is added to the LOSS PAYMENT Loss Condition:

For Covered Property in which both you and an Additional Insured shown in the Schedule or in the Declarations have an insurable interest, we will:

**1.** Adjust losses with you; and

**2.** Pay any claim for loss or damage jointly to you and the Additional Insured, as interests may appear.

**AAIS**
**CL 0118 01 01**
**Page 1 of 2**

This endorsement changes
the policy
**-- PLEASE READ THIS CAREFULLY --**

# AMENDATORY ENDORSEMENT
## TENNESSEE

1.  Under Common Policy Conditions, Cancellation is deleted and replaced by the following:

    **Cancellation or Nonrenewal** -- "You" may cancel this policy by returning the policy to "us" or by giving "us" a written notice and stating at what future date coverage is to stop.

    "We" may cancel or not renew this policy, or one or more of its parts, by written notice mailed or delivered to "you" and "your" agent at the addresses shown in the policy. The notice will state the reason for cancellation or nonrenewal and the time that the cancellation is to take effect. Proof of mailing will be sufficient proof of notice.

    If this policy has been in effect less than 60 days, "we" may cancel for any reason.

    If this policy has been in effect 60 days or more, or if it is a renewal of a policy issued by "us", "we" may cancel this policy only on its annual anniversary date unless one or more of the following reasons apply:

    a.  nonpayment of premium, including nonpayment of any additional premiums, calculated in accordance with "our" current rating manual, justified by a physical change in the insured property or a change in its occupancy or use;

    b.  "your" conviction of a crime having as one of its necessary elements an act increasing any hazard insured against;

    c.  discovery of fraud or material misrepresentation on the part of either of the following:

        1)  "you" or "your" representative in obtaining the insurance; or

        2)  "you" in pursuing a claim under the policy;

    d.  failure to comply with written loss control recommendations;

    e.  material change in the risk which increases the risk of loss after insurance coverage has been issued or renewed;

    f.  determination by the Commissioner that the continuation of the policy would jeopardize "our" solvency or would place "us" in violation of the insurance laws of this state or any other state;

    g.  "your" violation or breach of any policy "terms" or conditions; or

    h.  such other reasons that are approved by the Commissioner.

    If "we" cancel this policy, "we" will give "you" and "your" agent notice at least ten days before cancellation is effective.

    "Your" return premium, if any, will be calculated according to "our" rules. It will be refunded to "you" with the cancellation notice or within a reasonable time. Payment or tender of the unearned premium is not a condition of cancellation.

    If "we" decide not to renew this policy, "we" will give "you" and "your" agent notice at least 60 days before the expiration date of the policy.

    Notice of nonrenewal is not required if "we" have offered to issue a renewal policy, or "you" have obtained replacement coverage or have agreed in writing to obtain replacement coverage.

2. Under Common Policy Conditions, the following condition is added:

   **Renewal** -- If "we" decide to renew this policy subject to:

   a. an increase in premium rates or factors in excess of 25%; or

   b. reduction of "limits" or elimination of coverages;

   "we" will give notice stating the new "terms" at least 60 days prior to the expiration date. "Our" notice will be mailed or delivered to "you" at the address on the policy, and to "your" agent.

---

**CL 0118 01 01**

Copyright, American Association of Insurance Services, 2001

EXHIBIT A

ELECTRONICALLY FILED
2025 Mar 03 10:38 AM - 25CV-128
Adam T. Dodd, Clerk & Master

## IN THE CHANCERY COURT FOR RUTHERFORD COUNTY, TENNESSEE

CHRISTOPHER HOLLOWAY, individually,   )
BRIAN HOLLOWAY, individually and d/b/a   )
"Tree Solutions" a Tennessee Family Business,   )
  )
     Plaintiffs,   )
  )    Docket No. 25CV-128
v.   )
  )
WEST BEND INSURANCE COMPANY,   )
STATE FARM FIRE AND CASUALTY   )
COMPANY, and   )
GEICO ADVANTAGE INSURANCE COMPANY,)
  )
     Defendants.   )
  )
and   )
  )
GEICO ADVANTAGE INSURANCE   )
COMPANY,   )
  )
     Counter-Plaintiff,   )
  )
v.   )
  )
CHRISTOPHER HOLLOWAY and BRIAN   )
HOLLOWAY,   )
  )
     Counter-Defendants.   )

## ANSWER AND COUNTER-CLAIM OF GEICO ADVANTAGE INSURANCE COMPANY

Comes now, Defendant GEICO Advantage Insurance Company ("GEICO"), by and through

counsel, and responds to Plaintiffs' Complaint for Declaratory Judgment as follows:

1.1.    GEICO admits Plaintiff Christopher Holloway was its insured under Policy Number

4573-26-06-11 ("Policy") at the time of the subject loss but denies there is coverage

available under the Policy for the loss. GEICO is without knowledge or information

sufficient to form a belief as to the truth of the remaining averments of Paragraph 1.1.

1.2.     GEICO is without knowledge or information sufficient to form a belief as to the truth of the averments of Paragraph 1.2.

1.3.     GEICO is without knowledge or information sufficient to form a belief as to the truth of the averments of Paragraph 1.3.

1.4.     GEICO is without knowledge or information sufficient to form a belief as to the truth of the averments of Paragraph 1.4.

1.5.     GEICO admits the averments of Paragraph 1.5.

2.1.     GEICO admits the averments of Paragraph 2.1 upon information and belief.

2.2.     GEICO admits the averments of Paragraph 2.2 upon information and belief.

3.1.     GEICO is without knowledge or information sufficient to form a belief as to the truth of the averments of Paragraph 3.1.

3.2.     The averments of Paragraph 3.2 are not directed toward GEICO and, therefore, do not call for a response.  Out of an abundance of caution, and to avoid waiver, GEICO states it is without knowledge or information sufficient to form a belief as to the truth of the averments of Paragraph 3.2.

3.3.     The averments of Paragraph 3.3 are not directed toward GEICO and, therefore, do not call for a response.  Out of an abundance of caution, and to avoid waiver, GEICO states it is without knowledge or information sufficient to form a belief as to the truth of the averments of Paragraph 3.3.

3.4.     GEICO is without knowledge or information sufficient to form a belief as to the truth of the averments of Paragraph 3.4.

3.5.     The averments of Paragraph 3.5 are not directed toward GEICO and, therefore, do not call for a response.  Out of an abundance of caution, and to avoid waiver, GEICO

states it is without knowledge or information sufficient to form a belief as to the truth of the averments of Paragraph 3.5.

3.6.    GEICO is without knowledge or information sufficient to form a belief as to the truth of the averments of Paragraph 3.6.

3.7.    The averments of Paragraph 3.7 are not directed toward GEICO and, therefore, do not call for a response.  Out of an abundance of caution, and to avoid waiver, GEICO states it is without knowledge or information sufficient to form a belief as to the truth of the averments of Paragraph 3.7.

3.8.    GEICO admits the averments of the first sentence of Paragraph 3.8 upon information and belief.  GEICO is without knowledge or information sufficient to form a belief as to the truth of the remaining averments of Paragraph 3.8.

3.9.    GEICO admits it was notified of the subject claim and resulting lawsuit.  GEICO is without knowledge or information sufficient to form a belief as to the truth of the remaining averments of Paragraph 3.9.

3.10.   The averments of Paragraph 3.10 are not directed toward GEICO and, therefore, do not call for a response.  Out of an abundance of caution, and to avoid waiver, GEICO states it is without knowledge or information sufficient to form a belief as to the truth of the averments of Paragraph 3.10.

3.11.   GEICO denies the averments of Paragraph 3.11 as worded.

3.12.   The averments of Paragraph 3.12 are not directed toward GEICO and, therefore, do not call for a response.  Out of an abundance of caution, and to avoid waiver, GEICO states it is without knowledge or information sufficient to form a belief as to the truth of the averments of Paragraph 3.12.

3.13. Due to the vagueness of the averments of Paragraph 3.13, GEICO must deny the averments of Paragraph 3.13 as worded.

3.14. The averments of the first sentence of Paragraph 3.14 are not directed toward GEICO and, therefore, do not call for a response. Out of an abundance of caution, and to avoid waiver, GEICO states it is without knowledge or information sufficient to form a belief as to the truth of the averments of the first sentence of Paragraph 3.14. GEICO denies a "hope" to avoid coverage on its part and, therefore, denies the averments of the second sentence of Paragraph 3.14 as worded to the extent those averments are directed against GEICO. GEICO's denial of coverage is based on a fair and rational application of the Policy terms and conditions.

4.1. GEICO denies there is coverage for the subject loss under its Policy and, therefore, admits there is a controversy between GEICO and Plaintiffs. The remaining averments of Paragraph 4.1 are not directed toward GEICO and, therefore, do not call for a response. Out of an abundance of caution, and to avoid waiver, GEICO states it is without knowledge or information sufficient to form a belief as to the truth of the remaining averments of Paragraph 4.1.

4.2. The averments of Paragraph 4.2 do not call for an admission or denial. GEICO denies there is coverage available to Plaintiffs under its Policy.

4.3. The averments of Paragraph 4.3 do not call for an admission or denial. GEICO responds the authority conferred upon the Court by Tennessee's declaratory judgment statutes (T.C.A. §§ 29-14-101 et seq.) is self-explanatory.

4.4. GEICO denies any remaining averments not heretofore admitted or denied.

## AFFIRMATIVE DEFENSES

5.    GEICO asserts, pursuant to Tennessee Rule of Civil Procedure 12.02(6), Plaintiffs' Complaint for Declaratory Judgment fails to state a claim for relief as to GEICO. Plaintiffs' allegations against GEICO consist solely of self-serving conclusions and offer no explanation as to how the subject loss falls within the insuring agreement of the GEICO policy. Plaintiffs' Complaint should be dismissed accordingly.

6.  GEICO relies upon all the terms, conditions, provisions and limitations/exclusions of the policy of insurance sued upon by Plaintiffs, and further reserves the right to raise any and all policy defenses, policy violations or other breach of conditions of the policy which may now or hereafter be known to it, or which may now or hereafter exist, in bar of its alleged liability to Plaintiffs for the subject loss.

7.    Plaintiff Christopher Holloway is presumed, as a matter of law, to possess full knowledge of the subject policy provisions. Under the GEICO Policy, the subject vehicle involved in the incident described in the Complaint does not qualify as an "owned" or "non-owned" insured vehicle. Alternatively, even if the vehicle qualified as a "non-owned" vehicle, coverage is excluded because the vehicle does not qualify as a "private passenger auto" and the subject loss arises out of the business or occupation of the insured.

8.    Plaintiff Brian Holloway does not meet the definition of an insured under the GEICO Policy because the subject vehicle does not qualify as an "owned" or "non-owned" vehicle under the Policy, this Plaintiff is not a relative of the named insured within the meaning of the Policy definition and because this Plaintiff, in fact, owned the subject vehicle.

9.    Pursuant to its right to plead alternatively, GEICO avers, should it be determined Plaintiffs have coverage with GEICO for the subject loss, said coverage is limited to

$100,000 per person and $300,000 per occurrence. If other insurance is available to Plaintiffs, any amount owed by GEICO may be subject to credits or set-offs under the terms of coverage. Under no circumstances is GEICO responsible for any punitive or exemplary damages awarded against the Plaintiffs, pursuant to an exclusion in the Policy for same.

10. GEICO denies it has acted in bad faith and asserts Plaintiffs have not complied with the prerequisites for an award of bad faith damages under T.C.A. § 56-7-105. This claim should be dismissed for this reason alone.

11. To the extent the Court allows Plaintiffs to pursue extra-contractual damages under separate causes of action, Plaintiffs must make an election of remedies.

WHEREFORE, having fully answered Plaintiffs' Complaint for Declaratory Judgment, GEICO moves to dismiss said Complaint with costs taxed to Plaintiffs and for such other further and general relief this Court deems just and appropriate.

## COUNTER-CLAIM

Comes now Counter-Plaintiff, GEICO, by and through counsel, pursuant to T.C.A. §§ 29-14-101 et seq., and moves the Court for a declaratory judgment against Counter-Defendants Christopher Holloway and Brian Holloway establishing GEICO owes no duty to Counter-Defendants to defend or indemnify them for any cause of action arising out of an incident that occurred on or about October 10, 2024, in Rutherford County, Tennessee. In support of this Counter-Claim, GEICO would show as follows:

1. This Court is vested with the power to declare the rights and status of other legal relations between parties, pursuant to Tennessee's Declaratory Judgment Act. T.C.A. §§ 29-14-101 et seq.

2. Counter-Defendant Christopher Holloway is a citizen and resident of Wilson County,

Tennessee.  It is believed he currently resides and may be served at 5860 Weakley Lane, Mt. Juliet, Tennessee 37122, or through counsel in the underlying original Complaint.

3.      Counter-Defendant Brian Holloway is a citizen and resident of Wilson County, Tennessee.  It is believed he currently resides and may be served at 106 Clark Drive, Mt. Juliet, Tennessee 37122, or through counsel in the underlying original Complaint.

4.      Counter-Plaintiff GEICO is an insurance company formed in Nebraska with its principal place of business at 5260 Western Avenue, Chevy Chase, Maryland 20815.  It is licensed to do business in the State of Tennessee by the Department of Commerce and Insurance.

5.      On October 10, 2024, GEICO had in force a Tennessee Family Automobile Insurance Policy ("Policy") with Counter-Defendant Christopher Holloway.   A certified copy of the Declarations Page and Policy is attached hereto as Exhibit A.  The Policy term was June 19, 2024, through December 19, 2024.  The Policy was to remain in effect so long as the insured complied with the terms and conditions of coverage and/or the policy was not otherwise cancelled or voided.  Said Policy (Number 4573-26-06-11) insured a 2013 Ford F-350, a 2021 Honda Odyssey and a 2002 Chevrolet Silverado.

6.      On October 10, 2024, according to the Complaint, Counter-Defendant Christopher Holloway was operating a 2013 Freightliner M2 owned by Tree Solutions, a business owned by Counter-Defendant Brian Holloway and/or Tree Solutions, when he was involved in a collision with another vehicle.   (Complaint at ¶¶ 3.1, 3.6)  This collision occurred in Rutherford County, Tennessee.  It is averred, based upon information and belief, occupants in the other vehicle were injured and one occupant passed away because of his injuries.

7.      The 2013 Freightliner M2 was not a listed insured vehicle on the Policy.  It is averred, based upon information and belief, the 2013 Freightliner M2 was neither an "owned", nor a "non-

owned auto under the Policy and, thus, was not an unlisted but insured vehicle.

8.     The definition for "owned auto" can be found on Page 4, Number 6 of the Policy

(Definitions).  It reads as follows:

> **6. *Owned auto*** means:
> (a) A vehicle described in this policy for which a premium charge is shown for these coverages;
> (b) A ***trailer*** owned by ***you***;
> (c) A ***private passenger auto***, ***farm auto*** or ***utility auto*** ownership of which ***you*** acquire during the policy period or for which ***you*** enter into a lease during the policy period for a term of six months or more, if:
> (i) It replaces an ***owned auto*** as defined in (a) above; or
> (ii) We insure all ***private passenger autos***, ***farm autos*** and ***utility autos*** owned or leased by ***you*** on the date of the acquisition, and ***you*** ask us to add it to the policy no more than 30 days later;
> (d) A ***temporary substitute auto***.

In order for the 2013 Freightliner M2 to qualify as an "owned auto" it would have to meet the

definition of a "temporary substitute auto" because Counter-Defendant Christopher Holloway had

neither acquired nor leased the vehicle during the policy period.  The vehicle was owned by Counter-

Defendant Brian Holloway and/or Tree Solutions.

The definition for "temporary substitute auto" can be found on Page 5, Number 17 of the

Policy (Definitions).  It reads as follows:

> **17. *Temporary substitute auto*** means an automobile or ***trailer***, not owned by ***you*** or a ***relative***, temporarily used with the permission of the owner. This vehicle must be used as a substitute for the ***owned auto*** or ***trailer*** when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction.
> A ***temporary substitute auto*** does not include any motor vehicle rented or leased by ***you*** or a ***relative***:
> (a) for the purpose of providing ***ride-sharing*** services. A motor vehicle is considered to have been rented or leased for the purpose of providing ***ride-sharing*** services, whether actually used for ***ride-sharing*** or not, if the rental or lease agreement specifically allows the motor vehicle to be used for ***ride-sharing*** with a ***transportation network company***;
> (b) which is registered for use for ***ride-sharing*** with a ***transportation network company***;
> (c) which is approved for use for ***ride-sharing*** by a ***transportation network company***; or
> (d) which displays an interior or exterior marking that identifies the motor vehicle as a vehicle for hire.

The 2013 Freightliner M2 was not a "temporary substitute auto" for Counter-Defendant

Christopher Holloway.  Counter-Defendants have averred the vehicle was parked starting on May 8,

2024, and was only moved on the date of the incident because Tree Selections had been directed by

the Wilson County government to move the vehicle to a different location.  (Complaint at ¶¶ 3.3-3.4)

9.      The definition for "non-owned auto" can be found on Page 4, Number 5 of the Policy (Definitions).  It reads as follows:

> **5. *Non-owned auto*** means a ***private passenger auto***, ***farm auto***, ***utility auto*** or ***trailer*** not owned by or furnished for the regular use of either ***you*** or ***your relative***, except a ***temporary substitute auto***. ***You*** or ***your relative*** must be using the ***non-owned auto*** or ***trailer*** within the scope of permission given by its owner. A ***private passenger auto***, ***farm auto***, ***utility auto*** or ***trailer*** rented or leased for more than 30 consecutive days will be considered as furnished for regular use. Two or more ***private passenger autos***, ***farm autos***, ***utility autos*** or ***trailers*** consecutively rented or leased, one after the other, for more than 30 consecutive days will be considered as furnished for regular use.

The 2013 Freightliner M2 is not a "trailer" within either the common sense definition or Policy definition of that word.  (Policy at Page 5, Number 18)  The definition for "private passenger auto" is found at Pages 4-5, Number 9 of the Policy (Definitions).  It reads as follows:

> **9. *Private passenger auto*** means a four-wheel private passenger, station wagon or jeep-type auto.
> However, a ***private passenger auto*** does not include:
> (a) step-vans, parcel delivery vans, or cargo cutaway vans or other vans with cabs separate from the cargo area;
> (b) a golf cart;
> (c) a motor-driven recreational vehicle designed for off-road use and capable of cross-country travel without the benefit of road or trail, on or immediately over land, snow, ice, marsh, swampland, or other natural terrain;
> (d) a multitrack vehicle, an amphibious machine, or a ground effect air cushion vehicle;
> (e) an all-terrain vehicle (ATV) designed for off-road use;
> (f) a motorcycle or related 2-wheel, 3-wheel, or 4-wheel vehicle;
> (g) a moped or electric bicycle; or
> (h) a utility terrain vehicle (UTV) or utility task vehicle.[1]

The 2013 Freightliner M2 was not a "private passenger auto" because it was not a "four-wheel" vehicle.  It was, in fact, a utility task vehicle under 9(h).

The definition for "utility auto", which can be insured as a "non-owned auto", is found at Page 5, Number 20 of the Policy (Definitions).  It reads as follows:

---

[1]  "Utility auto" is further defined at Page 5, Number 20, of the Policy (Definitions).  In order to qualify as a "utility auto", the vehicle must weigh less than 15,000 pounds and not be used for commercial purposes.  The 2013 Freightliner M2 weighed more than 15,000 pounds per vehicle specifications from the manufacturer and was used for commercial purposes.

**20.** ***Utility auto*** means a vehicle, other than a ***farm auto***, with a gross vehicle weight of 15,000 pounds or less of the pick-up body, van or panel truck type not used for commercial purposes.  However, a ***utility auto*** does not include:
(a) step-vans, parcel delivery vans, or cargo cutaway vans or other vans with cabs separate from the cargo area;
(b) a golf cart;
(c) a motor-driven recreational vehicle designed for off-road use and capable of cross-country travel without the benefit of road or trail, on or immediately over land, snow, ice, marsh, swampland, or other natural terrain;
(d) a multitrack vehicle, an amphibious machine, or a ground effect air cushion vehicle;
(e) an all-terrain vehicle (ATV) designed for off-road use;
(f) a motorcycle or related 2-wheel, 3-wheel, or 4-wheel vehicle;
(g) a moped or electric bicycle; or
(h) a utility terrain vehicle (UTV) or utility task vehicle.

The 2013 Freightliner M2 does not qualify as a "utility auto" because it weighed more than 15,000 pounds and was being used for commercial purposes.  It was a utility task vehicle.

The definition for "farm auto" is found at Page 4, Number 3 of the Policy (Definitions).  It reads as follows:

**3.** ***Farm auto*** means a truck type vehicle with a gross vehicle weight of 15,000 pounds or less, not used for commercial purposes other than farming.
However, a ***farm auto*** does not include:
(a) step-vans, parcel delivery vans, or cargo cutaway vans or other vans with cabs separate from the cargo area;
(b) a golf cart;
(c) a motor-driven recreational vehicle designed for off-road use and capable of cross-country travel without the benefit of road or trail, on or immediately over land, snow, ice, marsh, swampland, or other natural terrain;
(d) a multitrack vehicle, an amphibious machine, or a ground effect air cushion vehicle;
(e) an all-terrain vehicle (ATV) designed for off-road use;
(f) a motorcycle or related 2-wheel, 3-wheel, or 4-wheel vehicle;
(g) a moped or electric bicycle; or
(h) a utility terrain vehicle (UTV) or utility task vehicle.

The 2013 Freightliner M2 does not qualify as a "farm auto" because it weighed more than 15,000 pounds and was being used for commercial purposes unrelated to farming.  It was a utility task vehicle.

10.     The losses GEICO will pay for under the Liability coverage in the Policy must be losses arising out of the ownership, maintenance or use of an "owned auto" or a "non-owned auto." The general insuring agreement is found on Page 6 of the Policy and reads as follows:

**LOSSES WE WILL PAY FOR YOU UNDER SECTION I**
Under Section I, we will pay damages which an *insured* becomes legally obligated to pay because of:
**1.** *Bodily injury*, sustained by a person; and
**2.** *Property damage*
arising out of the ownership, maintenance or use of the *owned auto* or a *non-owned auto*. We will defend any suit for damages payable under the terms of this policy. We may investigate and settle any claim or suit.

