# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| CHRISTOPHER HOLLOWAY, individually, and BRIAN HOLLOWAY, individually and d/b/a "Tree Solutions," a Tennessee Family Business, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| WEST BEND INSURANCE COMPANY, | ) ) | |
| Defendant. | ) ) | NO. 3:25-cv-00593 |
| AND | ) ) | JUDGE CAMPBELL MAGISTRATE JUDGE EVANS |
| GEICO ADVANTAGE INSURANCE COMPANY, | ) ) ) | |
| Counter-Plaintiff | ) ) | |
| v. | ) ) | |
| CHRISTOPHER HOLLOWAY and BRIAN HOLLOWAY | ) ) ) | |
| Counter-Defendants | ) | |

## <u>MEMORANDUM AND ORDER</u>

Pending before the Court is Defendant West Bend Insurance Company's ("West Bend") Motion to Dismiss. (Doc. No. 19). Plaintiffs Christopher Holloway and Brian Holloway responded in opposition to the motion (Doc. No. 21), and Defendant filed a reply (Doc. No. 22). For the reasons stated herein, the motion to dismiss is **DENIED**.

## I.    BACKGROUND[1]

Plaintiff Brian Holloway is the owner of Tree Solutions, a tree trimming and maintenance service he operates with his father Christopher Holloway. (¶¶ 1.1, 1.2). Tree Solutions holds an insurance policy (the "Policy") issued by West Bend that includes business auto coverage and general liability coverage. (¶ 3.2; Policy, Doc. No. 19-2).

On October 10, 2024, Christopher Holloway was involved in a collision while operating a tree trimming vehicle owned by Tree Solutions – a 2013 Freightliner M2 (the "Tree Truck"). (¶¶ 3.3, 3.6). Although the Tree Truck was listed as a covered auto under the insurance policy prior to May 8, 2024, at time of the accident, Tree Solutions had suspended auto coverage of the Tree Truck. (¶ 3.2).

As a result of the collision, a lawsuit for civil damages was filed against Plaintiffs in the Circuit Court of Rutherford County, Tennessee – *Payne et al. v. Holloway et al.*, Case No. 82978.[2] (¶ 3.8). That lawsuit alleges that Christopher Holloway had "an improperly secured boom on his tractor-trailer / logging truck, the boom swung into oncoming traffic, colliding with the vehicle" occupied by the plaintiffs and their now deceased minor child. (*See Payne* Complaint, ¶ 8). The *Payne* Complaint seeks a judgment of compensatory and punitive damages "in excess of $10,000,000." (*Id.*).

Tree Solutions filed a claim for coverage with West Bend, which was denied. (¶ 3.10). Plaintiffs argue that the collision is covered under the insurance policy issued by West Bend under coverage for automobile liability, mobile equipment liability, general liability, or other provisions

---

[1]    Unless otherwise stated, all citations are to the Complaint (Doc. No. 1-1).

[2]    The Complaint against the Christopher Holloway, Brian Holloway, and Tree Solutions, is attached to the Complaint in this case as Exhibit A. (*See* Doc. No. 1-1 at PageID# 14-21). For ease of reference the underlying state complaint will be cited as "*Payne* Complaint, ¶ __."

2

of the policy. (¶ 4.1). In this lawsuit Plaintiffs seek a declaratory judgment declaring that West Bend is obligated to provide coverage for the collision and has a duty to defend Plaintiffs under the terms of the insurance policy. (¶ 4.2).

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for failure to state a claim upon which relief can be granted. For purposes of a motion to dismiss, a court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, to state a claim for relief that is plausible on its face. *Id*. at 678. A claim has facial plausibility when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*.  In reviewing a motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, accepts its allegations as true, and draws all reasonable inferences in favor of the plaintiff. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Thus, dismissal is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Guzman v. U.S. Dep't of Children's Servs.*, 679 F.3d 425, 429 (6th Cir. 2012).

In considering a Rule 12(b)(6) motion, the Court may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to a defendant's motion to dismiss provided they are referred to in the Complaint and are central to the claims. *Bassett v. National Collegiate Athletic Assn.*, 528 F.3d 426, 430 (6th Cir. 2008).  Here, the Court has considered two exhibits outside the Complaint: (1) the complaint in the underlying state court case (the *Payne* Complaint), which is attached to the Complaint in this

case, central to the claims, and a public record; and (2) the insurance policy, which is an exhibit to Defendant's motion to dismiss and central to the claims.

### III. ANALYSIS

Defendant moves to dismiss the Complaint for failure to state a claim upon which relief can be granted. First, Defendant argues that the Complaint fails to satisfy the pleadings standard under Rule 8 of the Federal Rules of Civil Procedure because it fails to identify any policy language that would afford coverage for a vehicle not listed on the policy and have presented no "facts or theories" in the Complaint which would give rise to coverage. (Doc. No. 19-1 at 11). Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(2). To satisfy Rule 8, Plaintiffs must plead facts that allow the court to draw the reasonable inference that they are entitled to the relief sought. Here the Plaintiffs claim they held a Policy with general and fleet liability coverage issued by West Bend and that they are entitled to coverage under the Policy. (*See* Complaint, Doc. No. 1-1, ¶¶ 1.1, 1.33, 3.10, 4.10). These are sufficient factual allegations to satisfy Rule 8.