The 2013 Freightliner M2 was not an "owned auto" or a "non-owned auto." Therefore,

the loss arising out of the operation of this vehicle does not fall within the insuring agreement

between GEICO and Counter-Defendant Christopher Holloway.

11.     In addition to the subject loss not falling within the insuring agreement, coverage

is also excluded under Exclusion 10 found at Page 10 of the Policy. It reads as follows:

**10.** We do not cover a *non-owned auto* while maintained or used by any person while such person is employed or otherwise engaged in:
(a) Any *auto business* if the accident arises out of that business;
(b) Any other business or occupation of any *insured* if the accident arises out of that business or occupation, except a *private passenger auto* used by *you* or *your* chauffeur or domestic worker while engaged in such other business.

The 2013 Freightliner M2 was being used by Counter-Defendant Christopher Holloway in

the course of his business or occupation and the vehicle did not qualify as a "private passenger auto."

12.     GEICO also asserts Counter-Defendant Brian Holloway does not meet the definition

of an insured under the Policy. The description of the persons insured is found at Page 8 of the

Policy and reads as follows:

**PERSONS INSURED**
**Who Is Covered**
Section I applies to the following as *insureds* with regard to an *owned auto*:
**1.** *You* and *your relatives*;
**2.** Any other person using the auto with *your* permission. The actual use must be within the scope of that permission;
**3.** Any other person or organization for their or its liability because of acts or omissions of an *insured* under **1.** or **2.** above.
Section I applies to the following with regard to a *non-owned auto*:
**1.** (a) *You*;
     (b) *Your relatives* when using a *private passenger auto*, *farm auto*, *utility auto* or *trailer*.
Such use by *you* or *your relatives* must be with the permission, or reasonably believed to be with the permission, of the owner and within the scope of that permission;
**2.** A person or organization, not owning or hiring the auto, regarding their or its liability because of acts or omissions of an *insured* under **1.** above.

The limits of liability stated in the **Declarations Pag**e are our maximum obligations regardless of the number of **insureds** involved in the occurrence.

The definition for "relative" can be found on Page 5, Number 11 of the Policy (Definitions). A "relative" is someone who resides in the same household as the named insured or the named insured's spouse and is related to either of them. The Counter-Defendants did not live in the same household at the time of the subject loss and, therefore, Counter-Defendant Brian Holloway is not considered a "relative" under the policy.

Counter-Defendant Brian Holloway is not an insured under the Policy because the vehicle involved in the subject loss does not meet the definition of a "non-owned auto" as set forth above. Further, because Counter-Defendant Brian Holloway owned the subject vehicle, he cannot qualify as a "person or organization" under the insuring agreement.

13. GEICO reserves the right to amend this Counter-Claim and assert other grounds for its denial of coverage as those are substantiated in future discovery and the decision to not assert them in this original pleading should not be construed as a waiver of any other policy defenses or limitations. This reservation specifically includes the right to amend and assert the subject policy is void *ab initio* due to misrepresentations in the application or notification process or other grounds.

WHEREFORE, GEICO seeks the following relief from this Court:

1. A declaration that GEICO owes no duty to defend, indemnify or otherwise provide any aid or assistance to Counter-Defendants Christopher Holloway and Brian Holloway for any claims, causes of action or other matters arising from the incident that occurred on October 10, 2024, in Rutherford County, Tennessee.

2. For costs of this cause to be taxed to Counter-Defendants.

3. For such other further and general relief this Court deems just and appropriate.

Respectfully submitted,

*/s/Scott A. Rhodes*
Scott A. Rhodes, BPR# 16870
*Attorney for Defendant GEICO Advantage Insurance Company*
White and Rhodes, PC
Brentwood Commons Two, Suite 275
750 Old Hickory Boulevard
Brentwood, TN 37027
615-309-0400
srhodes@whiterhodes.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded, via electronic and/or first class mail, postage prepaid, to the following on this 3rd day of March, 2025:

David M. Rich, Esq.                                    dave@honeycuttrich.com
Honeycut Rich, PLLC
20 Music Circle East
Nashville, TN 37203

Elizabeth M. Bass, Esq.                          Elizabeth@RichardsonLawGrp.com
Richardson Law Group
700 E. Main Street, Suite 201
Hendersonville, TN 37075

*/s/Scott A. Rhodes*
SCOTT A. RHODES

# GEICO

5260 Western Avenue
Chevy Chase, MD 20815

CERTIFIED DOCUMENTS

The undersigned certifies the attached documents as true and accurate, reflecting the contents maintained in GEICO's records with respect to policy.

Policy number: _____ 4573260611 _____

Signature: ___*Mary Hoover*_____    Date: _____ 02/19/2025 _____

**EXHIBIT A TO ANSWER & COUNTER-CLAIM OF GEICO 25CV-128**

Sensitivity: Company-Internal



**Tel:** 1-800-841-3000

**GEICO Advantage Insurance Company**
**One GEICO Boulevard**
**Fredericksburg, VA 22412-0003**

# Declarations Page

This is a description of your coverage.
Please retain for your records.

## Policy Number: 4573-26-06-11
## Coverage Period:

06-19-24 through 12-19-24
12:01 a.m. local time at the address of the named insured.

Date Issued: May 16, 2024

CHRISTOPHER B HOLLOWAY AND
 MELANIE HOLLOWAY
5860 WEAKLEY LN
MOUNT JULIET TN  37122-7736

Email Address: chris.catch22gp@gmail.com

| **Named Insured** | **Additional Drivers** |
|---|---|
| Christopher Barry Holloway | None |
| Melanie Holloway | |

| **Vehicles** | **VIN** | **Vehicle Location** | **Finance Company/ Lienholder** |
|---|---|---|---|
| 1 2013 Ford F-350 | 1FT7W3BT4DEB79111 | MOUNT JULIET TN 37122-7736 | |
| 2 2021 Honda Odyssey | 5FNRL6H74MB021394 | MOUNT JULIET TN 37122-7736 | |
| 3 2002 Chev Slvr2500HD | 1GCHK29U02E261200 | MOUNT JULIET TN 37122-7736 | |

| **Coverages*** | **Limits and/or Deductibles** | **Vehicle 1** | **Vehicle 2** | **Vehicle 3** |
|---|---|---|---|---|
| Bodily Injury Liability Each Person/Each Occurrence | $100,000/$300,000 | $132.93 | $121.21 | $114.64 |
| Property Damage Liability | $50,000 | $109.52 | $86.70 | $108.54 |
| Uninsured Motorists Bodily Injury Each Person/Each Occurrence | $100,000/$300,000 | $29.10 | $29.10 | $29.10 |
| Uninsured Motorist Property Damage | $50,000 | $5.72 | $5.72 | $5.72 |
| Comprehensive (Excluding Collision) | $250 Ded | - | $67.35 | $46.76 |
| | $500 Ded | $59.65 | - | - |
| Collision | $500 Ded | $150.74 | $239.97 | - |
| Emergency Road Service | ERS FULL | $10.29 | $4.43 | - |
| | ERS COMP | - | - | $15.86 |

T-L

DEC_PAGE (03-14)  (Page 1 of 4)

Continued on Back

**Renewal** Page 9 of 46

EXHIBIT A

| Coverages* | Limits and/or Deductibles | Vehicle 1 | Vehicle 2 | Vehicle 3 |
|---|---|---|---|---|
| Rental Reimbursement | $50 Per Day | | | |
| | $1,500 Max | $32.20 | $32.20 | - |
| Mechanical Breakdown | $250 Ded | - | $24.54 | - |
| **Six Month Premium Per Vehicle** | | **$530.15** | **$611.22** | **$320.62** |
| **Total Six Month Premium** | | | | **$1,461.99** |

*Coverage applies where a premium or $0.00 is shown for a vehicle.

If you elect to pay your premium in installments, you may be subject to an additional fee for each installment. The fee amount will be shown on your billing statements and is subject to change.

## Discounts

| | |
|---|---|
| **The total value of your discounts is** | **$788.45** |
| Anti-Theft | $18.62 |
| Multi-Vehicle Discount | $193.32 |
| Good Driver | $308.52 |
| Persistency | $165.35 |
| Anti-Lock Brake | $20.56 |
| Multiline | $52.03 |
| Excess Vehicle | $30.05 |
| **The following discounts have also been applied** | |
| Financial Responsibility | Included |
| Driving Experience | Included |

**Contract Type:** FAMILY AUTO

**Contract Amendments:** ALL VEHICLES - A30TN(08-23) SIGPGCW(07-20)

---

### Important Policy Information

- Congratulations! You have earned the free Accident Forgiveness benefit. That means we will waive the surcharge associated with the first at-fault accident caused by an eligible driver on your policy.

- Please review the front and/or back of this page for your coverage and discount information.

- Reminder - Physical damage coverage will not cover loss for custom options on an owned automobile, including equipment, furnishings or finishings including paint, if the existence of those options has not been previously reported to us. This reminder does NOT apply in VIRGINIA, however, in Virginia coverage is limited for custom furnishings or equipment on pick-up trucks and vans but you may purchase coverage for this equipment. Please call us at 1-800-841-3000 or visit us at geico.com if you have any questions.

- We have a new rating program available. If you're interested in learning more, inquire at 1-866-422-0360.

Case 3:25-cv-00593    Document 1-1    Filed 05/29/25    Page 191 of 261 PageID #: 196
EXHIBIT A

## Important Policy Information

- Subject to the policy carrying Comprehensive and/or Collision Coverage, if a **non-owned auto** or **temporary substitute auto**, in operation while leased or rented for a fee, has a Manufacturer Suggested Retail Price above $100,000, the limits of liability for **loss** to the **non-owned auto** or **temporary substitute auto** is the highest of the **actual cash value** of any **owned auto** shown on the **Declarations page**.

- As your vehicle ages, the Multi-Risk Coverage you carry becomes nearly impossible to replace. Renew your policy today and enjoy continuous coverage against costly mechanical breakdowns.

- We welcome you to our GEICO family in the Auto Voluntary B10 rate program.

- Now is a good time to review your coverage limits on this Declarations Page to determine if you would like to make changes to your policy. You may have the right to increase, decrease, or reject certain coverage. You may visit geico.com to review your current policy coverage and review all of your coverage options. You can make your changes online at any time or email us through our Policyholder Service Center. Thank you for choosing GEICO.

- WE HAVE DELETED THE LIENHOLDER FROM YOUR

- Claims incurred while an insured vehicle is being used to carry passengers for hire may not be covered by this contract. Please review the contract for a full list of exclusions and contact us if you plan to use any of your insured vehicles for this purpose.

Case 3:25-cv-00593     Document 1-1     Filed 05/29/25     Page 192 of 261 PageID #: 197
EXHIBIT A



[COMPANY ADDRESS 1]
[COMPANY ADDRESS 2]
[COMPANY PHONE]

# Tennessee Family Automobile Insurance Policy

[COMPANY NAME]

**SECTION I - LIABILITY COVERAGES**
**Bodily Injury Liability And Property Damage Liability**
**Your Protection Against Claims From Others** ..........................................................................................4
Definitions ..........................................................................................................................................................4
Losses We Will Pay For You Under Section I .............................................................................................6
Additional Payments We Will Make Under The Liability Coverages ...................................................6
Exclusions: When Section I Does Not Apply ..............................................................................................7
Persons Insured: Who Is Covered ................................................................................................................8
Financial Responsibility Laws .......................................................................................................................8
Out Of State Insurance ....................................................................................................................................8
Limits Of Liability .............................................................................................................................................8
Other Insurance .................................................................................................................................................8
Non-Duplication .................................................................................................................................................8
Conditions ...........................................................................................................................................................8
    Notice ............................................................................................................................................................9
    Two Or More Autos ..................................................................................................................................9
    Assistance And Cooperation Of The Insured ..................................................................................9
    Action Against Us ......................................................................................................................................9
    Subrogation .................................................................................................................................................9
**SECTION II - AUTO MEDICAL PAYMENTS COVERAGE**
**Protection For You And Your Passengers For Medical Expenses** ....................................................9
Definitions ...........................................................................................................................................................9
Payments We Will Make ...................................................................................................................................9
Exclusions: When Section II Does Not Apply ...........................................................................................10
Non-Duplication .................................................................................................................................................10
Limit Of Liability ...............................................................................................................................................11
Other Insurance .................................................................................................................................................11
Conditions ...........................................................................................................................................................11
    Notice ............................................................................................................................................................11
    Action Against Us ......................................................................................................................................11
    Medical Reports - Proof And Payment Of Claims ...........................................................................11
    Subrogation .................................................................................................................................................11
**SECTION III - PHYSICAL DAMAGE COVERAGES**
**Your Protection For Loss Or Damage To Your Car** .............................................................................11
Definitions ...........................................................................................................................................................11
Part I - Comprehensive And Collision Coverage ....................................................................................12
Losses We Will Pay ...........................................................................................................................................12
    Comprehensive ..........................................................................................................................................12
    Collision .......................................................................................................................................................12
Additional Payments We Will Make Under The Physical Damage Coverages ...............................12
Exclusions: When The Physical Damage Coverages Do Not Apply ...................................................13
Limit Of Liability ...............................................................................................................................................14
Other Insurance .................................................................................................................................................14
Conditions ...........................................................................................................................................................14
    Notice ............................................................................................................................................................14
    Two Or More Autos ..................................................................................................................................14
    Assistance And Cooperation Of The Insured ..................................................................................14
    Action Against Us ......................................................................................................................................14
    Insured's Duties In Event Of Loss ......................................................................................................14
    Appraisal ......................................................................................................................................................15
    Payment Of Loss .......................................................................................................................................15
    No Benefit To Bailee ................................................................................................................................15
    Subrogation .................................................................................................................................................15
    Assignment ..................................................................................................................................................15
Part II - Emergency Road Service Coverage ............................................................................................15
Losses We Will Pay ...........................................................................................................................................15
Exclusions: When Section III, Part II  Does Not Apply ..........................................................................16
Obtaining Service .............................................................................................................................................16
Continuation Of Coverage ..............................................................................................................................16

EXHIBIT 2A

Part III - Rental Reimbursement Coverage ........................................................................17
Conditions ........................................................................................................................17
Part IV - Mechanical Breakdown Protection ....................................................................17
Mechanical Breakdown Protection ..................................................................................17
Definitions ........................................................................................................................17
Exclusions When Section III, Part IV Does Not Apply ....................................................18
Other Insurance ...............................................................................................................18
Conditions ........................................................................................................................18
**SECTION IV - UNINSURED MOTORISTS COVERAGE**
**Protection For You And Your Passengers For Injuries Caused By Uninsured And Hit-And-Run Motorists** ......18
Definitions ........................................................................................................................18
Losses We Pay ..................................................................................................................19
Exclusions When Section IV Does Not Apply ..................................................................19
Limits Of Liability .............................................................................................................20
Other Insurance ...............................................................................................................20
Arbitration ........................................................................................................................21
Trust Agreement ..............................................................................................................22
Conditions ........................................................................................................................22
    Notice ..........................................................................................................................22
    Assistance And Cooperation Of The Insured ............................................................23
    Action Against Us .......................................................................................................23
    Proof Of Claim - Medical Reports ..............................................................................22
    Payment Of Loss ........................................................................................................23
**SECTION V - GENERAL CONDITIONS**
**The Following Apply To All Coverages In This Policy** ...............................................23
Definitions ........................................................................................................................23
Territory ............................................................................................................................23
Premium ...........................................................................................................................23
Changes ...........................................................................................................................23
Assignment .......................................................................................................................23
Policy Period .....................................................................................................................24
Cancellation By The Insured ...........................................................................................24
Cancellation By Us ...........................................................................................................24
Cancellation By Us Is Limited ..........................................................................................24
Renewal ............................................................................................................................25
Other Insurance ...............................................................................................................25
Dividend Provision ...........................................................................................................25
Declarations .....................................................................................................................25
Fraud And Misrepresentation ..........................................................................................25
Examination Under Oath And Recorded Statements ......................................................25
Terms Of Policy Conformed To Statutes .........................................................................25
Disposal Of Vehicle .........................................................................................................25
Choice Of Law ..................................................................................................................25
Claims Adjustment Tools And Technology .......................................................................25
**SECTION VI - AMENDMENTS AND ENDORSEMENTS** ..............................................25
    Special Endorsement - United States Government Employees ...............................25

# AGREEMENT

**We, the Company named in the Declarations Page attached to this policy, make this agreement with _you_, the policyholder. Relying on the information _you_ have furnished and the Declarations Page attached to this policy and if _you_ pay _your_ premium when due, we will do the following:**

---

## SECTION I - LIABILITY COVERAGES
### Bodily Injury Liability And Property Damage Liability
### Your Protection Against Claims from Others

---

**DEFINITIONS**

The words bold and italicized in Section I of this policy are defined below.

1. _**Auto business**_ means the business of selling, repairing, renting, leasing, brokering, servicing, storing, transporting or parking of autos.
2. _**Bodily injury**_ means bodily injury to a person, including resulting sickness, disease or death. However, bodily injury does not include the transmission of, or threat of transmission of, a communicable disease or sickness.
3. _**Farm auto**_ means a truck type vehicle with a gross vehicle weight of 15,000 pounds or less, not used for commercial purposes other than farming.
   However, a _**farm auto**_ does not include:
   (a) step-vans, parcel delivery vans, or cargo cutaway vans or other vans with cabs separate from the cargo area;
   (b) a golf cart;
   (c) a motor-driven recreational vehicle designed for off-road use and capable of cross-country travel without the benefit of road or trail, on or immediately over land, snow, ice, marsh, swampland, or other natural terrain;
   (d) a multitrack vehicle, an amphibious machine, or a ground effect air cushion vehicle;
   (e) an all-terrain vehicle (ATV) designed for off-road use;
   (f) a motorcycle or related 2-wheel, 3-wheel, or 4-wheel vehicle;
   (g) a moped or electric bicycle; or
   (h) a utility terrain vehicle (UTV) or utility task vehicle.
4. _**Insured**_ means a person or organization described under **PERSONS INSURED**.
5. _**Non-owned auto**_ means a _**private passenger auto**_, _**farm auto**_, _**utility auto**_ or _**trailer**_ not owned by or furnished for the regular use of either _you_ or _your relative_, except a _**temporary substitute auto**_. _**You**_ or _**your relative**_ must be using the _**non-owned auto**_ or _**trailer**_ within the scope of permission given by its owner. A _**private passenger auto**_, _**farm auto**_, _**utility auto**_ or _**trailer**_ rented or leased for more than 30 consecutive days will be considered as furnished for regular use. Two or more _**private passenger autos**_, _**farm autos**_, _**utility autos**_ or _**trailers**_ consecutively rented or leased, one after the other, for more than 30 consecutive days will be considered as furnished for regular use.
6. _**Owned auto**_ means:
   (a) A vehicle described in this policy for which a premium charge is shown for these coverages;
   (b) A _**trailer**_ owned by _you_;
   (c) A _**private passenger auto**_, _**farm auto**_ or _**utility auto**_ ownership of which _you_ acquire during the policy period or for which _you_ enter into a lease during the policy period for a term of six months or more, if:
      (i) It replaces an _**owned auto**_ as defined in (a) above; or
      (ii) We insure all _**private passenger autos**_, _**farm autos**_ and _**utility autos**_ owned or leased by _you_ on the date of the acquisition, and _you_ ask us to add it to the policy no more than 30 days later;
   (d) A _**temporary substitute auto**_.
7. _**Peer-to-peer vehicle sharing**_:
   (a) Means the authorized use of a vehicle by an individual other than the vehicle's owner through a _**peer-to-peer vehicle sharing program**_; and
   (b) Does not include the services offered by a _**rental vehicle company**_.
8. _**Peer-to-peer vehicle sharing program**_:
   (a) Means a business platform that connects _**shared vehicle owners**_ with _**shared vehicle drivers**_ to enable the sharing of motor vehicles for financial consideration; and
   (b) Does not include:
      (i) The services offered by a _**rental vehicle company**_; or
      (ii) A service provider who is solely providing hardware or software as a service to a person or entity that is not effectuating payment of financial consideration for use of a _**shared vehicle**_.
9. _**Private passenger auto**_ means a four-wheel private passenger, station wagon or jeep-type auto.
   However, a _**private passenger auto**_ does not include:
   (a) step-vans, parcel delivery vans, or cargo cutaway vans or other vans with cabs separate from the cargo area;
   (b) a golf cart;
   (c) a motor-driven recreational vehicle designed for off-road use and capable of cross-country travel without the

benefit of road or trail, on or immediately over land, snow, ice, marsh, swampland, or other natural terrain;

(d) a multitrack vehicle, an amphibious machine, or a ground effect air cushion vehicle;

(e) an all-terrain vehicle (ATV) designed for off-road use;

(f) a motorcycle or related 2-wheel, 3-wheel, or 4-wheel vehicle;

(g) a moped or electric bicycle; or

(h) a utility terrain vehicle (UTV) or utility task vehicle.

10. **Property damage** means physical damage to, destruction of, or loss of use of, tangible property.

11. **Relative** means a person residing in the same household as **you**, and is related to **you** by blood, marriage, or adoption, and includes a ward, stepchild, or foster child.

12. **Rental vehicle company** means a business engaged in the rental of motor vehicles that is subject to Tennessee Code Annotated title 67, chapter 4, part 19, and not a **peer-to-peer vehicle sharing program**.

13. **Ride-sharing** means the use of any vehicle to provide transportation of persons in connection with a **transportation network company** from the time a user logs on to, or signs in to, any online-enabled application, software, website or system, until the time the user logs out of, or signs off of, any such online-enabled application, software, website or system, whether or not the user has accepted any passenger(s), including the time the user is on the way to pick up any passenger(s), or is transporting any passenger(s).

14. **Shared vehicle**:

(a) Means a motor vehicle that is available for sharing through a **peer-to-peer vehicle sharing program**; and

(b) Does not mean a rental vehicle provided by a **rental vehicle company**.

15. **Shared vehicle driver** means an individual who has been authorized to drive the **shared vehicle** by the **shared vehicle owner** under a **vehicle sharing program agreement**.

16. **Shared vehicle owner** means the registered owner, or a person or entity designated by the registered owner, of a vehicle made available for sharing to **shared vehicle drivers** through a **peer-to-peer vehicle sharing program**.