Next, Defendant argues that there is no coverage under the Policy because the Tree Truck is not a "covered auto." In response, Plaintiff points to policy provision providing Commercial General Liability coverage for bodily injury. (Policy, Commercial General Liability Coverage Form, § 1.A., Doc. No. 19-2 at PageID# 402-406). The Policy excludes coverage for bodily injury "arising out of the ownership, maintenance, use or entrustment to others of any … 'auto' … owned or operated by or rented or loaned to any insured," but states that the exclusion does not apply to bodily injury arising out of "the operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify as mobile equipment but for its subjection to [a motor vehicle law]." (Policy, Commercial General Liability Coverage Form, § 1.A., Doc. No. 19-2 at PageID#

405). Plaintiff argues that the Tree Truck is more appropriately characterized as "something other than an 'auto'" under the Policy, and that if the Tree Truck is not an "auto," but is instead "mobile equipment" or something else, there is coverage.

Under the terms of the Policy the terms "Auto" and "Mobile Equipment" are defined as follows:

**2.** "Auto" means:

**a.** A land motor vehicle, trailer, or semitrailer designated for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law where it is licensed or principally garaged. However, "auto" does not include "mobile equipment".

…

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

5

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

(Doc. No. 19-2 at PageID # 414-416).

Defendant argues the Court can determine, based solely on the allegations in the Complaint, that the Tree Truck is an "auto" under the Policy and therefore no coverage. It contends that the allegations in the Complaint make clear that the Tree Truck was being used as an "auto," not "mobile equipment" at the time of the accident because Christopher Holloway was driving the vehicle and not operating the boom.[3]

---

[3]    Plaintiff argues the Tree Truck has characteristics of both an auto and mobile equipment and, without citation, provides description of the Tree Truck not included in the Complaint. Plaintiff states that the Tree Truck is "a truck capable of travel on public roads, but it is also equipped with specialized forestry machinery designed primarily for land clearing." (Doc. No. 21 at 4). "The M2 is not a conventional passenger vehicle or cargo hauler. Its principal purpose is the operation of specialized equipment for land

Defendant points to a case from the Tennessee Court of Appeals in 2013, as determinative of the circumstances under which a "boom truck" qualifies as an "auto" under an automobile liability policy. (*See* Doc. No. 19-1 at 15 (citing *Erie Ins. Exch. v. Columbia Nat. Ins*., No. M2012-00331-COA-R3CV, 2013 WL 395982, at *2 (Tenn. Ct. App. Jan. 30, 2013)). In *Erie*, the court considered whether a "1995 Ford flat-bed truck outfitted with a permanently attached Manitex crane" qualified as an "auto" under an auto policy when it was "immobilized, the wheels were lifted off of the ground, and it was only being used as a power crane to lift heavy materials." *Erie*, 2013 WL 395982, at *7. The *Erie* court determined that the truck was a dual function vehicle that was only considered an automobile "while being driven from place to place." *Id*. at *6 (citing *State Farm Mut. Auto Ins. Co. v. Farmers Ins. Grp*., 569 P.2d 1260, 1262 (Wyo. 1977)). Because the truck was not being driven from place to place, there was no coverage under the auto policy. *Id*. at *7.

The Court does not find *Erie* dispositive at this juncture for several reasons. First, the case was decided at summary judgment where facts concerning the characteristics and use of the "boom truck" were developed. The case is also factually distinguishable. The "boom truck" in *Erie* was "a 1995 Ford flat-bed truck outfitted with a permanently attached Manitex crane," not the tree trimming truck at issue in this case, and the exclusion in the auto policy was for "mobile equipment except when it is being transported by a covered auto," which is different that the exclusion potentially at issue here.

---

clearing and tree removal." (*Id*. at 6). The Complaint contains no reference to the capabilities or description of the Tree Truck other than to state that it is a "tree trimming vehicle known as a 2013 Freightliner M2" (Complaint, Doc. No. 1-1, ¶ 3.1), and by reference to the underlying state complaint that the truck was a "logging truck" equipped with a "boom" (*Payne* Complaint, Doc. No. 1-1 at PageID# 15). In considering the motion to dismiss, the Court has considered only the allegations in the Complaint and not Plaintiffs' additional descriptions of the Tree Truck.

7

At this juncture the Court is not prepared to determine as a matter of law that Plaintiffs are not entitled to coverage under the policy based on Defendant's argument that the Tree Truck, which was being driven at a speed of 4-5 miles per hour, was an uncovered automobile as opposed to mobile equipment or some other classification. The Court finds Plaintiffs have alleged sufficient facts to state a plausible claim for relief and that further development of the record is warranted.

### IV. CONCLUSION

For the reasons stated, Defendant's Motion to Dismiss (Doc. No. 19) is **DENIED.**

It is so **ORDERED**.


WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE

8