17. **Temporary substitute auto** means an automobile or **trailer**, not owned by **you** or a **relative**, temporarily used with the permission of the owner. This vehicle must be used as a substitute for the **owned auto** or **trailer** when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction.

A **temporary substitute auto** does not include any motor vehicle rented or leased by **you** or a **relative**:

(a) for the purpose of providing **ride-sharing** services. A motor vehicle is considered to have been rented or leased for the purpose of providing **ride-sharing** services, whether actually used for **ride-sharing** or not, if the rental or lease agreement specifically allows the motor vehicle to be used for **ride-sharing** with a **transportation network company**;

(b) which is registered for use for **ride-sharing** with a **transportation network company**;

(c) which is approved for use for **ride-sharing** by a **transportation network company**; or

(d) which displays an interior or exterior marking that identifies the motor vehicle as a vehicle for hire.

18. **Trailer** means a trailer designed to be towed by a **private passenger auto**, if not being used for business or commercial purposes with a vehicle other than a **private passenger auto**, **farm auto** or **utility auto**.

19. **Transportation network company** means a company or organization facilitating and/or providing transportation services using a computer or digital application or platform to connect or match passengers with drivers for compensation or a fee.

20. **Utility auto** means a vehicle, other than a **farm auto**, with a gross vehicle weight of 15,000 pounds or less of the pick-up body, van or panel truck type not used for commercial purposes.

However, a **utility auto** does not include:

(a) step-vans, parcel delivery vans, or cargo cutaway vans or other vans with cabs separate from the cargo area;

(b) a golf cart;

(c) a motor-driven recreational vehicle designed for off-road use and capable of cross-country travel without the benefit of road or trail, on or immediately over land, snow, ice, marsh, swampland, or other natural terrain;

(d) a multitrack vehicle, an amphibious machine, or a ground effect air cushion vehicle;

(e) an all-terrain vehicle (ATV) designed for off-road use;

(f) a motorcycle or related 2-wheel, 3-wheel, or 4-wheel vehicle;

(g) a moped or electric bicycle; or

(h) a utility terrain vehicle (UTV) or utility task vehicle.

21. **Vehicle sharing delivery period** means the period of time during which a **shared vehicle** is being delivered to the location of the **vehicle sharing start time**, if applicable, as documented by the governing **vehicle sharing program agreement**.

22. **Vehicle sharing period** means the period of time:

(a) That commences with the **vehicle sharing delivery period** and ends at the **vehicle sharing termination time**; or

(b) If there is no **vehicle sharing delivery period**, that commences with the **vehicle sharing start time** and ends at the **vehicle sharing termination time**.

Case 3:25-cv-00593     Document 1-1     Filed 05/29/25     Page 198 of 261 PageID #: 203

23. **Vehicle sharing program agreement**:
   (a) Means the terms and conditions applicable to a **shared vehicle owner** and a **shared vehicle driver** that govern the use of a **shared vehicle** through a **peer-to-peer vehicle sharing program**; and
   (b) Does not mean a rental vehicle agreement with a **rental vehicle company**.
24. **Vehicle sharing start time** means the time when the **shared vehicle** becomes subject to the control of the **shared vehicle driver** at or after the time the reservation of a **shared vehicle** is scheduled to begin as documented in the records of a **peer-to-peer vehicle sharing program**.
25. **Vehicle sharing termination time** means the earliest of the following events:
   (a) The expiration of the agreed upon period of time established for the use of a **shared vehicle** according to the terms of the **vehicle sharing program agreement** if the **shared vehicle** is delivered to the location agreed upon in the **vehicle sharing program agreement**;
   (b) When the **shared vehicle** is returned to a location as alternatively agreed upon by the **shared vehicle owner** and **shared vehicle driver** as communicated through a **peer-to-peer vehicle sharing program**; or
   (c) When the **shared vehicle owner**, or the **shared vehicle owner's** authorized designee, takes possession and control of the **shared vehicle**.
26. **War** means armed conflict between nations, whether or not declared, civil war, insurrection, rebellion or revolution.
27. **You** and **your** means only the individual(s) named in the **Declarations Page** as **Named Insured** and their spouse if a resident of the same household.

   **You** and **your** does not include any individual(s) named in the **Declarations Page** as:
   (a) **Additional Drivers**;
   (b) **Additional Driver**; or
   (c) any other individual(s).

## LOSSES WE WILL PAY FOR YOU UNDER SECTION I

Under Section I, we will pay damages which an **insured** becomes legally obligated to pay because of:
1. **Bodily injury**, sustained by a person; and
2. **Property damage**

arising out of the ownership, maintenance or use of the **owned auto** or a **non-owned auto**. We will defend any suit for damages payable under the terms of this policy. We may investigate and settle any claim or suit.

## ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE LIABILITY COVERAGES

1. Investigative costs for services we specifically request for an **insured**. We do not pay fees or costs assessed against an **insured** pursuant to statute, court order, court rule or otherwise.
2. Legal services provided by an attorney we retain to represent an **insured** and any other legal services we retain to represent an **insured**.
3. We only pay post-judgment interest that begins to accrue after the entry of a final judgment against an **insured**, subject to all of the following:
   (a) We only pay post-judgment interest on that part of the judgment that is against an **insured** and only for those damages that are covered under this Section;
   (b) We only pay post-judgment interest calculated on that part of the judgment against an **insured** that is within the applicable limit of liability under this Section. If the applicable limit of liability under this Section has been reduced by payment(s) of any other liability claims or judgments, we only pay post-judgment interest calculated on that part of the remaining applicable limit of liability under this Section;
   (c) We only pay post-judgment interest calculated up until the time we pay, offer to pay, or deposit in court the remaining applicable limit of liability under this Section; and
   (d) We do not pay post-judgment interest if we have not been given notice of suit or the opportunity to defend the **insured**.
4. We pay the premiums for appeal bonds in a suit we appeal, or premiums for bonds to release attachments subject to all of the following:
   (a) The amount bonded shall not exceed the applicable limit of liability under this Section. If the applicable limit of liability under this Section has been reduced by payment(s) of any other liability claims or judgments, the amount bonded shall not exceed the remaining applicable limit of liability under this Section;
   (b) The amount bonded shall only be for those damages that are covered under this Section;
   (c) We do not pay premiums for bonds if we pay, offer to pay, or deposit in court the remaining applicable limit of liability under this Section; and
   (d) We have no duty to apply for or furnish these bonds.
5. We will upon request for an **insured**, provide reimbursement for the following items:
   (a) An **insured's** reasonable costs, up to $500, incurred when that **insured** provides and renders first aid to others at the time of an accident involving an **owned auto** or **non-owned auto**.
   (b) An **insured's** loss of earnings up to $50 a day, but not other income, for each day an **insured** attends hearings and trials at our request.
   (c) An **insured's** other reasonable costs incurred at our request. This does not include fees or costs assessed

against an **insured** pursuant to statute, court order, court rule or otherwise.

(d) Premiums for bail bonds paid by an **insured** due to traffic law violations arising out of the use of an **owned auto** or **non-owned auto**, not to exceed $250 per bail bond. We have no duty to apply for or furnish these bonds.

## EXCLUSIONS
### When Section I Does Not Apply
Section I does not apply to any claim or suit for damage if one or more of the exclusions listed below applies.

**1.** **Bodily injury** to any **insured** or any family member of an **insured** residing in the **insured's** household is not covered.

**2.** Section I does not apply to **bodily injury** or **property damage** arising out of the ownership, maintenance, or use of any motor vehicle while it is being used:

(a) for **ride-sharing**;

(b) to carry persons for compensation or fee. This includes while going to pick up, transporting, delivering and returning from a drop-off; or

(c) for retail or wholesale delivery, including, but not limited to, the pick up, transport or delivery of magazines, newspapers, mail, food or any other products. This exclusion, **2.**(c) does not apply to **bodily injury** or **property damage** arising out of the use of an **owned auto** or **non-owned auto** by an independent contractor delivering mail for the United States Postal Service.

However, a vehicle used in an ordinary car pool is covered. An ordinary car pool is one where:

(i) An **insured** receives no payment for using a vehicle for a car pool ride; or

(ii) An **insured** receives only reimbursement for expenses for using a vehicle for a car pool ride, the reimbursement an **insured** receives for providing the car pool ride does not exceed the reasonable cost of gas and depreciation for the distance traveled, and the reimbursement received by an **insured** is not required to be reported for income tax purposes.

**3.** **Bodily injury** or **property damage** caused intentionally by or at the direction of an **insured** is not covered.

**4.** We do not cover **bodily injury** or **property damage** that is insured under a nuclear liability policy.

**5.** **Bodily injury** or **property damage** arising from the operation of farm machinery is not covered.

**6.** **Bodily injury** to an employee of an **insured** arising out of and in the course of employment by an **insured** is not covered.

However, **bodily injury** of a domestic employee of the **insured** is covered unless benefits are payable or are required to be provided under a workers' or workmen's compensation law.

**7.** We do not cover **bodily injury** to a fellow employee of an **insured** if the fellow employee's **bodily injury** arises from the use of an auto while in the course of employment and if workers' compensation or other similar coverage is available. We will defend **you** if suit is brought by a fellow employee against **you** alleging use, ownership or maintenance of an auto by **you**.

**8.** We do not cover damage to:

(a) Property owned, operated, transported, or used by an **insured**; or

(b) Property rented to or in the charge of an **insured** other than a residence or private garage.

**9.** We do not cover an **owned auto** while used by a person (other than **you** or a **relative**) when they are employed or otherwise engaged in the **auto business**.

**10.** We do not cover a **non-owned auto** while maintained or used by any person while such person is employed or otherwise engaged in:

(a) Any **auto business** if the accident arises out of that business;

(b) Any other business or occupation of any **insured** if the accident arises out of that business or occupation, except a **private passenger auto** used by **you** or **your** chauffeur or domestic worker while engaged in such other business.

**11.** We do not cover an auto acquired by **you** during the policy term, if **you** have purchased other liability insurance for it.

**12.** We do not cover:

(a) The United States of America or any of its agencies;

(b) Any person, including **you**, if protection is afforded under the provisions of the Federal Tort Claims Act.

**13.** **Bodily injury** or **property damage** that results from nuclear exposure or explosion including resulting fire, radiation, or contamination is not covered.

**14.** **Bodily injury** or **property damage** that results from bio-chemical attack or exposure to bio-chemical agents is not covered.

**15.** Section I does not apply to:

(a) **bodily injury** or **property damage** caused by a motor vehicle driven in or preparing for any racing, speed, or demolition contest, or stunting activity of any nature, whether or not prearranged or organized; or

(b) the operation or use of a motor vehicle on a track designed primarily for racing or high speed driving. This does not apply if the vehicle is being used in connection with an activity other than racing, high speed driving or any competitive driving.

16. We do not cover any liability assumed under any contract or agreement.
17. Regardless of any other provision in this policy, there is no coverage for punitive or exemplary damages.
18. We do not cover **bodily injury** or **property damage** arising out of the use of an **owned auto** or **non-owned auto** in connection with the **insured** being charged with a felony.
19. We do not cover **bodily injury** or **property damage** while any **owned auto** is leased or rented to others or given in exchange for any compensation, including while operated, maintained or used as part of any **peer-to-peer vehicle sharing** during the **vehicle sharing period**. This exclusion does not apply to a **temporary substitute auto** operated by **you**, a **relative**, or to any other person using the **temporary substitute auto** with **your** permission. The actual use must be within the scope of that permission.

## PERSONS INSURED

### Who Is Covered

Section I applies to the following as **insureds** with regard to an **owned auto**:

1. **You** and **your relatives**;
2. Any other person using the auto with **your** permission. The actual use must be within the scope of that permission;
3. Any other person or organization for their or its liability because of acts or omissions of an **insured** under **1.** or **2.** above.

Section I applies to the following with regard to a **non-owned auto**:

1. (a) **You**;
   (b) **Your relatives** when using a **private passenger auto**, **farm auto**, **utility auto** or **trailer**.
   Such use by **you** or **your relatives** must be with the permission, or reasonably believed to be with the permission, of the owner and within the scope of that permission;
2. A person or organization, not owning or hiring the auto, regarding their or its liability because of acts or omissions of an **insured** under **1.** above.

The limits of liability stated in the **Declarations Page** are our maximum obligations regardless of the number of **insureds** involved in the occurrence.

## FINANCIAL RESPONSIBILITY LAWS

When this policy is certified as proof of financial responsibility for the future under the provisions of a motor vehicle financial responsibility law, this liability insurance will comply with the provisions of that law. The **insured** agrees to reimburse us for payments made by us which we would not have had to make except for this agreement.

## OUT OF STATE INSURANCE

When the policy applies to the operation of a motor vehicle outside of **your** state, we agree to increase **your** coverages to the extent required of out-of-state motorists by local law. This additional coverage will be reduced to the extent that **you** are protected by another insurance policy. No person can be paid more than once for any item of loss.

## LIMITS OF LIABILITY

Regardless of the number of autos or **trailers** to which this policy applies:

1. The limit of Bodily Injury Liability stated in the **Declarations Page** as applicable to "each person" is the limit of our liability for all damages, including but not limited to, damages for care and loss of services, loss of consortium, bystander claims, and claims for mental anguish because of **bodily injury** sustained by one person as the result of one occurrence.
2. The limit of such liability stated in the **Declarations Page** as applicable to "each occurrence" is, subject to the above provision respecting each person, the total limit of our liability for all such damages, including but not limited to, damages for care and loss of services, loss of consortium, bystander claims, and claims for mental anguish because of **bodily injury** sustained by two or more persons as the result of any one occurrence.
3. The limit of Property Damage Liability stated in the **Declarations Page** is the total limit of our liability for all damages because of injury to or destruction of the property of one or more persons or organizations, including the loss of use of the property as the result of any one occurrence.

## OTHER INSURANCE

If the **insured** has other insurance against a loss covered by Section I of this policy, we will not owe more than our pro-rata share of the total coverage available.

Any insurance we provide for losses arising out of the ownership, maintenance or use of a vehicle **you** do not own shall be excess over other valid and collectible insurance.

## NON-DUPLICATION

There will be no duplication of payments made under the Liability Coverage of this policy and any other coverage of this policy. Any amount payable for **bodily injury** on behalf of an **insured** under any other coverages of this policy will be reduced by the amount paid under this coverage.

## CONDITIONS

The following conditions apply to Section I:

Case 3:25-cv-00593     Document 1-1     Filed 05/29/25     Page 201 of 261 PageID #: 206

1. **NOTICE**
   As soon as possible after an occurrence, notice must be given to us or our authorized agent stating:
   (a) The identity of the *insured*;
   (b) The time, place and details of the occurrence;
   (c) The names and addresses of the injured, and of any witnesses; and
   (d) The names of the owners and the description and location of any damaged property.
   If a claim or suit is brought against an *insured*, they must promptly send us each demand, notice, summons or other process received.

2. **TWO OR MORE AUTOS**
   If this policy covers two or more autos, the limit of coverage applies separately to each. An auto and an attached *trailer* are considered to be one auto.

3. **ASSISTANCE AND COOPERATION OF THE INSURED**
   The *insured* will cooperate and assist us, if requested:
   (a) In the investigation of the occurrence;
   (b) In making settlements;
   (c) In the conduct of suits;
   (d) In enforcing any right of contribution or indemnity against any legally responsible person or organization because of *bodily injury* or *property damage*;
   (e) At trials and hearings;
   (f) In securing and giving evidence; and
   (g) By obtaining the attendance of witnesses.
   Only at their own cost will the *insured* make a payment, assume any obligation or incur any cost other than for first aid to others.

4. **ACTION AGAINST US**
   No suit will lie against us:
   (a) Unless the *insured* has fully complied with all the policy's terms and conditions, and
   (b) Until the amount of the *insured's* obligation to pay has been finally determined, either:
       (i) By a final judgment against the *insured* after actual trial; or
       (ii) By written agreement of the *insured*, the claimant and us.
   A person or organization or the legal representative of either, who secures a judgment or written agreement, may then sue to recover up to the policy limits.
   No person or organization, including the *insured*, has a right under this policy to make us a defendant in an action to determine the *insured's* liability.
   Bankruptcy or insolvency of the *insured* or their estate will not relieve us of our obligations.

5. **SUBROGATION**
   When we make a payment under this coverage we will be subrogated (to the extent of payment made by us) to the rights of recovery the injured person or anyone receiving the payments may have against any person or organization. Such person will do whatever is necessary to secure our rights and will do nothing to prejudice them. This means we will have the right to sue for or otherwise recover the loss from anyone else who may be held responsible.

---

**SECTION II - AUTO MEDICAL PAYMENTS COVERAGE**
**Protection For You And Your Passengers For Medical Expenses**

---

Medical Payments coverage is provided only when a coverage limit and premium is shown for Medical Payments on the **Declarations Page**.

**DEFINITIONS**

The definitions of terms shown under Section I apply to this Coverage. In addition, under this Coverage, *occupying* means in or entering into or alighting from.

**PAYMENTS WE WILL MAKE**

Under this Coverage, we will pay all reasonable expenses actually incurred by an *insured* within one year from the date of accident for necessary medical, surgical, x-ray, dental services, prosthetic devices, ambulance, hospital, professional nursing and funeral services. The one year limit does not apply to funeral services.
Expenses are reasonable only if they are consistent with the usual fees charged by the majority of similar medical providers in the geographical area in which the expenses are incurred for the specific medical service.
Services are necessary only if the services are rendered by a licensed medical provider within the scope of the provider's practice and license and are essential.
We have the right to make or obtain a utilization review of the medical expenses and services to determine if they are reasonable and necessary for the *bodily injury* sustained.

Case 3:25-cv-00593     Document 1-1     Filed 05/29/25     Page 202 of 261 PageID #: 207     EXHIBIT A

This Coverage applies to:

1. **You** and each **relative** who sustains **bodily injury** caused by accident:
    (a) While **occupying** the **owned auto**; or
    (b) While **occupying** a **non-owned auto** if **you** or **your relative** reasonably believe **you** have the owner's permission to use the auto and the use is within the scope of that permission; or
    (c) When struck as a pedestrian by an auto or **trailer**.
2. Any other person who sustains **bodily injury** caused by accident while **occupying** the **owned auto** while being used by **you**, a resident of **your** household, or other persons with **your** permission.

## EXCLUSIONS

### When Section II Does Not Apply

1. There is no coverage for **bodily injury** to any person arising out of the ownership, maintenance, or use of any motor vehicle while it is being used:
    (a) for **ride-sharing**. This exclusion **1.**(a) does not apply to **you** or a **relative** while a passenger and not operating the motor vehicle;
    (b) to carry persons for compensation or fee. This includes while going to pick up, transporting, delivering and returning from a drop-off; or
    (c) for retail or wholesale delivery, including, but not limited to, the pick up, transport or delivery of magazines, newspapers, mail, food or any other products. This exclusion, **1.**(c) does not apply to **bodily injury** arising out of the use of an **owned auto** or **non-owned auto** by an independent contractor delivering mail for the United States Postal Service.

    This exclusion does not apply to **you** or any **relative** while a passenger and not operating the motor vehicle. Further, a vehicle used in an ordinary car pool is covered. An ordinary car pool is one where:
    (i) An **insured** receives no payment for using a vehicle for a car pool ride; or
    (ii) An **insured** receives only reimbursement for expenses for using a vehicle for a car pool ride, the reimbursement an **insured** receives for providing the car pool ride does not exceed the reasonable cost of gas and depreciation for the distance traveled, and the reimbursement received by an **insured** is not required to be reported for income tax purposes.
2. There is no coverage for an **insured** while **occupying** a vehicle located for use as a residence or premises.
3. **You** and **your relatives** are not covered for **bodily injury** sustained while **occupying** or when struck by:
    (a) A farm-type tractor or other equipment designed for use principally off public roads, while not upon public roads; or
    (b) A vehicle operated on rails or crawler-treads.
4. There is no coverage for persons employed in the **auto business**, if the accident arises out of that business and if benefits are required to be provided under a workers' compensation law.
5. There is no coverage for **bodily injury** sustained due to **war**.
6. The United States of America or any of its agencies are not covered as an **insured**, a third party beneficiary, or otherwise.
7. There is no coverage for **bodily injury** that results from nuclear exposure or explosion including resulting fire, radiation or contamination.
8. There is no coverage for **bodily injury** that results from bio-chemical attack or exposure to bio-chemical agents.
9. Section II does not apply to:
    (a) **bodily injury** caused by a motor vehicle driven in or preparing for any racing, speed, or demolition contest or stunting activity of any nature, whether or not prearranged or organized; or
    (b) the operation or use of a motor vehicle on a track designed primarily for racing or high speed driving. This does not apply if the vehicle is being used in connection with an activity other than racing, high speed driving or any competitive driving.
10. There is no coverage for **bodily injury** sustained while **occupying** any motorized vehicle which is not defined as an **owned auto** or **non-owned auto** under this policy.
11. There is no coverage for **bodily injury** occurring during the course of employment if worker's compensation benefits are required or available.
12. There is no coverage for **bodily injury** to any person while any **owned auto** is leased or rented to others or given in exchange for any compensation, including while operated, maintained or used as part of any **peer-to-peer vehicle sharing** during the **vehicle sharing period**.

    This exclusion does not apply to a **temporary substitute auto** operated by **you**, a **relative**, or to any other person using the **temporary substitute auto** with **your** permission. The actual use must be within the scope of that permission.

## NON-DUPLICATION

There will be no duplication of payments made under the Auto Medical Payments coverage of this policy and any other coverage of this policy. All payments made to or on behalf of any person under this coverage will be considered as advance payments to that person. Any amount payable for **bodily injury** to an **insured** under any other coverages of

Case 3:25-cv-00593   Document 1-1   Filed 05/29/25   Page 203 of 261   PageID #: 208   EXHIBIT 2

this policy will be reduced by the amount paid under this coverage.

## LIMIT OF LIABILITY

The limit of liability for Medical Payments stated in the **Declarations Page** is the limit we will pay for all costs incurred by or on behalf of each person who sustains *bodily injury* in one accident. This applies regardless of the number of persons insured or the number of autos or *trailers* to which this policy applies.

No person for whom medical expenses are payable under the medical payments coverage shall be paid more than once for the same medical expense under this or similar vehicle insurance, including any no-fault benefits required by law.

An auto and an attached *trailer* are considered to be one auto.

## OTHER INSURANCE

If the *insured* has other medical payments insurance against a loss covered by Section II of this policy, we will not owe more than our pro-rata share of the total coverage available.

Any insurance we provide to a person who sustains *bodily injury* while *occupying* a vehicle *you* do not own shall be excess over any other valid and collectible insurance.

## CONDITIONS

The following conditions apply to this Coverage:

1. NOTICE

   As soon as possible after an accident, notice must be given to us or our authorized agent stating:

   (a) The identity of the *insured*;

   (b) The time, place and details of the accident; and

   (c) The names and addresses of the injured, and of any witnesses.

2. ACTION AGAINST US

   Suit will not lie against us unless the *insured* has fully complied with all the policy terms.

3. MEDICAL REPORTS - PROOF AND PAYMENT OF CLAIMS

   As soon as possible, the injured person or their representative will furnish us with written proof of claim, under oath if required. After each request from us, they will give us written authority to obtain medical reports and copies of records.

   The injured person will submit to an examination by doctors chosen by us and at our expense as we may reasonably require.

   We may pay either the injured person, the doctor or other persons or organizations rendering medical services. These payments are made without regard to fault or legal liability of the *insured*.

4. SUBROGATION

   If we make a payment under Section II - Auto Medical Payments of this policy, and the person to or for whom payment was made has a right to recover damages from another, we shall be subrogated to that right. That person shall do whatever is necessary to enable us to exercise our rights and shall do nothing after loss or *bodily injury* to prejudice them.

   If we make payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall hold in trust for us the proceeds of the recovery and shall reimburse us to the extent of our payment, costs, and fees.

---

## SECTION III - PHYSICAL DAMAGE COVERAGES
### Your Protection For Loss Or Damage To Your Car

---

## DEFINITIONS

The definitions of the terms *auto business*, *farm auto*, *non-owned auto*, *peer-to-peer vehicle sharing*, *peer-to-peer vehicle sharing program*, *private passenger auto*, *relative*, *rental vehicle company*, *ride-sharing*, *shared vehicle*, *shared vehicle driver*, *shared vehicle owner*, *temporary substitute auto*, *transportation network company*, *utility auto*, *vehicle sharing delivery period*, *vehicle sharing period*, *vehicle sharing program agreement*, *vehicle sharing start time*, *vehicle sharing termination time*, *war*, and *you* and *your* under Section I apply to Section III also. Under this Section, the following special definitions apply:

1. *Actual cash value* is determined by the market value, age, and condition of the vehicle or property at the time the *loss* occurs.

2. *Collision* means *loss* caused by upset of the covered auto or its collision with another object, including an attached vehicle.

3. *Custom parts or equipment* means paint, equipment, devices, accessories, enhancements, and changes, other than those which are original manufacturer installed, which:

   (a) Are permanently installed or attached; or

   (b) Alter the appearance or performance of a vehicle.

Case 3:25-cv-00593     Document 1-1     Filed 05/29/25     Page 204 of 261     PageID #: 209     EXHIBIT A

This includes any electronic equipment, antennas, and other devices used exclusively to send or receive audio, visual, or data signals, or to play back recorded media, other than those which are original manufacturer installed, that are permanently installed in the **owned auto** or a newly acquired vehicle using bolts or brackets, including slide-out brackets.

4. **Insured** means:
   (a) Regarding the **owned auto**:
      (i) **You** and **your relatives**;
      (ii) A person or organization maintaining, using or having custody of the auto with **your** permission, if their use is within the scope of that permission.
   (b) Regarding a **non-owned auto**; **you** and **your relatives**, using the auto, if the actual operation or use is with the permission or reasonably believed to be with the permission of the owner and within the scope of that permission.

5. **Loss** means direct and accidental loss of or damage to the auto, including its equipment.

6. **Owned auto** means:
   (a) Any vehicle described in this policy for which a specific premium charge indicates there is coverage;
   (b) A **private passenger auto**, **farm auto**, **utility auto** or a **trailer**, ownership of which is acquired by **you** during the policy period or for which **you** enter into a lease during the policy period for a term of six months or more; if
      (i) It replaces an **owned auto** as described in (a) above, or
      (ii) We insure all **private passenger autos**, **farm autos**, **utility autos** and **trailers** owned by **you** on the date of such acquisition and **you** request us to add it to the policy within 30 days afterward;
   (c) A **temporary substitute auto**.

7. **Trailer** means a trailer designed to be towed by a **private passenger auto** and not used as a home, residence, office, store, display or passenger trailer. **Trailer** does not mean a trailer with built-in sleeping facilities designed for recreational or camping use.

## PART I - COMPREHENSIVE AND COLLISION COVERAGE

Comprehensive Coverage for an **owned auto** involved in the **loss** applies only when a premium is shown on the **Declarations Page** for Comprehensive Coverage for that vehicle.

Comprehensive Coverage for a **non-owned auto** involved in the **loss** applies only when a premium is shown on the **Declarations Page** for Comprehensive Coverage.

Collision Coverage for an **owned auto** involved in the **loss** applies only when a premium is shown on the **Declarations Page** for Collision Coverage for that vehicle.

Collision Coverage for a **non-owned auto** involved in the **loss** applies only when a premium is shown on the **Declarations Page** for Collision Coverage.

With respect to coverage provided by this **PART**, the provisions of the policy apply unless modified by this **PART**.

**LOSSES WE WILL PAY FOR YOU**

**Comprehensive (Excluding Collision)**

1. We will pay for each **loss**, less the applicable deductible, caused other than by **collision**, to the **owned auto** or **non-owned auto**. This includes breakage of glass and **loss** caused by:

   (a) Missiles;
   (b) Falling objects;
   (c) Fire;
   (d) Lightning;
   (e) Theft;
   (f) Larceny;
   (g) Explosion;
   (h) Earthquake;
   (i) Colliding with a bird or animal;
   (j) Windstorm;
   (k) Hail;
   (l) Water;
   (m) Flood
   (n) Malicious mischief;
   (o) Vandalism;
   (p) Riot; or
   (q) Civil commotion.

   At the option of the **insured**, breakage of glass caused by **collision** may be paid under the Collision Coverage, if included in the policy.

2. **Losses** arising out of a single occurrence shall be subject to no more than one deductible.

**Collision**

1. We will pay for **collision loss** to the **owned auto** or **non-owned auto** for the amount of each **loss** less the applicable deductible.

2. **Losses** arising out of a single occurrence shall be subject to no more than one deductible.

**ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE PHYSICAL DAMAGE COVERAGES**

1. We will reimburse the **insured** for transportation expenses incurred during the period beginning 48 hours after a theft of the entire auto covered by Comprehensive Coverage under this policy has been reported to us and the police. Reimbursement ends when the auto is returned to use or we pay for the **loss**.
   Reimbursement will not exceed $25 per day nor $750 per **loss**.

Case 3:25-cv-00593    Document 1-1    Filed 05/29/25    Page 205 of 261    PageID #: 210    EXHIBIT A

**2.** We will pay general average and salvage charges for which the **insured** becomes legally liable when the auto is being transported.

## EXCLUSIONS

### When The Physical Damage Coverages Do Not Apply

**1.** Section III does not apply to any motor vehicle while it is being used:

(a) for **ride-sharing**;

(b) to carry persons for compensation or fee. This includes while going to pick up, transporting, delivering and returning from a drop-off; or

(c) for retail or wholesale delivery, including, but not limited to, the pick up, transport or delivery of magazines, newspapers, mail, food or any other products. This exclusion, **1.**(c) does not apply to **loss** arising out of the use of an **owned auto** or **non-owned auto** by an independent contractor delivering mail for the United States Postal Service.

However, a vehicle used in an ordinary car pool is covered. An ordinary car pool is one where:

(i) An **insured** receives no payment for using a vehicle for a car pool ride; or

(ii) An **insured** receives only reimbursement for expenses for using a vehicle for a car pool ride, the reimbursement an **insured** receives for providing the car pool ride does not exceed the reasonable cost of gas and depreciation for the distance traveled, and the reimbursement received by an **insured** is not required to be reported for income tax purposes.

**2.** **Loss** due to **war** is not covered.

**3.** We do not cover **loss** to a **non-owned auto** when used by the **insured** in the **auto business**.

**4.** There is no coverage for **loss** caused by and limited to wear and tear, freezing, mechanical, electrical, or electronic breakdown or failure, unless that damage results from a covered theft.

**5.** Tires, when they alone are damaged by **collision**, are not covered.

**6.** **Loss** due to radioactivity is not covered.

**7.** **Loss** to portable equipment, devices, accessories, and other personal effects that are not permanently installed is not covered. This includes, but is not limited to:

(a) tapes, compact discs, cassettes, DVDs, and other recording or recorded media;

(b) any case or other container designed for use in storing or carrying tapes, compact discs, cassettes, DVDs, or other recording or recorded media;

(c) any device used for the detection or location of radar, laser, or other speed measuring equipment or its transmissions; and

(d) CB radios, telephones, two-way mobile radios, DVD players, personal computers, personal digital assistants, or televisions.

**8.** We do not cover **trailers** when used for business or commercial purposes with vehicles other than **private passenger autos**, **farm autos** or **utility autos**.

**9.** There is no coverage for **loss** that results from nuclear exposure or explosion including resulting fire, radiation, or contamination.

**10.** There is no coverage for **loss** that results from bio-chemical attack or exposure to bio-chemical agents.

**11.** Section III does not apply to any **loss** caused by:

(a) a motor vehicle driven in or preparing for any racing, speed, or demolition contest or stunting activity of any nature, whether or not prearranged or organized; or

(b) the operation or use of a motor vehicle on a track designed primarily for racing or high speed driving. This does not apply if the vehicle is being used in connection with an activity other than racing, high speed driving or any competitive driving.

**12.** We do not cover **loss** for **custom parts or equipment**, in excess of $1,000, unless the existence of those **custom parts or equipment** has been previously reported to us and an endorsement to the policy has been added.

**13.** There is no coverage for any liability assumed under any contract or agreement.

**14.** There is no coverage for **loss** or damage resulting from:

(a) The acquisition of a stolen vehicle;

(b) Any governmental, legal or other action to return a vehicle to its legal, equitable, or beneficial owner, or anyone claiming an ownership interest in the vehicle;

(c) Any confiscation, destruction, seizure or impoundment of a vehicle by governmental authorities or civil authorities; or

(d) The sale of an **owned auto**.

**15.** We do not cover **loss** while any **owned auto** is leased or rented to others or given in exchange for any compensation, including while operated, maintained or used as part of any **peer-to-peer vehicle sharing** during the **vehicle sharing period**. This exclusion does not apply to a **temporary substitute auto** operated by **you**, a **relative**, or to any other person using the **temporary substitute auto** with **your** permission. The actual use must be within the scope of that permission.

**LIMIT OF LIABILITY**

The limit of our liability for *loss*:

1. Is the *actual cash value* of the property at the time of the *loss*;
2. For the repair of the damaged property, will not exceed the prevailing competitive price to repair or replace the property at the time of *loss*, or any of its parts, including parts from non-original equipment manufacturers, with other of like kind and quality and will not include compensation for any diminution of value claimed to result from the *loss*. Although *you* have the right to choose any repair facility or location, the limit of liability for repair or replacement of such property is the prevailing competitive price, which is the price we can secure from a competent and conveniently located repair facility. At *your* request, we will identify a repair facility that will perform the repairs at the prevailing competitive price;
3. To a *trailer* not owned by *you* is $500;
4. For *custom parts or equipment* is limited to the *actual cash value* of the *custom parts or equipment*, not to exceed the *actual cash value* of the vehicle. However, the most we will pay for *loss* to *custom parts or equipment* is $1,000, unless the existence of those *custom parts or equipment* has been previously reported to us and an endorsement to the policy has been added.
5. If a *non-owned auto* or *temporary substitute auto*, in operation while leased or rented for a fee, has a Manufacturer Suggested Retail Price above $100,000, the limit of liability for *loss* to the *non-owned auto* or *temporary substitute auto* is the highest of the *actual cash value* of any *owned auto* shown on the **Declarations Page**.

**OTHER INSURANCE**

If the *insured* has other insurance against a *loss* covered by Section III, we will not owe more than our pro-rata share of the total coverage available.

Any insurance we provide for a vehicle *you* do not own shall be excess over any other valid and collectible insurance.

**CONDITIONS**

The following conditions apply only to the Physical Damage Coverages:

1. NOTICE
   As soon as possible after a *loss*, notice must be given to us or our authorized agent stating:
   (a) The identity of the *insured*;
   (b) A description of the auto or *trailer*;
   (c) The time, place and details of the *loss*; and
   (d) The names and addresses of any witnesses.
   In case of theft, the *insured* must promptly notify the police.
   In the case of theft of the entire vehicle, the *insured* must promptly notify the police that the vehicle was stolen. To be eligible as a covered *loss*, the police report must acknowledge and classify the report as theft of a motor vehicle. The *insured* must cooperate fully with the police investigation, with the claim investigation, and with the prosecution of any person(s) charged with theft, and with any civil suit brought by us against the person(s) responsible to recover for the *loss*.
2. TWO OR MORE AUTOS
   If this policy covers two or more autos or *trailers*, the limit of coverage and any deductibles apply separately to each.
3. ASSISTANCE AND COOPERATION OF THE INSURED
   The *insured* will cooperate and assist us, if requested:
   (a) In the investigation of the *loss*;
   (b) In making settlements;
   (c) In the conduct of suits;
   (d) In enforcing any right of subrogation against any legally responsible person or organization;
   (e) At trials and hearings;
   (f) In securing and giving evidence; and
   (g) By obtaining the attendance of witnesses.
4. ACTION AGAINST US
   Suit will not lie against us unless the policy terms have been complied with and until 30 days after proof of loss is filed and the amount of *loss* is determined.
   If we retain salvage, we have no duty to preserve or otherwise retain the salvage for any purpose, including as evidence for any civil or criminal proceeding. If *you* ask us immediately after a *loss* to preserve the salvage for inspection, we will do so for a period not to exceed 30 days. *You* may purchase the salvage from us if *you* wish.
5. INSURED'S DUTIES IN EVENT OF LOSS
   In the event of *loss* the *insured* will:
   (a) Protect the auto, whether or not the *loss* is covered by this policy. Further *loss* due to the *insured's* failure to protect the auto will not be covered. Reasonable expenses incurred for this protection will be paid by us.
   (b) File with us, within 91 days after *loss*, their sworn proof of loss including all information we may reasonably

require.

(c) At our request, the **insured** will exhibit the damaged property.

**6.** APPRAISAL

We and the owner of **your owned auto** or the **non-owned auto** must agree upon the **actual cash value** of **your owned auto** or the **non-owned auto**. If there is a disagreement as to the **actual cash value** of **your owned auto** or the **non-owned auto**, then the disagreement will be resolved by appraisal upon written request of the owner or us, using the following procedures:

(a) The owner and we will each select a competent appraiser.

(b) The two appraisers will select a third competent appraiser. If they are unable to agree on a third appraiser within 30 days, then either the owner or we may petition a court that has jurisdiction to select the third appraiser.

(c) Each party will pay the cost of its own appraiser, attorneys, and expert witnesses, as well as any other expenses incurred by the party. Both parties will share equally the cost of the third appraiser.

(d) The appraisers shall only determine the actual cash value of **your owned auto** or the **non-owned auto**. Appraisers shall have no authority to decide any other questions of fact, decide any questions of law, or conduct appraisal on a class-wide or class-representative basis.

(e) A written appraisal that is both agreed upon by and signed by any two appraisers, and that also contains an explanation of how they arrived at their appraisal, will be binding on the owner of **your owned auto** or the **non-owned auto** and us.

(f) We do not waive any of our rights by submitting to an appraisal, nor shall the appraisal process waive any terms or exclusions of the policy contract.

**7.** PAYMENT OF LOSS

We may at our option:

(a) Pay for the **loss**; or

(b) Repair or replace the damaged or stolen property.

At any time before the **loss** is paid or the property replaced, we may return any stolen property to **you** or to the address shown in the **Declarations Page** at our expense with payment for covered damage. We may take all or part of the property at the agreed or appraised value, but there will be no abandonment to us. We may settle claims for **loss** either with the **insured** or the owner of the property.

**8.** NO BENEFIT TO BAILEE

This insurance does not apply directly or indirectly to the benefit of a carrier or other bailee for hire liable for the **loss** of the auto.

**9.** SUBROGATION

If we make a payment under Section III - Physical Damage Coverages of this policy, and the person to or for whom payment was made has a right to recover damages from another, we shall be subrogated to that right. That person shall do whatever is necessary to enable us to exercise our rights and shall do nothing after **loss** or **bodily injury** to prejudice them.

If we make payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall hold in trust for us the proceeds of the recovery and shall reimburse us to the extent of our payment, costs, and fees.

**10.** ASSIGNMENT

With respect to Section III, Physical Damage Coverages, an assignment of interest under this policy will not bind us without our consent. Any nonconforming assignment shall be void and invalid. Moreover, the assignee of a nonconforming assignment shall acquire no rights under this contract and we shall not recognize any such assignee.

## PART I - EMERGENCY ROAD SERVICE COVERAGE

Emergency Road Service Coverage for the vehicle involved applies only when a premium is shown on the **Declarations Page** for Emergency Road Service for that vehicle.

With respect to coverage provided by this **PART**, the provisions of **PART I** and the policy apply unless modified by this **PART**.

## LOSSES WE WILL PAY

If an **owned auto** or **non-owned auto** becomes disabled, we will determine and pay reasonable and customary expenses an **insured** incurs for the following:

**1.** Battery jump start or labor to install a new battery purchased at the **insured's** expense, performed where the **owned auto** or **non-owned auto** became disabled;

**2.** Lockout services up to $100 per lockout if keys to the **owned auto** or **non-owned auto** are lost, broken or accidentally locked in the **owned auto** or **non-owned auto**. Lockout services does not include the cost to repair, replace, or reprogram any lost, stolen or damaged electronic or digital keys, including, but not limited to, key fobs;

**3.** Towing from where the **owned auto** or **non-owned auto** became disabled as long as it can be safely reached by a normally traveled road by a service vehicle with automobile servicing equipment operated by one person, to either

(a) the nearest repair facility; or

(b) customer destination of choice

Case 3:25-cv-00593     Document 1-1     Filed 05/29/25     Page 208 of 261     PageID #: 213     EXHIBIT A3

that is within 15 miles from the location of disablement.

4.  Winching the **owned auto** or **non-owned auto** as long as it can be safely reached from a normally traveled road by a service vehicle with automobile servicing equipment operated by one person;
5.  Delivery of gas. WE DO NOT PAY FOR THE COST OF THE GAS;
6.  Changing a flat tire with the **insured's** operable spare at the location where the **owned auto** or **non-owned auto** became disabled;
7.  Battery Electric Vehicle (BEV) charging at the location of disablement for up to 20 minutes of plugged-in charging. Any additional plugged-in charging time is at the **insured's** expense and paid by the **insured** directly to the road service provider.

## EXCLUSIONS
### When The Emergency Road Service Coverage Does Not Apply
We will not provide Emergency Road Service Coverage for:

1.  more than one reimbursement per disablement;
2.  more than three (3) covered emergencies for any single covered auto during the policy period;
3.  the cost of gas, oil, batteries, or tire(s);
4.  the delivery of air, inflation of a tire(s), or patching of a tire(s);
5.  the costs of replacement keys, or the labor to make replacement keys;
6.  any parts, labor, fluids or other materials or charges necessary for the completion of any repair;
7.  installation of products or material not related to the disablement;
8.  mounting or removing of snow tires or chains;
9.  any repairs, labor or towing not specifically listed under **LOSSES WE WILL PAY** - Emergency Road Service Coverage;
10. any vehicle:
    (a) driven off established roads;
    (b) driven in areas not designed for private passenger automobile traffic;
    (c) disabled and/or stuck due to participation in and/or preparation for driving a vehicle through a pit of mud or on a mud track, whether or not prearranged or organized; or
    (d) disabled and/or stuck intentionally by any **insured**;
11. any vehicle arising from impoundment or abandonment;
12. any vehicle illegally parked or associated with illegal activity;
13. auto storage charges;
14. any covered auto while being used in connection with **ride-sharing** activity; or
15. any covered auto while being used in connection with a **peer-to-peer vehicle sharing program**.
    However, this shall not apply when a covered auto is being used by **you** or a **relative**.

## OBTAINING SERVICE
**You** may secure service under this coverage for Emergency Road Service Coverage  in the following manner:

### SIGN AND DRIVE
The first method, called sign and drive, allows the **insured** to contact GEICO Emergency Road Service via its mobile app or a toll-free number to initiate the dispatch of a service vendor. Upon verification of Emergency Road Service (ERS) coverage, reasonable and necessary charges for covered services provided will be automatically billed to the Company by the Service vendor. The **insured** need only sign a receipt at the time of service which authorizes the Company to directly pay the service vendor. Any charges, expenses or other fees not specifically addressed above in **LOSSES WE WILL PAY**, or lockout services in excess of $100, are not covered and are at the **insured's** own expense.

If we are unable to locate and dispatch a service vendor to an **insured** and the **insured** hires services without the assistance of a GEICO Emergency Road Service representative, we will reimburse an **insured** only as addressed above in **LOSSES WE WILL PAY**.

### HIRED SERVICES
The second method occurs when the **insured** does not use the sign and drive feature described above and hires services without prior approval from the Emergency Road Service (ERS) Department. Upon verification of Emergency Road Service (ERS) coverage, for covered services provided, up to a limit of $100 will apply. Lockout services are limited to $100. Requests for reimbursement must be accompanied by an original itemized receipt and must be submitted within 60 days of service.

## CONTINUATION OF COVERAGE
Upon each renewal period, we reserve the right to review the continuation of the ERS coverage. Removal of the ERS coverage from the policy is subject to underwriting review process at each renewal. All vehicles listed on the policy with the ERS coverage are subject to this review.

Case 3:25-cv-00593    Document 1-1    Filed 05/29/25    Page 209 of 261 PageID #: 214

EXHIBIT A

## PART III - RENTAL REIMBURSEMENT COVERAGE

Rental Reimbursement Coverage for the vehicle involved in the *loss* applies only when a premium is shown on the **Declarations Page** for Rental Reimbursement for that vehicle.

With respect to coverage provided by this **PART**, the provisions of **PART I** and the policy apply unless modified by this **PART**.

When there is a *loss* to an *owned auto* for which a specific premium charge indicates that rental reimbursement coverage is afforded:

We will reimburse the *insured* toward costs the *insured* incurs to rent an auto. Reimbursement will not exceed the limits described in the **Declarations Page** and payment will be limited to a reasonable and necessary period of time required to repair or replace the *owned auto*. This coverage applies only if:

1.   The *owned auto* is withdrawn from use for more than 24 consecutive hours, and
2.   the *loss* to the *owned auto* is covered under comprehensive or collision coverage of this policy.

When there is a total theft of the entire auto, we will reimburse the *insured* toward costs the *insured* incurs to rent an auto, subject to the following limitations:

1.   This coverage will reimburse the *insured* for reasonable rental expenses beginning 48 hours after a theft of the entire vehicle covered under the comprehensive coverage of this policy;
2.   This coverage may be used to reimburse reasonable rental expenses in excess of those provided by Section III, Part I of the policy if and to the extent the coverage limits under rental reimbursement exceed those provided in Section III, Part I of the policy. In that event, the amount payable under this coverage is the amount by which this coverage exceeds those described in Section III, Part I of the policy; and
3.   Subject to number **2.** above, in no event shall the total amount payable under both this coverage and the supplemental coverage in Section III, Part I of the policy exceed the daily limit of coverage provided by this coverage.

Reimbursement for rental charges shall end the earliest of when the *owned auto* has been:

1.   Returned to *you*;
2.   Repaired;
3.   Replaced; or
4.   Deemed a total loss by us:
     (a)  Seventy-two (72) hours after we pay the applicable limit of liability under Section III, Part I; or
     (b)  Seventy-two (72) hours after our initial settlement offer;
     whichever comes first.

However, when there is a total theft of an *owned auto*, reimbursement for rental charges shall end the earliest of:

1.   The date the auto is returned to use if the vehicle is recovered before payment of the total theft claim to *you* or the owner of the vehicle; or if the vehicle is not recovered,
2.   Seventy-two (72) hours after our initial settlement offer of the *actual cash value* of the *owned auto*.
3.   Seventy-two (72) hours after the failure to provide either a proof of loss or recorded statement if requested by us.

No deductible applies to this coverage.

### CONDITIONS

In the case of theft of the entire auto, the *insured* must promptly notify the police that the vehicle was stolen. To be eligible as a covered *loss*, the police report must acknowledge and classify the report as theft of a motor vehicle.

The *insured* must cooperate fully: with the policy investigation, with the prosecution of any person(s) charged with theft and any civil suit brought by us against the person(s) responsible to recover for the *loss*.

This coverage is subject to all the provisions and conditions of Section III, Part I of the policy.

### PART IV - MECHANICAL BREAKDOWN PROTECTION

Mechanical Breakdown Protection Coverage for the vehicle involved applies only when a premium is shown on the **Declarations Page** for Mechanical Breakdown for that vehicle.

With respect to coverage provided by this **PART**, the provisions of **PART I** and the policy apply unless modified by this **PART**.

The amount of applicable deductible shown in the policy **Declarations Page** shall apply to each *loss* under the Mechanical Breakdown Coverage. A $50 deductible shall apply to glass breakage without any other damage to the auto, unless *you* carry comprehensive coverage without a deductible.

### MECHANICAL BREAKDOWN PROTECTION

We will pay for *loss* caused other than by *collision* or under the comprehensive coverage due to the mechanical breakdown of the *owned auto*. *Losses* from mechanical breakdown shall not be accumulated to reach the deductible.

### DEFINITIONS

The following special definitions apply with respect to Mechanical Breakdown only:

*Loss* means all risk of physical damage to the *owned auto* or its equipment.

*Owned auto* means any vehicle described in the policy **Declarations Page** for which a specific premium charge indicates there is coverage for mechanical breakdown. *Owned auto* does not include:

Case 3:25-cv-00593    Document 1-1    Filed 05/29/25    Page 210 of 261 PageID #: 215

(a) a newly acquired vehicle;
(b) a replacement vehicle; or
(c) a *temporary substitute auto*.

## EXCLUSIONS

For Mechanical Breakdown coverage, the following exclusion is deleted:

There is no coverage for *loss* caused by and limited to wear and tear, freezing, mechanical, electrical, or electronic breakdown or failure, unless that damage results from a covered theft.

The following exclusions are added with respect to mechanical breakdown only:

A. Oxidation and rust damage are not covered.
B. Damage caused intentionally by *you* or any other person using an *owned auto* with *your* permission is not covered.
C. *Loss* due to misuse, alteration, or **lack of proper maintenance** is not covered. **Proper maintenance** is the recommended vehicle maintenance as outlined in the owner's manual provided by the manufacturer.
D. Tire wear or other tire damage is not covered.
E. Normal wear and tear is not covered.
F. Routine maintenance services and parts are not covered. This includes; but is not limited to:
   (a) engine tune up;
   (b) suspension alignment;
   (c) wheel balancing;
   (d) filters;
   (e) lubrication;
   (f) engine coolant;
   (g) fluids;
   (h) spark or glow plugs;
   (i) brake pads;
   (j) brake linings; and
   (k) brake shoes.
G. Any *loss* to the extent covered by warranty, recall or voluntary repair programs is not covered.
H. Any *loss* to a *non-owned auto* or to a *temporary substitute auto* is not covered.
I. Any *loss* to a newly acquired or replacement auto is not covered.
J. Any pre-existing *loss* or damage to any insured auto is not covered.
K. Mechanical Breakdown coverage will either terminate when the Odometer reading exceeds 100,000 miles or when the age of the vehicle is 7 years old, whichever occurs earlier.

## OTHER INSURANCE

For the purposes of this coverage only, if *you* have other insurance against a *loss* covered by mechanical breakdown protection, this policy will apply as excess insurance over such other valid and collectible insurance.

## CONDITIONS

For the purposes of this coverage only, the following condition is revised with respect to Mechanical Breakdown protection:

Item (e) is added to Condition **1.** NOTICE:

(e) the location of the *owned auto*.

The following condition is added with respect to Mechanical Breakdown protection:

For this coverage to be applicable, repairs may not be undertaken prior to obtaining authorization from us.

---

### SECTION IV - UNINSURED MOTORIST COVERAGE
### Protection For You And Your Passengers For Injuries
### Caused By Uninsured And Hit-And-Run Motorists

---

Uninsured Motorist Bodily Injury coverage is provided only when a coverage limit and premium is shown for Uninsured Motorists Bodily Injury on the **Declarations Page**.

Uninsured Motorist Property Damage coverage is provided only when a coverage limit and premium is shown for Uninsured Motorists Property Damage on the **Declarations Page.**

## DEFINITIONS

The definitions of terms for Section I apply to Section IV, except for the following special definitions:

**1.** *Hit-and-run auto* is a motor vehicle causing *bodily injury* to an *insured* or *property damage* to the *insured auto* through physical contact with them or the *insured auto* or with an auto they are *occupying* at the time of the accident and whose operator or owner cannot be identified, provided the *insured* or someone on their behalf:

(a) Reports the accident to a police, peace or judicial officer or to the Commissioner of Motor Vehicles within a reasonable time;

Case 3:25-cv-00593     Document 1-1     Filed 05/29/25     Page 211 of 261 PageID #: 216     EXHIBIT 1-A

(b) Files with us as soon as possible a statement setting forth the facts of the accident and claiming that they have a cause of action for compensatory damages against an unidentified person;

(c) Shows that the *insured* was not negligent in failing to determine the identity of the other vehicle and its owner or operator at the time of the accident; and

(d) Makes available for inspection, at our request, the auto *occupied* by the *insured* at the time of the accident.

If there is no physical contact with the *hit-and-run auto* the facts of the accident must be established by clear and convincing evidence other than any evidence from occupants of the *insured auto*.

2. *Insured* means:
   (a) The named insured shown in the **Declarations Page** and their spouse if a resident of the same household;
   (b) *Relatives* of (a) above if residents of their household;
   (c) Any other person while *occupying* an *owned auto* with *your* consent or operating an *owned auto* with a reasonable belief that person has *your* permission to do so.
   (d) Any person who is entitled to recover compensatory damages because of *bodily injury* sustained by an *insured* under (a), (b), and (c) above.

   If there is more than one *insured*, our limit of liability will not be increased.

3. *Insured auto* is an auto:
   (a) Described in the **Declarations Page** and covered by the Bodily Injury Liability coverage of this policy;
   (b) Temporarily substituted for an *insured auto* when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction; or
   (c) Operated by *you* or *your* spouse if a resident of the same household. But the term *insured auto* does not include:
       (i) An auto used to carry passengers or goods for hire, except in a carpool;
       (ii) An auto being used without the owner's permission; or
       (iii) Under subparagraphs (b) and (c) above, an auto owned by or furnished for the regular use of an *insured*.

4. *Occupying* means in, upon, entering into or alighting from.

5. *Property damage* means injury or destruction of an auto owned by *you* and covered by the Bodily Injury and Property Damage Coverage of this policy and property in the auto owned by the *insured*.

6. *State* includes the District of Columbia, the territories and possessions of the United States, and the Provinces of Canada.

7. *Uninsured motor vehicle* means a motor vehicle whose ownership, maintenance, or use has resulted in the *bodily injury*, death or damage to property of an *insured*, and for which the sum of the limits of liability available to the *insured* under all valid and collectible insurance policies, bonds and securities, applicable to the *bodily injury*, death or damage to property is less, than the applicable limits of uninsured motorist coverage provided to the *insured* under the policy against which the claim is made.

   The term *uninsured motor vehicle* does not include:
   (a) An *insured auto*;
   (b) A motor vehicle owned by or furnished for the regular use of the *insured* or *relative*.
   (c) Self-insured within the meaning of the Tennessee Financial Responsibility Law or any similar state or Federal law;
   (d) A motor vehicle or *trailer* located for use as a residence or premises; or
   (e) A motor vehicle, farm-type tractor or equipment designed for use principally off public roads, except while used upon public roads.

## LOSSES WE PAY

Under the Uninsured Motorist Coverage we will pay compensatory damages for *bodily injury* and *property damage* (if carried) caused by accident which the *insured* is legally entitled to recover from the owner or operator of an *uninsured motor vehicle* or *hit-and-run auto* arising out of the ownership, maintenance or use of that auto.

The amount of the *insured's* recovery for these compensatory damages will be determined by agreement between the *insured* or their representative and us. The dispute may be arbitrated if an agreement cannot be reached.

## EXCLUSIONS

### When Section IV Does Not Apply

1. This Coverage does not apply to *bodily injury* to an *insured* if the *insured* or their legal representative has made a settlement or has been awarded a judgment of their claim without our prior written consent.

2. We do not cover *bodily injury* to an *insured* while *occupying* or when struck by any motor vehicle or motorcycle:
   (a) Owned by an *insured* or *relative*; and either
       (i) Not described in the **Declarations Page**; or
       (ii) Not covered under the terms of this policy as an *owned auto* or *non-owned auto*.

3. The Uninsured Motorist coverage will not benefit any workers' compensation insurer, self insurer, or disability benefits insurer.

4. We do not cover the United States of America or any of its agencies as an *insured*, a third party beneficiary or otherwise.

5. We do not cover any person while **occupying** a vehicle described in the **Declarations Page** on which Uninsured Motorist coverage is not carried.
6. There is no coverage for the first $200 of **property damage** to the property of each **insured** as the result of any one accident. However, the deductible of $200 shall not apply if we also provide Collision Coverage, for the **insured auto** and the operator of the other vehicle has been positively identified and is solely at fault.
7. Regardless of any other provision of this policy, there is no coverage for punitive or exemplary damages under the Uninsured Motorists coverage of this policy.
8. **Bodily injury** or **property damage** that results from nuclear exposure or explosion including resulting fire, radiation or contamination is not covered.
9. **Bodily injury** or **property damage** that results from bio-chemical attack or exposure to bio-chemical agents is not covered.
10. This coverage does not apply to any liability assumed under any contract or agreement.
11. This coverage does not apply to damage caused by an **insured's**:
    (a) participation in or preparation for any racing, speed, or demolition contest or stunting activity of any nature, whether or not prearranged or organized; or
    (b) operation or use of a motor vehicle on a track designed primarily for racing or high speed driving. This does not apply if the vehicle is being used in connection with an activity other than racing, high speed driving or any competitive driving.
12. This coverage does not apply to **bodily injury** to an **insured** while **occupying** a motorcycle owned by an **insured** or **relative**.
13. There is no coverage for **bodily injury** or **property damage** arising out of the ownership, maintenance, or use of any motor vehicle while it is being used:
    (a) for **ride-sharing**;
    (b) to carry persons for compensation or fee. This includes while going to pick up, transporting, delivering and returning from a drop-off; or
    (c) for retail or wholesale delivery, including, but not limited to, the pick up, transport or delivery of magazines, newspapers, mail, food or any other products. This exclusion, **13.**(c) does not apply to **bodily injury** or **property damage** arising out of the use of an **owned auto** or **non-owned auto** by an independent contractor delivering mail for the United States Postal Service.
    This exclusion does not apply to **you** or any **relative** while a passenger and not operating the motor vehicle.
    Further, a vehicle used in an ordinary car pool is covered. An ordinary car pool is one where:
    (i) An **insured** receives no payment for using a vehicle for a car pool ride; or
    (ii) An **insured** receives only reimbursement for expenses for using a vehicle for a car pool ride, the reimbursement an **insured** receives for providing the car pool ride does not exceed the reasonable cost of gas and depreciation for the distance traveled, and the reimbursement received by an **insured** is not required to be reported for income tax purposes.
14. There is no coverage for **bodily injury** to any other person while **occupying** an **owned auto** without **your** consent or operating an **owned auto** without a reasonable belief that person has **your** permission to do so.
15. There is no coverage for **bodily injury** or **property damage** sustained by any person while **occupying**, or when struck by, any motor vehicle owned by or furnished for the regular use of **you** or any **relative** which is not insured for this coverage under this policy. This includes a trailer of any type used with that motor vehicle. Furnished for regular use does not include a motor vehicle rented from a rental company for 30 days or less.
16. There is no coverage for **bodily injury** or **property damage** while any **owned auto** is leased or rented to others or given in exchange for any compensation, including while operated, maintained or used as part of any **peer-to-peer vehicle sharing** during the **vehicle sharing period**. This exclusion does not apply to a **temporary substitute auto** operated by **you**, a **relative**, or to any other person using the **temporary substitute auto** with **your** permission. The actual use must be within the scope of that permission.

## LIMITS OF LIABILITY

Regardless of the number of autos or **trailers** to which this policy applies:

1. The limit of liability for Uninsured Motorists Bodily Injury coverage stated in the **Declarations Page** for "each person" is the limit of our liability for all damages, including but not limited to, damages for care or loss of services, loss of consortium, bystander claims, and claims for mental anguish, because of **bodily injury** sustained by one person as the result of one occurrence.
2. The limit of such liability stated in the **Declarations Page** as applicable to "each occurrence" is, subject to the above provision respecting each person, the total limit of our liability for all such damages, including but not limited to, damages for care and loss of services, loss of consortium, bystander claims, and claims for mental anguish, because of **bodily injury** sustained by two or more persons as the result of any one occurrence.
3. The limit of Uninsured Motorist Property Damage liability shown in the **Declarations Page** of this policy is our total limit of liability for all damages, including loss of use, to all property of one or more **insureds** damaged as the result of any one accident.

**4.** When coverage is afforded to two or more autos, the limits of liability shall apply separately to each auto as stated in the **Declarations Page** but shall not exceed the highest limit of liability applicable to one auto.

If separate policies with us are in effect for *you* or any person in *your* household, they may not be combined to increase the limit of our liability for a loss.

**5.** The amount payable under this Coverage will be reduced by all amounts as set out as follows:

    (a) The limit of liability for Uninsured Motorist Coverage is the amount of that coverage as specified in the policy less the sum of the limits collectible under all liability and/or primary uninsured motorist insurance policies, bonds, and securities applicable to the *bodily injury* or death of the *insured* or to *property damage* of the insured;

    (b) Paid or payable under the Bodily Injury Liability coverage, Physical Damage Liability coverage or Medical Payments coverage of this policy; and

    (c) Paid or payable under any workers' compensation law, disability benefits law or any similar law or health insurance policy.

## OTHER INSURANCE

**1.** When an *insured* suffers *bodily injury* while not *occupying* any motor vehicle, this policy only applies if it provides the highest limits of Uninsured Motorist coverage to which the *insured* is eligible.

**2.** When an *insured* suffers *bodily injury* while *occupying* a motor vehicle owned by the *insured*, only the limits of Uninsured Motorist coverage on that vehicle shall apply.

**3.** When an *insured* suffers *bodily injury* while *occupying* a motor vehicle not owned by the *insured* the following priorities of recovery under Uninsured Motorist coverage apply:

    (a) The Uninsured Motorist coverage on the vehicle the *insured* was *occupying* is primary.

    (b) If the Uninsured Motorist coverage limits on that vehicle are exhausted due to the extent of the *insured's* compensatory damages, and the *insured* is named on this policy, this policy will provide excess coverage. However, if the *insured* is covered as a named insured under more than one policy, then only the policy with the highest limits of Uninsured Motorist coverage will apply.

    (c) If the Uninsured Motorist coverage limits on the motor vehicle *occupied* by the *insured* and any other policy where the *insured* is named are exhausted due to the extent of the *insured's* compensatory damages, and if the *insured* is not named on this policy, this policy will provide excess coverage. However, if the *insured* is covered other than as a named insured on more than one policy, then only the policy with the highest limits of Uninsured Motorist coverage will apply.

**4.** In no event is the *insured* entitled to receive benefits from all applicable policies listed in **3.**(a), **3.**(b) and **3.**(c) above, in an amount greater than the limits of the policy providing the highest limits of Uninsured Motorist coverage.

**5.** Regarding *property damage* to an *owned auto* or a *non-owned auto*, the policy providing Uninsured Motorist Property Damage coverage on that vehicle is primary and any other coverage is excess. If more than one policy otherwise applies, we will not owe more than our pro-rata share of the total coverage available.

## ARBITRATION
### Optional Arbitration

Except as set forth in the last sentence of this paragraph, any dispute arising between any *insured* and us regarding:

    (a) The extent to which the *insured* is legally entitled to recover against an owner or operator of an *uninsured motor vehicle* (i.e., issues of liability); or

    (b) The amount of damages sustained by the *insured*

may be arbitrated. However, neither the *insured* nor we will be required to arbitrate unless arbitration is expressly required by state law. Unless so required, binding arbitration will not be used to resolve disputes regarding policy interpretation, the existence of this Coverage in a particular policy, or the application of this Coverage to a particular claim or claimant.

We will be obligated to pay no more than the applicable policy limits for this Coverage regardless of whether an arbitration results in an award in excess of the applicable policy limits for this Coverage as defined in this policy. Unless otherwise required by state law, the method, manner, and format of any arbitration process will be subject to agreement by *you* and us. Attorney fees and expenses will be paid by the party incurring them.

### Binding Arbitration

If the *insured* or the *insured's* personal representative agrees to a settlement offer with the party or parties alleged to be liable for the *bodily injury* or death of the *insured*, the *insured* may seek additional compensation under this coverage upon agreement of the *insured* and us to submit the claim to binding arbitration of all issues of liability and damages, provided:

    (i) We receive written notice from the liability insurance company providing coverage for the parties to be released by certified mail, return receipt requested, of the offer to the *insured* and the company provides verification of coverage, upon request by us, and confirms to us that the party or parties to be released will agree in writing to cooperate with us in connection with the arbitration of the claim; and

    (ii) The *insured* gives us written notice by certified mail, return receipt requested, of the *insured's* intent to accept the

offer and agree to submit the claim to binding arbitration; and

(iii) After receipt of both notices referred to in paragraphs (i) and (ii), we shall give notice within thirty days by certified mail, return receipt requested, to the **insured** and the liability insurance carrier(s) if we consent to the settlement; that we will agree to binding arbitration of the **insured's** uninsured motorist claim and will waive our subrogation rights against the party or parties to be released in exchange for their written agreement to cooperate in connection with the arbitration. Upon receipt of the notice, the **insured** may proceed to execute a release of the party or parties on whose behalf the offer was made and upon execution of the release, receive payment of the settlement proceeds;

(iv) If we do not agree to waive subrogation rights, we will pay the **insured** the underlying policy limits, and binding arbitration will not be applicable; however, the **insured** must still file a lawsuit against the responsible party within the statute of limitations.

The arbitration shall be provided for by Tennessee law and by the Uniform Arbitration Act.

The arbitrator shall be selected by agreement of three parties. If the parties are unable to agree, either party may request a judge of a court of record in the county in which the arbitration is pending to designate three potential arbitrators. The parties shall then agree upon one of the three arbitrators so designated.

Unless the parties agree otherwise, the arbitration will take place in the county in which the **insured** resides and the rules of evidence applicable to the state courts where the arbitration is conducted shall apply.

The arbitrator shall not be informed as to the amount or amounts collected by the **insured** by way of settlement or judgment prior to the conclusion of the arbitration. Disclosure of such information prior to the conclusion of the arbitration will result in disqualification of the arbitrator.

Coverage issues shall be decided by a court of competent jurisdiction; the arbitrator shall decide issues of tort liability and damages only. The arbitrator shall first decide issues of liability and the apportionment of fault and, if fault is found, the amount of damages sustained by the **insured**.

If the arbitrator's award to the **insured** is less than or equal to the total amount collected by the **insured** by way of settlements or judgments plus the amount of any settlement offer made by us at least fifteen days prior to the arbitration, the **insured** will pay the arbitrator's fee. In the event the arbitrator's award to the **insured** exceeds the total amount collected by the **insured** by way of settlements or judgments plus the amount of any settlement offer made by us at least fifteen days prior to the arbitration, we will pay the arbitrator's fee.

We shall be entitled to credit for the total amount of damages collected by the **insured** from all parties alleged to be liable for the **bodily injury** or death of the **insured** whether obtained by settlement or judgment and whether characterized as compensatory or punitive damages.

Nothing contained herein shall prohibit or preclude us and the **insured** or the **insured's** personal representative from settling the **insured's** uninsured motorist claim at any time and upon such terms and conditions as are acceptable to the parties.

After receipt of both of the notices referred to in paragraphs (i) and (ii), we, at our option, may elect to decline binding arbitration and preserve our subrogation rights, provided that within thirty days after receipt of both of the notices, we pay the **insured** the full amount of the settlement offer.

## TRUST AGREEMENT

When we make a payment under this Coverage:

**1.** We will be entitled to repayment of that amount out of any settlement or judgment the **insured** recovers from any person or organization legally responsible for the **bodily injury**.

**2.** The **insured** will hold in trust for our benefit all rights of recovery which they may have against any person or organization responsible for these damages. They will do whatever is necessary to secure all rights of recovery and will do nothing after the loss to prejudice these rights.

**3.** At our written request, the **insured**, in their own name, will take, through a designated representative, appropriate actions necessary to recover payment for damages from the legally responsible person or organization. The **insured** will pay us out of the recovery for our expenses, costs and attorneys' fees.

**4.** The **insured** will execute and furnish us with any needed documents to secure their rights and obligations, and our rights and obligations.

## CONDITIONS

The following conditions apply only to the Uninsured Motorists Coverage:

**1.** NOTICE

As soon as possible after an accident, notice must be given to us or our authorized agent stating:

(a) The identity of the **insured**;

(b) The time, place and details of the accident; and

(c) The names and addresses of the injured, and of any witnesses.

If the **insured** or their legal representative files suit before we make a settlement under this Coverage, they must immediately provide us with a copy of the pleadings.

If the owner or operator of any motor vehicle causing **bodily injury** or **property damage** to an **insured** under this Coverage is unknown, the **insured** satisfies all of the requirements of Section 56-7-1201(e) of the Tennessee Code Annotated; and should a suit be instituted, the **insured** shall issue a John Doe warrant against the unknown owner or

operator in order to come within this Coverage.

**2.** ASSISTANCE AND COOPERATION OF THE INSURED
After we receive notice of a claim, we may require the *insured* to take any action necessary to preserve their recovery rights against any allegedly legally responsible person or organization. We may require the *insured* to make that person or organization a defendant in any action against us.

**3.** ACTION AGAINST US
Suit will not lie against us unless the *insured* or their legal representative have fully complied with all the policy terms.

**4.** PROOF OF CLAIM - MEDICAL REPORTS
As soon as possible, the *insured* or other person making claim must give us written proof of claim, under oath if required. This will include details of the nature and extent of injuries, treatment, and other facts which may affect the amount payable.

Proof of claim must be made on forms furnished by us unless we have not furnished these forms within 15 days after receiving notice of claim.

The injured person will submit to examination by doctors chosen by us, at our expense, as we may reasonably require. In the event of the *insured's* incapacity or death, their legal representative must, at our request, authorize us to obtain medical reports and copies of records.

**5.** PAYMENT OF LOSS
Any amount due is payable:
(a) To the *insured* or their authorized representative;
(b) If the *insured* is a minor, to their parent or guardian; or
(c) If the *insured* is deceased, to their surviving spouse; otherwise
(d) To a person authorized by law to receive the payment; or to a person legally entitled to recover payment for the damages.
We may, at our option, pay an amount due in accordance with (d) above.

---

### SECTION V - GENERAL CONDITIONS
### The Following Apply To All Coverages In This Policy

---

## DEFINITIONS

The definitions of the terms under Section I also apply to Section V. The definition of *insured auto* under Section IV also applies to Section V.

These conditions apply to all Coverages in this policy.

**1.** TERRITORY
This policy applies only to accidents, occurrences or losses during the policy period within the United States of America, its territories or possessions, or Canada or when the auto is being transported between ports thereof.

**2.** PREMIUM
When *you* dispose of, acquire ownership of, or replace a *private passenger auto*, *farm auto* or *utility auto*, any necessary premium adjustment will be made as of the date of the change and in accordance with our manuals.

**3.** CHANGES
The terms and provisions of this policy cannot be waived or changed, except by an amendment and/or endorsement issued to form a part of this policy.

We may revise this policy during its term to provide more coverage without an increase in premium. If we do so, *your* policy will automatically include the broader coverage when effective in *your* state. The premium for each auto is based on the information we have in *your* file. *You* agree:
(a) That we may adjust *your* policy premiums during the policy term if any of this information on which the premiums are based is incorrect, incomplete or changed.
(b) That *you* will cooperate with us in determining if this information is correct and complete.
(c) That *you* will notify us of any changes in this information.
Any calculation or recalculation of *your* premium or changes in *your* coverage will be based on the rules, rates and forms on file, if required, for our use in *your* state.

**4.** ASSIGNMENT
*Your* rights and duties under this policy may not be assigned without our written consent.

If *you* die, this policy will cover *your* surviving spouse, if covered under the policy prior to *your* death, and until the expiration of the policy term:
(a) The executor or administrator of *your* estate, but only while operating an *owned auto* and only while acting within the scope of their duties;
(b) Any person having proper temporary custody of and using the *owned auto*, as an *insured*, until the appointment and qualification of the executor or administrator of *your* estate.

Case 3:25-cv-00593    Document 1-1    Filed 05/29/25    Page 216 of 261 PageID #: 221

**5.** POLICY PERIOD

Unless otherwise cancelled, this policy will expire as shown in the **Declarations Page**. But, it may be continued by our offer to renew and **your** acceptance by payment of the required renewal premium prior to the expiration date. Each period will begin and expire as stated in the **Declarations Page**.

**6.** CANCELLATION BY THE INSURED

**You** may cancel this policy by providing notice to us stating when, after the notice, cancellation will be effective. If this policy is cancelled, **you** may be entitled to a premium refund. The premium refund, if any, will be computed according to our manuals.

**7.** CANCELLATION BY US

We may cancel this policy by mailing to **you**, at the address shown in this policy, written notice stating when the cancellation will be effective.

We will mail this notice:

(a) 10 days in advance if the proposed cancellation is for non-payment of premium or any of its installments when due;

(b) 10 days in advance if the policy has been in effect less than 60 days at the time notice of cancellation is mailed and the policy is not a renewal;

(c) 20 days in advance in all other cases.

The mailing or delivery of the above notice will be sufficient proof of notice. The policy will cease to be in effect as of the date and hour stated in the notice.

If this policy is cancelled, **you** may be entitled to a premium refund. The premium refund, if any, will be computed according to our manuals. Payment or tender of unearned premium is not a condition of cancellation.

**8.** CANCELLATION BY US IS LIMITED

After this policy has been in effect for 60 days or, if the policy is a renewal, effective immediately we will not cancel except for any of the reasons below.

(a) **You** do not pay the initial premium on other than a renewal or any additional premium for this policy or fail to pay any premium installment when due to us or our agent.

(b) **You** obtained the policy through material misrepresentation.

(c) **You** did not fully disclose **your** auto accidents and moving traffic violations for the prior 36 months if called for in the application.

(d) **You** failed to disclose information needed for acceptance or proper rating of the risk.

(e) Any **insured** violated a policy term or condition.

(f) Any **insured** made a false or fraudulent claim or helped or encouraged another in presenting such a claim.

(g) **You** request coverage for a person not listed on the original application, and we find, within 60 days of **your** written request, that the person is unacceptable.

(h) **You**, any operator resident in **your** household, or any customary operator of an **insured auto** has had their driver's license or motor vehicle registration suspended or revoked within the 36 months prior to notice of cancellation.

(i) **You**, (or any operator resident in **your** household, or any customary operator of an **insured auto**) are or become subject to epilepsy or heart attacks and cannot produce a physician's certificate attesting to their  unqualified ability to operate a motor vehicle.

(j) **You**, (or any operator resident in **your** household, or any customary operator of an **insured auto**) are convicted of or forfeit bail for any felony during the policy period or the 36 months prior to the effective date.

(k) **You**, (or any operator resident in **your** household, or any customary operator of an **insured auto**) are convicted of or forfeit bail for criminal negligence resulting in death, homicide or assault arising out of the operation of a motor vehicle during the policy period or the 36 months prior to the effective date.

(l) **You**, (or any operator resident in **your** household or any customary operator of an **insured auto**) are convicted of or forfeit bail for operating a motor vehicle while intoxicated or under the influence of drugs during the policy period or the 36 months prior to the effective date.

(m) **You**, (or any operator resident in **your** household, or any customary operator of an **insured auto**) are convicted of or forfeit bail for leaving the scene of an accident without stopping to report during the policy period or the 36 months prior to the effective date.

(n) **You**, (or any operator resident in **your** household, or any customary operator of an **insured auto**) are convicted of or forfeit bail for theft of a motor vehicle during the policy period or the 36 months prior to the effective date.

(o) **You**, (or any operator resident in **your** household or any customary operator of an **insured auto**) are convicted of or forfeit bail for making false statements in a driver's license application during the policy period or the 36 months prior to the effective date.

(p) **You**, (or any operator resident in **your** household or any customary operator of an **insured auto**) are convicted of or forfeit bail for a third violation committed within 36 months, or any ordinance, law or regulation limiting the speed of motor vehicles.

(q) **You**, (or any operator resident in **your** household or any customary operator of an **insured auto**) are convicted

of or forfeit bail for a third violation committed within 36 months, of any state motor vehicle law violations which are considered misdemeanors, whether or not the violations were repetitions of the same offense.

(r) The ***insured auto*** is altered in a way that increases the risk substantially.

(s) The ***insured auto*** is used as an authorized emergency vehicle.

(t) The ***insured auto*** is subject to an inspection law and has not been inspected or, if inspected, has failed to qualify.

Failure to cancel for any of the reasons above shall not obligate us to renew the policy.

9. RENEWAL

We will not refuse to renew this policy unless written notice of our refusal to renew is mailed to ***you***, at the address shown in this policy, at least 30 days prior to the expiration date. The mailing or delivery of this notice by us will be sufficient proof of notice. This policy will expire without notice if any of the following conditions exist:

(a) ***You*** do not pay any premium as we require to renew this policy.

(b) ***You*** have informed us or our agent that ***you*** wish the policy to be cancelled or not renewed.

(c) ***You*** do not accept our offer to renew or ***you*** refuse to provide us with renewal classification and rating information as we may require.

10. OTHER INSURANCE

If other insurance is obtained on ***your insured auto***, any similar insurance afforded under this policy for that auto will terminate on the effective date of the other insurance.

11. DIVIDEND PROVISION

***You*** may be entitled to share in a distribution of the surplus of the Company as determined by its Board of Directors from time to time.

12. DECLARATIONS

By accepting this policy, ***you*** agree that:

(a) The statements in ***your*** application and in the **Declarations Page** are ***your*** agreements and representations;

(b) This policy is issued in reliance upon the truth of these representations; and

(c) This policy, along with the application and **Declaration Page**, embodies all agreements relating to this insurance. The terms of this policy cannot be changed orally.

13. FRAUD AND MISREPRESENTATION

Coverage is not provided to any person who knowingly conceals or misrepresents any material fact or circumstance relating to this insurance:

(a) At the time of application;

(b) At any time during the policy period; or

(c) In connection with the presentation or settlement of a claim.

14. EXAMINATION UNDER OATH AND RECORDED STATEMENTS

The ***insured*** or any other person seeking coverage under this policy must:

(a) Submit to examination under oath by any person named by us; and

(b) Give recorded statements

when and as often as we may require.

15. TERMS OF POLICY CONFORMED TO STATUTES

Any terms of this policy in conflict with the statutes of Tennessee are amended to conform to those statutes.

16. DISPOSAL OF VEHICLE

If ***you*** relinquish possession of a leased vehicle or if ***you*** sell or relinquish ownership of an ***owned auto***, any coverage provided by this policy for that vehicle will terminate on the date and time ***you*** do so.

17. CHOICE OF LAW

The policy and any amendment(s) and endorsement(s) are to be interpreted pursuant to the laws of the state of Tennessee.

18. CLAIMS ADJUSTMENT TOOLS AND TECHNOLOGY

We may use estimating, appraisal, or injury evaluation systems to assist us in adjusting claims under this policy and to assist us in determining the amount of damages, expenses, or ***loss*** payable under this policy. Such systems may be developed by us or a third party and may include computer software, databases, and specialized technology.

---

## SECTION VI - AMENDMENTS AND ENDORSEMENTS

---

**SPECIAL ENDORSEMENT - UNITED STATES GOVERNMENT EMPLOYEES**

**A.** Under the Property Damage Liability coverage of Section I, we provide coverage to United States Government employees, civilian or military, using

**1.** Motor vehicles owned or leased by the United States Government or any of its agencies, or

**2.** Rented motor vehicles used for United States Government business,

when such use is with the permission of the United States Government. Subject to the limits described in paragraph

**B.** below, we will pay sums *you* are legally obligated to pay for damage to these vehicles.

**B.** The following limits apply to this Coverage:

  **1.** A $100 deductible applies to each occurrence.

  **2.** For vehicles described in **A.1.** above, our liability shall not exceed the lesser of the following:

    (a) The *actual cash value* of the property at the time of the occurrence;

    (b) The cost to repair or replace the property, or any of its parts with other of like kind and quality;

    (c) Two months basic pay of the *insured*; or

    (d) The limit of Property Damage Liability coverage stated in the **Declarations Page**.

  **3.** For vehicles described in **A.2.** above, our liability shall not exceed the lesser of the following:

    (a) The *actual cash value* of the property at the time of the occurrence;

    (b) The cost to repair or replace the property, or any of its parts with other of like kind and quality; or

    (c) The limit of Property Damage Liability coverage stated in the **Declarations Page**.

This insurance is excess over other valid and collectible insurance.



Policy Number:

The policy contract, Declarations, and any amendments or endorsements issued to form a part thereof, completes the policy.

**In Witness Whereof**, the company has caused this Policy to be executed and attested.

Christopher J. Nowack
Secretary

Todd A. Combs
President

## IN THE CHANCERY COURT FOR RUTHERFORD COUNTY, TENNESSEE
## AT MURFREESBORO

| | | |
|---|---|---|
| CHRISTOPHER HOLLOWAY, *Individually,* | ) | |
| BRIAN HOLLOWAY, *Individually,* and d/b/a | ) | |
| "Tree Solutions" *a Tennessee Family* | ) | |
| *Business,* | ) | |
| | ) | **Docket No. 25CV-128** |
| **Plaintiffs,** | ) | **JURY DEMAND** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **WEST BEND INSURANCE COMPANY,** | ) | |
| **STATE FARM FIRE AND CASUALTY** | ) | |
| **COMPANY, and GEICO ADVANTAGE** | ) | |
| **INSURANCE COMPANY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### NOTICE OF APPEARANCE

Please enter the appearance of E. Jason Ferrell and the law firm of Brewer, Krause,

Brooks, Chastain & Meisner, PLLC as attorneys of record for the defendant, State Farm Fire

and Casualty Company, in the above-styled case.

Respectfully submitted,

/s/ E. Jason Ferrell

**E. JASON FERRELL**
Registration No. 24425
DIRECT: (615) 630-7716
(615) 256-8787, Ext. 116
jferrell@bkblaw.com

**BREWER, KRAUSE, BROOKS, CHASTAIN &
MEISNER, PLLC**
545 Mainstream Drive, Suite 101
Nashville, TN 37228
Attorney for Defendant, State Farm Fire and Casualty
  Company

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of March, 2025, a true and correct copy of the foregoing has been sent, via electronic mail, pursuant to T.R.C.P. 5.02(2) to:

David M. Rich, Esquire
Honeycutt Rich, PLLC
20 Music Circle East
Nashville, TN 37203
dave@honeycuttrich.com
*Attorney for Plaintiffs*

Elizabeth M. Bass, Esquire
Richardson Law Group, PLLC
700 East Main Street, Suite 201
elizabeth@richardsonlawgrp.com
Hendersonville, TN 37075
*Attorney for Defendant, West Bend Insurance Company*

Scott A. Rhodes, Esquire
White & Rhodes, PLLC
Brentwood Commons II, Suite 275
750 Old Hickory Blvd.
Brentwood, TN 37027
srhodes@whiterhodes.com
*Attorney for Defendant, GEICO Advantage*
 *Insurance Company*

/s/ E. Jason Ferrell
**E. JASON FERRELL**

EJF:le

## IN THE CHANCERY COURT FOR RUTHERFORD COUNTY, TENNESSEE
## AT MURFREESBORO

| | |
|---|---|
| CHRISTOPHER HOLLOWAY, *Individually,* BRIAN HOLLOWAY, *Individually,* and d/b/a "Tree Solutions" *a Tennessee Family Business*,     Plaintiffs,    v.   WEST BEND INSURANCE COMPANY, STATE FARM FIRE AND CASUALTY COMPANY, and GEICO ADVANTAGE INSURANCE COMPANY,     Defendants. | Docket No. 25CV-128 |

### ANSWER OF DEFENDANT, STATE FARM FIRE AND CASUALTY COMPANY

Comes now Defendant, State Farm Fire and Casualty Company ("State Farm"), by and through counsel, and for its Answer to Plaintiffs' Complaint would provide as follows:

### 1. PARTIES

1.1    State Farm is without information or knowledge sufficient to form a belief as to the allegations contained in paragraph 1.1 of Plaintiffs' Complaint.

1.2    State Farm is without information or knowledge sufficient to form a belief as to the allegations contained in paragraph 1.2 of Plaintiffs' Complaint.

1.3    State Farm is without information or knowledge sufficient to form a belief as to the allegations contained in paragraph 1.3 of Plaintiffs' Complaint.

1.4    State Farm admits it is an insurance company authorized to do business in Tennessee, that it can be served through the Department of Commerce and Insurance,

and that it issued a homeowner's policy to Christopher Holloway bearing policy number 42-CU-C653-8. All remaining allegations of paragraph 1.4 of Plaintiffs' Complaint are denied.

1.5     State Farm is without information or knowledge sufficient to form a belief as to the allegations contained in paragraph 1.5 of Plaintiffs' Complaint.

## 2. JURISDICTION AND VENUE

2.1     State Farm admits this Court has jurisdiction.

2.2     State Farm admits that this Court is a proper venue.

## 3. FACTUAL BACKGROUND

3.1     State Farm is without information or knowledge sufficient to form a belief as to the allegations contained in paragraph 3.1 of Plaintiffs' Complaint.

3.2     State Farm is without information or knowledge sufficient to form a belief as to the allegations contained in paragraph 3.2 of Plaintiffs' Complaint.

3.3     State Farm is without information or knowledge sufficient to form a belief as to the allegations contained in paragraph 3.4 of Plaintiffs' Complaint.

3.4     State Farm is without information or knowledge sufficient to form a belief as to the allegations contained in paragraph 3.4 of Plaintiffs' Complaint.

3.5     State Farm is without information or knowledge sufficient to form a belief as to the allegations contained in paragraph 3.5 of Plaintiffs' Complaint.

3.6     State Farm is without information or knowledge sufficient to form a belief as to the allegations contained in paragraph 3.6 of Plaintiffs' Complaint.

3.7     State Farm is without information or knowledge sufficient to form a belief as to the allegations contained in paragraph 3.7 of Plaintiffs' Complaint.

3.8     State Farm is without information or knowledge sufficient to form a belief as to the allegations contained in paragraph 3.8 of Plaintiffs' Complaint.

3.9     State Farm is without information or knowledge sufficient to form a belief as to the allegations contained in paragraph 3.9 of Plaintiffs' Complaint that Christopher Holloway promptly reported the collision and lawsuit to GEICO.  State Farm denies the remaining allegations of paragraph 3.9 of Plaintiffs' Complaint.

3.10    State Farm is without information or knowledge sufficient to form a belief as to the allegations contained in paragraph 3.10 of Plaintiffs' Complaint.

3.11    State Farm is without information or knowledge sufficient to form a belief as to the allegations contained in paragraph 3.11 of Plaintiffs' Complaint.

3.12    Denied as written.  State Farm's policy affords no coverage for this mater, but it only failed and refused to offer coverage or defend Christopher Holloway as this lawsuit was the first notice of this matter.

3.13    Denied that Plaintiffs have failed to comply with all conditions precedent to coverage under the State Farm policy.  State Farm is without information or knowledge sufficient to form a belief as to whether they complied with all conditions precedent to the West Bend and GEICO policies.

3.14    State Farm is without information or knowledge sufficient to form a belief as to the allegations contained in paragraph 3.14 of Plaintiffs' Complaint.

## 4. CLAIM FOR DECLARATORY JUDGMENT

4.1     Because there is no coverage under State Farm's policy, but Plaintiffs contend there is coverage, State Farm admits there is an actual controversy.  State Farm is without information or knowledge sufficient to form a belief as to the remaining

allegations against West Bend and GEICO contained in paragraph 4.1 of Plaintiffs' Complaint.

4.2    State Farm admits Plaintiffs seek such declaration but denies they are entitled to a declaration that State Farm is obligated to provide coverage or has any duty to defend Plaintiffs.

4.3    Denied as written.  The allegations of paragraph 4.3 concern an issue of law to be addressed by the Court.

4.4    State Farm now denies each and every other allegation of Plaintiffs' Complaint not previously admitted or denied.

4.5    State Farm denies Plaintiffs are entitled to the relief set forth in the "WHEREFORE" paragraph of Plaintiffs' Complaint, including paragraphs 5.1 through 5.7.

## ADDITIONAL AND/OR AFFIRMATIVE DEFENSES

1.    Plaintiffs' Complaint fails to state a claim for which relief may be granted as the policy issued by State Farm affords no coverage for the claims against Plaintiffs under the terms of the policy.

2.    State Farm relies upon all provisions, terms, conditions, limitations and exclusions of the policy issued.

3.    State Farm reserves the right to rely upon any and all other provisions, conditions, exclusions, and limitations of the Policy.

4.    State Farm expressly reserves its right to raise any additional affirmative defenses which may be applicable in this matter and to amend its Answer accordingly.

5.    Plaintiffs' claims for the statutory penalty under T.C.A. §56-7-105 fail due to their failure to make a formal demand as required by the statute, failure to comply with

the specific provisions of the statute, because State Farm is not liable under the policy for Plaintiffs' claims, and/or because State Farm acted in good faith. Defendant further denies it acted in bad faith or that Plaintiffs are entitled to any award of attorney fees.

6. Any claim for punitive damages is limited by T.C.A. § 29-39-104.

WHEREFORE, having fully answered Plaintiffs' Complaint, State Farm Fire and Casualty Company pray Plaintiffs take nothing by virtue of their Complaint, and further prays said Complaint be dismissed with the costs thereof taxed against Plaintiffs along with along with any such relief as this Court deems just and proper.

Respectfully submitted,

/s/ E. Jason Ferrell
**E. JASON FERRELL**
Registration No. 24425
DIRECT: (615) 630-7716
(615) 256-8787, Ext. 116
jferrell@bkblaw.com

**BREWER, KRAUSE, BROOKS, CHASTAIN & MEISNER, PLLC**
545 Mainstream Drive, Suite 101
Nashville, TN 37228
Attorneys for State Farm Fire and Casualty Company

5

EXHIBIT A

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of March, 2025, a true and correct copy of the foregoing has been sent, via electronic mail, pursuant to T.R.C.P. 5.02(2) to:

David M. Rich, Esquire
Honeycutt Rich, PLLC
20 Music Circle East
Nashville, TN 37203
dave@honeycuttrich.com
*Attorney for Plaintiffs*

Elizabeth M. Bass, Esquire
Richardson Law Group, PLLC
700 East Main Street, Suite 201
elizabeth@richardsonlawgrp.com
Hendersonville, TN 37075
*Attorney for Defendant, West Bend Insurance Company*

Scott A. Rhodes, Esquire
White & Rhodes, PLLC
Brentwood Commons II, Suite 275
750 Old Hickory Blvd.
Brentwood, TN 37027
srhodes@whiterhodes.com
*Attorney for Defendant, GEICO Advantage*
  *Insurance Company*

/s/ E. Jason Ferrell
**E. JASON FERRELL**

EJF:ejf

IN THE CHANCERY COURT FOR RUTHERFORD COUNTY, TENNESSEE
AT MURFREESBORO

| | | |
|---|---|---|
| CHRISTOPHER HOLLOWAY, individually, and BRIAN HOLLOWAY, individually, and d/b/a "Tree Solutions", a Tennessee Family Business, | ) ) ) ) ) | |
| PLAINTIFFS | ) ) | **CASE NO. 25CV-128** |
| VS. | ) ) | JURY DEMAND |
| WEST BEND INSURANCE COMPANY; STATE FARM FIRE AND CASUALTY COMPANY; and GEICO ADVANTAGE INSURANCE COMPANY, | ) ) ) ) ) | |
| DEFENDANTS | ) ) | |

## RENOTICE OF HEARING

The Defendant, West Bend Insurance Company, by counsel, gives notice that the Defendant's Motion to Dismiss, previously noticed to be heard April 25, 2025 at 9:00 am, shall instead come on for hearing on May 30, 2025, at 9:00 a.m., pursuant to the agreement of counsel, or as soon thereafter as counsel may be heard.

Respectfully submitted,

RICHARDSON LAW GROUP, PLLC

*/s/Elizabeth M. Bass*
Elizabeth M. Bass (TN BPR 035570/ KBA 92461)
700 East Main Street, Suite 201
Hendersonville, Tennessee 37075
Telephone:     (615) 919-9090
Facsimile:      (859) 219-9292
Email:          Elizabeth@RichardsonLawGrp.com
COUNSEL FOR DEFENDANT,
WEST BEND INSURANCE COMPANY

## CERTIFICATE OF SERVICE

This is to certify that the foregoing has been served on this the 7th day of March, 2025 by mailing and/or emailing a true and accurate copy to the following:

David M. Rich
Honeycutt Rich, PLLC
20 Music Circle East
Nashville, TN 37203
dave@honeycuttrich.com
*Counsel for Plaintiffs*

E. Jason Ferrell
Brewer, Krause, Brooks, Chastain & Meisner, PLLC
545 Mainstream Drive, Suite 101
Nashville, TN 37228
jferrell@bkblaw.com
*Counsel for Defendant,*
*State Farm Fire and Casualty Company*

Scott A. Rhodes
Brentwood Commons II, Suite 275
750 Old Hickory Blvd.
Brentwood, TN  37027
srhodes@whiterhodes.com
*Counsel for Defendant,*
*GEICO Advantage Insurance Co.*

/s/ Elizabeth M. Bass
COUNSEL FOR DEFENDANT,
WEST BEND INSURANCE COMPANY

7388.008592C:\NRPortbl\Golden_and_Walters\KIM\2693664_1.DOCX

2

# IN THE CHANCERY COURT FOR RUTHERFORD COUNTY, TENNESSEE

|  |  |  |
|---|---|---|
| CHRISTOPHER HOLLOWAY, individually, | ) | |
| BRIAN HOLLOWAY, individually and d/b/a | ) | |
| "Tree Solutions" a Tennessee Family Business, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Docket No. 25CV-128 |
| v. | ) | |
| | ) | |
| WEST BEND INSURANCE COMPANY, | ) | |
| STATE FARM FIRE AND CASUALTY | ) | |
| COMPANY, and | ) | |
| GEICO ADVANTAGE INSURANCE COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| and | ) | |
| | ) | |
| GEICO ADVANTAGE INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Counter-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHRISTOPHER HOLLOWAY and BRIAN | ) | |
| HOLLOWAY, | ) | |
| | ) | |
| Counter-Defendants. | ) | |

## NOTICE OF VOLUNTARY NONSUIT

COMES NOW, Plaintiffs Christopher Holloway, Brian Holloway, and Tree Solutions, LLC. d/b/a "Tree Solutions," by and through undersigned counsel, pursuant to Rule 41.01 of the Tennessee Rules of Civil Procedure, and hereby gives notice of voluntary nonsuit without prejudice of the above-styled action against Defendants State Farm Fire and Casualty Company and GEICO Advantage Insurance Company **only**. Plaintiffs **do not** intend to nonsuit Defendant West Bend Insurance Company and specifically reserve all rights against that defendant.

1

1. Pursuant to Tennessee Rule of Civil Procedure 41.01(1), Plaintiffs have the right to take a voluntary nonsuit to dismiss an action without prejudice by filing a written notice of dismissal at any time before the trial of a cause and serving a copy of the notice upon all parties.

2. This notice is being filed before the trial of this cause has commenced, and no motion for summary judgment made by an adverse party is currently pending.

3. Plaintiffs acknowledge that this right to a nonsuit is subject to certain restrictions.

4. A copy of this notice has been served upon all parties to this action via the Court's online filing system.

5. Plaintiffs understand this voluntary nonsuit is without prejudice to refiling the action, subject to any applicable statutes of limitations or other legal restrictions.

WHEREFORE, Plaintiffs respectfully request this Court enter an order dismissing the actions pending against **only** Defendants State Farm Fire and Casualty Company and GEICO Advantage Insurance Company without prejudice. The present action pending against Defendant West Bend Insurance Company should not be disturbed.

Respectfully submitted,

**/s/David M. Rich**
David M. Rich, TNBPR #23851
Honeycutt Rich, PLLC
20 Music Circle East
Nashville, Tennessee 37203
Ph: (615) 244-0749
Fax: (615) 523-1761

*Counsel for Plaintiffs Christopher Holloway, individually, Brian Holloway, individually, and Tree Solutions, LLC. d/b/a "Tree Solutions"*

2

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically on April 30, 2025. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

Scott A. Rhodes, Esq.                    srhodes@whiterhodes.com
Honeycutt Rich, PLLC
20 Music Circle East
Nashville, TN  37203


Elizabeth M. Bass, Esq.                  Elizabeth@RichardsonLawGrp.com
Richardson Law Group
700 E. Main Street, Suite 201
Hendersonville, TN  37075

This the 30th day of April 2025.


                                         /s/David M. Rich
                                         David M. Rich

## IN THE CHANCERY COURT FOR RUTHERFORD COUNTY, TENNESSEE

CHRISTOPHER HOLLOWAY, individually, )
BRIAN HOLLOWAY, individually and d/b/a )
"Tree Solutions" a Tennessee Family Business, )
                                      )
      Plaintiffs, )
                                        )    Docket No. 25CV-128
v. )
                                        )
WEST BEND INSURANCE COMPANY, )
STATE FARM FIRE AND CASUALTY )
COMPANY, and )
GEICO ADVANTAGE INSURANCE COMPANY,)
                                        )
      Defendants. )
                                        )
and )
                                        )
GEICO ADVANTAGE INSURANCE )
COMPANY, )
                                        )
      Counter-Plaintiff, )
                                        )
v. )
                                        )
CHRISTOPHER HOLLOWAY and BRIAN )
HOLLOWAY, )
                                        )
      Counter-Defendants. )

## ORDER OF VOLUNTARY NONSUIT

Plaintiffs, Christopher Holloway, Brian Holloway, and Tree Solutions, LLC. d/b/a "Tree Solutions," by and through counsel, pursuant to Tennessee Rule of Civil Procedure 41.01, having given notice of voluntary dismissing their claims against defendants State Farm Fire and Casualty Company and GEICO Advantage Insurance Company, it is **ORDERED** that plaintiffs' cause against defendants State Farm Fire and Casualty Company and GEICO Advantage Insurance Company are **DISMISSED**, without

prejudice, with the costs to be taxed at the conclusion of the action. The pending action against Defendant West Bend Insurance Company is not disturbed by this order.

APPROVED FOR ENTRY BY:

**/s/David M. Rich**
David M. Rich, TNBPR #23851
Honeycutt Rich, PLLC
20 Music Circle East
Nashville, Tennessee 37203
Ph: (615) 244-0749
Fax: (615) 523-1761

***Counsel for Plaintiffs Christopher Holloway, individually, Brian Holloway, individually, and Tree Solutions, LLC. d/b/a "Tree Solutions"***

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically on April 30, 2025. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

Scott A. Rhodes, Esq.                srhodes@whiterhodes.com
Honeycutt Rich, PLLC
20 Music Circle East
Nashville, TN  37203

Elizabeth M. Bass, Esq.              Elizabeth@RichardsonLawGrp.com
Richardson Law Group
700 E. Main Street, Suite 201
Hendersonville, TN  37075

This the 30th day of April 2025.

                                       */s/David M. Rich*
                                       David M. Rich

## IN THE CHANCERY COURT FOR RUTHERFORD COUNTY, TENNESSEE

|  |  |  |
|---|---|---|
| CHRISTOPHER HOLLOWAY, individually, | ) | |
| BRIAN HOLLOWAY, individually and d/b/a | ) | |
| "Tree Solutions" a Tennessee Family Business, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Docket No. 25CV-128 |
| v. | ) | |
| | ) | |
| WEST BEND INSURANCE COMPANY, | ) | |
| STATE FARM FIRE AND CASUALTY | ) | |
| COMPANY, and | ) | |
| GEICO ADVANTAGE INSURANCE COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| and | ) | |
| | ) | |
| GEICO ADVANTAGE INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Counter-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHRISTOPHER HOLLOWAY and BRIAN | ) | |
| HOLLOWAY, | ) | |
| | ) | |
| Counter-Defendants. | ) | |

### NOTICE OF GEICO ADVANTAGE INSURANCE COMPANY'S INTENTION TO PROCEED

Comes now, Defendant GEICO Advantage Insurance Company, by and through counsel, pursuant to Tennessee Rules of Civil Procedure 41.01(1) and 41.03, and gives notice to all parties it intends to pursue its Counter-Claim against Counter-Defendants Christopher Holloway and Brian Holloway. Pursuant to the language of the cited Rules, GEICO Advantage Insurance Company may proceed on its Counter-Claim in the capacity of a Plaintiff. This Notice is filed in response to the Order of Voluntary Nonsuit entered by the Court on or about May 1, 2025.

Respectfully submitted,

_Scott A. Rhodes_ (signature)

Scott A. Rhodes, BPR# 16870
*Attorney for Defendant GEICO Advantage*
*Insurance Company*
White and Rhodes, PC
Brentwood Commons Two, Suite 275
750 Old Hickory Boulevard
Brentwood, TN 37027
615-309-0400
srhodes@whiterhodes.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded, via electronic and/or first-class mail, postage prepaid, to the following on this 5th day of May, 2025:

David M. Rich, Esq.                              dave@honeycuttrich.com
Honeycutt Rich, PLLC
20 Music Circle East
Nashville, TN 37203

Elizabeth M. Bass, Esq.                          Elizabeth@RichardsonLawGrp.com
Richardson Law Group
700 E. Main Street, Suite 201
Hendersonville, TN 37075

E. Jason Ferrell, Esq.                           jferrell@bkblaw.com
Brewer, Krause, Brooks, Chastain & Meisner, PLLC
545 Mainstream Drive, Suite 101
Nashville, TN 37228

_Scott A. Rhodes_ (signature)

SCOTT A. RHODES

## IN THE CHANCERY COURT FOR RUTHERFORD COUNTY, TENNESSEE
## AT NASHVILLE

| | |
|---|---|
| **CHRISTOPHER HOLLOWAY**, *individually,* **BRIAN HOLLOWAY,** *individually***, and Tree Solutions, LLC. d/b/a "Tree Solutions"** *a* ***Tennessee Family Business,***<br><br>      **Plaintiffs,**<br><br> v.<br><br>**WEST BEND INSURANCE COMPANY,**<br><br>      **Defendant,**<br><br>**and**<br><br>**GEICO ADVANTAGE INSURANCE COMPANY,**<br><br>      **Defendant.** | **No. 25CV-128**<br><br>**Jury Demand** |

## RESPONSE IN OPPOSITION TO DEFENDANT WEST BEND INSURANCE COMPANY'S MOTION TO DISMISS PURSUANT TO RULE 12

COME NOW Plaintiffs, **CHRISTOPHER HOLLOWAY, individually, BRIAN HOLLOWAY, individually and Tree Solutions, LLC. d/b/a "TREE SOLUTIONS**," by and through undersigned counsel, and issue the following response in opposition to Defendant **WEST BEND INSURANCE COMPANY'S** ("West Bend") Motion to Dismiss Plaintiffs' Complaint for Declaratory Judgment pursuant to Rule 12 of the Tennessee Rules of Civil Procedure.

### Relevant Factual Summary

The legal issue in the present case is whether either in equity or in contract, West Bend is obligated to provide coverage to its insured, Tree Solutions, LLC. ("Tree Solutions") arising from use of the 2013 Freightliner M2 ("M2") under its Commercial General Liability Coverage Form. Plaintiffs argue the language of the insurance policy, specifically the definition of "auto," is ambiguous as it applies to the tree trimming truck used by Tree Solutions, which allegedly caused injury and death to a minor while in use.

EXHIBIT A

The Complaint in the Underlying Litigation[1] alleges the M2 truck was involved in a motor vehicle accident on October 10, 2024, while being operated by Christopher Holloway, an employee of Tree Solutions.

Plaintiffs seek a declaration that West Bend Insurance Company is obligated to provide coverage under the Commercial General Liability Form policy and defend Tree Solutions, Brian Holloway, and Christopher Holloway from liability arising from the accident.

Defendants argue that there is no coverage under West Bend's Commercial General Liability because the Underlying Litigation arises from the ownership, maintenance, use, or entrustment of an "*auto*." However, Defendants' argument does not negate coverage under all definitions of "*auto,*" and the M2 can accurately be described as a covered auto within the meaning of the policy. Nor do Defendants address any reasonable or good faith arguments that the M2 may be more accurately defined as something else under the policy, including definitions which would entitle Plaintiffs to coverage.

For the following reasons, this court should find that the proper category for the M2 is one other than an "*auto*" which would be excluded from coverage.

## Law and Argument

In opposition to the motion to dismiss filed by West Bend Insurance Company, the plaintiffs argue that the language of the insurance policy is ambiguous in several ways as it applies to the M2 used by Tree Solutions, which allegedly caused injury while in use. Under Tennessee law, ambiguities in insurance policies are construed in favor of the insured. Further, the Court's analysis should begin with a presumption that coverage applies to any general negligence costs Plaintiffs are obligated to pay unless Defendants raise an argument based on an explicit exception that invalidates coverage.

---

[1] *Payne et al. v. Holloway et al.*, Rutherford County Circuit Court Case Number 82978.

## I.      How "Auto" and "Mobile Equipment" Are Defined Under the CGL Form Policy

Insurance policies are to be interpreted to "*give effect to the intention and express language of the parties.*" *Tata v. Nichols*, 848 S.W.2d 649, 650 (Tenn. 1993). When attempting to determine what a contract means, courts will generally begin and end the analysis within the four corners of the documents and avoid consulting extrinsic evidence. If the court finds ambiguity in definitions, rather than consulting extrinsic language, the court <u>must find in favor of the non-drafting party</u>. *Artist Bldg. Partners v. Auto-Owners Mut. Ins. Co.*, 435 S.W.3d 202, 216 (Tenn. Ct. App. 2013) (emphasis supplied.) ("*When a provision that purports to limit insurance is ambiguous, it must be construed against the insurance company and in favor of the insured.*") (quoting *Gates v. State Auto. Mut. Ins. Co.,* 196 S.W.3d 761, 764 (Tenn. Ct. App. 2005)).

Form CG 00 01 04 13 memorializes Plaintiff's Commercial General Liability Coverage with West End:

The Definitions Section contains the following:

"Auto" means:

      a.     A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

      b.     Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. However, "auto" does not include "mobile equipment".

Def's Memo Supp. Mot. Dismiss, Exhibit A, CG 00 01 04 13, Page 13 of 16.

The Definitions Section also contains the following:

"Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

      a.     Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

      b.     Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    (1) Power cranes, shovels, loaders, diggers or drills; or
    (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in Paragraph a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    (2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in Paragraph a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

    (1) Equipment designed primarily for:

        (a) Snow removal;
        (b) Road maintenance, but not construction or resurfacing; or
        (c) Street cleaning;

    (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "*mobile equipment*" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "*autos*". Def's Memo Supp. Mot. Dismiss, Exhibit A, CG 00 01 04 13, Page 14-15 of 16.

From these definitions, we see that "*auto*" and "*mobile equipment*" are defined to be mutually exclusive even though there may be common properties between them; if a device can be defined as either, the definition does not give guidance on how to resolve the ambiguity without consulting external canons or legal rules.

The courts of Tennessee recognize the use of the statutory canons when they assist courts in resolving cases justly. *See, e.g. Sallee v. Barrett*, 171 S.W.3d 822, 828–29 (Tenn. 2005) ("Aiding in our interpretation of legislative intent are the maxims of *noscitur a sociis* and *ejusdem generis.* Under the doctrine of *noscitur a sociis,* "the meaning of questionable or doubtful words or phrases in a statute may be ascertained by reference to the meaning of other words or phrases associated with it.'") (quoting Black's Law Dictionary 1060 (6th ed.1990)); (*see also Hammer v. Franklin Interurban Co.,* 209 Tenn. 399, 354 S.W.2d 241, 242 (1962) (holding that statutory terms should be construed with reference to their associated words and phrases)). The doctrine of *noscitur a sociis* permits courts to modify and limit subordinate words and phrases to harmonize them with each other and with the evident purpose of the statute. *See Scopes v. State,* 154 Tenn. 105, 289 S.W. 363, 364 (1927). These principles are extended to the interpretation of contracts as well.

## II.    When Coverage Generally Applies under Coverage A

Form CG 00 01 04 13 memorializes Plaintiff's Commercial General Liability Coverage with West End. Section 1 contains three (3) types of coverage which deal with coverages under different circumstances. Coverage A deals with standard general liability coverage for bodily injury and property damage and contains two subsections: (1) Insuring Agreement, which covers the standard situations in which Coverage A applies; and (2) Exclusions from these standard inclusions of subsection 1.

The whole of subsection 1. Insuring Agreement sets forth:

<u>SECTION I – COVERAGES</u>

<u>COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY</u>

1. Insuring Agreement

   a. **We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.** However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Section III – Limits of Insurance; and

      (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      (2) The "bodily injury" or "property damage" occurs during the policy period; and

      (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

   c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim,

includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

   d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

     (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

     (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

     (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

   e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

Def's Memo Supp. Mot. Dismiss, Exhibit A, CG 00 01 04 13, Page 1 of 16 (emphasis added).

To summarize, West End must pay any costs for bodily injury or property damage to third parties due to negligence or recklessness by Plaintiffs, subject to exceptions, exclusions, and limitations explicitly stated elsewhere in the policy. Therefore, the Court must begin with the presumption that these coverages apply to any general negligence costs that Plaintiffs are obligated to pay unless Defendants can raise an argument based on those explicit exclusions which would invalidate coverage. Those exceptions must be stated explicitly in accordance with the principle of *expressio unius est exclusio alterius*: **if a contract explicitly lists exclusions, it is presumed that anything not mentioned was intended to be included by coverage**.

### III.  "Machinery or Equipment That is Attached to a Land Vehicle" Can Constitute a Covered "Auto" Under Coverage A of the Policy

Acknowledging that analysis should begin with a presumption of coverage, the applicable exclusions in subsection 2 must be addressed. The Commercial General Liability Form policy

includes a list of several discrete exclusions, including the following, with five listed contained exceptions to the exclusionary rule:

### g. Aircraft, Auto Or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading". This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training, or monitoring of others by the "bodily injury" or "property damage" involved in the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

### This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;
(2) A watercraft you do not own that is:
(a) Less than 26 feet long; and
(b) Not being used to carry persons or property for a charge;
(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;
(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or
(5) "Bodily injury" or "property damage" arising out of:
**(a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or**
(b) The operation of any of the machinery or equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

Def's Memo Supp. Mot. Dismiss, Exhibit A, CG 00 01 04 13, Page 4 of 16 (emphasis added).

This means is that an "auto" under g.(5) is an "*auto*" that is included in coverage under Coverage A.

Defendants assert in their motion:

To the extent that the Plaintiff claim there is coverage under the CGL form for failing to secure the boom, the definition of "auto" includes "any attached machinery or equipment." Simply put, the Underlying Plaintiffs' claims clearly arise from the ownership, maintenance, or use of an "auto," and the Underlying Complaint does not allege an insured risk.

Def's Memo Supp. Mot. Dismiss, 16-17.

Everything stated is correct except for the conclusion that there is not insurance coverage. In fact, Defendants acknowledge that "the definition of 'auto' includes 'any attached machinery or equipment.'" **Having conceded this point, they are bound to it as a judicial admission.**

The definitions of the state:

**"Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:**

a. Bulldozers, **farm machinery**, forklifts and other **vehicles designed for use principally off public roads**;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1) Power cranes, shovels, loaders, diggers or drills; or**

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in Paragraph a., b., c. or d. above that are **not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:**

(1) Air compressors, pumps and generators, including spraying, welding, building **cleaning**, **geophysical exploration**, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. **Vehicles not described in Paragraph a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.** However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or
(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

Def's Memo Supp. Mot. Dismiss, Exhibit A, CG 00 01 04 13, Page 14-15 of 16 (emphasis added).

The subject M2 fits into multiple categories under this coverage; and the policy even includes an emergency catchall category for types of mobile equipment which aren't specialized. The primary purpose of the M2 is removing felled trees from properties being serviced. The M2 is not a standard auto used for the transportation of people or cargo: it is a specialized Machinery/Equipment which exists to perform a particular set of tasks that allegedly harmed the Plaintiffs in the Underlying Litigation by negligent operation. The M2 was used primarily for geophysical exploration and servicing; not transportation of persons and cargo.

As the exclusions make clear, even if the M2 qualifies as an "auto" under the policy, it nonetheless falls within an exception to the exclusion for the ownership, maintenance, or use of an "auto." According to the policy's plain language, "machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of 'mobile equipment'" — if not subject to a motor vehicle insurance law — is considered an "auto" that remains eligible for financial coverage under the policy.

Defendants cannot assert that the exclusion applies notwithstanding the express exceptions, particularly considering the interpretive canon *generalia specialibus non derogant*— general provisions do not override specific ones. The exception to the exclusion is drafted in clear and unambiguous terms, evidencing the parties' intent to carve out certain categories from the exclusion at the time of contracting. Under well-established Tennessee law, when contract

language is unambiguous, courts are obligated to enforce the agreement as written and give effect to the parties' expressed intent. See *Certain Underwriters at Lloyd's of London v. Transcarriers Inc.*, 107 S.W.3d 496, 499 (Tenn. Ct. App. 2002) ("*As long as its terms are unambiguous, it will be enforced as written. Ambiguous terms generally will be construed against the drafter.*"); *see also Allstate Ins. Co. v. Watts*, 811 S.W.2d 883, 886 (Tenn. 1991). Courts are not empowered to rewrite unambiguous contractual provisions merely to avoid harsh outcomes. *Shamrock Homebuilders, Inc. v. Cherokee Ins. Co.*, 225 Tenn. 236, 466 S.W.2d 204, 206 (1971). Moreover, while policy exclusions should not be interpreted so broadly as to favor the insurer, they also must not be construed so narrowly as to nullify their intended effect. *Midland Ins. Co. v. Home Indem. Co.*, 619 S.W.2d 387, 389 (Tenn. Ct. App. 1981).

Because the policy contains a clear and unambiguous exception to the exclusion for coverage of "owned" autos not listed in the Commercial Auto Policy, the Court must give effect to that language. Accordingly, even if the Court finds that the M2 qualifies as an "auto" under the policy, coverage is still required under the exception for machinery or equipment that would fall within the definition of "mobile equipment" but for its classification as an "auto." Furthermore, even if the Court determines that this definition applies only to the M2 and not the vehicle as a whole, the exclusion itself expressly provides that machinery or equipment "attached to, or part of, a land vehicle" qualifies for the exception. Therefore, under either interpretation, Plaintiffs are entitled to coverage.

**IV.** **The Operation of Any of the Machinery or Equipment Listed in Paragraph f.(2) or f.(3) of the Definition of "Mobile Equipment" is Nonspecific and Generally Descriptive of the M2.**

As previously stated, Coverage A of the Commercial General Lability policy includes the following relevant inclusions and exclusions:

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading". This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training, or monitoring of others by the "bodily injury" or "property damage" involved in the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

**This exclusion does not apply to:**

(1) A watercraft while ashore on premises you own or rent;
(2) A watercraft you do not own that is:
(a) Less than 26 feet long; and
(b) Not being used to carry persons or property for a charge;
(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;
(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or
(5) "Bodily injury" or "property damage" arising out of:
**(a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or**
(b) The operation of any of the machinery or equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

Def's Memo Supp. Mot. Dismiss, Exhibit A, CG 00 01 04 13, Page 4 of 16 (emphasis added).

The Definitions Section contains the following in the definition of "mobile equipment":

g.    Vehicles not described in Paragraph a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1)    Equipment designed primarily for:
(a) Snow removal;
(b) Road maintenance, but not construction or resurfacing; or
(c) Street cleaning;

**(3)    Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and**

**(4)  Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.**

Def's Memo Supp. Mot. Dismiss, Exhibit A, CG 00 01 04 13, Page 14 of 16 (emphasis added).

According to the principle of *noscitur a sociis*, the meaning of a word can be understood by the words around it in the contract. Therefore, if something contains the essential, core elements that all members of the group have, it can reasonably be identified as a member of that group through analogical reasoning.

Both tree trucks like the M2 and cherry pickers are specialized devices designed to access areas that are otherwise difficult or impossible to reach. In the case of cherry pickers, the boom mechanism is used to elevate workers and equipment to elevated positions for tasks such as maintenance or construction. Similarly, tree trucks like the M2 at times utilize a boom to lift, maneuver, and transport logs during forestry operations and land clearing activities.

Each device incorporates a telescopic or articulated boom, providing enhanced flexibility and precision in operation. While both can travel on public roads, their primary function is not transportation but rather task-specific operations in off-road or industrial settings.

Cherry pickers and logging rigs are essential in various industries, including construction, forestry, maintenance, emergency services, and other heavy-duty applications. Both are engineered to operate effectively in challenging environments, including steep, uneven, or remote terrain.

The items listed are presented as a series of discrete but related categories, each sharing common functional characteristics. As previously discussed, under the interpretive canon *noscitur a sociis*—a word is known by the company it keeps—the meaning of a term can be informed by the context of surrounding words. When an item shares the essential characteristics common to

the enumerated list, it may reasonably be understood as belonging to that category through analogical reasoning.

Items such as air compressors, pumps, generators, and equipment used for spraying, welding, building cleaning, geophysical exploration, lighting, and well servicing all serve a primary function related to construction, maintenance, or industrial operations—specifically, the renovation, alteration, or repair of outdoor structures or environments. In this context, the inclusion of a tree truck like the M2 is appropriate. Its primary function is not road travel or the transport of goods, but rather the clearing of forested areas, particularly in preparation for construction, land development, or clearing and lumber processing.

These machines, including the M2, represent a category of heavy-duty, specialized equipment designed to perform tasks that are not typically addressed by conventional tools or vehicles. An M2 equipped with a boom plays a vital role in land preparation and lumber processing by removing trees and stumps, thus aligning it with other listed equipment used in industrial and construction activities.

In sum, the M2 is not a conventional automobile designed for the transportation of passengers or cargo. Rather, it is specialized machinery employed for a distinct operational purpose. The alleged injuries in the Underlying Litigation at issue arose from the alleged negligent operation of this equipment, which functions within the sphere of geophysical exploration and site servicing—not within the traditional domain of automotive passenger transportation.

## V.  The Commercial General Liability Form Policy Language is Ambiguous

Defendants contend that coverage under West Bend's Commercial General Liability policy is precluded because the underlying litigation arises from the ownership, maintenance, use, or entrustment of an "auto." However, as previously demonstrated, there is a substantial and reasonable basis to conclude that the M2 is more appropriately characterized as something other

than an "auto" within the meaning of the policy—falling within definitions that support coverage for Plaintiffs.

In interpreting contract terms, courts must first look to the language of the contract itself. Insurance policies, like all contracts, must be construed to give effect to the expressed intent of the parties. *Tata v. Nichols*, 848 S.W.2d 649, 650 (Tenn. 1993). They are to be given a fair and sensible interpretation consistent with the contract's object and the parties' intent. *Dixon v. Gunter*, 636 S.W.2d 437, 441 (Tenn. Ct. App. 1982). **When policy language is subject to more than one reasonable interpretation, it is deemed ambiguous**. **In such cases, Tennessee law requires that ambiguity be resolved in favor of the insured.** *Allstate Ins. Co. v. Watts*, 811 S.W.2d 883, 886 (Tenn. 1991) (citing *Travelers Ins. Co. v. Aetna Cas. & Sur. Co.*, 491 S.W.2d 363, 367 (Tenn. 1973)). Additionally, undefined policy terms must be given their usual, natural, and ordinary meaning. *Allstate Ins. Co. v. Jordan*, 16 S.W.3d 777, 779 (Tenn. Ct. App. 1999). Legal definitions within a contract may vary depending on the context in which they appear. *Huskey v. Crisp*, 865 S.W.2d 451, 454 (Tenn. 1993).

Accordingly, the M2 is reasonably interpreted as something other than an "auto" under the policy, and the Court should adopt that interpretation for purposes of determining coverage in favor of the Plaintiffs. This approach is consistent with longstanding Tennessee law, which holds that exclusions, exceptions, and limitations in insurance contracts must be strictly construed against the insurer and in favor of the insured. *Watts*, 811 S.W.2d at 886; *Travelers*, 491 S.W.2d at 367.

This principle is especially warranted given the insurer's superior bargaining position and exclusive role in drafting the terms of a standard form policy. As the drafter, the insurer bears the risk of any ambiguity, which must be construed against it to prevent abuse of that drafting power. Otherwise, insurers would have an incentive to draft vague or ambiguous language to preserve interpretive flexibility to their benefit in the event of litigation. As the Tennessee Supreme Court

stated in *Travelers*, "[t]he sole object of the insured in obtaining insurance is indemnity. To exclude coverage, exclusion clauses must be drafted in clear and unambiguous terms. The terms being ambiguous, they must be strictly construed against the insurer." *Id.* at 367.

The M2 may reasonably be classified under several alternative definitions included in the policy. It arguably qualifies as "machinery or equipment that is attached to a land vehicle," or as a "cherry picker or similar device," (as discussed above) given that it shares the essential characteristics common to these categories—namely, specialized mechanical equipment designed for specific industrial or construction-related purposes rather than general transportation. It may also be aligned with the category of "[a]ir compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment," as its primary function is to remove trees and clear land—tasks fundamental to land development and site preparation.

**Because the M2 can reasonably be interpreted to fall within multiple enumerated exceptions to the auto exclusion, its classification under the policy is inherently ambiguous.** As such, the Court should resolve that ambiguity in favor of the Plaintiffs and conclude that the M2 falls within the exception for "machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of 'mobile equipment' if it were not subject to a motor vehicle insurance law," or alternatively, within the categories of "cherry pickers and similar devices" and the other specialized equipment expressly listed. Therefore, Plaintiffs are entitled to coverage under Coverage A of the Commercial General Liability Form policy.

**VI.    Conclusion**

Wherefore, based on the foregoing, Plaintiffs respectfully pray the Court deny Defendant West Bend insurance Company's Motion to Dismiss the claims of Plaintiffs under Rule 12 of the Tennessee Rules of Civil Procedure.

EXHIBIT 2A

Respectfully submitted,

**/s/David M. Rich**
David M. Rich, TNBPR #23851
Honeycutt Rich, PLLC
20 Music Circle East
Nashville, Tennessee 37203
Ph: (615) 244-0749
Fax: (615) 523-1761

***Counsel for Plaintiffs Christopher Holloway, Brian Holloway, individually and d/b/a "Tree Solutions"***

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically on May 16, 2025. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

Scott A. Rhodes, Esq.                           srhodes@whiterhodes.com
Honeycutt Rich, PLLC
20 Music Circle East
Nashville, TN  37203

Elizabeth M. Bass, Esq.                         Elizabeth@RichardsonLawGrp.com
Richardson Law Group
700 E. Main Street, Suite 201
Hendersonville, TN  37075

This the 16th day of May 2025.

*/s/David M. Rich*
David M. Rich

## IN THE CHANCERY COURT FOR RUTHERFORD COUNTY, TENNESSEE
## AT MURFREESBORO

CHRISTOPHER HOLLOWAY, individually, and )
BRIAN HOLLOWAY, individually, and d/b/a )
"Tree Solutions", a Tennessee Family Business, )
                                          )     **CASE NO. 25CV-128**
      PLAINTIFFS                )
                                            )     JURY DEMAND
VS.                                    )
                                            )
WEST BEND INSURANCE COMPANY; )
STATE FARM FIRE AND CASUALTY )
COMPANY; and GEICO ADVANTAGE )
INSURANCE COMPANY, )
                                            )
      DEFENDANTS              )

## NOTICE OF FILING NOTICE OF REMOVAL

Please take notice that, pursuant to 28 U.S.C. § 1446(b), Defendant, West Bend Insurance Company, by counsel, has on this 29th day of May, 2025, removed this action by filing a Notice of Removal in the United States District Court for the Middle District of Tennessee, together with a complete copy of all process, pleadings, and orders served upon this Defendant in the state court action as of the date of filing of the removal. A complete, true, and correct copy of such Notice of Removal, without exhibits, is attached hereto as **Exhibit A**.

                         Respectfully submitted,

                         RICHARDSON LAW GROUP, PLLC

                         */s/ Elizabeth M. Bass*
                         Elizabeth M. Bass (TN BPR 035570/ KBA 92461)
                         700 East Main Street, Suite 201
                         Hendersonville, Tennessee 37075
                         Telephone:    (615) 919-9090
                         Facsimile:    (859) 219-9292
                         Email:        Elizabeth@RichardsonLawGrp.com
                         COUNSEL FOR DEFENDANT,
                         WEST BEND INSURANCE COMPANY

## CERTIFICATE OF SERVICE

This is to certify that the foregoing has been served on this the 29th day of May, 2025 by mailing and/or emailing a true and accurate copy to the following:

David M. Rich
Honeycutt Rich, PLLC
20 Music Circle East
Nashville, TN 37203
dave@honeycuttrich.com
*Counsel for Plaintiffs*

Scott A. Rhodes
Brentwood Commons II, Suite 275
750 Old Hickory Blvd.
Brentwood, TN 37027
srhodes@whiterhodes.com
*Counsel for Counterclaim Plaintiff,*
*GEICO Advantage Insurance Co.*

*/s/ Elizabeth M. Bass*
COUNSELFOR DEFENDANT
WEST BEND INSURANCE COMPANY

7388.008592C:\NRPortbl\Golden_and_Walters\DSETTLES\2616905_1.docx

2

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| CHRISTOPHER HOLLOWAY, individually, and, BRIAN HOLLOWAY, individually, and d/b/a "Tree Solutions", a Tennessee Family Business,<br><br>PLAINTIFFS,<br><br>VS.<br><br>WEST BEND INSURANCE COMPANY; STATE FARM FIRE AND CASUALTY COMPANY; and GEICO ADVANTAGE INSURANCE COMPANY,<br><br>DEFENDANTS | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

*Electronically Filed*
**CASE NO.**

## NOTICE OF REMOVAL

The Defendant, West Bend Insurance Company, by and through counsel, and pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, hereby files this Notice of Removal. As grounds for removal of this action, this Defendant states as follows:

1. On January 24, 2025, the Plaintiffs, Christopher Holloway, Brian Holloway, and Brian Holloway d/b/a "Tree Solutions," commenced a civil action against this Defendant in the Chancery Court for Rutherford County, Tennessee, designated therein as Case No. 25CV-128.

2. Pursuant to 28 U.S.C. § 1446(a), a true and correct copy of all of the process, pleadings, orders, and documents from the State Court Action, which have been filed and served upon the parties, is being filed with this Notice of Removal and is attached hereto as **Exhibit A**.

3. The Complaint seeks a declaratory judgment pursuant to Tenn. Code Ann. 29-14-103, declaring that West Bend is obligated to provide coverage for a motor vehicle accident which occurred on or about October 10, 2024, in Rutherford County, Tennessee. It also asserts that

coverage is owed by two additional insurers, State Farm Fire and Casualty Company and GEICO Advantage Insurance Company, and names those insurers as Defendants.

4.     This Defendant was served with a copy of Plaintiffs' Complaint by agreement through its attorney, Elizabeth Bass, on or about February 13, 2025.

5.     In lieu of filing an Answer to Plaintiffs' Company, this Defendant submitted a Motion to Dismiss on February 28, 2025. In its Motion, this Defendant asserted that the Plaintiffs have failed to state a claim upon which relief can be granted. The hearing on this Motion to Dismiss is set for May 30, 2025.

6.     The Court has jurisdiction over this matter under 28 U.S.C. § 1332(a), because there is complete diversity of citizenship between all Plaintiffs and the Defendant, and more than $75,000.00, exclusive of interest and cost, is at stake.

7.     The Plaintiffs are natural persons, who are now, were at the commencement of this action, and have been at all relevant times, citizens and residents of the State of Tennessee.

8.     This Defendant, West Bend Insurance Company, is now, was at the commencement of this action, and has been at all relevant times a corporation incorporated by, organized, and existing under the laws of the state of Wisconsin. This Defendant's principal place of business is in the State of Wisconsin. This Defendant is deemed a resident of the State of Wisconsin for the purposes of jurisdiction under the provisions of 28 U.S.C. § 1332(c)(1).

9.     The other original Defendants to the State Court Action, GEICO Advantage Insurance Company and State Farm Fire and Casualty Company, have been dismissed from the Action pursuant to a Notice of Voluntary Non-Suit and Proposed Order of Voluntary Nonsuit which was filed by the Plaintiff on April 30, 2025.

2

10.     Entry of the Order of Voluntary Nonsuit was this Defendant's first notice that this case was removable to Federal Court based on diversity jurisdiction. Prior to this filing, the case was not removable, as the Complaint states that State Farm Fire and Casualty Company has a principal place of business in the State of Tennessee, and GEICO Advantage Insurance Company (which was identified in the Complaint as having a principal place of business in Maryland) did not consent to removal. 28 U.S.C. § 1332(a); 28 U.S.C. § 1446(b)(2)(A). The filing of the Order of Voluntary Nonsuit terminated the Plaintiffs' case against those additional Defendants in State Court, thereby making this action ripe for removal. *See Hines v. JP Morgan Chase Bank, N.A.*, No. 3:16-0239, 2016 WL 1399323 (M.D. Tenn. Mar. 3, 2016), report and recommendation adopted, No. 3-16-00239, 2016 WL 1381792 (M.D. Tenn. Apr. 6, 2016).

11. On May 15, 2025, GEICO Advantage Insurance Company filed a Notice of its Intention to Proceed with its Counter-Claim against Counter-Defendants Christopher Holloway and Brian Holloway, despite the Plaintiff's non-suit. However, Christopher Holloway and Brian Holloway need not give their consent for the removal of this action because they are not "defendants" within the meaning of 28 U.S.C. § 1441(a) or 28 U.S.C. § 1446(b)(2)(A). The phrase, "the defendant or the defendants," as used in these statutes "refer[s] to defendants in the traditional sense of the parties against whom the plaintiff asserts claims." *First Nat. Bank of Pulaski v. Curry*, 301 F.3d 456, 462-463 (6th Cir. 2002). Therefore, because Christopher and Brian Holloway are the plaintiffs who initiated the state court action, they are not and cannot be parties against whom the plaintiff asserted claims, and therefore are not defendants as the word is used 28 U.S.C. § 1441(a) and 28 U.S.C. § 1446(b)(2)(A).

3

12.     Because GEICO is no longer a Defendant, West Bend no longer needs GEICO's consent to remove the case to this Court. *See, Flade v. City of Shelbyville,* 699 S.W.3d 272, 282 (Tenn. 2024).

13.     There is complete diversity of citizenship between the Plaintiffs and West Bend Insurance Company, the sole remaining defendant in the State Court Action. The amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs. The Complaint underlying this declaratory judgment action requests a judgment in excess of $10,000,000. The Underlying Complaint is attached hereto as **Exhibit B.**

14.     This is an action over which the District Courts of the United States have jurisdiction, pursuant to 28 U.S.C. § 1332. Therefore, the action is removable to the District Court pursuant to 28 U.S.C. § 1441(a).

15.     This District and Division constitute the appropriate forum to which this action should be removed. The Chancery Court for Rutherford County is within the Middle District of Tennessee, Nashville Division.

16.     Venue is proper pursuant to 28 U.S.C. § 1391, in that a substantial part of the events or omissions giving rise to the claim occurred in this District.

17.     The Notice of Removal has been filed within 30 days of the date that this Defendant accepted service of a copy of an amended pleading, motion, order, or other paper from which it was first ascertained that the case is one which is removable. Removal is therefore timely in accordance with 28 U.S.C. § 1446(b)(3).

18.     Pursuant to 28 U.S.C. § 1446, written notice of the filing of this Notice of Removal will be promptly given to the adverse parties, and a copy of this Notice of Removal will be filed

4

EXHIBIT A

with the Chancery Court for Rutherford County. A copy of the notice to the Chancery Court for Rutherford County is attached hereto as **Exhibit C**.

19      Accordingly, this action is hereby removed from the Chancery Court for Rutherford County to the United States District Court for the Middle District of Tennessee.

Respectfully submitted,

RICHARDSON LAW GROUP, PLLC

/s/ Elizabeth M. Bass

Elizabeth M. Bass (TN BPR 035570/ KBA 92461)
700 East Main Street, Suite 201
Hendersonville, Tennessee 37075
Telephone:      (615) 919-9090
Facsimile:      (859) 219-9292
Email:          Elizabeth@RichardsonLawGrp.com
COUNSEL FOR DEFENDANT,
WEST BEND INSURANCE COMPANY

## CERTIFICATE OF SERVICE

On May 29, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record:

David M. Rich
Honeycutt Rich, PLLC
20 Music Circle East
Nashville, TN 37203
dave@honeycuttrich.com
*Counsel for Plaintiffs*

Scott A. Rhodes
Brentwood Commons II, Suite 275
750 Old Hickory Blvd.
Brentwood, TN  37027
srhodes@whiterhodes.com
*Counsel for Counterclaim Plaintiff,*
*GEICO Advantage Insurance Co.*

/s/ Elizabeth M. Bass
COUNSEL FOR DEFENDANT,
WEST BEND INSURANCE COMPANY